**EXHIBIT "A"**

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _ESSEX CO._
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _NEW CASTLE CO_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known) _CYNTHIA G. BEAM, ESQ_

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | | | Under Equal Access |
| | Employment | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

**PERSONAL INJURY** ☒
☐ 362 Personal Injury -
Med. Malpractice
☐ 365 Personal Injury -
Product Liability
☐ 368 Asbestos Personal
Injury Product
Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
Property Damage
☐ 385 Property Damage
Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate
Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
_28 U.S.C.A § 1332, 28 U.S.C.A § 1367, 18 U.S.C.A § 241 - 242._
Brief description of cause:
_PERSONAL INJURIES DUE TO BEING EVALUATED AT THE "D.P.C"_

## VI. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ _20,000,000_

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE _8/11/05_

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

(Rev. 4/97)

## FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
## UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

JIMMIE LEWIS
_____
(Enter above the full name of the plaintiff in this action)

V.

SYLVIA FOSTER, KATHYRN SHENEMAN, MICHAEL TALMO,
DIANE STACHOWSKI, HELEN HANLON, MARGERET WILSON, MALE NURSE,
DONNA LAWRENCE, GLORIA BANKS, FLORENCE SCOTT COBB,
LANCE SAPERS, DAVE MOFFITT, R.GRAY, C. OATS, ROSE ARES,
PAT RILEY, DR. OVRESHI, CURTIS CORNISH, KAREN CHAMBERLIN
SEGAL.J, TANYA WILSON, J. CONYER, MR. JOHNSON, JOHN DOE.
(Enter above the full name of the defendant(s) in this action

I.    Previous lawsuits

    A.    Have you begun other lawsuits in state or federal courts dealing with the
        same facts involved in this action or otherwise relating to your imprisonment?
        YES [   ]    NO [✓]

    B.    If your answer to A is yes, describe the lawsuit in the space below.  (If there
        is more than one lawsuit, describe the additional lawsuits on another piece of
        paper, using the same outline).

        1.    Parties to this previous lawsuit

        Plaintiffs _____

        _____

        Defendants _____

        _____

2.  Court (if federal court, name the district; if state court, name the county)

_____

3.  Docket number _____

4.  Name of judge to whom case was assigned _____

5.  Disposition (for example: Was the case dismissed?  Was it appealed?
    Is it still pending?)

_____

6.  Approximate date of filing lawsuit _____

7.  Approximate date of disposition _____

II.  A.  Is there a prisoner grievance procedure in this institution?  Yes [  ] No [  ]

B.  Did you present the facts relating to your complaint in the state prisoner
grievance procedure?  Yes [  ]  No [✓]

C.  If your answer is YES,

1.  What steps did you take? _____

_____

2.  What was the result? _____

_____

D.  If your answer is NO, explain why not  STATE PRISONER GRIEVANCE
PROCEDURE 4.4 DOES NOT APPLY TO THE "D.P.C".

E.  If there is no prison grievance procedure in the institution, did you complain to
prison authorities?  Yes [  ] No [  ]

F.  If your answer is YES,

1.  What steps did you take? _____

_____

2.  What was the result? _____

_____

III.    Parties

(In item A below, place your name in the first blank and place your present address
in the second blank.  Do the same for additional plaintiffs, if any.)

A.    Name of Plaintiff _Jimmie LEWIS , SBI # 506622_____

Address _D. C. C. , 1181 PADDOCK, RD , SMYRNA, DE 19977_

(In item B below, place the full name of the defendant in the first blank, his official
position in the second blank, and his place of employment in the third blank.  Use
item C for the names, positions, and place of employment of any additional defendants.)

B.    Defendant _IN CAPTION, SYLVIA FOSTER___ is employed as _DR's, NURSE's_,

_NURSE ASSISTANTS____ at _1901 DUPONT HWY, NEW CASTLE, DE 19720_

C.    Additional Defendants _KATHYRN SHENEMAN, MICHAEL S. TALMO, DIANE STACHOWSKI,_

_HELEN HANLON, MARGRET WILSON, DONNA LAWRENCE, GLORIA BANKS, C. OATS,_

_FLORENCE SCOTT COBBS, LANCE SAPERS, DAVE MOFFITT, R. GRAY, ROSE ALES,_
_J. CONYER, SEGAL, J, MR. JOHNSON_
_PAT RILEY, DR. OVREISHI, CURTIS CORNISH, KAREN CHAMBERLIN, TANYA WILSON_

IV.    Statement of Claim

(State here as briefly as possible the facts of your case.  Describe how each defendant
is involved.  Include also the names of other persons involved, dates, and places.
Do not give any legal arguments or cite any cases or statutes.  If you intend to allege
a number of related claims, number and set forth each claim in a separate paragraph.
Use as much space as you need.  Attach extra sheet if necessary.)

_SEE ATTACHED._

V.    Relief

(State briefly exactly what you want the court to do for you.  Make no legal arguments.
 Cite no cases or statutes.)

20 MILLION DOLLARS FOR PAIN & SUFFERING DUE TO PATIENT RIGHT VIOLATIONS,

DUE TO CIVIL RIGHT VIOLATIONS, DUE TO STATE TORT VIOLATIONS, DUE TO

CRIMINAL OFFENSE VIOLATIONS, DUE TO VIOLATIONS OF 1ST, 4TH, 5TH,

6TH, 8TH, & 14TH AMENDMENTS U.S.C. PRELIMINARY INJUNCTION TO

INFORM THE SUPERIOR & SUPREME COURT THAT PSYCH EVAL IS TO ERRONEOUS TO RELY ON.

Signed this _11TH_ day of _AUGUST_, _2005_

_(Signature of Plaintiff)_

I declare under penalty of perjury that the foregoing is true and correct.

_8/11/05_
Date

_( Signature of Plaintiff)_

TABLE OF CONTENTS; IN NUMERICAL ORDER STATED HEREIN.
( NOTE: EXHIBITS MAY APPLY TO ANY AND ALL PARAGRAPHS.

1.) STATEMENT OF FACTS; 44 PAGES.

2.) D.P.C PROGRESS NOTES; 40 PAGES.
   ( SEE PARAGRAPHS, 2-3, 4, 5, 6, 7, 8, 9, 10, 11, 12,
   14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28,
   29, 30, 31, 32, 34, 35, 36.   )

3. COMPETENCY DOCUMENTS PRESENTED TO
   DR. SYLVIA FOSTER IN ORDER TO CONDUCT THE
   FORENSIC PSYCHIATRIC EVALUATION FOR —
   COMPETENCY; 6 PAGES. (PARAGRAPH 44        )

4. D.P.C. GRIEVANCES; 3 PAGES (PARAGRAPH 24-29)

5. TP-3 PSYCHOLOGICAL ASSESSMENT AUTHORED
   BY KATHRYN SHENEMAN; 6 PAGES.
   SEE PARAGRAPH 25

6. RAP SHEET SUBMITTED TO FACTUALLY VARIFY THE
   CORRECT DATE OF ARREST; 1 PAGE

7. FORENSIC PSYCHIATRIC COMPETENCY EVALUATION AUTHORED
   BY DR. SYLVIA FOSTER; 7 PAGES ( SEE PARAGRAPHS —
   4 - 22, 24, 25    ).

