IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1350 GMS |
| | ) | |
| DR. SYLVIA FOSTER, STAFF | ) | |
| MEMBERS, and MR. GRAY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

### I.    INTRODUCTION

Jimmie Lewis ("Lewis") is presently incarcerated at the Delaware Correctional Center (the "DCC"), which is located in Smyrna, Delaware. On October 13, 2004, Lewis filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. This action arises out of incidents that allegedly occurred while Lewis was confined to the Delaware Psychiatric Center (the "DPC") in order to undergo a mental health evaluation, pursuant to a court order signed by Judge Charles Toliver. In his complaint and amended complaint (D.I. 10) Lewis alleges that Sylvia Foster, M.D. ("Dr. Foster"), Robert Gray ("Gray"), and other DPC staff members ("DPC Staff Members") have violated his constitutional rights.

Presently before the court are the following motions: (1) Dr. Foster's motion to dismiss for lack of jurisdiction; (2) Dr. Foster's motion to dismiss for failure to state a claim; (3) Gray's motion to dismiss for failure to state a claim; and (4) Lewis' motion to amend and supplement thereto. For the reasons stated below, the court will deny Dr. Foster's motion to dismiss for lack of jurisdiction; the court will grant in part and deny in part Dr. Foster's motion to dismiss for failure to state a claim;

(3) the court will deny Gray's motion to dismiss for failure to state a claim; and the court will grant

in part and deny in part Lewis' motion to amend and supplement thereto.

## II.    BACKGROUND

Lewis' first complaint alleges that Dr. Foster diagnosed Lewis as "malingering"[1] and stated

that he received no "psychotropic" medication during his stay at the DPC, because he "revealed no

evidence of mood disorder."  (D.I. 2 ¶ 4.)    Lewis further alleges that, contrary to Dr. Foster's

diagnosis, he was "strapped down with restraints and injected with psychotropic drugs[,] such as

Haldol, Ativan and Geodon."  (*Id.*)  He requests the court to investigate his claim and award him

monetary relief for pain and suffering because he was "violated."  (*Id.* ¶ 5.)

On March 8, 2005, Lewis filed an amended complaint naming Dr. Foster, as well as several

DPC Staff Members, including Gray, as defendants.  (*See* D.I. 10.)  According to Lewis, "Judge

Charles H. Toliver IV ordered that [he] be transfered [sic] to the Delaware Psychiatric Center for

a psychiatric evaluation to determine [his] competency [to assist in the defense of criminal charges

against him] and to receive treatment."  (D.I. 10, at 1.)  Lewis also alleges that after he arrived at the

DPC he "was ill and couldn't complete the admissions interview," which resulted in a "disciplinary

restriction."  (*Id.*)

According to the amended complaint, on June 6, 2004, Lewis was "strapped down with four

point restraint [sic] and injected with psychotropic medicines for disciplinary reasons, not for

psychiatric reasons per Dr. Foster."  (*Id.*)  The amended complaint then documents several occasions

during which Lewis was "strapped down with four point restraints and injected with psychotropic

---

[1] Malingering is defined as "the purposeful exaggeration of physical or psychological complaints in order to receive some kind of reward."  *Psychology Today*, available at www.psychologytoday.com/conditions/malingering.html (last visited January 24, 2006).

medicines." (*Id.* at 2.) Lewis alleges that Dr. Foster ordered him restrained for disciplinary, rather than psychiatric reasons, amounting to deliberate indifference on her part. (*Id.* at 1-2.)

Additionally, Lewis alleges that, on or about June 13, 2004, "Nurse Helen" instructed four or five DPC Staff Members to forcibly remove a bag of M&Ms candy from his hand because he was on disciplinary restriction. (*Id.* at 2.) According to Lewis, one of the DPC Staff Members, "Grey [sic]," choked him while the other staff members assaulted him. (*Id.*) After he was subdued, one or several unnamed DPC Staff Members put him in restraints and injected with psychotropic medicine. (*Id.*)

On June 25, 2005, the DPC released Lewis and transferred him back to the DCC. (*Id.* at 3.) Lewis makes several allegations regarding the absence of a court order for his transfer, as well as erroneous responses to a Writ of Habeas Corpus filed in the state court. However, he does not explain the significance of these events to the case at bar. (*See id.*)

