IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

V.                    CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL,

PLAINTIFF'S MOTION FOR DISCOVERY

COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE SUBMITS THIS MOTION TO THIS HONORABLE COURT FOR AN ORDER GRANTING THE PLAINTIFF'S MOTION FOR DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 34, IN ORDER TO OBTAIN THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH IN THIS CASE.

1.) THE DATE(S) GEODON WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

2.) THE DATE(S) BENADRYL WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, THE DATE(S) IT WAS DISCONTINUED.



FILED
AUG - 9 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

3.) THE DATE(S) "PARIDIUM" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

4.) THE DATE(S) "HALDOL" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

5.) THE DATE(S) "ATIVAN" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

6.) THE DATE(S) "EFFEXOR" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

7.) THE DATE(S) "SEROQUEL" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

8.) THE DATE(S) "BACTRIM" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

9.) THE DATE(S) THE "CHEF SALAD" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

10.) THE DATE(S) THE PLAINTIFF JIMMIE LEWIS WAS PLACED ON DISCIPLINARY RESTRICTION, THE REASONS WHY, FOR HOW LONG THE RESTRICTION, AND THE DISCRIPTION OF THE DISCIPLINARY SANTION(S).

11.) PHOTOCOPIES OF THE WRITTEN NOTICES OF ANY AND ALL DISCIPLINARY REPORTS AND SANTIONS.

12.) THE NAMES OF NURSES WHOM WERE EMPLOYED AND WORKED BETWEEN THE DATES OF 5/20/04 TO 6/25/04, DURING THE DATES OF THE PLAINTIFFS STAY AT THE D.P.C.

13.) THE SPECIFIC REASON DR. SYLVIA FOSTER DOCUMENTED ON THE JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT THAT WAS SUBMITTED TO THE NEW CASTLE COUNTY SUPERIOR COURT, WHY THE PLAINTIFF JIMMIE LEWIS WAS BEING EVALUATED AT THE D.P.C.

14.) ANY AND ALL DIAGNOSIS THAT WERE DETERMINED AND DOCUMENTED BY DR. SYLVIA FOSTER THROUGH OUT THE COURSE OF THE PLAINTIFFS STAY AT THE D.P.C, ALONG WITH THE DATE(S) THOSE DIAGNOSIS WERE ACKNOWLEDGED AND OR DETERMINED.

15.) THE DATE THE PLAINTIFF RECEIVED HIS COMPETENCY HEARING IN THE MOCK COURT ROOM AT THE D.P.C, AND THE NAME OF THE COMMISSIONER AND OR JUDGE WHOM CONDUCTED THE COMPETENCY HEARING.

16.) THE DATE(S) THE PLAINTIFF JIMMIE LEWIS WAS ORDERED TO BE PLACED ON AND OR IN (4) POINT RESTRAINTS, WHO GAVE THE ORDER TO PLACE THE PLAINTIFF IN (4) POINT RESTRAINTS THE TIME THE PLAINTIFF WAS PLACED IN (4) POINT RESTRAINTS, WHAT MEDICATIONS WERE ADMINISTERED TO THE PLAINTIFF DURING SAID (4) POINT RESTRAINING PERIOD, AND THE TIME THE PLAINTIFF WAS RELEASED FOR (4) POINT RESTRAINTS.

17.) WHAT DATE(S) WERE THE DISCIPLINARY HEARINGS CONDUCTED, AND WHO CONDUCTED THE DISCIPLINARY HEARING(S).

18.) THE DATE THE CONSULTATION FOR THE PLAINTIFF WAS ORDERED TO VISIT THE UROLOGIST, AND WHO ORDERED THE CONSULTATION.

19.) THE DATE DR. SYLVIA FOSTER DOCUMENTED ON THE FORENSIC PSYCHIATRIC EVALUATION REPORT DATED JUNE 10, 2004, THAT WAS SUBMITTED TO THE NEW CASTLE COUNTY/ SUPERIOR COURT, THAT THE PLAINTIFF JIMMIE LEWIS WAS ARRESTED.

