IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


JIMMIE LEWIS,

— V S —

CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.



OCT 13 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE


PLAINTIFF'S MOTION FOR DISCOVERY # II


COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE
AND SUBMITS THIS MOTION FOR DISCOVERY TO THIS
HONORABLE COURT, IN ACCORDANCE TO THE COURTS
ORDER GRANTING SAID MOTION, AND ASSERTS
THE FOLLOWING IN ORDER TO OBTAIN THE TRUTH,
THE WHOLE TRUTH AND NOTING BUT THE TRUTH IN
THIS CASE.


DATE: 10/10/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

1.) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. HE WAS ANGERED BY NOT RECEIVING A CERTAIN SALAD AT DINNER TO WHICH HE BELIEVED HE WAS ENTITLED, AND ASSULTED A PEER AND A STAFF MEMBER. (DENIED BY THE PLAINTIFF) NAME THE PEER AND STAFF MEMBER SAID TO HAVE BEEN ASSULTED BY THE PLAINTIFF, WHEN DID THESE INCIDENTS HAPPEN, WHO WITNESSED THESE INCIDENTS.

2.) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. HE WAS NOTED ATTEMPTING TO INTIMIDATE ONE FEMALE THERAPIST BY FACING HER IN THE HALLWAY STATING, I JUST WANT TO GET MY POINT ACROSS THAT WHATEVER YOU SAID ABOUT ME IN TEAM MEETING WAS WRONG AND DEROGATORY. (DENIED IN PART — THE PLAINTIFF DID NOT ATTEMPT OR TRY TO INTIMIDATE ANY FEMALE THERAPIST.) WHO WAS THE ONE FEMALE TEAM THERAPIST, WHO WITNESSED THIS INCIDENT, WHEN DID IT HAPPEN,

3) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. ACCORDING TO F.C.M RECORDS, THE F.C.M MENTAL HEALTH EXAMINER DOCUMENTED THAT, HE WAS FREQUENTLY ARGUMENTIVE AND LOUD, ('DENIED BY THE PLAINTIFF). WHO WAS THIS F.C.M MENTAL HEALTH EXAMINER, WHEN WAS THIS STATEMENT MADE, AND DID DR. FOSTER WITNESS THE PLAINTIFF DISPLAY SUCH BEHAVIOR AT THE SAID TIME IT IS SAID TO HAVE HAPPENED.

4) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, OTHER THERAPIST NOTED THAT HE WAS DISRUPTIVE IN GROUP SETTING, TALKING OUT OF TURN AND MAKING OBSCENE OBSCENE COMMENTS WHILE WATCHING EDUCATIONAL VIDEO'S. (DENIED BY THE PLAINTIFF,) WHO IS THE THERAPIST WHO REPORTED THESE REMARKS AND OR BEHAVIORS, WHAT WAS THE OBSCENE COMMENTS, WHEN WERE THESE COMMENTS MADE, AND WHO WITNESSED THE PLAINTIFF MAKE THESE COMMENTS

5.) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. HE ATTENDED THE AMERICAN BUSINESS INSTITUTE, BUT DID NOT STAY LONG, ENDED UP OWING THEM MONEY. (DENIED BY — THE PLAINTIFF.) PROVIDE THE FORENSIC EVIDENCE TO SUPPORT THIS STATEMENT.

6) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. MR. LEWIS REPORTED THAT HE BEGAN DRINKING ALCOHOL ALCOHOL IN HIS TEENS, WITH HIS LAST USE JUST PRIOR TO HIS INCARCERATION. (DENIED BY THE PLAINTIFF). DR. FOSTER'S STATEMENT ERRONEOUSLY DRAWS AN INFERENCE THAT THE PLAINTIFF WAS DRINKING ALCOHOL ONLY MOMENTS BEFORE THE OFFENSES ARE SAID TO HAVE HAPPENED, BUT THE PLAINTIFF HAD NOT DRANK ALCOHOL (BEER) FOR AT LEAST A WEEK PRIOR TO HIS INCARCERATION. QUESTIONS, WHAT DATE WAS DR. FOSTER REFERRING TO WHEN SHE STATE WITH HIS LAST USE OF ALCOHOL JUST PRIOR TO HIS INCARCERATION.

32) ARE THE VIDEO CAMERA'S ON THE UNIT WHERE THE PLAINTIFF WAS HOUSED.

33) DR. FOSTER, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURT SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

34) DR. FOSTER WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFF'S STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

35) DR. FOSTER WERE R. GRAY, MOFFITT, SAGERS, JAME EVANS ACTING UNDER YOUR AUTHORITY ON 6/14/04 AT OR ABOUT 8:00 PM AS STATED IN THE PLAINTIFFS COMPLAINT, IF NO, STATE WHO'S AUTHORITY THEY WERE ACTING UNDER.

36) DR. FOSTER WAS HELEN HANLON ACTING UNDER YOUR AUTHORITY ON 6/14/04 AT OR ABOUT 8:00 PM AS STATED IN THE PLAINTIFFS COMPLAINT, IF NO, STATE WHO'S AUTHORITY S'HE WAS ACTING UNDER.

37) MR. R. GRAY IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURT SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

38.) IS IT OKAY TO HOLD SOMEONE DOWN WITH FORCE AND GIVE THEM PSYCHOTROPIC MEDICATION, WHEN THERE IS NO SIGN OF MOOD DISORDER.