8. HABITUAL OFFENDER MOTION AUTHORED BY STATE D.A BRIAN J. ROBERTSON ; 3 PAGES

9. DISCIPLINARY REPORT I RECEIVED BEFORE BEING TRANSFERED TO THE H.R.Y.C.I, IN WHICH VARIFIES THAT I DID NOT ASSULT A CORRECTIONAL OFFICER AS STATED IN DR SYLVIA FOSTER'S REPORT; 2 PAGES (SEE PARAGRAPH 25          ).

10. OCT 21-22, 2003 TRIAL TRANSCRIPT VARIFING THAT COMPETENCY WAS AN ISSUE AT THE TIME OF ARREST AS WELL AS AT TRIAL, IN WHICH VARIFIES THAT THE MALINGERING DIAGNOSIS REPORTED BY DR. SYLVIA FOSTER WAS DESIGNED TO CONSEAL THE D.A's MISCARRAGE OF JUSTICE; 8 PAGES.

11. SENTENCING TRANSCRIPT THAT VARIFIES THE JUDGE UTILIZED DR. SYLVIA FOSTER'S REPORT TO SENTENCE ME ; 4 PAGES (PARAGRAPH 38  )

12. DOCUMENTS VARIFING THAT JUDGE ABLEMAN DENIED MY MOTION FOR A NEW TRIAL BECAUSE OF THE REPORT AUTHORED BY DR. SYLVIA FOSTER; 3 PAGES (SEE PARAGRAPH 43          ).

13.) HABEAS CORPUS DOCUMENTS ; 8 PAGES
( SEE PARAGRAPH 1; 41          )

14. CLASS (2) C.D.L PERMIT TO VARIFY LOST WAGES ;
3 PAGES. ( SEE PARAGRAPH 42          )

15. EXHIBITS RELATED TO DEFENDANT GLORIA BANKS,
4 PAGES ( SEE PARAGRAPH 39 )

16. DENIAL OF SPEEDY TRIAL EXHIBIT ; 1 PAGE

17. ATYPICAL AND SIGNIFICANT HARDSHIP EXHIBITS;
10 PAGES ( SEE PARAGRAPH 1 - 43          )

18. SUPERIOR COURT CRIMINAL DOCKET SHEET;
10 PAGES ( SEE PARAGRAPH 1; 33; 40          )

19. DEFINITION FOR SAID PSYCHOTROPIC MEDICINES AND
THEIR SIDE EFFECTS ; 21 PAGES

20. CASH RECEIPT FROM D.P.C VARIFING I DID
HAVE MONEY WHILE I WAS AT THE D.P.C ;1 PAGE

21. DISCRIPTION OF FELONY OFFENSES RESPONSIBLE IN
PART FOR HATE CRIME 11 DEL ▓▓▓ 1304 BEING
COMMITTED AGAINST ME; 1 PAGE

22 CERTIFICATE OF ▓ SERVICE

# "Statement of Facts"

This Statement of facts, along with the attached exhibits have been submitted as evidence to factually support the claims that the defendants individually committed and collectively conspired under color of state law (statute(s)) such being; assault by abuse 11 DEL 615 murder by abuse 11 DEL 633, kidnapping 11 DEL 783 kidnapping 11 DEL 783(a) – 11 DEL 786(a), Robbery 11 DEL 832, 2° Robbery 11 DEL 831, Hate Crime 11 DEL 1304, possession of deadly weapon during the commission of a felony – 11 DEL 1447, 1° assault 11 DEL 613, 2° assault – 11 DEL 612, assault in detention facility 11 DEL 1254(a), assault in detention facility by fluid 11 DEL 1254(c), Aggravated intimidation, 2° Conspiracy 11 DEL 513, Criminally negligent homicide 11 DEL 631, Tort violations of slander, libel, medical malpractice, assault and battery that have deprived me of my 1ST, 4TH, – 6TH, 8TH & 14TH U.S.C.A rights.

They operate individually as well as, as a team. The objective of the defendants in this matter manifested as the defendants ignoring my physical and psychological complaints, and thereafter deal with the problems that manifest as if I had created said problems, not as if I was seeking help to remedy the problem(s.)

I request that all defendants be subjected to polygraph testing, in order to obtain the facts in search for truth, due to there being only one plaintiff and more than 20 defendants. Polygraph testing will act as the plaintiff's guardian to insure that the presentation of these claims haven't breed any further conspiracy.

I hereby request that the Honorable court fully impliment the law of the forum, literally as well as liberally. I request that the Honorable Court place a lien on the defendants assests when a guilty judgement is rendered, in accordance to Rule 64. Due to the complex nature of the case, I hereby request that the Honorable Court appoint me a counselor due to my inability to conduct investigations & do proper legal research, etc. etc.

1.)

~ Michael S. Talmo and Diane Stachowski forced me to wait 6½ months to be evaluated. In response I filed a State habeas corpus, stating that I have not been able to receive proper psychological treatment, and that I was not allowed to seek relief by way of appeal due to unjustifiable being made to wait to be evaluated by the D.P.C. This signifies that at that time, I believed the alleged psychological treatment I received at H.R.Y.C.I was in violation of my 6TH, 8TH & 14TH U.S.C.A rights. See state habeas corpus dated 4-26-04, civil action number 04m-04-054; (Superior Court — Criminal Docket). After being returned to the D.O.C (Department of Corrections), I filed another state habeas corpus that was received by the office of prothonotary, Wilm, DE on Nov 29, 2004 stating I was seeking relief due to being returned to the D.O.C in violation of state psychiatric evaluation proceedures, due to the fact that I didn't receive a competency hearing, and due to the fact that Michael S. Talmo and Diane Stachowski did not receive an offical court order to legally have me returned to the D.O.C. Judge Charles H. Toliver IV responded on Dec 14, 2004 denying my state petition for habeas corpus relief; stating on June 16, 04 Diane Stachowski requested via written correspondence that I be returned back to the D.O.C

(cont)¹

Judge Toliver stated that he granted the aforementioned request on June 22, 2004 and that on June 29, 2004 the official order was filed with the office of the prothonotary? Judge Toliver then refers me to Superior Court Criminal Docket entry number 41? The problem is that Docket entry number 41 is erroneous, because Docket entry number 41 is the second request that Diane Stachowski submitted seeking an official court order to return me to the D.O.C.

Due to the fact that Dr. Sylvia Foster documented in the report that was submitted to the court, that I was incarcerated on Nov 17, 2003, a date that only draws an relevant inference to the Nov 18, 2003 date that D.A Brian J. Robertson was seeking felony conviction information to have me sentenced as an habitual offender, along with that fact of substantial and procedural violations, define the claim that Dr. Sylvia Foster, Michael S. Talmo and Diane Stachowski conspired to deny my 6ᵀᴴ, 8ᵀᴴ & 14ᵀᴴ U.S.C.A

1° conspiracy 11.DEC 513, libel, medical malpractice, and violation of my 6ᵀᴴ, 8ᵀᴴ, & 14ᵀᴴ U.S.C.A

(see Exhibits attached).