## III.    DISCUSSION

### A.    Dr. Foster's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dr. Foster has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Dr. Foster contends that Lewis' claims must be dismissed because the court is without jurisdiction to hear them. Specifically, Dr. Foster contends that Lewis has not presented a federal question because he seeks monetary damages only for pain and suffering. (D.I. 15 ¶ 3.) Dr. Foster further contends that Lewis raises no issues in his pleadings based on his imprisonment. Therefore, his complaint cannot even arguably be construed as stating claims under

28 U.S.C. § 1983. (*Id.* ¶ 4.)[2] Lastly, Dr. Foster contends that Lewis' complaint fails to meet the requirements under the diversity of citizenship statute, 28 U.S.C. § 1323, because it does not allege that the parties are citizens of different states. (*Id.* ¶¶ 6-7.)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Dr. Foster's motion makes several facial challenges to the complaint because her arguments are based solely upon the application of legal principles to the facts as alleged in the complaint. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiffs' favor. *See id.*

After having considered Lewis' allegations as true and drawing all reasonable inferences therefrom, the court concludes that Dr. Foster's motion is without merit. Federal courts are vested with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nothing in the language of section 1331 requires a plaintiff to plead any type of damages, i.e. compensatory or punitive. Lewis' amended complaint states that Dr. Foster was deliberately indifferent when she ordered him to be strapped down and given "psychotropic" medicines for disciplinary reasons. (D.I. 10, at 1.) Because Lewis is imprisoned and he complains, at the very least, about his conditions of confinement, his claims arise under 42 U.S.C. § 1983, a law of the United States. The court, therefore, has jurisdiction over Lewis' claims. Accordingly, the court will not address Dr. Foster's additional jurisdictional attacks.

---

[2] Dr. Foster contends in this motion that Lewis has not made any allegations in his pleadings based on his imprisonment. However, in her motion to dismiss for failure to state a claim Dr. Foster states that Lewis is a "prisoner" and that the court may construe his claims as being based on his imprisonment under the Civil Rights Act. (D.I. 16 ¶¶ 1, 5-6.) Thus, she concedes that Lewis' claims arise under 42 U.S.C. § 1983.

**B.      Whether Lewis has Stated Claims against Dr. Foster and Gray Under Section 1983**

Dr. Foster and Gray have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.  *See Kost v. Kozakiewicz*, 1 F.3d 183 (3d Cir. 1993).  Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true.  *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer."  *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988).  However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir.1997).  A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *See Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  However, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Lewis filed his complaint and amended complaint against Dr. Foster and Gray, alleging civil rights violations pursuant to 42 U.S.C. § 1983.  In order to recover against the defendants, Lewis must show that he was deprived of a constitutional right by a person acting under the color of state

law.  42 U.S.C. § 1983; *see, e.g.*, *Groman v. Tp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Here, it is clear that Dr. Foster and Gray were acting under color of state law because, at the time of the alleged incidents, Dr. Foster was Chief Forensic Psychiatrist for the State of Delaware and Gray was an employee of the DPC, an agency of the State of Delaware.  *See West v. Atkins*, 487 U.S. 42, 48-54 (1988).  Therefore, the court next turns to whether Lewis has sufficiently alleged that Dr. Foster and/or Gray deprived him of any constitutional rights.

    1.    Whether Lewis has sufficiently stated a claim that Dr. Foster's order to restrain him violated his Fourteenth Amendment right to be free from restraint

Lewis alleges that Dr. Foster ordered several unnamed DPC staff members to strap him in four point restraints on several occasions.  Implicit in Lewis' allegation is a claim that Dr. Foster and the DPC Staff Members violated his Fourteenth Amendment right to be free from restraint.  Dr. Foster concedes that Lewis has alleged a Fourteenth Amendment claim.  However, she contends that the claim must fail under a "freedom from restraint" analysis because Lewis cannot meet the "atypical and significant hardship" requirement enunciated by the Supreme Court in *Sandin v. Conner*.  (*Id.*) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The court agrees.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources, the Due Process Clause itself and the laws of the States."  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part by Sandin v. Conner*, 515 U.S. 472 (1995); *Bd of Regents v. Roth*, 408 U.S. 564, 575 (1972).  In *Sandin*, the Supreme Court explained that state created liberty interests under the due process clause are limited to "freedom from restraint" that imposes "atypical and significant hardship in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 483.  In determining whether an inmate has suffered an "atypical and significant hardship" as a result of his

6

confinement, the court considers two factors: "1) the amount of time the prisoner was placed into disciplinary segregation, and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in solitary confinement." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (citing *Sandin*, 515 U.S. at 486).