20.) THE NAMES OF THE R.N's (REGISTERED NURSES), WHOM DR. FOSTER ORDERED TO INJECT THE PLAINTIFF WITH PSYCHOTROPIC MEDICATIONS ON, 6/6/04, 6/14/04, 6/21/04, 6/24/04, 6/22/04, AS IS DOCUMENTED ON THE PROGRESS NOTE(S) AND OR THE DOCTORS NOTES REGARDING THE PLAINTIFF.

21.) THE NAME(S) OF NURSE ASSISTANCE WHOM WHERE EMPLOYED AT THE D.P.C ON, 6/6/04, 6/14/04, 6/21/04, 6/22/04, 6/24/04.

22.) THE PLAINTIFF'S (G.A.F) GLOBAL ASSESSMENT OF FUNCTIONING SCALE WHEN HE WAS ADMITTED ON OR ABOUT 5/20/04, AND THE PLAINTIFF'S (G.A.F) SCALE WHEN HE WAS DISCHARGED ON 6/25/04.

23.) PHOTOCOPIES OF THE (F.C.M) FIRST CORRECTIONAL MEDICAL MEDICAL RECORDS UTILIZED BY DR. FOSTER TO CONDUCT THE PLAINTIFF JIMMIE LEWIS' FORENSIC PSYCHIATRIC EVALUATION. (SEE ATTACHED EXHIBIT), DOCUMENTED UNDER THE TITLE "SOURCE OF INFORMATION".

24.) The documents and or material titled Exhibit A + B, documented under the title "Source of Information" on Dr. Fosters June 10, 2004 Forensic Psychiatric Report. (See Attached Exhibit)

25. A photocopy of the official court order from the Superior Court Judge or Commissioner, documenting that the Defendant was judicially competent and returned to the Department of Correction to partake in court proceedings.

26.) The address of "Jame Smith", an inmate patient about 19 years of age that was undergoing treatment at the D.P.C. during the plaintiff's stay at the D.P.C. Mr. James Smith' address is requested because he is a crucial witness to events and or incident(s) the plaintiff claims in his complaint.

27.) A photocopy of the deposition taken of and or from the plaintiff Jimmie Lewis per court order

28.) The documents titled, "Case Charge List", under "Source of Information" on Dr. Fosters June 10, 2004 Forensic Psychiatric Report. (See attached exhibit).

29.) The documents titled, "Charge History Record" under "Source of Information" on Dr. Fosters June 10, 2004 Forensic Psychiatric Report. (See attached exhibit).

---

The plaintiff Jimmie Lewis hereby respectfully request for this Honorable Court to grant his motion for discovery, due to said information not being legible and therefor needing to be translated for factual acknowledgement, and or in the search for the truth, the whole truth and nothing but the truth in this case. This discovery request should be made available to the plaintiff and the court by Jan 29, 2007, in accordance with the Honorable Courts July 28th 2006 court order. (See attached exhibit).

DATE: 8/7/06

Jimmie Lewis
SBI# 50662
Del. Corr. Center
1181 Paddock Rd
Smyrna, DE 19977

## CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS DUE HEREBY CERTIFY ON THIS __7TH__ DAY OF __AUG__, 2006, THAT I DID MAIL ONE TRUE AND CORRECT COPY OF THE MOTION FOR DISCOVERY BY U.S MAIL TO THE FOLLOWING:

CYNTHIA BEAM ESQ
1001 JEFFERSON PLAZA, SUITE 202
WILMINGTON, DE 19801

CLERK OF THE COURT
U.S DISTRICT COURT
844. N. KING ST, LOCKBOX 18
WILMINGTON, DE 19801

GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST, 7TH FL
CARVEL STATE BUILDING
WILMINGTON, DE 19801

DATE: 8/7/06

Jimmie Lewis
SBI# 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

**DELAWARE HEALTH AND SOCIAL SERVICES**
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

EXHIBIT

June 15, 2004

The Honorable Charles H. Toliver IV
Superior Court of Delaware
500 King Street, Suite 10400
Wilmington, DE 19801

RE: Lewis, Jimmy
ID#: 0305016966

Dear Judge Toliver:

Enclosed herewith, please find the written report(s) by Sylvia Foster, MD, concerning the above named defendant.