39.) IS IT OKAY TO HOLD SOMEONE DOWN WITH FORCE AND GIVE THEM PSYCHOTROPIC MEDICATION, WHEN THERE IS NO SIGN OF PSYCHOSIS.

40) DR. FOSTER WHY DIDNT YOU DISCONTINUE ALL THE PSYCHOTROPIC MEDICATIONS PRESCRIBED FOR THE PLAINTIFF AFTER YOU AUTHORED YOUR JUNE 10, 04 FORENSIC REPORT THAT NOTES THAT THE PLAINTIFF IS DIAGNOSED AS MALINGERING.

41) CAN PSYCHOTROPIC MEDICATIONS BE USE TO PUT A PATIENT INTO A HYPNOTIC STATE

42) WHILE THE PLAINTIFF WAS UNDER THE INFLUENCE OF THE COCKTAIL(S) OF PSYCHOTROPIC MEDICATION, WAS IT TAKEN INTO CONSIDERATION THAT INVOLUNTARY MEDICATING THE PLAINTIFF MAY CAUSE NEGATIVE REACTIONS, IF YES, PLEASE DISCRIBE WHAT THE POSSIBLE NEGATIVE REATIONS :

43) DID THE D.P.C STAFF VIDEO RECORD THE PLAINTIFF WHEN HE WAS INVOLUNTARILY MEDICATED WITH PSYCHOTROPIC'S

44.) THERE ARE CAMERA'S ON THE UNIT WHERE THE PLAINTIFF WAS HOUSED, PRODUCE THE VIDEO SURVEILANCE OF THE INCIDENTS DATING 6/6/04, 6/14/04, 6/14-15/04, 6/21/04, 6/22/04 & 6/24/04 AS STATED IN THE PLAINTIFF'S COMPLAINT.

45.)

AT THE D.P.C ON 6/6/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

46.)

AT THE DPC ON 6/14/04 AT OR ABOUT 8:00 PM WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

47)

AT THE DPC ON 6/14/04 AT OR ABOUT 11:00 PM WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

48.)

AT THE DPC ON 6/21/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

49.)

AT THE DPC ON 6/22/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

50.)

AT THE D.P.C ON 6/24/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

51)

THE D.P.C MASTER TREATMENT PLAN DOCUMENTS A PLAN DATE AND A TARGET DATE, BUT THE PLAINTIFF WAS RETURNED TO THE D.P.C BEFORE THE 7/2/04 TARGET DATE, WAS THIS BECAUSE THE TREATMENT FOR HIS WELL BEING WAS COMPLETED, IF NO, STATE THE REASON WHY THE PLAINTIFF WAS RETURNED TO THE D.O.C BEFORE TREATMENT FOR HIS WELL BEING WAS COMPLETED.

52.) DR. FOSTER, WHAT WERE THE CONDITIONS OF THE PLAINTIFFS CONFINEMENT LIKE IN THE CELL HE WAS HOUSED IN, CELL #197, THE H.R.Y.C.I INFIRMARY, 30 DAYS PRIOR TO HIS BEING TRANSFERRED TO THE D.P.C.

53) ON THE D.P.C SECLUSION OR RESTRAINT NURSING ASSESSMENT FORM, WHAT DOES INVOLUNTARY ADMINISTRATION OF MEDICATION MEAN.

54) WHEN A PATIENT IS PUT IN THE D.P.C ISOLATION ROOM FOR AGGITATION THAT DOES NOT THREATED HIMSELF WITH PHYSICAL HARM OR SOMEONE ELSE WITH PHYSICAL HARM, WHY WOULD 4 POINT RESTRAINTS BE NECESSARY.

55) ON THE D.P.C SECLUSION OR RESTRAINT NURSING ASSESSMENT FORM, PROVIDE A PHOTOCOPY OF THE ADVANCE DIRECTIVE QUERY FORM.

56) PROVIDE A TYPED MEMO OF THE HANDWRITTEN INFORMATION NOTED ON THE D.P.C SECLUSION / RESTRAINT PATIENT FEEDBACK FORM(S), PROVIDED VIA DISCOVERY, BECAUSE SAID HAND WRITTEN INFORMATION IS NOT LEGIBLE.

57) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C SECLUSION OR RESTRAINT FORMS, PROVIDED VIA DISCOVERY, BECAUSE SAID HAND WRITTEN INFORMATION IS NOT LEGIBLE.

58) WHAT DATE WAS THE PLAINTIFF CHECKED AND OR RECEIVED THERAPY FROM A PSYCHOLOGIST FOR THE PSYCHOLOGICAL DILEMMAS HE REPORTED RECEIVING FROM R. GRAY, SAGERS, MOFFITT AND JAMES EVANS ON 6/14/04

59.) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C SECLUSION AND RESTRAINT NURSING ASSESSMENT FORM(S), PROVIDED VIA DISCOVERY, BECAUSE SAID INFORMATION IS NOT LEGIBLE.

60) DOES A HYPERDERMIC NEEDLE UTILIZED TO INJECT PSYCHOTROPIC MEDICINES BREAK THE SKIN IN A WAY THAT BLOOD MAY EXIT THE AREA THAT THE HYPERDERMIC NEEDLE ENTERED THE SKIN.

61) DO DRUGS KILL BRAIN CELLS.

62) CAN AN ALLERGIC REACTION TO PSYCHOTROPIC MEDICATION. KILL

63) ARE PSYCHOTROPIC MEDICATIONS CONSIDERED DRUGS.