2.)

Upon arriving at the D.P.C (Delaware - Psychiatric Center), I signed an emergency contact application on 5/24/05, in which gave Florence Scott Cobb, the D.P.C social worker the authority to contact my mother in the case of any emergency. During the admission process, I ask Florence Scott Cobb about how long does she think I would be staying at the D.P.C? Ms Cobb responded by stating, based on the heavily melinated complexion of my skin (Black), that I wouldn't be staying long at all? Florence Scott Cobb pinched her skin (due to her being a heavily melinated person as well) and stated, no one that look like us stays here very long. Ms Cobb looked at me with a stern look and stated, I should know, I conduct the Afrocentric culture Group here. My primary introduction into the D.P.C was that the administrators of the D.P.C operate on a racist mode of conduct.

On 6/08/2004, 6/13/2004, 6/14/2004, 6/21/2004, 6/22/2004 and 6/24/2004 Ms Cobb failed to inform my emergency contact of my condition, each time I was strapped down with (4) point restraints and injected with psychotropic medicines.

(2. cont)

this defines Florence Scott Cobb, violating my patient rights, for violating of 1° Conspiracy 11. Del 513, and my 8TH & 14TH U.S.C.A rights for conspiracy to conceal said information from my emergency contact, the patient advocate, as well as from the judicial authorities. said violations caused me atypical and significant hardship

(see attached exhibits)

3.)

Appon arriving at the D.P.C on 5/21/04, I was to ill to participate in the admissions interview. Dr Sylvia Foster disciplined me for being ill. Dr Sylvia Foster put me on restriction for (3) days without first conducting a hearing. I wasn't allowed to exercise, get fresh air, or enjoy the picnic or obtain snacks from the vending machine like the other patients.

said actions violated my patient rights, my 8TH and 14th U.S.C.A rights were violated. said violations caused me atypical and significant hardship, due to the fact that no other patient was treated the way I was treated.

4.)

On 5/31/2004 Dr. Sylvia Foster prescribed me two psychotropic medicines, Haldol & Ativan for 30x days, but Dr. Foster authored a Forensic Psychiatric Evaluation that was submitted to Judge Toliver, D.A Brian J. Robertson and Defense attorney John S. Edinger, Jr. that stated intially Mr. Lewis was prescribed no psychotropic medication, as there were no evidence of mood disorder and no evidence of psychosis.

This defines the claim of libel, medical malpractice, 1° Conspiracy 11 DEL 513, 6TH, 8TH & 14TH U.S.C.A violations, atypical and significant hardship that has denied me a full and fair trial, that has denied me proper psychological treatment, that has caused me lost wages, that has caused me to be placed in administrative segregation within the prison, that has caused me to be subjected to an extended term of incarceration.

(see attached exhibits)

5.)

On 5/23/2004 the patient who was my assigned roomate began to openly masterbate on his bed in the room. I reported this to the nurse assistant Pat Riley. Pat Riley's attitude was instantly hostile! Pat Riley responded by stating to me, I don't know why your complaining, your file says your gay!! Patients in the area looked at me as if what Pat Riley stated was true, even though it is in fact no true.

This defines my claim of slander, atypical and significant hardship due to my being alienated by my fellow patients, — state crime 11 DEL. 1304 and violation of my 8TH & 14TH U.S.C.A rights, as well as a violation of my patient rights.

(see attached exhibits)

(6.)

On 5/24/2004 the T.P-3 evaluation was completed and filed by Dr. Kathryn Sheneman. Dr. Sheneman documented that my — Global Assessment of functioning (G.A.F) scale was 15 on 5/24/2004, but Dr. Foster documented that my (G.A.F) was 50 on 6/10/04. But Dr. Sylvia, Foster reported in her evaluation that I revealed no evidence of mood disorder, along with the fact that Dr. Foster lied about prescribing me psychotropic medications, as well as the numerous other errors; i.e The date of Nov 17, 2003 that Dr. Foster documented I was incarcerated when I had already stood trial on Oct 21-23, 2003 defines my claim that Dr. Sylvia Fosters forensic psychiatric evaluation is to erroneous to be relied on by the courts in regards to my Superior Court criminal case, ID # ~~0905012069~~ — 0305016966.

(see attached exhibits)

7.)    On 5/25/2004 Dr Sylvia Foster prescribed me "Effexor", a psychotropic medication.

8.)    On 5/26/2004 I began taking the drug "Effexor".

9.)    On or about 5/29/04 I began experiencing side effects to "Effexor" in which caused me injury to my bladder and my urinary track.

( see attached exhibits )

10.)    On 5/29/2004 I began to hallucinate. I informed nurse Helen Hanlon, but I was refused the psychotropic medicines prescribed by Dr. Sylvia Foster. Said denial violated my patient rights, my 8TH & 14TH U.S.C.A. rights, in which also defines medical malpractice.

( see attached exhibits )

11.)
     On 5/30/2004 I began to hallucinate due to the lose of rest that I was experiencing because of the side effect reaction from the drug "Effexor" prescribed to me by Dr. Sylvia Footes. I informed nurse Helen Hanlon of this, but I was refused the P.R.N prescribed to me by Dr. Sylvia Footes. This violated my patient rights, This violated my 8TH & 14TH U.S.C.A rights because nurse Helen Hanlon did not consult Dr. Sylvia Footer in regards to this matter, and this also defines medical malpractice in regards to Helen Hanlon

↑ (see attached exhibits) ↓

12.)   On 6/2/2004 I was prescribed "Peridium" and "Bactrim" for 5 X days. But because the symptoms that gave reason to why I was prescribed these medications were being neglected, the mild hallucinations I was experiencing were magnified by my repeated request for help being repeatedly denied. It was at this point that I realized that Dr. Sylvia Footer, Curtis Cornish, Helen Hanlon, Margaret Wilson, Tanya Wilson, and Karen Chamberlin were oppressing me collectively In which violated my patient rights, as well as the 8TH and 14TH U.S.CA rights im insured; This also defines medical malpractice in regard to all involved

(3.)

On 6/2/2004 I began receiving a Chef Salad, and on or about 6/3/2004 I missed lunch because my Chef Salad had not arrived at the time the other patients ate their meals. When my Chef Salad arrived, nurse Donna Lawrence took me to the dinning area so I could eat. In the dinning area Donna Lawrence and I talked about the Chef Salad due to it being quite a topic of discussion every since I started receiving it. Donna Lawrence told me that my Chef Salad wouldn't last long, in response I asked why not? Donna Lawrence explained that other patients were going to start demanding Chef Salads also!! I responded by stating, There are several patients who receive diets fit there individual pyhsical needs; and if the dietician deems it appropriate then so be it. Donna Lawrence responded by stating, you don't understand, most of the patients are just like kids, if they see you with something they want it too. Within 24 hours, a patient named Mr. Floydd was in fact refusing to eat his meals until he himself received a Chef Salad as well. This was not taken into consideration a few days later when Mr. Floydd suddenly attacked me for no apparent reason other than he himself wanted a Chef Salad.