In the present case, Lewis alleges only that Dr. Foster's decision to strap him down with four point restraints was disciplinary. The complaint does not allege that Lewis was placed in restraints for an unusual amount of time, or that he was treated differently than the other inmate patients at the DPC. Thus, the court cannot conclude that Lewis suffered an "atypical and significant hardship" when he was placed in restraints. Consequently, Lewis' "freedom from restraint" claim has no arguable basis in law or in fact. As such, the court will grant Dr. Foster's motion to dismiss this claim.

2.    Whether Lewis has sufficiently stated a claim that Dr. Foster's order to have him injected with antipsychotic medicines against his will violates his Fourteenth Amendment rights

Lewis' amended complaint alleges that Dr. Foster's decision to have him injected with psychotropic drugs was against his will, thereby violating his constitutional rights. It is clear that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteen Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). In *Harper*, the Supreme court explained that this liberty interest is protected by principles of both procedural and substantive due process. *Id.* at 220-23. "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, [only] if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. Moreover, "forcing antipsychotic

7

drugs on a convicted [or pretrial] prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

Here, the amended complaint alleges that Dr. Foster ordered Lewis to be injected with unwanted psychotropic drugs. Lewis, therefore, has stated a claim for violation of his Fourteenth Amendment Due Process rights. Absent from Dr. Foster's motion to dismiss, however, is any discussion of this claim, or why the antipsychotic drugs were given to Lewis against his will. Thus, it appears to the court at this juncture that Lewis can prove a set of facts that would entitle him to relief with respect to this claim. Accordingly, the court will allow this claim to go forward.

     3.     Whether Lewis has sufficiently stated a claim that Dr. Foster's order to have him restrained and injected with antipsychotic medicines violates his Eighth Amendment right to be free form cruel and unusual punishment

The amended complaint also alleges that although Dr. Foster's report to the Delaware Superior Court stated that Lewis "demonstrated no evidence of a mood disorder or psychosis during his admission to [the] DPC,"[3] she ordered him strapped down with restraints and injected with psychotropic medicines for disciplinary reasons. (D.I. 10, at 1.) According to Lewis, Dr. Foster's order demonstrates deliberate indifference on her part. (*Id.*) Thus, Lewis alleges that Dr. Foster violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment of the United States Constitution governs penal measures and prison conditions, and prohibits use of penal measures and existence of conditions which violate civilized standards and concepts of humanity and decency. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

---

[3] This quotation is from Dr. Foster's report that she submitted to the Delaware Superior Court. The report is attached as a non-numbered exhibit to Lewis' amended complaint.

In the prison context, however, "[n]ot every governmental action affecting the interest or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). Only those actions that impose an unnecessary and wanton infliction of pain rise to the level of cruel and unusual punishment. *Id.*

Lewis' claims constitute a challenge to his conditions of confinement at the DPC. As such, the court analyzes the claims under the deliberate indifference standard of the Eighth Amendment. Prison officials violate an inmate's rights under the Eighth Amendment when they act with deliberate indifference or reckless disregard toward an inmate's rights, health or safety, and their conduct is objectively serious, or has caused an objectively serious injury to the inmate. *See Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994). Under this partly objective, partly subjective test, a prison official's conduct is "objectively serious" if it is "incompatible with 'contemporary standards of decency.'" *Carrigan v. Davis*S, 70 F. Supp. 2d 448, 452 (D. Del. 1999) (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). The deliberate indifference prong of the test is met only if the prison official "knows and disregards an excessive risk to inmate rights, health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294 (1991). Mere allegations of negligence do not meet the pleading standards for deliberate indifference. *See Estelle*, 429 U.S. at 105-106.

Here, the amended complaint contains more than mere allegations of negligence. Indeed, Lewis alleges that Dr. Foster acted with deliberate indifference when she disciplined him by ordering him restrained and injected with medications. Based on these allegations, the court

concludes that Lewis may be able to show that Dr. Foster unnecessarily and wantonly inflicted pain on him, thereby exhibiting deliberate indifference to his rights. Because Dr. Foster has not addressed this section 1983 claim in her motion to dismiss, the court cannot conclude at this juncture that Lewis has failed to state a claim against her under the Eighth Amendment.[4]

        4.      Whether Lewis has sufficiently stated a claim that Gray used excessive force against him, thereby violating his Eighth Amendment right to be free form cruel and unusual punishment

Gray asserts that the court should dismiss Lewis' claims against him because the complaint fails to include any allegation sufficient to sustain recovery under 42 U.S.C. § 1983. According to the motion, Lewis mentions Gray only on page two of his complaint, when describing an altercation among Lewis and several other DPC Staff Members, including Gray. (D.I. 24 ¶ 3.) Gray also asserts that Lewis fails to identify, either overtly or by implication, any constitutional or statutorily protect right of which Gray deprived him. (*Id.* ¶ 4.) The court cannot agree.