Should you require any further information, please do not hesitate to contact me.

Respectfully,

Michael S. Talmo, M.Ed.
Director
Delaware Psychiatric Center

MST/jld

cc: Phebe Young, Deputy Attorney General
    Dianne Stachowski, Unit Director
    Richard Sadowsky, Ph.D.
    Ranga Ram, MD
    John Edinger, Esquire
    Deputy Attorney General's Office

P. 2

## Delaware Psychiatric Center
## Forensic Unit
(Jane E. Mitchell Building)

Forensic Psychiatric Evaluation

Examinee:             Jimmy Lewis                              ID #: 0305016966

Date of Birth:        25 December 1966 (Current Age: 38)
Examiner:             Sylvia Foster, M.D.
Period of Evaluation: 21 May 2004 - present
Date of Report:       10 June 2004

REASON FOR EVALUATION:

Mr. Lewis was referred to The Delaware Psychiatric Center (DPC) for forensic psychiatric evaluation by *Motion and Order* of the Honorable Charles H. Toliver, In the Superior Court of the State of Delaware, In and For New Castle County, on 1 December 2003, to determine his competency to stand trial and to obtain treatment for his own well-being.

NOTIFICATION:

Upon admission to the Forensic Unit, Mr. Lewis was informed that he was being evaluated by Court Order, and that the results of all evaluations performed during this admission would not remain confidential, but would be disseminated to the Court, the prosecution, and his attorney.

EXAMINER:

Medical Doctor specializing in Psychiatry with Board Certification, sub-specializing in Forensic Psychiatry

LIST OF CHARGES:

Carjacking 2nd Degree
Theft $1000 or greater
Resisting Arrest

SOURCES OF INFORMATION:

Face-to-face interview with Mr. Lewis on 21 May 2004 and various times thereafter
        on the Forensic Unit at DPC
Superior Court Criminal Docket

Forensic Psychiatric Evaluation: Jimmy Lewis                              10 June 2004, Page 2 of 8

Seven page statement by Mr. Lewis regarding his social and legal history and his account of the crime, undated
Medical Records, Delaware Psychiatric Center, 21 May 2004 – present
Medical Records, First Correctional Medical (FCM), 5 March 2003 – 31 March 2004
Case Charge List
Complaint and Warrant
Exhibit A & B
Charge History Record
Letter from Donald Napolin, LSCW, to The Honorable Charles H. Toliver, 5 May 2004

## CURRENT MEDICATIONS:

Seroquel 50 mg twice daily for anger management and impulse control
Atenolol 25 mg daily for hypertension

## BACKGROUND INFORMATION:

Mr. Lewis was a 38-year-old African American male who presented to the Mitchell Building based on an evaluation by Dr. Joshi, a prison psychiatrist. Dr. Joshi described Mr. Lewis on 27 May 2003 as "psychotic and delusional, a danger to self and others, refusing to take medication." He had assaulted a Correctional Officer, and was transferred to the infirmary. Mr. Lewis was described as saying, "I can't distinguish between right and wrong. I am hearing voices telling me to hurt myself and I'm seeing shadows."

Mr. Lewis had been incarcerated on 17 November 2003 and convicted of Carjacking, Theft and Resisting Arrest. According to the police report, Mr. Lewis was picked up by a male driver who was out looking for a male companion for the evening. Mr. Lewis allegedly attempted to rob the driver, at which point the driver jumped out of the vehicle in fear, and Mr. Lewis drove off with the car. He allegedly resisted arrest when caught, and was identified by the driver as the person who stole his car.