64) PROVIDE A D.P.C INMATE PATIENT RULE AND REGULATION HANDBOOK.

65) MR. JOHNSON, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURTS SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

66) MR. JOHNSON WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFFS STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

67) WILL THE DEFENDANTS ANSWER DISCOVERY QUESTIONS REGARDING THE WITNESSES THE PLAINTIFF ATTEMPTED TO DEPOSE.

68) ON THE D.P.C INCIDENT REPORT, PROVIDED VIA DISCOVERY, WHAT DOES RISK MGR MEAN, WHO IS THIS PERSON, AND WHAT QUALIFIES AS REASON TO CONTACT THE RISK M.GR.

69) ON THE D.P.C INCIDENT REPORT, PROVIDE VAA DISCOVERY, WHAT DOES DLTERP MEAN.

70) WHAT DATE WAS THE PLAINTIFF CHECKED BY A PHYSICIAN FOR THE PHYSICAL INJURIES HE REPORTED RECEIVING FROM R. GRAY, SAGERS, MOFFITT AND JAMES EVANS ON 6/14/04.

71)  AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE
BOTH GIVE AND RECEIVE ADVISE TO AND FROM HIS
ATTORNEY, IF YES, STATE THE REASONS WHY.

72) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, NOT MUCH
IS KNOWN ABOUT MR. LEWIS' LEGAL HISTORY AS HE IS FROM OUT
OF STATE. HOWEVER, HE SAID THAT HE HAD BEEN IN PRISON
FOR SIX OF SEVEN YEARS IN NEW JERSEY FROM ABOUT
1993 TO 2000. (DENIED BY THE PLAINTIFF)
THE PLAINTIFF HEREBY REQUEST THE FORENSIC EVIDENCE
DR. FOSTER UTILIZED TO NOTE THESE STATEMENTS IN
HER JUNE 10, 04 FORENSIC REPORT.

73) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE DIVULGE
FACTS WITHOUT PARANOID DISTRESS, IF YES STATE THE
REASONS WHY.

74) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE COMPETENT,
IF YES, STATE THE REASONS WHY.

75) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE MAKE SIMPLE
DECISIONS, IF YES, STATE THE REASONS WHY.

76) AT THE TIME OF THE PLAINTIFF'S ARREST, COULD HE MAKE SIMPLE
DECISIONS, IF YES, STATE THE REASONS WHY.

77) WERE BOTH THE MCGARRY FUNCTIONS AND THE GUATNEY PRESENTED
TO THE PLAINTIFF BEFORE HIS TRIAL.

78) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES ~~THAT~~, THAT THE MENTAL HEALTH EXAMINER, CONFRONTED HIS NARCISSIM AND ATTENTION SEEKING BEHAVIORS, AND QUESTIONED THE DIAGNOSIS ~~GIVEN~~ OF SCHIZOPHRENIA GIVEN HIM BY THE PHYSICIAN. WHO WAS THE FCM MENTAL HEALTH EXAMINER, WHEN WAS THESE STATEMENTS MADE, AND DID DR. FOSTER WITNESS THE BEHAVIORS RESPONSIBLE FOR THE FCM MENTAL HEALTH EXAMINER MAKING THESE STATEMENTS AGAINST THE PLAINTIFF.

79) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES THAT THE FCM MENTAL HEALTH EXAMINER DOCUMENTED, MR. LEWIS REFUSED ALL MEDICATIONS REQUESTING ONLY XANAX AND VALUIM, (HIGHLY ADDICTIVE DRUGS OF THE BENZODIAZEPINE FAMILY) (THE PLAINTIFF DENIES THIS). WHO WAS THE FCM MENTAL HEALTH EXAMINER, WHEN WAS THIS STATEMENT MADE, AND DID DR. FOSTER WITNESS THE PLAINTIFF WHILE THIS STATEMENT.

80) DR. FOSTER DEFINE AGGITATION

81) WHY WAS IT DETERMINED THAT THE PLAINTIFF SHOULD RECEIVE PSYCHOTROPIC MEDICATION FOR AGGITATION.

82) DR. FOSTER DEFINE WHAT FORENSIC PSYCHIATRIC EVALUATION FOR COMPETENCY.

83) DR. FOSTER DEFINE WHAT TREATMENT FOR HIS WELL BEING MEANS.

84.) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE PROVIDE HIS ATTORNEY WITH PERTINENT FACTS CONCERNING THE OFFENSES, IF YES, STATE THE REASONS WHY.

85) WHAT DATE DID THE PLAINTIFF STAND TRIAL

86) WHAT DATE DID THE PLAINTIFF TAKE THE STAND.

87) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE CHALLENGE PROSECUTION WITNESSES, IF YES, STATE THE REASONS WHY.

88) WHAT WAS THE PLAINTIFF'S STATE OF MIND AT THE TIME OF THE ALLEGED OFFENSES.

89) WHAT WAS THE PLAINTIFF'S STATE OF MIND AT THE TIME OF HIS TRIAL.

90) DR FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, MR LEWIS WAS FLIRTATIOUS AT TIMES, WITH WHOM WAS MR. LEWIS FLIRTATIOUS WITH, WHEN WAS THIS STATEMENT MADE, AND DID DR. FOSTER WITNESS THE PLAINTIFF DISPLAY THIS FLIRTATIOUS BEHAVIOR NOTED IN HER JUNE 16, 2004 REPORT.

91) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE CONFER COHERENTLY WITH SOME APPRECIATION OF THE PROCEEDINGS, IF YES, STATE THE REASONS WHY.