14.)

On or about 6/3/2004 I was assaulted by a patient named "Tim", who struck me upon the back of my head twice with his closed fist for absolutely no apparent reason at all. I was upset by this incident. I didn't receive medical treatment, nor did I receive any psychological counseling. This violated my patient rights, this violated my 8TH & 14TH U.S.C.A rights

( see attached exhibits )

15.) On 6/3/2004 L. Conyer refused to let me shave my head, even though I explained it to him that I was fulfilling my religious obligation. L. Conyer refused to allow me to shave my head, while he allowed other patients to shave their heads. Also, there was no barber available for me, due to my being put on disciplinary restriction. Note; I was put on disciplinary restriction with first receiving a proper disciplinary hearing. This violated my 1ST, 8TH, & 14TH U.S.C.A, as well as a violation of my patient rights.

( see attached exhibits )

16.)

After arriving at The D.P.C Sejal J. continuously tried to get me to partiscigate in any one of her group activite(s), but I repeatedly denied her invitations, mostly because she would always abruptly interrupt what ever I was doing, such as playing chess, listening to the radio, watching T.V, playing ping pong, or just enjoying some quite time.

A patient named James and I discussed the notion that Sejal. J was relentlessly pursuing me to partiscigate. I discussed this matter with several patients, whom informed me that Sejal. J had lowered every patients level for little or no reason at all! So I avoided Sejal.J, as well as because her attitude made me uncomfortable.

The group schedule was posted, in which indicated that I was assigned to one of Sejal J's groups. In regards to her group Sejal. J. would ask if there was a foreign place I would like to visit. I explained that I would like to visit my native homeland "Africa". This was suppose to be significant to the foreign movies that Sejal.J said she would select for group, but instead of showing the travel movies, Sejal J selected a very provocative Yoga video? The Yoga video caused quite an uproar. Even though I never stated a phrase in response to the sexually explicit positions of the yoga instructor, I did say "Wow"!

(Cont. 16.)

On or about 6/3/2004 Sejal J documented in The doctor's progress notes and thereafter reported to "The Team" that I was arrogant, disruptive, instigating and that I made sexually obscene comments, but did not at all state exactly what I said that was sexually obscene? These slanderous terms were utilized by Dr. Sylvia Footer in The Forensic Psychiatric evaluation, without my first receiving a competency hearing that would have given me the opportunity to defend myself against said slanderous remarks.

This violates my patient rights, This defines slander, libel, 1° conspiracy 11 Del 513, as well as violations of my 6TH, 8TH & 14TH U.S.C.A rights.

17.)    On 6/3/2004 Dr. Sylvia Footer discontinued The P.R.N of Haldol, Ativan and Benedryl.

( see attached exhibits )

18.) On or about 6/3/04 Dr. Sylvia Foster prescribed that I visit a urologist, due to my physical reaction to the drug "Effexor" in order to check me for possible urethritis. This varifies that I endeed reported being injured to Dr. Sylvia Foster. (see attached exhibits)

19.) On 6/4/2004 Dr. Kathryn Sheneman documented in the progress notes that she spoke with me in regards to my being assaulted by a patient named "Tim". Dr. Kathryn Sheneman thereafter failed to refer me to a physician, or to counsel me in regards dealing with the circumstances of the situation. This violated my patient rights, as well as my 8TH & 14TH U.S.C.A rights. This also defines medical malpractice. (see attached exhibit)

20.)

On 6/4/2004 Dr Sylvia Foster documented in the progress notes that there was no evidence of my being assaulted, even though Dr. Kathryn Sheneman had already documented on the same progress notes that she spoke with me in regards to my being assulted by the patient named "Tim!" This varifies that Dr. Foster and Dr Sheneman conspired to conceal the fact that I was assaulted, due to the fact that neither refered me for medical or psychological treatment, In which violated my patient rights, as well as my 8TH & 14TH U.S.C.A rights. This also defines 1° conspuacy 11 DEL 513, medical malpractice

(see attached exhibits)

21.)    On 6/6/2004 patient James Floydd complained so vigorously that Dr Sylvia Foster decided to discontinue my Chef Salad. James Floydd, an ex professional boxer was so upset that he was not prescribed the same type of Chef Salad that he lunged at me swinging punches as I walked past him on my way to room # (71) my assigned room.

(see attached exhibits)

(21
cont).   In regards to this matter Helen Hanlon instructed
staff members grab me and take me to the isolation room,
against my will, where I was restrained with (4) point
restraints and assaulted with a deadly weapon (a hyperdermi
needle) full of "Geodon, Ativan and Benadryl"
per Dr. Sylvia Foster. These medications have caused
me injury in the form of amnesia, insomnia, headaches,
delusions, hallucinations both audio and visual, ear ringing
dizziness, vertigo, tremors and speech problems.
Said medications are responsible for murdering and or
killing my brain cells. This was done to me
without first conducting a competency hearing or a
disciplinary hearing.

This paragraph defines assault by abuse 11 DEL 615,
murder by abuse 11 DEL 633, kidnapping 11 DEL 783 —
783(a) — 786(c), possession of a deadly weapon during
the commission of a felony 11 DEL 1447, 1° assault —
11 DEL 613, 2° assault 11 DEL 612, assault in detention
facility 11 DEL 1254(a), assault in detention facility by
fluid 11 DEL 1254(c), 1° conspiracy 11 DEL 513,
criminally negligent homicide 11 DEL 631, medical-
malpractice, a violation of my patient rights,
a violation of my 4TH, 8TH, & 14TH U.S.C.A rights
                              (see attached exhibits)

22.)

On 6/7/2004 Dr. Sylvia Footes documents the incident with me and James Floydd was due to the Chef Salad that was ordered for me, and that I was the aggressor for which was the reason I was 4 point restrained and injected with psychotropic medications, that Dr. Sylvia Footes reported to the Superior Court was never given to me due to no evidence of a mood disorder or no evidence of psychosis. Secondly, This was done without first conducting any sort of hearing that would have allowed me to protect my rights. Dr. Sylvia Footes also states that I am a "Rastafarian", in which is the reason given for prescribing me "Seroquel" 50mg's for anger management and impulse control. This along with evidence documented By Dr. Sylvia-Footes in the progress notes define my 1st amendment right claim violation, Hate Crime 11 DEL.1304, 1° Conspiracy 11 DEL 513, slander, libel, medical malpractice, criminal negligent homicide 11 DEL 631, assault by abuse 11 DEL 615, murder by abuse 11 DEL 633, kidnapping 11 DEL 783, 783(a), 786(a), possession of a deadly weapon during the commission of a felony 11 DEL 1447, assault 11 DEL 613, 612 assault in detention facility by fluid 11 DEL 1254(c), aggravated intimidation 11 DEL 3533, as well as 4TH, 6TH, 8TH, & 14TH U.S.C.A violations.
( see attached exhibits )

23.)