After having read Lewis' amended complaint, the court concludes that it implicitly, if not overtly, alleges a claim under the Eighth Amendment based on the use of excessive force. The "altercation" between Lewis and Gray that the complaint describes concerns Gray forcibly removing of a bag of M&Ms candy from Lewis' hand, and then choking Lewis. (D.I. 10, at 2.) While it is difficult for the court to conclude that the removal of a bag of candy from a prisoner's hand is "excessive," surely a prisoner's claim that he was choked is an allegation of excessive force.

---

[4] The court will allow Lewis to ament his complaint in order to allege any physical injuries that resulted from Dr. Foster's alleged conduct. The court will discuss its rationale for allowing Lewis to amend in section III.C. below.

The standard that the court must use to determine whether a state actor's conduct violated the Eighth Amendment is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (citations omitted). The court must consider the following factors in applying this standard: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Accepting Lewis' allegations as true, the court concludes that his complaint alleges facts sufficient to state an excessive force claim under the Eighth Amendment. As previously explained, Lewis specifically alleges that Gray choked him while three or four other male DPC Staff Members assaulted him with their fists and feet. Gray's motion to dismiss contends only that Lewis has not alleged any deprivation of a constitutional right. In other words, Gray's motion neither mentions nor addresses any of the above-discussed factors regarding Lewis' excessive force allegation. Accordingly, the court will deny Gray's motion to dismiss at this time.

**C.    Whether 28 U.S.C. § 1997e(e) Bars Lewis from Recovery for Alleged Constitutional Violations**

Dr. Foster's motion contends that Lewis' complaint alleges no physical injury and, therefore, should be read as one for emotional damages. (D.I. 16 ¶ 9.)[5]  Additionally, Dr. Foster

---

[5] Gray's motion to dismiss does not address this issue. However, this discussion applies to Lewis' Eighth Amendment claim against Gray, as it is an alleged constitutional violation.

contends that 28 U.S.C. § 1997e(e) acts as a complete bar to Lewis' constitutional claims that are premised on emotional injuries.

Section 1997e(e) of the Prison Litigation Reform Act provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injuries suffered while in custody without a prior showing of physical injury." 28 U.S.C. § 1997e(e). The Third Circuit has held that section 1997e(e)'s physical injury requirement applies only to claims for compensatory damages, because "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (quoting *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000)). Further, section 1997e(e) does not apply to claims seeking injunctive or declaratory relief. *Mitchell*, 318 F.3d at 533-34. Thus, section 1997e(e)'s "physical injury" requirement will not effect any nominal, punitive, or injunctive relief that a plaintiff has requested in his complaint.

Turning to Lewis' complaint, the relief that he requests is twenty million dollars for "pain and suffering," and for the court to "notify the Superior Court that [Dr. Foster's] report cannot be relied on by the doctor herself." (D.I. 10, at 4.) Lewis' complaint, therefore, requests compensatory damages and injunctive relief. With respect to Lewis' request for compensatory damages, the court agrees with Dr. Foster, and concludes that the complaint does not state a claim for physical injury. However, the court will grant Lewis leave to amend his complaint in order to provide allegations with respect to any physical injuries he received when he was restrained and injected with medicines, as well as when he was choked and assaulted.

Additionally, Lewis has not requested nominal or punitive damages from the defendants. With respect to the former, the court will also grant Lewis leave to amend his complaint to specifically request punitive damages, based on the alleged violations of his Fourteenth and Eighth Amendment rights discussed above. As for the latter, "'it is not necessary to allege nominal damages.'" *Allah*, 226 F.3d at 251 (quoting *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965)). Thus, at this juncture, Lewis may recover nominal damages to vindicate his constitutional rights, as well as the injunctive relief that he requests. Accordingly, the court will grant in part and deny in part Dr. Foster's motion to dismiss based on 28 U.S.C. § 1997e(e), as well as grant Lewis leave to amend his complaint in the manner previously discussed.