According to FCM records, Mr. Lewis was "flirtatious" at times, and had to be redirected for asking personal questions of the mental health examiner. She confronted his "narcissism and attention-seeking behaviors," and questioned the diagnosis of Schizophrenia that had been given him by the physician. Mr. Lewis refused all medication, requesting only Xanax and Valium (highly addictive drugs of the Benzodiazepine family). He asked for art materials, and pornography, stating that these items would be very helpful. He presented with, "broad mood and good eye contact, with no suicidal, homicidal ideation and no auditory or visual hallucinations." He was frequently argumentative and loud. He was observed wearing "paper horns," saying, that they made him feel more comfortable. "It helps me deal with whatever I'm going through. The horns are like a mask. If I deal with these things within me, I'll be a better person, being unjustly accused." He was also described as calm and controlled. He spoke of hearing voices but stated, "I don't know whether it's voices or just my

P. 4

Forensic Psychiatric Evaluation: Jimmy Lewis                                    10 June 2004, Page 3 of 6

thoughts." Mr. Lewis stated later that he wore the paper horns and the cat's eye contact lenses for the "scare" factor.

Not much is known about Mr. Lewis' legal history as he is from out of state. However, he said that he had been in prison for six or seven years in New Jersey, from about 1993 to 2000. He added that he had been sentenced to six years for Robbery, "I pick-pocketed somebody," but his jail time had been prolonged for fighting.

Mr. Lewis had no psychiatric history. He saw a counselor as a child in New Jersey where he grew up. At first he said he didn't remember why, but shortly thereafter remembered that it was because his mother had become involved in a Lesbian relationship. "I didn't approve of it and I voiced my opinion to her, and I started misbehaving. I didn't like the lady and I didn't like the idea of the relationship." He went on to explain, "I might have accepted it if it had been presented to me differently, but I saw this lady actually twist my mother's arm to tell me about the [Lesbian nature of the] relationship. I had thought they were just close friends." Mr. Lewis' mother told the team social worker that he had been attention-seeking as a youth, and that he felt no one ever paid enough attention to him. She said he always felt that whatever someone was doing, they should stop, and attend to his needs. He blamed his mother for his current problems due to her homosexual affair. His parents had separated when Mr. Lewis was two years old, at which time Mr. Lewis' father had gone to live in North Carolina.

Mr. Lewis stated that he had been employed in construction and as a porter. "Whatever job was open, I was doing it." However, he added, "I've been fired more than ten times." The longest job he ever held was three months. "I would always argue, or go in late, and I'd get fired." He admitted to selling drugs off and on. "That's what I had to do to have money. Then I got to selling bootleg CD's and DVD's."

Mr. Lewis dropped out of the tenth grade, but later obtained a GED. He changed that idea later, and said that he had a high school diploma. His mother maintained that he actually had a GED. He said, "She thought wrong." He attended the American Business Institute, but did not stay long, ending up owing them money. He related that he had been attending commercial drivers' school to drive eighteen-wheelers just prior to his incarceration. "It was going to be my first job; Poland Springs was going to hire me."

Mr. Lewis stated that he been shot by a police officer ten years ago, with gunshot wounds to the left hip and left arm. He had history of hypertension for which he was being medicated, and history of kidney infection. He had no other significant medical or surgical history.

Mr. Lewis had never married, stating, "Every time I get into a relationship, we always argue." He was with one girlfriend off and on for eight years.

Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior
... He had history of blackouts, but did not elaborate. He denied heavy

P. 5

Forensic Psychiatric Evaluation: Jimmy Lewis                10 June 2004, Page 4 of 5

use. He also admitted to smoking marijuana sixteen years ago, but denied all other illicit drug use. It was considered probable that he was minimizing his addiction issues

## HOSPITAL COURSE:

Mr. Lewis became verbally unresponsive, selectively mute, and categorically refused to answer any questions on the day of admission. He also refused the initial physical examination. Later the same day, Mr. Lewis was observed interacting in a normal manner on the unit. Several days later, the initial examinations were completed without problem. He eventually explained that he had not felt like speaking on the first day.