92)    AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE MOTIVATED TOWARDS SELF DEFENSE, IF YES, STATE THE REASONS WHY.

93) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO FOLLOW THE TESTIMONY REASONABLE WELL, IF YES, STATE THE REASONS WHY.

94) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO MEET STRESSES WITHOUT HIS RATIONALITY OR JUDGEMENT BREAKING DOWN, IF YES, STATE THE REASONS WHY.

95) AT THE TIME OF THE PLAINTIFF'S ARREST, DID HE HAVE MINIMAL CONTACT WITH REALITY, IF YES, STATE THE REASONS WHY.

96) AT THE TIME OF THE PLAINTIFF'S TRIAL, DID HE HAVE MINIMAL CONTACT WITH REALITY, IF YES STATE THE REASONS WHY.

97) AT THE TIME OF THE PLAINTIFF'S ARREST, COULD HE APPRECIATE THE RANGE AND NATURE OF POSSIBLE PENALTIES, IF YES, STATE THE REASONS WHY.

98) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE APPRECIATE THE RANGE AND NATURE OF POSSIBLE PENALTIES, IF YES, STATE THE REASONS WHY.

99) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE PRECEIVE REALISTICLY THE LIKELY OUTCOME OF THE TRIAL, IF YES, STATE THE REASONS WHY.

100) IS THE DEFENDANT MOFFITT WILLING TO TAKE A POLYGRAPH TEST, IN ORDER TO VINDICATE HIMSELF OF THE CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFF'S COMPLAINT AND OR IN REGARDS TO ANY AND ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

101) IS THE DEFENDANT SEGERS WILLING TO TAKE A POLYGRAPH TEST, IN ORDER TO VINDICATE HIMSELF OF CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFF'S COMPLAINT AND OR IN REGARDS TO ANY AND ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

102) IS THE DEFENDANT JOHNSON WILLING TO TAKE A POLYGRAPH TEST, IN ORDER TO VINDICATE HIMSELF OF CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFF'S COMPLAINT AND OR IN REGARDS TO ANY AND ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

103) IF A PSYCHIATRIST, WHO IS ASSIGNED TO CONDUCT A FORENSIC EVALUATION ON A PATIENT, EXCLUSIVELY UTILIZED REPORTS WRITTEN BY MENTAL HEALTH PERSONEL OTHER THAN THE ASSIGNED PSYCHIATRIST, SHOULD THE PSYCHIATRIC REPORT BE CONSIDERED FORENSIC, IF YES STATE WHY.

104) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE TESTIFY RELEVANTLY, IF YES, STATE THE REASONS WHY.

105)  AT THE TIME OF THE OFFENSES THAT THE PLAINTIFF IS INCARCERATED FOR, WAS HE SUICIDAL, PLEASE STATE THE FACTS OF THE MATTER.

106)
AT THE TIME OF THE OFFENSES THAT THE PLAINTIFF IS INCARCERATED FOR, WAS HE DELUSIONAL, PLEASE STATE THE FACTS OF THE MATTER.

107)
AT THE TIME OF THE OFFENSES THAT THE PLAINTIFF'S TRIAL, WAS HE SUICIDAL, PLEASE STATE THE FACTS OF THE MATTER.

108)
AT THE TIME OF THE PLAINTIFFS TRIAL, WAS HE DELUSIONAL, PLEASE STATE THE FACTS OF THE MATTER.

109)
AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE PROVIDED WITH THE PSYCHOTROPIC MEDICINE THAT DR. D. JOSHI PRESCRIBED FOR HIM, PLEASE STATE THE FACTS OF THE MATTER.

110)
AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS THE PLAINTIFF ABLE TO CONSIDER REALISTICLY, THE POSSIBLE LEGAL DEFENSES, PLEASE STATE THE FACTS OF THE MATTER.

111)
AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS THE PLAINTIFF ABLE TO MANAGE HIS BEHAVIOR TO AVOID DISRUPTIONS, PLEASE STATE THE FACTS OF THE MATTER.

112)
AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO RELATE TO HIS ATTORNEY, PLEASE STATE THE FACTS OF THE MATTER.

113)    DID ANY INMATE PATIENT SIGN A NOTARIZED STATEMENT, THAT THE PLAINTIFF HARMED OR HURT THEM PSYCHOLOGICALLY OR PHYSICALLY. IF YES, PROVIDE SAID STATEMENT.

114)
DID ANY STAFF OF THE D.P.C SIGN A NOTARIZED STATEMENT THAT THE PLAINTIFF HARMED OR HURT THEM PSYCHOLOGICALLY OR PHYSICALLY. IF YES, PROVIDE SAID STATEMENT.

115)
IS THE DEFENDANT DR. FOSTER WILLING TO TAKE A POLYGRAPH TEST IN ORDER TO VINDICATE HERSELF OF THE CLAIMS AGAINTS HER, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFFS COMPLAINT, AND OR IN REGARDS TO ANY AND OR ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HER.