On 6/9/2004 I was refered to be checked
out for kidney stones, in which varifies that
Dr. Sylvia Foster believed I was injured by
The drug "Effexor" that was previously prescribed
to me.

(see attached exhibits)

24.)    On 6/9/04 I submitted grievances for
being denied my 1st Amendment U.S.C right to
practice my religious rite of shaving my head,
as well as for being denied the Chef Salad I
had been receiving for medical and psychological
reason(s). received by Donna Lawrence for Dr. Sylvia Foster.
In regards to my practicing my religious
rite of shaving my head, Dr. Sylvia Foster, and
nurse Curtis Cornish created a rule in order to
keep me from shaving. I spoke with several
staff members about this "new" rule, for which
The staff members were not familiar with prior
to my arrival. Dr. Sylvia Foster reported in the
Forensic evaluation that I revealed no evidence
of a mood disorder and no evidence of psychosis
so There is no justifiable reason I was not allowed
practice the rite of shaving my head.
I did not receive a hearing in regard to this
matter.

24.
( Cont )

The dietician, Dr Sylvia Foster, Helen Hanlon, Curtis Cornish, Donna Lawrence, all were fully aware of the fact that I don't eat pork, veal, products containing yeast or milk due to these products being prohibited by my religion as well as because of food allergies i.e. — (lactose intolerant). I explained that the diet I was receiving helped my physical dilemma's of irritable bowels, and high blood pressure, due to it stoping my blood pressure from spiking, for which is one reason I believed was responsible for (in part) the psychological dilemma's I experience, but these issues I presented were totally ignored. I didn't received any sort of hearing in regards to this matter. These issues define violations of my first, sixth, eighth and forteenth U.S.c A rights, medical malpractice, 1° Conspiracy 11 Del 513 Hate crime 11 Del 1304

( see attached exhibits )

25.) The very next day after I submitted Two grievances dated 6/9/2004, Dr Sylvia Foster authored The Forensic report to The Superior Court of Delaware in and for New Castle County. ⟶

(25.
Cont)

The report contained numerious deliberate errors
that were obtained in violation of my U.S.C.A. rights,
# 1, 4, 6, 8 and 14 under the color of state law,
statutes 11 DEC 615, 633, 783, 783(a), 786(a), -
1304, 1447, 613, 612, 1254(a), 1254(c), 3533, 513,
631, slander, libel, medical malpractice.
    Dr. Sylvia Foster reported that I was being
evaluated for competency to stand trial after being
incarcerated on Nov 17, 2003, when I was actually
incarcerated on May 26, 2003 for which I stood trial
from Oct 21-23, 2003. The Nov 17, 2003 date is
only judically relevant to the fact that District-
attorney Brian J. Robertson was seeking felony conviction
information Miami, Fl in order to have me sentenced
as an habitual offender.
    Dr. Sylvia Foster reported that I was informed
that I was being evaluated via court order and that
the results would not remain confidential.
Dr. Sylvia Foster stated this was done upon my being
admitted to the Forensic unit, but to the contrary
Dr. Sylvia Foster placed me on sanction due to my
being to ill for (3) days, because I was unable
to participate in the admissions interview.
    Dr. Sylvia Foster reported that I had
assaulted a correctional officer, in which is not
at all true, I was attacked by a patient —

(Cont 25 p. 3)

on the mental health pod, and thereafter transfered to the H.R.Y.C.I infirmary.

Dr. Sylvia Foster reported that I requested pornograph, Xanax and valium on which was according to the F.C.M records, this slanderous information should not have been utilized by Dr. Sylvia Foster because said information was not derived by a board certified Forensic psychiatric psychiatrist ordered by the court to conduct my Forensic psychiatric evaluation for competency.

Dr. Sylvia Foster reported that initially I was prescribed no psychotropic medication as there was no evidence of mood disorder or psychosis even though Dr. Foster prescribed "Haldol", "ativan", "Effexor", "Seroquel", "Geodon" on 5/21/2004 for 30 x days Haldol and Ativan, on 5/25/2004 "Effexor" in which I was given these drugs in assortment through out the course of my admission.

Dr. Foster diagnosed me as malingering in June 2004 when I had already stood trial in Oct 2003.

Dr. Foster put my (G.A.F) at 50 on a 1-100 scale, when I was initally admitted with a (G.A.F) of 15, in which varifies the treatment I experienced made me worse than I was said to be when I arrived at D.P.C —



(Cont 25. P.4)

Regardless Dr. Sylvia Foster reported that I was psychiatrically stable enough to be returned to The D.O.C

Dr. Sylvia Foster's report should not be relied on by the Superior Court in and for New Castle County, due to the fact that it was obtained in violation of my constitutional rights of The U.S under the color of state law.

( see attached exhibits )

said violations were committed by the defendants cited in the previous paragraphs; — number(s) 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 16, 19, 20, 21 — 22, 24, .

26.) Helen Hanlon whom I viewed as being unusally insensitive and bias, would label me for absolutely no rational reason with derogatory slanderous and detrimental terms each and every time There were a situation in which my involvement could somehow be attached to said incident. Helen Hanlon began utilizing the term "manipulative as if it were synonous to my name. Helen Hanlon had the staff and patients looking at me when she openly accused me of stealing petty cash that the patient had misplaced.

(26;
Cont) P.1

Because I had been accused, I took the liberty to explain that the patient was absent-minded, and that he misplaced his petty cash before, when we all were in the day room. But Helen Hanlon was sure a crime had been committed, and for no particular reason at all I was selected to her primary suspect? Helen Hanlon ordered a staff member to search me and my room, room # 71 without any probable cause! While this was occuring the patient found his "money" inside of his shoe, where he recalled he put it before he went to go take a shower. In response I stated to every one that I told Helen Hanlon, even though every one was able to remember that the patient had previously misplaced his "money". I then openly asked Helen Hanlon "why did she single me out, what are you racist or what? Helen Hanlon just roled her eyes in response, she never gave me a verbal answer of yes or no! If you were there, you would have concluded that the answer was yes, it was one of those uncomfortable moments you could feel better than you could touch? Simply speaking it was that feeling you get when you know something is wrong.

(26
Cont P. 2)

I went on to explain to Helen Hanlon
that the main element to racism is hate, and
hate is a negative energy that you can see, but
you can most definetly feel it! Just like oxygen
and gravity, you cant see it, but if you analize
the circumstances of the situation you know its there
        The term "manipulation" signifies the manifetation
that the minds of Helen Hanlon and Dr. Sylvia Foster
meet, due mostly to the fact that both Helen Hanlon
and Dr. Sylvia Foster documented the term in the
progress notes begining on 6/4/2004, for which gives
reason why the term was utilized in Dr. Sylvia Foster's
forensic psychiatric evaluation submitted to the
Superior Court of Delaware in and for New Castle County.
During the course of my stay at the D.P.C.
Dr. Sylvia Foster and Helen Hanlon utilized the
term manipulation against me as propaganda to
initiate the numerous violation that they instructed
to be committed against me.