### D.     Lewis' State Law Claims

1.     Whether Lewis has stated a medical negligence claim against Dr. Foster

Lewis alleges that Dr. Foster's report states he received no psychotropic medication during his time at the DPC because he demonstrated no evidence of psychosis or mood disorder. Lewis further alleges, however, that on five or more occasions he was strapped down with four point restraints and injected with drugs. Next to these allegations appears the word "malpractice." (D.I. 2 ¶ IV.) A fair inference the court draws from this language is the allegation that Dr. Foster's order to have him restrained and injected with medicine against his will constitutes medical malpractice. Dr. Foster concedes that the complaint sets forth allegations regarding common law medical malpractice. Nonetheless, Dr. Foster maintains that Lewis' claim must be dismissed because he has not provided an affidavit of merit signed by an expert witness, as required by Del. Code Ann. tit. 18 § 8653. (D.I. 16 ¶ 14.)

13

Medical malpractice is a negligence action and is governed by the Delaware Health Care

Negligence Insurance and Litigation Act (the "Act"). The Act defines medical negligence as:

> any tort or breach of contract based on health care or professional services rendered,
> or which should have been rendered, by a health care provider to a patient. The
> standard of skill and care required of every health care provider in rendering
> professional services or health care to a patient shall be that degree of skill and care
> ordinarily employed in the same or similar field of medicine as defendant, and the
> use of reasonable care and diligence.

Del. Code Ann. tit. 18 § 6801(7). When a party alleges medical negligence, Delaware law requires

the party to produce expert medical testimony detailing: "(1) the applicable standard of care, (2) the

alleged deviation from that standard, and (3) the causal link between the deviation and the alleged

injury." *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green

v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted). Specifically, the Act

requires that any complaint alleging medical negligence be accompanied by "[a]n affidavit of merit

as to each defendant signed by an expert witness, as defined in § 6854 of this title, and accompanied

by a current curriculum vitae of the witness, stating that there are reasonable grounds to believe that

there has been healthcare medical negligence committed by each defendant." Del. Code Ann. tit.

18 § 8653. In addition, the Act directs the court to refuse to file and docket the complaint if it is not

accompanied by an expert affidavit.

Here, Lewis alleges that Dr. Foster committed medical negligence. However, he did not

include an affidavit of merit signed by an expert witness with his complaint. As such, the court will

grant Dr. Foster's motion to dismiss Lewis' state law medical malpractice claims. *See Jackson v.

First Correctional Med.*, 380 F. Supp. 2d 387, 392 n.2 (D. Del. 2005) (citing Del. Code Ann. tit. 18

§ 6853).

14

2.    Whether Lewis has Stated a Claim for Civil Assault and Battery Under Delaware
Law

Lewis' amended complaint alleges that Gray choked him, while three or four other DPC

Staff Members assaulted him with their fists and feet. (D.I. 10, at 2.) By implication, the complaint

alleges that these acts constituted a battery. Lewis' statements that Dr. Foster ordered him to be

administered medicine against his will also allege a claim for battery. The state of Delaware has

adopted the definition of battery from the Restatement (Second) of Torts, which states "[a]n actor

is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive

contact with the person . . . and (b) a harmful contact with the person of the other directly or

indirectly results." *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995) (quoting *Restatement*

*(Second) of Torts* § 18 (1965)); *see* W. Page Keeton, et al., Prosser and Keeton on Torts § 9, at 39

(5th ed. 1984) ("A harmful or offensive contact with a person, resulting from an act intended to

cause the plaintiff or third person to suffer such a contact, or apprehension that such contact is

imminent, is a battery."). Lack of consent is an essential element of battery. *Brzoska*, 668 A.2d at

1360.

In the present case, Lewis alleges that he was choked by Gray and beaten by several DPC

Staff Members without his consent. This allegation is sufficient to state a claim for battery. Gray's

motion to dismiss addresses only whether Lewis has stated a claim against him under 42 U.S.C. §

1983. That is, Gray's motion is silent with respect to whether Lewis has appropriately pled any

state law claims against him. Accordingly, the court will not dismiss Lewis' claim against Gray for

battery.

Further, Lewis alleges that Dr. Foster was responsible for the administration of medication

to him without his consent. Dr. Foster recognizes that Lewis has alleged a claim for battery, but

contends that the court should dismiss the claim as it pertains to her actions because Lewis does not allege that she ever made any physical contact with him. (D.I. 16 ¶ 15.) The court is not persuaded.

The definition of battery under Delaware law does not require physical contact between the plaintiff and the defendant. The definition requires only an *act intending to cause harmful or offensive contact* with a plaintiff, and harmful or offensive contact as a direct or indirect result. According to Lewis, Dr. Foster ordered DPC Staff Members to administer medicine to him without his consent. Thus, Dr. Foster committed an act intending to cause offensive contact. As a result of Dr. Foster's order, the medicine was administered to Lewis. That is, the harmful or offensive contact that Lewis complains about was a direct result of Dr. Foster's order. Thus, Lewis has alleged sufficient facts to state a claim for battery against Dr. Foster.