Mr. Lewis' hospital course has been complicated by his aggressive, assaultive behavior. He was overheard making physical threats, observed taunting and laughing at his peers, taking pleasure in embarrassing them, and was
                                               . He complained of hearing voices sporadically but displayed no evidence of preoccupation with internal stimuli when he believed he was not being observed.

The team psychologist described Mr. Lewis in the following manner in the anger management group: arrogant, disruptive and instigating. While the other older patients tried to have a calming influence, Mr. Lewis displayed no sense of boundaries or respect for authority. She added that there was nothing odd or bizarre about his behavior that would suggest a psychotic disorder. Other therapists noted that he was disruptive in the group setting, talking out of turn, and making obscene comments while watching educational videos. When evaluated by the team, he made it clear that he would rather be at DPC rather than in jail in order to "get some help." When asked what help he needed, or what we could do for him, he answered he didn't know.

One staff member stated that she found Mr. Lewis to be engaging, intelligent and articulate, but noted his sense of entitlement, and his demand that things be done his way. Mr. Lewis stated that he needs to do "outlandish things" to get attention, such as wearing paper horns and wearing his cat's eye lenses. It was explained to him that he would not be allowed to wear his paper horns at any time while at DPC, after he placed them on his head at one point. He understood, and did not attempt to wear them again. He was noted to attempt to intimidate one female therapist by facing her in the hallway and stating, "I just want to get my point across that whatever you said about me in team meeting was wrong and derogatory."

On 6/7/04, a special meeting with Mr. Lewis was called to address his grossly inappropriate behavior on the unit the night before. He was angered by not receiving a certain salad at dinner to which he believed he was entitled, and assaulted a peer and a staff member, escalating to the point where he was difficult to redirect. In summary, he was noted to be disruptive in the group setting, to taunt his peers, to intimidate and flirt with therapists, and to make obscene comments. There were reports to the contrary by other staff members who reported that Mr. Lewis was cooperative and helpful in the milieu, tending to get loud and demanding at times when he felt his needs were not being met in a timely fashion.

P 6

Forensic Psychiatric Evaluation: Jimmy Lewis                    10 June 2004, Page 5 of 6

Initially, Mr. Lewis was prescribed no psychotropic medication, as there was no evidence of a mood disorder, and no evidence of psychosis. However, Seroquel was begun after it became evident that Mr. Lewis had difficulty managing his anger, and controlling his impulses.

## CURRENT MENTAL STATUS EXAM:

Mr. Lewis presented with shaved head, and was appropriately dressed. He was cooperative, and able to sit quietly for the examination with no abnormal motor activity. His speech was normal in rate, tone and volume, and there was no evidence of loud, pressured speech. He stated that his mood was "sensitive, and easily irritated." His affect was full range. His thought processes, assessed by the verbalizations of his thoughts and feelings, were goal directed; there was no evidence of loosening of associations or tangentiality. His thought content displayed no delusions. He was not thinking about suicide, although he maintained that he had been thinking about it. "But I don't really want to do it." He was not thinking about hurting others, and stated, "I'm not on the defensive unless there's a reason." He denied obsessions, compulsions, racing thoughts, paranoia, delusions, special powers, hyper-religiosity, and grandiosity. His cognitive functions were intact grossly. His insight and judgment were considered intact.

## COMPETENCY ASSESSMENT:

Mr. Lewis was presented the questions to the McGarry Criteria as cited in State of Delaware v. Joseph A. Shields, 593 A.2nd, 986 (Del. Super. 1990), p. 1000. Based upon the present examination, Mr. Lewis demonstrated that he does have sufficient present capacity to consult with an attorney with a reasonable degree of rational understanding of court procedures. He is fully able to understand the nature of the proceedings against him, to give evidence in his own defense and to instruct counsel on his behalf.