116)
IS THE DEFENDANT R. GRAY WILLING TO TAKE A POLYGRAPH TEST IN ORDER TO VINDICATE HIMSELF OF THE CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFFS COMPLAINT, AND OR IN REGARDS TO ANY AND OR ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

117)
WHY DID DR. FOSTER AVAIL HERSELF ON 6/20/06 IN STATUTORY DEFENSES UNDER 11 DEL C § 468 (3);(5) + (7), IN WHICH STATES THAT SHE WAS PERMITTED THE AUTHORITY BY SAID STATUTES TO ~~ORDER~~ ORDER THE USE OF FORCE, WHEN ON 6/15/06 DR FOSTER STATED THAT THE PLAINTIFFS ALLEGED INJURIES WERE CAUSED BY INDIVIDUALS FOR WHICH SHE HAD NO CONTROL, ~~mmmmmm~~
~~mmmmmmm~~

118) PROVIDE A TYPED MEMO OF THE HAND WRITTEN
INFORMATION NOTED ON THE D.P.C DOCTOR ORDER SHEETS
DATING FROM 5/21/04 TO 6/25/04 PER DISCOVERY,
BECAUSE SAID HAND WRITTEN INFORMATION IS NOT LEGIBLE.

119) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES,
HE ALSO ADMITTED TO SMOKING MARIJUANA SIXTEEN YEARS
AGO, BUT DENIED ALL OTHER ILLICIT DRUG USE. AND THAT IT
WAS CONSIDERED PROBABLE THAT HE WAS MINIMIZING HIS
ADDITION ISSUES. (DENIED BY THE PLAINTIFF), WHAT
FORENSIC EVIDENCE DID DR. FOSTER UTILIZE TO COME TO
THE CONCLUSIONS THAT THE PLAINTIFF SMOKED MARIJUANA,
AND THAT HE WAS MINIMIZING HIS ADDICTION ISSUES.

120) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES,
MR. LEWIS' HOSPITAL COURSE HAS BEEN COMPLICATED BY HIS
AGGRESSIVE, ASSULTIVE BEHAVIOR. HE WAS OVERHEARD MAKING
PHYSICAL THREATS, OBSERVED TAUNTING AND LAUGHING AT HIS
PEERS, AND TAKING PLEASURE IN EMBARRASSING THEM.
(DENIED BY THE PLAINTIFF) THESE ARE A WIDE ARRAY OF
SLANDEROUS ACCUSATIONS, AND THE PLAINTIFF SEEKS TO HAVE
DR. FOSTER SPECIFICLY IDENTIFY EXACTLY WHOM THE PLAINTIFF
DISPLAYED AGGRESSIVE AND ASSULTIVE BEHAVIOR TOWARD,
WHO WAS HE OVERHEARD MAKING PHYSICAL THREATS TOWARDS
AND WHO OVERHEARD HIM, WHO WAS THE PEER(S)
MR. LEWIS TOOK PLEASURE IN EMBARRASSING BY TAUNTING
AND LAUGHING, AND WHO WITNESSED MR. LEWIS DISPLAY
THESE BEHAVIORS.

121) PER DISCOVERY REQUEST, THE PLAINTIFF HAS RECEIVED THE DEC 1, 03 SUPERIOR COURT ORDER THAT WAS DOCKETED WITH THE CLERK OF THE PROTHONOTARY — STATING THAT THE PLAINTIFF IS TO UNDERGO A FORENSIC EVALUATION FOR COMPETENCY AND TO RECEIVE TREATMENT FOR HIS VERY OWN WELL BEING, SUPERIOR COURT DOCKET #'s 25 + 26.

 THE PLAINTIFF HEREBY REQUEST TO RECEIVE THE SUPERIOR COURT ORDER FROM THE SUPERIOR COURT JUDGE OR COMMISSIONER, THAT WAS FILED WITH THE SUPERIOR COURT CLERK OF THE PROTHONOTARY AND DOCKETED — DOCUMENTING THAT THE PLAINTIFF WAS DEEMED JUDICIALLY COMPETENT AND STABLE ENOUGH TO BE RETURNED TO THE D.O.C TO BE SUBJECTED TO SUPERIOR COURT PROCEDURES.

122) DR. FOSTER, DID THE PLAINTIFF REQUEST TO BE RETURNED TO THE D.O.C

123) DR. FOSTER, IF THE PLAINTIFF WOULD HAVE BEEN GIVEN A COMPETENCY HEARING IN THE MOCK COURT ROOM AT THE D.P.C, WOULD HE HAVE HAD THE OPPORTUNITY TO CONTEST THE FORENSIC REPORT YOU AUTHORED ON JUNE 10, 04.

124) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C INCIDENT REPORTS PROVIDED VIA DISCOVERY, BECAUSE SAID INFORMATION IS NOT LEGIBLE

125) PROVIDE A TYPED MEMO OF THE HAND WRITTEN
INFORMATION NOTED ON THE F.C.M CONSULTATION REQUEST
DATED JUNE 9, 2004 PROVIDED VIA DISCOVERY, BECAUSE
SAID WRITING IS NOT LEGIBLE.

126) PROVIDE A TYPED MEMO OF THE HAND WRITTEN
INFORMATION NOTED ON THE D.P.C SOCIAL ASSESSMENT,
6 PAGES DATED 5/24/04, PROVIDED VIA DISCOVERY,
BECAUSE SAID WRITING IS NOT LEGIBLE.

127) DOES IT TAKE A COURT ORDER FOR SOMEONE
TO BE TRANSFERRED FROM THE D.O.C, TO THE D.P.C
MITCHELL BUILDING TO UNDERGO A FORENSIC EVALUATION
FOR COMPETENCY, IF NO STATE HOW.

128) DOES IT TAKE A COURT ORDER FOR SOMEONE TO BE
TRANSFERRED FROM THE D.P.C TO THE D.O.C ONCE THE
COURT ORDERED FORENSIC EVALUATION FOR COMPETENCY
HAS BEEN COMPLETED, IF NO STATE WHY.