        This paragraph defines violations of Hate crime -
11 DEL 1304, 1° conspiracy 11 DEL 513, libel, slander,
violation of my patient rights as well as violations
of my 4TH, 6TH, 8TH & 14TH U.S. C A rights.

                (see attached exhibits)

27.)

On 6/13/2004 upon returning to the milieu from the dining room, I had to urgently utilize the rest room, so I simply entered the quiet room's rest room due to the other rest rooms on the milieu being locked. While I was in the process of utilizing the rest room in the quiet room, the patient named "Tim" had struck a patient (as I was told), for which the staff deemed appropriate to put "Tim" inside the quiet room, in which is actually another room that can be accessed and locked without any interference from me in the rest room even though the rest room and quiet room are in the same dwelling, it like a studio apartment. Note, the patient "Tim" was not (4) point restrained. Subsequently, the nurse assistant named Rose Ares reconized that I was utilizing the rest room. Rose Ares began to scream and shout, why the fuck are you in here Mr Lewis, get the fuck out of here. This was said along with other profanities, while I was sitting on the toilet!! Donna Lawrence gave me a P.R.N of Haldol & Ativan. This paragraph defines a violation of my patient rights, aggravated intimidation 11 DEC 3533, libel, as well as violations of my 8TH & 14TH U.S. CA rights

(see attached exhibits)

25.)

On 6/14/2004 at or about 12:30 a.m., staff member C. Oates asked me to come out of the laundry room, due to my being in the laundry room doing my laundry. Mr C. Oates spoke in a hostile manner when he stated that I need to come out the laundry room now!! In response I stated that there was only a few minutes left on the dryer, and if it was okay if I could wait until it stopped. That was all it took for Mr C. Oates to walk up to me face to face in order to intimidate me, demanding that we go in the rest room directly next door to the laundry room, when I responded by stating what am I suppose to be scared? I turned around because Mr C. Oates keep glancing over my shoulder ( Mr C. Oates is about 6-4, 290 lbs )) as if he was looking at something? That's when I noticed Helen Hanlon, Helen Hanlon then opened the door and came onto the milieu when she realized I seen her. Helen Hanlon without asking what the problem was, instinctively order me to go to my room. Once I returned to my room, I thought about what had just occured, and realized that Helen Hanlon and Mr C. Oates conspired to initiate a scene that would grant them the authority to do me; mental, physical and legal harm, in which is exactly what happened.

(28. Cont) P.2

I tucked myself into bed, and about 15- to 20 minutes later I was awaken by 2 caucasian men and one blackman. I was informed by the male nurse (who's pigniture is documented on the progress notes dated 6/14/2004 at 1:30 a.m), that it was reported that I was extremely agitated! I responded by stating, how could that be when you just woke me up. The male nurse explained that I would have to take a phot of a psychotropic-medicine(s). I explained to the nurse that I didn't need any psychotropic medicines for agitation. The male nurse wasn't listening to me, so I began to speak to the man who identified himself as Mr. Johnson. I continued to speak to Mr. Johnson for at least twenty minutes, and within the course of that time I asked him if I seemed to be extremely agitated, in response he stated no! But the male nurse explained that he had to give me the phot of psychotropic's because the doctor had already ordered it. I responded by stating, call the doctor and explain that I dont need the psychotropic drugs. The male nurse left, and a few minutes later (6) more males arrived to assist with putting me into the isolation room. I was then asked by the male nurse was I going to the isolation room, or do we have to physically take you there!!!

$\left(\begin{array}{l} 28 \\ \text{Cont P.3} \end{array}\right)$

I responded by stating, that all of this is against my will, and if you want me in the Isolation room you all will have to take me there against my will. At that point the male nurse gave the orders to grab me, and I was grabbed by the hand by the male nurse, the 2 caucasian men, the black man who had arrived initially, as well as by a few of the men who had just recently arrived. All of them laid hands on me. Upon arriving at the isolation room, my slacks were snatched down below my knees in order for the male nurse to inject me with a cocktail of psychotropic medicines, per Dr. Oreishi and Dr. Sylvia Foster. This was done without giving me a competency hearing or a disciplinary hearing

This paragraph defines a violation of my patient rights, medical malpractice, slander, libel, assault by — abuse 11 DEL 615, kidnapping 11 DEL 783, 783(a), 786(a), Hate crime 11 DEL 1304, possession of a deadly weapon during the commission of a felony 11 DEL 1447, 1° assault — 11 DEL 613, 612, 1° conspiracy 11 DEL 513, criminally — negligent homicide 11 DEL 631, murder by abuse — 11 DEL 633. as well as violations of my 4TH, 6TH, 8TH & 14 4H U.S.C.A rights

( see attached exhibits)

29.)

On 6/14/2004 during the 8:00 p.m snack in the dinning room, I was eating a bag of m&m chocolate candy that I obtained by giving a fellow patient named James $1.00 (not to be confused with James Floydd) to purchase for me due to my being placed on disciplinary restriction from personally purchasing items from the vending machine. As I sat eating the bag of m&m's Helen Hanlon demanded that I throw the m&m's in the garbage. I responded by stating no I just payed for these M&M's. At that time Helen Hanlon utilized her walky talky radio to call for emergency back up assistance. Mr R. Gray , Mr Dave Moffitt , Mr Lance Sapiers and the assistant who I think name is Mr JOHN DOE Johnson all pushed into the dinning room to see what the emergency was, but apon there arrival the all came to a halt, bewildered as to exactly what the emergency was ??? At that time every one was seated except Helen Hanlon, who stated that Mr Lewis is on vending machine restriction he's not suppose to have these M&M's, in a tone that would have made someone think that m&m's was actually an illegal subotance !!! The Four assistance surrounded the table, then M.R Gray reached for my bag of M&M's. I responded by stating I just purchased these M&M's and I want to eat them.

(Cont. P.2)

At that point I put the 3 or 4 m&m's that I had in my hand in my mouth and started to chew them. Thats when Helen Hanlon yelled get him, take the m&m's from him. Mr. R. Gray who was standing to my left move directly behind me and abruptly grabbed me around my throat with his arm. Dave Moffitt grabbed my left arm, Mr. JOHN DOE grabbed my right arm and Lance Saziers grabbed my legs in order to tackle me to the floor. Mr. R. Gray pulled back trying to tackle me to the floor, in which caused me to choke on the m&m candy I had began to chew. I repeated in a muffled vocall tone that I can't breath, I can't breath, stop, stop, stop!! At that point I just remember being thrown to the floor, in which caused me to open my left hand in order to brace the fall, this allowed Dave Moffitt to obtain the m&m's I had in my hand. I was then forcable taken to the isolation room against my will, were I was strapped down with (4) point restraints, and my pants were pulled down past my buttocks. At this time, Helen Hanlon entered the room with the (deadly weapon) a hyperdesmic needle full of psychotropic medications.

( 29
  Cont. P.3 )

I told Helen Hanlon "no", no, I dont need a "shot"! But Helen Hanlon injected me with the psychotropic medicines that are directly responsible of murdering and or killing my brain cells. This was done to induce amnesia in order so that I wouldn't remember what violations had been committed against me in the Superior Court as well as at the D.P.C. These medications have caused injury in the form of amnesia, insomnia, headaches, delusions, hallucinations, ear ringing, dizziness, vertigo, tremors and speech problems. This was all done without giving me a competency hearing or a disciplinary hearing.