Dr. Foster also relies on Del. Code Ann. tit. 11 § 468(3), (5), and (7) as a ground supporting dismissal of Lewis' battery claims. Dr. Foster contends that a person in her position, who is responsible for the safety of Lewis, the staff and other DPC patients, is permitted to order the use of force necessary to safeguard the welfare of the patient, staff and other patients. (D.I. 16 ¶ 16.) The court disagrees. Del. Code Ann. tit. 11 § 468 sets forth several defenses to battery. However, it explicitly states that the defenses provided are defenses to *criminal* battery, not civil battery. Dr. Foster concedes this fact in her motion to dismiss, but contends that "since Lewis' complaint may be alleging common law battery[, she] can avail herself of the[] statutory defenses." (*Id.*) Remarkably, Dr. Foster offers no explanation why statutory defenses to criminal battery are applicable to a claim for civil battery. Moreover, absent from Dr. Foster's motion is any citation to a civil battery case in which a Delaware court (federal or state) applied Del. Code Ann. tit. 11 § 468(3), (5), or (7). Further, after its own search of federal and Delaware case law, the court is

16

unable to find a civil battery case in which Del. Code Ann. tit. 11 § 468(3), (5), or (7) is discussed.

Based on its findings, the court is unwilling to apply defenses that are reserved to resist criminal

battery claims to a civil battery claim and, therefore, will deny Dr. Foster's motion to dismiss Lewis'

battery claim.

### E.    Motions to Amend

On July 7, 2005, Lewis filed a motion requesting permission to amend the complaint ("First

Motion") (D.I. 19). On August 4, 2005, Lewis filed another document, titled "Additional Points to

Support Motion Requesting Permission to Amend Complaint" ("Second Motion") (D.I. 20). The

court construes both documents as motions to amend. The motions request the court to amend the

complaint to include new claims and additional defendants. The court will address these requests

in turn.

Lewis first asks the court to amend his complaint by adding new claims in order to "cure

deficiencies" in his prior pleadings.[6] Rule 15 of the Federal Rules of Civil Procedure permits a party

---

[6] Lewis' First Motion requests the court to include the following claims: (1) First
Amendment freedom of religion and freedom of speech violations; (2) Fourth Amendment
violations for unreasonable searches and seizures; (3) Fifth Amendment due process violations;
(4) Sixth Amendment speedy trial violations; (5) Eighth Amendment violations for cruel and
unusual punishment; (6) Fourteenth Amendment due process violations; (7) statements of facts
of unconstitutional treatment; (8) relief in regard to the petition of habeas corpus filed in state
court; (9) a request for a jury trial; (10) a request for appointment of counsel; (11) a request for
declaratory judgment; (12) a statement of physical injury; (13) a statement of emotional damage;
(14) a request for expert psychiatric witnesses; (15) a claim for medical negligence; (16) a
request for an expert physician; (17) a civil rights statute; (18) several statutory statutes; (19)
statements that the plaintiff has been subjected to extended incarceration due to constitutional
violations; (20) a statement of atypical and significant hardships as a result of being assaulted
confined and restrained with four point restraints; (21) claims for the common law torts of
assault, battery, libel and slander; (22) claims for several criminal offenses, such as assault,
kidnapping, possession of a deadly weapon during the commission of a felony, attempted
murder, and robbery; and (23) a request for polygraph testing. (D.I. 19 ¶¶ 1-20, 22-24.) Lewis'
(continued...)

to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." FED. R. CIV. P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 646 F. Supp. 118, 120 (D. Del. 1986). In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss." *Id.*

In the present case, there is no evidence of undue delay, bad fath, dilatory motive or undue prejudice to the defendants. However, even affording Lewis' requested claim additions the most liberal construction, it appears "beyond doubt that [he] can prove no set of facts in support of his claim[s] that would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Lewis has not included allegations regarding any of the claims he seeks to add. Rather, with respect to his constitutional claims, he merely writes the number and title of the amendment for which he seeks to allege violations, and states that he would like to amend his complaint to include a violation of

---

[6](...continued)
Second Motion asks the court to allow him to include the following: (1) specific details in regard to Dr. Foster and other persons he seeks to add as defendants "never"offering him a hearing before violating his civil rights; (2) valid factual documents that support the fact that Dr. Foster and other persons he seeks to add as defendants conspired to violate his civil rights; (3) detailed statements of atypical and significant hardships; (4) a request for liens on the defendants' assets; (5) specific details as to how each defendant violated his civil rights, as well as which rights each violated; (6) a civil cover sheet JS 44; and (7) a request for preliminary injunction. (D.I. 20 ¶¶ 2-8.)

that amendment.[7]  Further with respect to his other claims, Lewis simply states he would like "to

include" or "to request," and then lists his request.[8]  Lewis does not provide any other information.