It should be noted that Mr. Lewis handed out a highly articulate, well-written explanation of his actions on the day of the alleged crime. It reveals a high level of education and intelligence, and highlights his excellent ability to give evidence in his own defense and to instruct counsel on his behalf.

## DIAGNOSIS:[1]

    Axis I:    Malingering; Alcohol Abuse; History of Conduct Disorder
    Axis II:   Antisocial Personality Disorder
    Axis III:  Hypertension
    Axis IV:  Psychosocial and Environmental Problems: Incarceration
    Axis V:   Global Assessment of Functioning (GAF) Scale (1 – 100): 50
                  Serious impairment in social and occupational functioning

---

[1] American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

Forensic Psychiatric Evaluation: Jimmy Lewis                                10 June 2004, Page 5 of 5

OPINION:

The opinions expressed in this report are held with a reasonable degree of medical certainty, and are based upon the direct examination of Mr. Lewis, the observations reported by staff and therapists on the Forensic Unit, and the previous reports and records available for review. These opinions are subject to change if additional information or records become available.

Assessment:

The essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as ~~getting out of~~ prison into a psychiatric unit. Malingering should be strongly suspected ~~in the presence~~ of Antisocial Personality Disorder.

Mr. Lewis demonstrated no evidence of a mood disorder or psychosis during his admission to DPC, and it is not likely that he ever had Schizophrenia or any other chronic psychotic disorder.

SUMMARY OF OPINIONS AND RECOMMENDATIONS:

1. Mr. Lewis is psychiatrically stable and can be returned to prison.

2. It is my opinion that Mr. Lewis is competent to stand trial.

3. It is my opinion that, as in the case of many people with Antisocial Personality Disorder, Mr. Lewis may need to remain on his medication to help with anger management and impulse control

4. Any threats made by Mr. Lewis to harm himself or others should be taken seriously as he is highly manipulative and will stop at little to obtain his goals.


Sylvia Foster, M.D.
Forensic Psychiatrist



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS            )
                        )
    *Pro Se* Plaintiff  )
                        )
    v.                  )   Civil Action No. 04-1350 GMS
                        )
DR. SYLVIA FOSTER, et al. )
                        )
    Defendants          )

## SCHEDULING ORDER

At Wilmington this 28th day of July, 2006, pursuant to Fed.R.Civ.P. 16 and D.Del.L.R. 16.2;

IT IS ORDERED that:

1. **Joinder of other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before September 28, 2006.

2. **Discovery.** All discovery shall be initiated so that it will be completed on or before January 29, 2007.

3. **Application by Motion.** Any application to the Court shall be by written motion filed with the Clerk.

4. The parties shall not send or deliver any correspondence to Chambers. All correspondence and pleadings must be filed directly with the Clerk of the Court. It shall be the responsibility of the parties to inform the court of any change of address.

5. **Summary Judgment Motions.** All summary judgment motions, with accompanying briefs and affidavits, if any, shall be served and filed on or before March 1, 2007. The Answering

brief shall be filed on or before March 15, 2007, and the Reply brief due on or before March 29, 2007.

    6.    **Scheduling**.  The parties shall direct any requests or questions regarding the scheduling and management of this matter to chambers at (302) 573-6470.

Any request for extensions of time as set forth in this Scheduling Order must be made no later than twenty-one days prior to the expiration of time.

_____
UNITED STATES DISTRICT JUDGE

I/M Jimmie Lewis
SBI# 506622 UNIT BLD 23, D-U 2
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

CLERK OF THE COURT (GMS)
U-S DISTRICT COURT
844 N. KING ST, LOCKBOX 18
WILMINGTON, DELAWARE
19801



UNITED STATES POSTAGE
PITNEY BOWES
$02.310
AUG 08 2006
MAILED FROM ZIP CODE 19977