129) IS IT PROCEDURE FOR SOMEONE WHO HAS BEEN
COURT ORDERED TO UNDERGO A FORENSIC EVALUATION
FOR COMPETENCY TO RECEIVE A COMPETENCY HEARING
AT THE D.P.C BEFORE THEY ARE RETURNED TO THE D.O.C,
IF NO, STATE WHY NOT.

130) MR. MOFFITT, ISNT IT ROBBERY WHEN SOMEONE UTILIZES UN-NECESSARY FORCE TO TAKE SOMETHING FROM SOMEONE, THAT IS HARMLESS AND LEGALLY THEIRS.

131) MR. SAGERS, ISNT IT ROBBERY WHEN SOMEONE UTILIZES UN-NECESSARY FORCE TO TAKE SOMETHING FROM SOMEONE, THAT IS HARMLESS AND LEGALY THEIRS.

132) MR. R. GRAY, ISNT IT ROBBERY WHEN SOMEONE UTILIZES UN-NECESSARY FORCE TO TAKE SOMETHING FROM SOMEONE, THAT IS HARMLESS AND LEGALLY THEIRS,

133) DOES A PERSON HAVE TO BE RETARDED IN ORDER TO BE INCOMPETENT AT THE TIME OF THE OFFENSES THEIR ACCUSED OF.

134) DOES A PERSON HAVE TO BE RETARDED LIKE JOSEPH A. SHIELDS IN ORDER TO BE INCOMPETENT AT THE TIME OF THEIR TRIAL.

135) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C CONSULTATION REQUEST AND REPORT DATED JUNE 9, 04 PROVIDED VIA DISCOVERY, BECAUSE SAID WRITING IS NOT LEGIBLE.

136) IN REGARDS TO DR. FOSTER DIAGNOSING THE PLAINTIFF AS MALINGERING; WHAT ARE THE FALSE OR GROSSLY EXAGGERATED PHYSICAL OR PSYCHOLOGICAL SYMPTOMS. DISCRIBE THE DETAILS.

137) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES AXIS I: MALINGERING, ALCOHOL ABUSE, HISTORY OF CONDUCT DISORDER. DISCRIBE IN DETAIL THE HISTORY OF CONDUCT DISORDER, INCLUDING DATE(S), PLACES, INCIDENTS, AND WITNESSES.

138) DEFINE PSYCHOLOGICAL AND ENVIORMENTAL PROBLEMS ~~ADULT/CHILD~~ INCARCERATION. AS IT IS NOTED IN DR. FOSTERS JUNE 10, 04 FORENSIC REPORT.

139) DEFINE ANTI SOCIAL PERSONALITY DISORDER, AS IT IS NOTED IN DR. FOSTER JUNE 10, 04 FORENSIC REPORT

140) WHAT DOES THE 11/17/03 DATE NOTED ON DR FOSTERS JUNE 10, 04 FORENSIC REPORT RELATE TO REGARDING THE PLAINTIFF BEING ORDERED TO UNDERGO AN FORENSIC EVALUATION.

141) ~~UNANANDNM~~. DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, ON MAY 21, 2003 LEWIS ASSULTED A CORRECTIONAL OFFICER AND WAS TRANSFERRED TO THE INFIRMARY.
PROVIDE THE OFFICIAL DOCUMENTATION UTILIZED TO ESTABLISH THIS FORENSIC DETERMINATION.

142) WHAT DID THE PLAINTIFF VERBALLY STATE HE DID REGARDING HIS ACCOUNT OF THE OFFENSES THAT HE IS INCARCERATED FOR, to WHOM DID HE MAKE THESE VERBAL STATEMENTS TO, AND WHAT DATE.

143) IS IT INDEED A FACT THAT MR. LEWIS DISPLAYED NO EVIDENCE OF A MOOD DISORDER, AND NO EVIDENCE OF PSYCHOSIS DURING THE COURSE OF HIS STAY AT THE D.P.C, AS IT IS NOTED IN DR. FOSTERS JUNE 10, 04 FORENSIC REPORT.

144) WHO WROTE THE ORDERS FOR THE STANDING P.R.N PSYCHOTROPIC MEDICATIONS.

145) COULD THE HOSPITAL STAFF AT THE D.P.C GIVE THE PLAINTIFF ANY P.R.N PSYCHOTROPIC MEDICATIONS, IF THE PSYCHIATRIST WHO ORDERED THE STANDING P.R.N PSYCHOTROPIC MEDICATIONS, HAD NOT ORDERED THE PSYCHOTROPIC MEDICATIONS.

146) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, THAT MR. LEWIS' MOTHER TOLD THE TEAM SOCIAL WORKER THAT HE HAD BEEN ATTENTION SEEKING AS A YOUTH, AND THAT HE FELT NO ONE EVER PAID ENOUGH ATTENTION TO HIM. AND THAT HE ALWAYS FELT THAT WHATEVER SOMEONE WAS DOING, THEY SHOULD STOP, AND ATTEND TO HIS NEEDS. (DENIED BY THE PLAINTIFF) DOES DR. FOSTER HAVE A SIGNED AFFIDAVIT TO VALIDATE THIS CLAIM, AND IS FLORENCE SCOTT COBBS WILLING TO SUBMIT AN AFFIDAVIT TO THIS CLAIM.