This paragraph defines a violation of my patient rights, medical malpractice, libel, slander, assault - by abuse 11 DEL 615, murder by abuse 11 DEL 633, - kidnapping 11 DEL 783, 783(a), 786(a), Robbery 11 DEL - 832 & 831, Hate crime 11 DEL 1304, possession of a deadly weapon during the commission of a felony 11 DEL 1447, 1° assault 11 DEL 613 & 612, assault in detention facility by fluid 11 DEL 1254(c), 1° conspiracy 11 DEL 513, aggravated intimidation - 11 DEL 3533, criminally negligent homicide 11 DEL 631, as well as violations of my 4TH, 5TH, 6TH, 8TH - & 14TH U.S.C.A. rights.

( see attached exhibits )

30.)

It's factually documented in the D.P.C
progress notes that Dr. Sylvia Foster, Karen Chamberlin,
Helen Hanlon, Margaret Wilson, Curtis Cornish, and
Tanya Wilson all conspired to oppress me by
denying me P.R.N medications when ever I informed
them that I was experiencing physical and or
psychological problems; and thereafter deal with the
problems that I wanted them to help me with before
they became serious, as if I had created a problem,
not as if I was seeking help to remedy the
problem or problems. The named defendants are a
team whom knew that my (G.A.F) scale had been
increasing on a steady basis since my admission
into the D.P.C, but refused to help me never the less?
By systematicly denying me P.R.N medications and
or counseling, the defendants knew that my condition
would run amuk due to a team meeting that was
conducted on or about 6/15/2004.
    This paragraph defines a violation of my patient
rights, medical malpractice; 1° conspuacy 11 DEL 513,
a violation of my 6TH, 8TH & 14TH U.S.C.A rights

( see attached exhibits )

31.)

After the incident on 6/14/2004 involving Lance Sagiers and the (3) other nurse assistants, Lance Sagiers continously stalked and intimdated me with the threat of injecting me with psycho-tropic medicines. I resumed calisthenic's when I was informed that my blood pressure readings were okay. I began doing push up's regularly in my room, room number 71, but on numerous occasions Lance Sagiers would approach me, stating that I could do push up's? I explained to Lance Sagiers that the doctor as well as the nurse's had given me permission to resume calisthenic's, and I explained to him that I hadn't been provided with any rules and regulation manuel that stated I couldn't do calisthenic's. Lance Sagiers became beligerant when myself and the other patients who were sitting on the bench outside of my room requested that he show us the rule book, were it states that patients aren't allowed to do calisthenic's. A patient named Ronald made a comment, & quote, Leave Jimmie alone Lance, you just want some more of his m&m's, unquote. Everyone found Ronald's comment to be commical, but I didn't!! I explained to Lance Sagiers that I would appreciate it if he stop harrassing me, in response Lance Sagiers replied that he was going to talk to Helen Hanlon to get you a P.R.N.?

31
(cont.)

This paragraph defines a violation of my patient rights, aggravated intimidation 11 DEL 3533, Hate Crime 11 DEL 1304 as well as violation of my 8TH & 14TH U.S.C.A rights.

(see attached exhibits)

32.)

On 6/23/2004 while I was in the milieu with all the other patients waiting to go eat dinner in the dinning room, I was looking through the door of a patients room to the outside, simply watching the wind blow the trees when Lance Sapiers called me to get my attention. When I looked towards Mr Sapiers direction, he ordered me to stop look through the window? I stated that I wasn't bothering any, and secondly the room was not occupied at the time. Lance Sapiers had gotten into the habit of staring at me, just to see if I would look away first. I asked Lance Sapiers, what do you want me to do, focus on you. Lance Sapiers informed me that he was going to talk to Helen Hanlon to get me a P.R.N

This paragraph defines a violation of my patient rights, aggravated intimidation 11 DEL 3533, Hate Crime 11 DEL 1304 as well as violations of my 8TH & 14TH U.S.C.A rights

(see attached exhibits)

33.)

On 6/16/2004 Diane Stachowski wrote to Judge Charles H. Toliver III requesting an official court order to transfer me back to The Department of Corrections, but Diane Stachowski didn't receive an official court order to return me to The Department of Corrections.

(See attached exhibits)

34.    On 6/21/2004 I was taken to the isolation room, against my will, were I was (4) point restrained; my pants were pulled down below my buttocks, and Helen Hanlon assulted me with a hypodermic needle full of psychotropic medications, that are directly responsible for murdering and or killing my brain cells. This was done to induce amnesia, in order to cause me to forget the numerous violations that occured to me at the Superior Court and the Delaware Psychiatric Center. This was done without first giving me a competency hearing or a disciplinary hearing.

This paragraph defines a violation of my patient rights; medical malpractice, Hate Crime 11 DEL 1304, assault by abuse 11 DEL 615, murder by abuse 11 DEL 633, kidnapping 11 DEL 783 - 783(a) - 786(a),

(34
cont)

possession of a deadly weapon during the commission of a felony 11 DEL 1447, 1° assault — 11 DEL 613, 2° assault 11 DEL 612, assault in detention — facility 11 DEL 1254(a), assault in detention facility by fluid 11 DEL 1254(c), 1° conspiracy 11 DEL 513, Criminally negligent homicide 11 DEL 631, as well as violations of my 4TH, 8TH, 6TH, & 14TH U.S.C.A rights.

( see attached exhibits )

35.) On 6/22/2004 I was taken to the isolation room against my will, were I was (4) point restrained, my pants were pulled down below my buttocks, and Helen Hanlon assulted me with a hyperdermic needle full of psychotropic medications, that are directly responsible for murdering and or killing my brain cells. This was done to induce amnesia, in order to cause me to forget the numerous violations that occured to me at the Superior Court and The Delaware Psychiatric Center. This was done without first giving me a competency hearing or a disciplinary hearing.

This paragraph defines a violation of my patient rights, medical malpractice, Hate crime 11 DEL 1304, assult by abuse 11 DEL 615, murder by abuse —

(35. Cont)

      11 DEL 633, Kidnapping 11 DEL 783 - 783(a) - 786(a), possession of a deadly weapon during the commission of a felony 11 DEL 1447, 1° assault - 11 DEL 613, 2° assault 11 DEL 612, assault in detention- facility 11 DEL 1254(a), assault in detention facility by fluid 11 DEL 1254(c), 1° Conspiracy 11 DEL 513, criminally negligent homicide 11 DEL 631, as well as violations of my 4TH, 6TH, 8TH & 14TH U.S.C.A rights

      ( see attached exhibits )

36.)   On 6/24/2004 I was taken to the isolation room against my will, were I was (4) point restrained, my pants were pulled down below my buttocks, and Margaret Wilson assaulted me with a hypodermic needle full of psychotropic medications, that are directly responsible for murdering and or killing my brain cell. Dr Sylvia Foster and Diane Stachowski were present inside of the isolation room when this occured. This was done to induce amnesia, in order to cause me to forget the numerous violations that occured to me at the Superior Court, and the Delaware Psychiatric Center, this was done without first giving me a competency - hearing or a disciplinary hearing. —

36.) This paragraph defines violations of my patient rights, medical malpractice, Hate crime 11 DEL 1304, assult by abuse 11 DEL 615, murder by abuse 11 DEL 633, Kidnapping 11 DEL 783, 783(a) - 786(a), possession of a deadly weapon during the commission of a felony - 11 DEL 1447, 1° assult 11 DEL 613, 2° Assult 11 DEL 612, assult in detention facility 11 DEL 1254(a), assult in detention facility by fluid 11DEL 1254(c), 1° conspuacy 11 DEL 513, criminally negligent homicide, 11 DEL 631, as well as violations of my 4TH, 5TH, 6TH, 8TH & 14TH U.S.C.A rights.