Nor does he state the identity of the defendants involved in the violations.  In fact, Lewis states in

the Second Motion that he would like to amend the complaint "to include specific details of how

each defendant violated [his] civil rights, as well as to specify exactly what right(s) they violated

collectively or individually, under the color of law."  (D.I. 20 ¶ 6.)  Given the foregoing statement,

it is clear to the court that the amended complaints fail to provide "a short and plain statement of the

claims showing that [Lewis] is entitled to relief. . . ."  Fed. R. Civ. P. 8(a); *see Green v. Howard R.*

*Young Corr. Inst.*, 229 F.R.D. 99, 105 (D. Del. 2005).  Accordingly, both of Lewis' motions to

amend fail to state claims upon which relief can be granted against the defendants and are, therefore,

futile.  *See* Fed. R. Civ. P. 12(b)(6).  As such, the court will deny Lewis' motions to amend, without

prejudice, insofar as they seek to add new claims.

Lewis' motions also seek to add new defendants to his claims under 42 U.S.C. § 1983.[9]

---

[7] For example, the first numbered paragraph of Lewis' First Motion states that he would
like "to include violations against the plaintiff's right to freely exercise religion and freedom of
speech; 1st Amendment U.S.C."  (D.I. 19 ¶ 1.)

[8] Lewis' claims include  requests for appointment of counsel, expert psychiatric
witnesses, and an expert physician.  These "claims" are not allegations against any of the
defendants.  Instead, they are requests that are properly raised in motions to the court, in order to
allow the defendants an opportunity to address them.

[9] The First Motion seeks to add the following defendants: Nurse Helen, Pat Riley, Rose,
Karen Chamberlin, Diane Stachowski, Dave Moffitt, Mark Diggs, Florence Scott Cobbs,
"Caucasian" Mr. Johnson, Sagil, Gloria Banks, "African American" Mr. Johnson, Dr. Kathryn
Sheneman, and Dr. Eugene Lopez.  Lewis' Second Motion seeks to add some of the same people
as defendants, as well as Michael S. Talmo DPC Director, Head Nurse Curtis Cornish, Lance
Sapers, C. Oats, Dr. Ovreishi, Tanya Wilson, Donna Lawrence, Pat Riley, J. Conyer, Margaret
Wilson, and District Attorney Brian J. Robertson.

As previously discussed in the context of Dr. Foster's and Gray's motions to dismiss, in order for Lewis to state a section 1983 claim against those he seeks to add as defendants, he must show that: (1) the alleged defendants deprived him of a constitutional right; and (2) the alleged defendants were acting under the color of state law.  42 U.S.C. § 1983; *see, e.g.*, *Groman v. Tp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Additionally, Lewis must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff establishes a causal connection by showing that the defendant was personally involved in the alleged wrongs through allegations of either personal direction or actual knowledge and acquiescence.  *Id.*  Finally, a plaintiff must allege personal involvement with particularity, stating the time, place, and persons responsible for the violations. *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).

        Here, each motion to amend contains a laundry list of names.  However, Lewis alleges only that "Caucasian" Mr. Johnson ("Johnson One"), "African American" Mr. Johnson ("Johnson Two"), Lance Sapers ("Sapers"), and Dave Moffitt ("Moffitt") were personally involved in the incidents alleged in his amended complaint.  The court will address these allegations below.  With respect to the other people listed as defendants, Lewis has failed to indicate how they were personally involved in any deprivation of his constitutional rights.  More important, Lewis has not alleged that any of them deprived him of a constitutional right.  Thus, Lewis has not satisfied one of the essential elements of successfully pleading a section 1983 claim against those defendants.  Accordingly, the court will deny his motion to amend, as it pertains to adding the following defendants: Nurse Helen, Pat Riley, Rose, Karen Chamberlin, Diane Stachowski, Mark Diggs, Florence Scott Cobbs, Sagil, Gloria Banks, Dr. Kathryn Sheneman, Dr. Eugene Lopez, Michael S. Talmo DPC Director, Head

Nurse Curtis Cornish, C. Oats, Dr. Ovreishi, Tanya Wilson, Donna Lawrence, J. Conyer, Margaret Wilson, and District Attorney Brian J. Robertson.