147) WHAT IS THE INTENDED RESULTS OR PURPOSE FOR UTILIZING A COCKTAIL OF PSYCHOTROPIC MEDICATIONS ON A PATIENT.

148) PROVIDE A PHOTOCOPY OF THE DEPOSITION TAKEN FROM THE PLAINTIFF PER COURT ORDER

149) WHAT ARE THE SIDE EFFECTS OF ATIVAN

150) WHAT ARE THE SIDE EFFECT OF GEODON

151) WHAR THE SIDE EFFECTS OF EFFEXOR

152) APON MR. LEWIS ARRIVAL AT THE D.P.C HIS G.A.F SCALE WAS 20, BUT BEFORE HE WAS TRANSFERRED BACK TO THE D.O.C HIS G.A.F SCALE WAS 50. DOES THE DEFENDANTS CONSIDER THAT THE PLAINTIFFS G.A.F SCALE INDICATES THAT HE WAS STABLE ENOUGH TO BE TRANSFERRED BACK TO THE D.O.C AS DR. FOSTER STATES IN HER JUNE 10,04 FORENSIC REPORT.

153) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C DEPARTMENT OF HEALTH AND SOCIAL SERVICES INSTITUTIONAL ADMISSION RECORD DATED 5/21/04, PROVIDED VIA DISCOVERY, BECAUSE SAID WRITTEN INFORMATION IS NOT LEGIBLE.

154)    PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C INTERDISCIPLINARY GROUP THERAPY DOCUMENTATION SHEET, PROVIDED VIA ~~DMS~~ DISCOVERY, BECAUSE SAID INFORMATION IS NOT LEGIBLE.

155) WHAT IS THE RESULTS OF THE INVESTIGATION CONDUCTED, AS IT IS STATED ON THE PLAINTIFF'S JUNE 20, 2004 GRIEVANCE, PERTAING TO THE INJURIES HE RECEIVED FROM R. GRAY, SAGERS, MOFFITT AND JAME EVANS.

156) WHAT IS THE OVERALL DUTY AND OBLIGATION TO A PATIENT, FROM HIS PRIMARY PSYCHIATRIST.

157) WHAT ARE THE SIDE EFFECTS OF HALDOL

158) WHAT ARE THE SIDE EFFECTS OF SEROQUEL

159) IS IT COMMON PRACTICE FOR A PSYCHIATRIST TO UTILIZE PSYCHOTROPIC MEDICATIONS FOR NON-PSYCHIATRIC REASONS.

160) WHAT IS A LETHAL DOSE OF ATIVAN

161) WHAT IS A LETHAL DOSE OF GEODON

162) WHAT IS A LETHAL DOSE OF HALDOL

163) WHAT IS A LETHAL DOSE OF SEROQUEL

164) DR. FOSTERS JUNE 10,04 FORENSIC REPORT STATES, IT SHOULD BE NOTED THAT MR. LEWIS HANDED OUT A HIGHLY ARTICULATE, WELL WRITTEN EXPLANATION OF HIS ACTIONS ON THE DAY OF THE ALLEGED CRIME. (DENIED BY THE PLAINTIFF) TO WHOM WAS THIS WRITTEN EXPLANATION GIVEN TO, AT WHAT DATE WAS IT GIVEN, AND WHO WITNESSED THE PLAINTIFF GIVING THE WRITTEN EXPLANATION, PROVIDE A PHOTOCOPIE.

165) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C PROGRESS NOTES, DATING FROM 5/21/04 TO 6/25/04 PROVIDED VIA DISCOVERY, BECAUSE SAID WRITTEN INFORMATION IS NOT LEGIBLE.

166) ACCORDING TO THE D.P.C MASTER TREATMENT PLAN, (FOR WHICH IS TYPED), DR. FOSTER WAS THE PLAINTIFFS PRIMARY PSYCHIATRIST, IS THIS CORRECT.

167) CAN A PATIENTS PRIMARY PSYCHIATRIST FORFILL THEIR DUTY AND OR OBLIGATION TO A PATIENT IF THEY ARE NOT NOTIFIED OF MOOD DISORDERS, PSYCHOTIC DISORDERS OR BEHAVIOR DISORDERS BY THE D.P.C MEDICAL STAFF, IF YES, STATE HOW.

168) PROVIDE THE CHART A PSYCHIATRIST UTILIZES TO PRESCRIBE AN PSYCHOTROPIC MEDICINES TO A PATIENT ACCORDING TO THEIR, WEIGHT, HEIGHT, ETC, ETC.

169) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS THE PLAINTIFF ABLE TO PARTICIPATE WITH HIS ATTORNEY TO PLAN LEGAL STRATEGY, IF YES, STATE THE REASON WHY.

170) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO UNDERSTAND THE ROLE OF VARIOUS PARTICIPANTS IN THE TRIAL, IF YES, STATE THE REASONS WHY.

171) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO UNDERSTAND COURT PROCEDURES, IF YES, STATE THE REASONS WHY.

172) WHAT IS THE CORRECT DATE THE PLAINTIFF WAS INCARCERATED FOR THE OFFENSES HE WAS ORDERED TO FORENSICLY EVALUATED FOR.

173) IS THERE A SUBSTANTIAL RISK FACTOR OF SERIOUS HARM WHEN SOMEONE INJECTS PSCHOTTROPIC MEDICINES INTO A PATIENT, IF YES, STATE THE REASONS WHY.