( See attached exhibits )

37.) After being released from isolation, I repeatedly stated that I was going to sue Dr Sylvia Footes as well as numerous staff members. Shortly thereafter on the same day 6/24/2004. Gloria Banks - approached me in regards to my statements. Gloria Banks asked me for my S.B.I #, and informed me that she would contact me in regards to the matter once I was transfered back to the Department of - Corrections.

38.) On 6/25/2004 I was transfered back to the Department of Corrections, without first receiving a competency hearing. This has in fact caused me to be subjected to standing trial for criminal offenses that I was legally incompetent to understand the substantial capacity of the alleged wrongfullness of said offenses. This has in fact also caused me to being incarcerated in the Department of Corrections, when I should have been either released, or been sentenced to receive psychiatric treatment. Said denial has caused me to be subjected to the maximum term of incarceration of (6) years, when the Superior Court was initially offering me a plea bargin of (2) two years. Said denial has stopped me from receiving adequate psychiatric treatment as of to date. DR. Sylvia Footes, Diane Stachowski & Michael S. Talmo are responsible for said denial.

   This paragraph defines a violation of my patient rights, medical malpractice, Hate crime 11 DEL 1304, as well as a violation of my 5TH, 6TH, 8TH & 14TH U.S.C.A rights

        (see attached exhibits)

39.) After being returned to the D.O.C on 6/25/04, I received a letter from Gloria Banks, primarily in regards to the issues pertaining to the Delaware Psychiatric Center. Gloria Banks began visiting me at the H.R.Y.C.I and corresponding on a regular basis. During our visits, the contents of our conversation revolved around my Superior Court Case and the (D.P.C.) After two months Gloria Banks had talked me out of suing the staff members of the (D.P.C.). Gloria Banks told me to just go to (D.C.C.) The Delaware Correctional Center and serve my sentence, in which insinuated to me not to pursue appealing the numerous violations that occured through out the course of my Superior Court Criminal Case. Reluctantly I agreed not to sue the staff members of the Delaware Psychiatric Center, but when Gloria Banks abruptly stopped visiting and corresponding, I decided to write Gloria Bank and explain that I realize that our connection was a pharade, because she was a spy in conspiracy with Dr. Sylvia Footer, seeking to conseal the — numerous violations cited herein.

This paragraph defines a violation of my patient right, 1° Conspiracy 11 DEL 513, as well as violations of my 4TH, 8TH & 14TH U.S.C.A rights.

( see attached exhibits )

40.) On 6/29/2004 Diane Stachow wrote to Judge Charles H. Toliver IV requesting an official court order to transfer me back to the Department of Correction, but Diane Stachowski didn't receive an official court order to return me to the Department of Correction.

(see attached exhibits)

41.) On Dec 14, 2004 I received a response to the writ of habeas corpus I filed on 11/29/04, due to the Superior Court criminal docket sheet not reflecting an official docketed court order response to Diane Stachowski's letters to Judge Charles H. Toliver IV requesting an official court order granting authority to return me back to the D.O.C.

Judge Charles H. Toliver's response to my petition for habeas corpus is erroneous, because it referes me to docket number 41, of my Superior Court criminal docket sheet. Docket entry number 41 is not an official court order granting the authority to have me returned back to the D.O.C —

(41.
(cont P.2)

that was filed with the office of the prothonotary in and for New Castle County, -then delivered to Diane Stachowski or Michael Talmo

This paragraph defines a violation of my patient rights, 1° conspiracy 11 DEL 513, as well as violations of my 4TH, 5TH, 6TH, 8TH & 14TH U.S.C.A rights.

(see attached exhibits )

42.) I am a professional long distance driver who ulilizes his class (a) C.D.L licence to transport merchendise at a average wage of $ 1.20 to $ 1.40 a mile. The average milage is a 15,000 miles a month, in which totals to $ 21,000 a month, $ 252,000 a year.

these lost wages should begin to be calculated starting from June 2004. This date signifies when the defendants Diane Stachowski and Michael Talmo were in violation of my U.S.C.A right to a speedy trial.

(see attached exhibits )

43) Judge Peggy L. Alleman denied my motion for a new trial, primarily because of the report authored and filed by Dr. Sylvia Foster.

Dr Sylvia Fosters report was to erroneous to be relied on by the court due to the numerous violations stated herein in paragraph # 25, 38 - & 41. Said report is directly responsible, in which is just one of the goals of Dr. Sylvia Foster and D.A Brian J. Robertson.

This paragraph defines, medical malpractice, ~~entertainsement 513~~, libel, slander, 1° conspiracy 11 DEL 513, Hate crime 11 DEC 1304 as well as violation of my 4TH, 5TH, 6TH, 8TH & 14 U.S.C.A rights

( see attached exhibits )

44.)  a few weeks after being illegally sent
back to the D.O.C, District Attorney for the
State of Delaware in and for New Castle County,
Brian J. Robertson filed a motion to declare
me an habitual offender. D.A Brian J Robertson
was able to file a motion to declare me
an habitual offender because of the grossly
erroneous report authored and filed by —
Dr Sylvia Foster. Dr Sylvia Foster deliberately
ignored the new paper ad of me in the paper
seeking the public's assistance to help find me,
Dr Foster deliberately ignored the Wilm, DE police
assessment and property receipt that varified
that my state of mind was such that I lacked
the substantial capacity to reconize the alleged
and or wrongfullness of my actions; Dr Foster
deliberately ignored the mental health treatment
plan that was presented to her, Dr Foster even
ignored that the police documented that I was
transfered to the ~~acute~~ psych observation room
at Gander hill do to the psychotic state of
mind that the arresting officers reported that
I was in.

( 44
(Cont P. 2 )

This is one of the most significant reasons why I was repeatedly unjustifiable violated and injected with powerful and dangerous brain cell killing mind altering psychotropic drugs, in order to zombify me and render me totally psychologicly and physically defensless.

This paragraph defines medical malpractice, State crime 11 DEL 1304, 1° Conspiracy 11 DEL 513, as well as violations of my 4TH, 5TH, 6TH, 8TH, & 14TH U.S.C.A rights.

( see attached exhibits )