As previously mentioned, Lewis has included allegations with respect to Johnson One, Johnson Two, Sapers, and Moffitt. Specifically, the First Motion alleges that Johnson One and Johnson Two assisted several nurse assistants in assaulting, confining, and restraining Lewis on June 21, 2004, at eleven o'clock at night. (D.I. 19 ¶ 21.) The Second Motion alleges that Johnson Two, Sapers, and Moffitt "are the three men who were involved with the incident with Mr. Gray." (D.I. 20 ¶ 1.) The "Gray incident" is described in the amended complaint (D.I. 10), and discussed above, as occurring on or about June 13, 2004, at the DPC. (D.I. 10, at 2.) Because Lewis has stated the time (i.e. June 13, 2004 and June 21, 2004), place (i.e. DPC), and persons responsible (i.e. Johnson One, Johnson Two, Sapers, and Moffitt) for the constitutional violations he alleges, the court concludes that he has sufficiently stated section 1983 claims. Therefore, the court will grant Lewis' motion to amend, as it pertains to adding Johnson One, Johnson Two, Sapers, and Moffitt as defendants.

Dated: February 7, 2006                  /s/ Gregory M. Sleet
                                         UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1350 GMS |
| | ) | |
| DR. SYLVIA FOSTER, STAFF | ) | |
| MEMBERS, and MR. GREY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.    Sylvia Foster, M.D.'s ("Dr. Foster") Motion to Dismiss for Lack of Jurisdiction (D.I.

15) is DENIED.

2.    Dr. Foster's Motion to Dismiss for Failure to State a Claim (D.I. 16) is GRANTED

in part and DENIED in part.

3.    The plaintiff's Motion Requesting Permission to Amend Complaint (D.I. 19) and

Additional Points to Support the Amendment (D.I. 20) are GRANTED in part and

DENIED in part.  The following defendants shall be added to the present action: Mr.

Johnson, Mr. Johnson, Lance Sapers, and Dave Moffitt.  The plaintiff shall be

permitted to amend the complaint to allege any personal injuries manifested by the

incidents described therein.  The plaintiff shall also be permitted to amend the

complaint to allege punitive damages for constitutional violations.

4.    Robert Gray's Motion to Dismiss for Failure to State a Claim (D.I. 24) is DENIED.

5.    Dr. Foster's Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.I. 32) is
      DENIED as moot.

IT IS FURTHER ORDERED that:

1.    The Clerk of the Court shall cause a copy of this order to be mailed to the plaintiff.

2.    Pursuant to the Federal Rules of Civil Procedure Rule  4(c)(2) and (d)(2), the
      plaintiff shall complete and return to the Clerk of the Court an **original** "U.S.
      Marshal-285" form for **each** defendant, as well as for the Attorney General of the
      State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE,
      19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(c).  Additionally, the plaintiff
      shall provide the court with one copy of the complaint (D.I. 2), the amended
      complaint (D.I. 10), and the second amended complaint for service upon each
      defendant.  Furthermore, the plaintiff is notified that the United States Marshal will
      not serve the complaint and amended complaints until all "U.S. Marshal 285" forms
      have been received by the Clerk of the Court.  Failure to provide the "U.S. Marshal
      285" forms for each defendant and the attorney general within 120 days of this order
      may result in the amended complaint being dismissed or defendants being dismissed
      pursuant to Federal Rule of Civil Procedure 4(m).

3.    Upon receipt of the form(s) required by paragraph 2 above, the United States
      Marshal shall forthwith serve a copy of the complaint , the amended complaints, this
      Order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver"
      form upon each of the defendants so identified in each 285 form.

4.    Within thirty (30) days from the date that the "Notice of Lawsuit" and "Return of
      Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has

not been received from a defendant, the United States Marshal shall personally serve said defendant(s) pursuant to Federal Rule of Civil Procedure 4(c)(2) and said defendant(s) shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

5.    Pursuant to Federal Rule of Civil Procedure 4(d)(3), a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within sixty (60) days from the date upon which the complaint, this Order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent.  If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

6.    No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.  The clerk is instructed not to accept any such document unless accompanied by proof of service.

Dated: February 7, 2006                          /s/ Gregory M. Sleet
                                                 UNITED STATES DISTRICT JUDGE