174) DR. FOSTER, WHY DID YOU UTILIZE JOSEPH A. SHIELDS AS AN INCOMPETENT STANDARD NOTED IN THE PLAINTIFFS FORENSIC REPORT.

175) PROVIDE A PHOTOCOPY OF THE BARBER'S ATTENDANCE AT THE D.P.C BETWEEN THE DATES OF MAY 21, 04 AND JUNE 25, 2004, ALONG WITH PHOTOCOPIES OF CHECK RECEIPTS VARIFING THE BARBER'S PAYMENT FOR THE DATES STATED.

176) WHY DOES DR. FOSTERS JUNE 10, 04 FORENIS REPORT STATE, THE PLAINTIFF WAS REFERRED TO THE D.P.C TO DETERMINE COMPETENCY TO STAND TRIAL, WHEN THE PLAINTIFF ALREADY STOOD TRIAL.

177) MR. SABERS, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURTS SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

178) MR. SABERS, WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFF'S STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

179) MR. MOFFITT, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURTS SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

180) MR. MOFFITT, WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFF'S STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

181) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE APPRECIATE THE CHARGES, IF YES, STATE THE REASONS WHY.

182) AT THE TIME OF THE PLAINTIFF'S ARREST, COULD HE APPRECIATE THE CHARGES, IF YES, STATE THE REASONS WHY.

183) ~~WADDDDD~~  HOW MANY FORENSIC PSYCHIATRIC EVALUATIONS
TO DETERMINE COMPETENCY HAS DR. FOSTER DONE, HOW MANY
INVOLVE BLACK PEOPLE, HOW MANY OF THE BLACK PEOPLE
RECEIVED MALINGERING DIAGNOSIS, HOW MANY RECEIVED
ALCOHOL ABUSE DIAGNOSIS, HOW MANY RECEIVE ANTI-SOCIAL
PERSONALITY DISORDERS, HOW MANY REPORTS WAS THE D.A
BRIAN ROBERTSON INVOLVED WITH.

184) DOES DR. FOSTER STILL WORK AS AN FORENSIC
PSYCHIATRIST AT THE MITCHELL BUILDING, IF NO SINCE WHEN.

185) IS DR. FOSTER STILL THE CHIEF FORENSIC PSYCHIATRIST
FOR THE STATE OF DELAWARE, IF NO, SINCE WHEN.

186) ON NUMEROUS OCCASSIONS WHEN THE PLAINTIFF WAS INJECTED
WITH PSYCHOTROPIC DRUGS AGAINST HIS WILL, THE TERM AGGITATION
WAS UTILIZED AS THE REASON. DISCRIBE EXACTLY WHAT
AGGITATION MEANS TO A PSYCHIATRIST THAT PRESCRIBES COCKTAILS
OF PSYCHOTROPIC DRUGS

187)   IN PREVIOUS PLEADINGS DR. FOSTER AVAILED HERSELF
IN DEFENSE UNDER 11 DEL C§ 468 IN ORDER TO JUSTIFY THE
ACTIONS THAT THE PLAINTIFF STATED SHE COMMITTED, i.e ORDERING
THE PLAINTIFF STRAPPED DOWN WITH (4) POINT RESTRAINTS AGAINST
HIS WILL, AND INJECTING HIM WITH PSYCHOTROPIC DRUGS AGAINST
HIS WILL.   WHY DID DR. FOSTER AVAIL HERSELF IN WHAT WAS
PRESENTED AS JUSTIFIABLE DEFENSE UNDER 11 DEL C§ 468,
INSTEAD OF ACTUAL INNOCENCE.

188)   WHO WAS ABLE TO ORDER THAT THE PLAINTIFF BE
INJECTED WITH PSYCHOTROPIC DRUGS SUCH AS HALDOL, ATIVAN,
GEODON, WITHOUT DR. FOSTERS VERBAL ORDER, WRITTEN ORDER,
OR STANDING P.R.N ORDER.
NAME THE PERSON OR PERSONS, AND THE DATES AND
PSYCHOTROPIC DRUGS ORDERED

189.)   FILE YOUR ANSWERS TO THE COMPLAINT.

190)   STATE YOUR AFFIRMATIVE DEFENSE.

CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS,
DUE HEREBY CERTIFY ON THIS ___10 TH___ , DAY OF
___SEPT___ , 2006, THAT I DID MAIL ONE
TRUE AND CORRECT COPY OF THE PLAINTIFF'S
MOTION FOR DISCOVERY BY U.S POSTAGE TO
THE FOLLOWING :

CLERK OF THE COURT (GMS)        CYNTHIA BEAM ESQ
U.S. DISTRICT COURT              1001 JEFFERSON PLAZA, SUITE 202
J. CALEB BOGGS FEDERAL BUILDING   WILM, DE 19801
844 . N. KING ST , LOCKBOX 18
WILM, DE 19801

GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST , 7TH FL
CARVEL STATE BUILDING
WILM, DE  19801

                                Jimmie Lewis
                                SBI # 506622
DATE : 10/10/06                 DEL. CORR. CENTER
                                1181 PADDOCK RD
                                SMYRNA , DE 19977

I/M _Jimmie Lewis_

SBI# _506602_ UNIT: _C-U-1_

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

CLERK OF THE COURT (GMS)

U.S DISTRICT COURT

844 . N KING ST, LOCKBOX 18

WILMINGTON, DELAWARE

19801





UNITED S.

$ 01.5

02 1A
0004808875
MAILED FROM ZIP CODE 19