IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

— VS —                                    CA NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.

FILED

OCT 20 2006
BA scanned

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PLAINTIFF'S AMENDED RESPONSE TO
DR. SYLVIA FOSTER'S ANSWER TO
THE PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW, THE PLAINTIFF JIMMIE LEWIS PRO-SE AND SUBMITS
HIS AMENDED RESPONSE TO DR. SYLVIA FOSTER'S ANSWER TO
THE PLAINTIFF'S SECOND AMENDED COMPLAINT, HAVING PREVIOUSLY
GIVEN NOTICE THAT HE INTENDS TO RELY UPON SUCH OTHER AND
FURTHER AFFIRMATIVE DEFENSES WHICH BECOME AVAILABLE OR
APPARENT DURING PRETRIAL DISCOVERY OR LITIGATION
PROCEEDINGS IN THIS ACTION AND HEREBY RESERVES THE RIGHT
TO ASSERT ANY SUCH AFFIRMATIVE DEFENSE WHICH ARE
INCORPORATED BY REFERENCE AND MADE A PART HERE OF AS
THOUGH SET FORTH FULLY, AND ASSERTS THE FOLLOWING
IN SUPPORT THEREOF:

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

DATE: 10/17/06

1.) THE PLAINTIFF IN THIS CASE JIMMIE LEWIS SEEKS
TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND
NOTHING BUT THE TRUTH TO THE HONORABLE JUDGE
GREGORY M. SLEET, IN ORDER TO ENSURE THAT JUSTICE
IS SERVED FULL AND FAIR IN ACCORDANCE TO THE
PLAINTIFF'S U.S.C.A RIGHTS, AS WELL AS IN ACCORDANCE
TO THE DEFENDANTS U.S.C.A RIGHTS.

THEREFORE, BECAUSE THE DEFENDANT DR. SYLVIA FOSTER
ANSWERS TO THE PLAINTIFF'S SECOND AMENDED COMPLAINT
NUMBERS 1 THRU 8, OF NUMBERS 1 THRU 8 OF THE
SAID COMPLAINT, I.E, " DENIED ", ARE INSUFFICIENT
AND EVASIVE, THE PLAINTIFF HEREBY REQUEST THAT THE
HONORABLE COURT NOT CONSIDER THE DEFENDANTS ANSWERS
AS EVIDENCE AGAINST THE PLEADINGS STATED IN HIS
COMPLAINT, WHEN A DECISION IS RENDERED IN REGARDS
TO HER ANSWERS, BECAUSE THE DEFENDANT HAS FAILED
TO SHOW AND PROVE TO THE COURT THAT THERE IS NO
TRIABLE DISPUTE OF MATERIAL FACT REGARDING THE
PLAINTIFF'S CLAIMS AGAINST THE DEFENDANT.

2.) THE DEFENDANT NOTES AS DEFENSE, THAT THE
PLAINTIFF HAS FAILED TO STATE A CLAIM ON WHICH
RELIEF CAN BE GRANTED.   IN RESPONSE, ON JULY 5, 06,
THE HONORABLE JUDGE GREGORY M. SLEET SUBMITTED HIS AMENDED
MEMORANDUM TO THE LITIGATING PARTIES, STATING THAT THE PLAINTIFF
HAS INDEED STATED CLAIMS FOR WHICH RELIEF CAN BE GRANTED
AGAINST THE DEFENDANT.

( SEE THE HONORABLE JUDGE SLEETS JULY 5, 06 AMENDED )
( MEMORANDUM  PAGES 5-6, 7-13, 15-17, ATTACHED )
HEREIN AS EXHIBIT

3.) THE DEFENDANT NOTES AS DEFENSE, THAT SHE
   IS ENTITLED TO QUALIFIED IMMUNITY.

     IN RESPONSE, THE DEFENDANT DR. SYLVIA FOSTER
DURING THE TIME AND DATE DEPICTED IN THE PLAINTIFF'S
SECOND AMENDED COMPLAINT, WAS EMPLOYEED AT
THE D.P.C AS THE CHIEF FORENSIC PSYCHIATRIST FOR
THE STATE OF DELAWARE, IN WHICH THE D.P.C
IS A STATE AGENCY, THEREFORE THE DEFENDANT WAS
A PERSON ACTING UNDER COLOR OF STATE LAW AND
IS NOT ENTITLED TO QUALIFIED IMMUNITY.

     IN SUPPORT THEREOF, SEE THE HONORABLE JUDGE
SLEET'S JULY 5, 06 AMENDED MEMORANDUM PAGES 5-6
ATTACHED HEREIN AS EXHIBIT

4.) THE DEFENDANT NOTES AS DEFENSE, THAT SHE
   IS ENTITLED TO FULL IMMUNITY PRIVILEGE FOR
   REPORTING JUDICIAL PROCEEDINGS.

     IN RESPONSE, THE DEFENDANT DR. SYLVIA FOSTER
SHOULD NOT BE ENTITLED TO FULL IMMUNITY PRIVULEGE DUE
TO HER ACTING OUTSIDE THE ESTABLISHED GUIDELINES UNDER
11 DEL C § 468 AS STATED IN THE PLAINTIFF'S SECOND AMENDED
COMPLAINT, AS WELL AS BECAUSE DR. FOSTER IS A CONTRACT
EMPLOYEE AND AS SUCH DOES NOT HAVE SOVEREIGN IMMUNITY
PRIVILEGES AS DO SOME GOVERMENT EMPLOYEE'S

     IN SUPPORT THEREOF, SEE THE PLAINTIFF'S SECOND
AMENDED COMPLAINT, AS WELL AS DR. FOSTERS JUNE 20, 05
MOTION TO DISMISS, PAGE 2 PARAGRAPH #3 ATTACHED
HEREIN AS EXHIBIT.

5.) THE DEFENDANT NOTES AS DEFENSE, THAT THE PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT 42 U.S.C § 1997 e, AND MENTAL HEALTH PATIENTS BILL OF RIGHTS 16 DEL C § 5161 (C).

IN RESPONSE, ON JULY 5, 06 THE HONORABLE JUDGE GREGORY M. SLEET SUBMITTED HIS AMENDED MEMORANDUM TO THE LITIGATING PARTIES EXPLAINING EXACTLY WHY THE DEFENDANTS P.L.R.A CLAIM IS FRIVOLOUS AND WILL NOT BE CONSIDERED WITH REGARDS TO THE COURT DISMISSING THE PLAINTIFF'S COMPLAINT.
( SEE THE HONORABLE JUDGE SLEET'S JULY 5, 06 AMENDED
MEMORANDUM PAGES 11-13 ATTACHED HEREIN AS EXHIBIT )

6.) THE DEFENDANT NOTES AS DEFENSE, THAT THE PLAINTIFF'S CLAIMS IN FULL OR IN PART ARE BARRED BY THE DOCTRINE OF COMPARITIVE NEGLIGENCE AND OR ASSUMPTION OF RISK, (DENIED BY THE PLAINTIFF).
(A)    IN RESPONSE, THE PLAINTIFF SUBMITTED A FUNDEMENTAL EXPLANATION AS TO ONE OF THE REASONS HE THINKS THAT THE DEFENDANT DR. FOSTER ORDERED THE PLAINTIFF TO BE CONFINED IN ISOLATION, 4 POINT RESTRAINED AND INJECTED WITH COCKTAILS OF PSYCHOTROPIC DRUGS ON NUMEROUS OCCASSIONS FOR DISCIPLINARY REASON, BUT THE PLAINTIFF DOES NOT TAKE RESPONSIBILITY IN FULL OR IN PART FOR THE INJURIES AND VIOLATIONS THAT THE DEFENDANT COMMITTED. ONCE THE PLAINTIFF WAS SECURED INSIDE OF THE ISOLATION ROOM AND OR (4) POINT RESTRAINED, THERE IS ABSOLUTELY NO DOUBT THAT THE DEFENDANT ACTED RECKLESSLY IN REGARDS TO WHATEVER DEFENSE STATED,

(CONT #6 - a)

WHEN THE DEFENDANT ORDERED TO INJECT THE PLAINTIFF WITH
COCKTAILS OF PSYCHOTROPIC DRUGS EACH AND EVERY TIME,
DUE TO THE PLAINTIFF NOT BEING ABLE TO HARM HIMSELF AND
OR ANYONE ELSE WHILE CONFINED IN THE ISOLATION ROOM AND
OR 4 POINT RESTRAINED. THIS SHOULD BE CONSIDERED ALONG
WITH THE FACT THAT THE DOCTOR WAS WELL AWARE THAT THE
PLAINTIFF COMPLAINED TO HER AND STAFF MEMBERS ON
NUMEROUS DIFFERENT OCCASSIONS OF SIDE EFFECTS THAT
CAUSED PAIN AND SUFFERING, SUCH BEING HIGH BLOOD PRESSURE,
INSOMNIA, HEADACHES, EAR RINGING, DELUSIONS, TREMORS,
HALLUCINATIONS, DIZZINESS AND OR VERTIGO, SPEECH PROBLEMS,
PAIN IN HIS TESTICALS AND PAIN DURING URINATION. AND
THAT PSYCHOTROPIC DRUGS WERE INDEED ADMINISTRED,
FOR WHICH IS A DETRIMENTAL CONTRADICTION MADE BY
DR. FOSTER WHO REPORTED IN HER JUNE 10, 04 FORENSIS
REPORT, (THAT INITIALLY MR. LEWIS WAS PRESCRIBED NO
PSYCHOTROPIC DRUGS, AS THERE WAS NO EVIDENCE OF A
MOOD DISORDER, AND NO EVIDENCE OF PSYCHOSIS)
SEE ATTACHED FORENSIC REPORT DATED JUNE 10, 04.


(8)   THE DEFENDANT ASSERTS THAT THE PLAINTIFF IN THIS
CASE MANIFESTED CONTRIBUTORY NEGLIGENCE, WITHOUT
SUBMITTING PLEADINGS OF SPECIFIC DETAILS OF THE PLAINTIFF'S
ALLEGED ACTIONS THAT WOULD HAVE COMPELLED THE PLAINTIFF
TO ANSWER, AND THEREFOR GRANT THE COURT THE JUDICIAL
OPPORTUNITY TO DETERMINE IF THE PLAINTIFF'S ALLEGED
ACTIONS, IN FACT AND OR IN LAW DOES OR DOESN'T DEFINE
COMPARATIVE NEGLIGENCE AND OR ASSUMPTION OF RISK.

(CONT #6-B.)

THEREFOR, THE DEFENDANTS CLAIM OF COMPARATIVE NEGLIGENCE AND OR ASSUMPTION OF RISK IS INSUFFICIENT IN LAW AND IN FACT, FOR WHICH GIVES REASON WHY THE COURT SHOULD NOT CONSIDER THE DEFENDANTS MERITLESS AND FRIVOLOUS CLAIMS AGAINST THE PLAINTIFFS PLEADING, AS STATED IN HIS SECOND AMENDED COMPLAINT WHEN JUDGEMENT IS RENDERED ON THIS ISSUE.

(C)   UNDER DELAWARE LAW, IF CONDUCT OF DEFENDANT IS RECKLESS, DEFENSE OF COMPARATIVE NEGLIGENCE DOES NOT APPLY.   SEE O'BRIEN V. DELAWARE OLDS. INC- 1993, 833 F. SUPP 447. ALSO ASSUMPTION OF RISK, SUBSUMED WITH COMPARATIVE NEGLIGENCE, SEE — PATTON V. SIMONE, 1992, 626 A.2d 844.

7.)   THE DEFENDANT NOTES AS DEFENSE, IF PLAINTIFF SUSTAINED INJURIES AS ALLEGED IN HIS COMPLAINT, (WHICH IS HEREIN STRICKLY DENIED) PLAINTIFF'S INJURIES WERE CAUSED BY INDIVIDUALS OVER WHICH ANSWERING DEFENDANT HAD NO CONTROL.

IN RESPONSE, THE DEFENDANTS' DEFENSE AS STATED HEREIN IS INSUFFICIENT AND EVASIVE, DUE TO THE LACK OF SPECIFIC DETAILS OF HER INDIVIDUAL ACCOUNT OF THE INCIDENTS AS STATED IN THE PLAINTIFF'S SECOND AMENDED COMPLAINT, BUT IN RETROSPECT THE DEFENDANT IN HER JUNE 15, 06 ANSWER TO THE PLAINTIFF'S ~~ANSWERED~~ ~~COMPLAIN~~ SECOND AMENDED COMPLAINT PAGE 2 #14, STATES AS HER SIXTH AFFIRMATIVE DEFENSE THAT, PLAINTIFF'S INJURIES WERE CAUSED BY INDIVIDUAL OVER WHICH ANSWERING DEFENDANT HAD NO CONTROL —

$(CONT \# 7)$

THE PLAINTIFF VIEWS HER PLEADINGS AS A
DETRIMENTAL CONTRIDICTION TO THE DEFENDANTS
PREVIOUS PLEADINGS DATED JUNE 20, 2005 MOTION —
TO DISMISS, FOR WHICH THE DEFENDANT DR. FOSTER
AVAILED HERSELF IN DEFENSE UNDER COLOR OF STATE
LAW 11 DEL C § 468 (3),(5), AND (7) FOR WHICH
NOTES THAT (A CHIEF FORENSIC PSYCHIATRIST SUCH AS
DR. FOSTER.), IS PERMITTED THE AUTHORITY TO ORDER
THE USE OF FORCE, FOR WHICH WAS STATED AS DEFENSE
INITIALLY IN RESPONSE TO THE PLAINTIFFS CLAIMS AS
NOTED IN HIS SECOND AMENDED COMPLAINT.
( SEE ATTACHED EXHIBIT OF DR. FOSTERS JUNE 20 2005 )
MOTION TO DISMISS.

THE PLAINTIFF FINDS THIS TO BE INCRIMINATING
DUE TO THE FACT THAT DR. FOSTER DID NOT INITIALLY
CHOOSE TO AVAIL HERSELF IN ACTUAL INNOCENCE, NOR DID
DR. FOSTER CHOOSE TO AVAIL HERSELF IN DEFENSE UNDER
COLOR OF STATE LAW 11 DEL C § 468 (2) AND OR (4) IN
WHICH WOULD HAVE DISCRIBED MAINTENANCE OF REASONABLE
DISCIPLINE, PREVENTION OF MISCONDUCT, OR AUTHORITY AS
A DOCTOR WHO WAS ADMINISTERING TREATMENT.
REVIEWING THE DEFENDANTS PLEADINGS OF AVAILING HERSELF
UNDER COLOR OF STATE LAW(S) 11 DELC § 468 (3); (5)+(7),
IS VITALLY ESSENTIAL IN DETERMINING IF DR. FOSTERS
ACTIONS WERE SADISTIC AND OR MALICIOUS REGARDING
HER INTENTIONS TOWARDS THE PLAINTIFF.

8.) THE DEFENDANT NOTES AS DEFENSE, THAT THE PLAINTIFF'S CLAIMS ARE BARRED BY DOCTRINES OF LACHES, ESTOPPEL, ACQUIENSCENCE, RATIFICATION, UNCLEAN HAND AND WAIVER.

(A)    IN RESPONSE, REGARDING LACHES, THE DEFENDANT HAS FAILED TO SUBMIT PLEADINGS THAT DEFINE ANY SORT OF ACTIONS COMMITTED BY THE PLAINTIFF THAT CAUSED HER TO BE PREJUDICED BY UNREASONABLE DELAY. THERE FOR THE DEFENDANTS DEFENSE OF LACHES IS BOTH MERITLESS AND FRIVOLOUS, AND SHOULD NOT BE CONSIDER WHEN JUDGEMENT IS RENDERED REGARDING THIS ISSUE.

(B)   REGARDING ESTOPPEL; NOT ONE SENTENCE, PHRASE OR PARAGRAPH OF THE PLAINTIFF'S SECOND AMENDED COMPLAINT WHATSOEVER CAN BE OR HAS BEEN DISCRIBED AS CONTRIDICTING THE PLAINTIFF'S INITIAL COMPLAINT AND OR HIS FIRST AMENDED COMPLAINT, THEREFOR THE DEFENDANTS DEFENSE OF ESTOPPEL IS BOTH MERITLESS AND FRIVOLOUS, AND SHOULD NOT BE CONSIDERED WHEN JUDGEMENT IS RENDERED REGARDING THIS ISSUE.

(C) REGARDING ACQUIESCENCE; THE PLAINTIFF NEVER STOOD IDILY BY TACIT OR IN PASSIVE ACCEPTANCE WHEN HE WAS BEING INJURED AND VIOLATED. THE PLAINTIFF VERBALIZED EACH AND EVER TIME, NO, NO, NO, I DONT WANT TO BE INJECTED WITH PSYCHOTROPIC DRUGS, STOP, STOP, STOP. THEREFOR THE DEFENDANTS DEFENSE OF ACQUIESCENCE IS BOTH MERITLESS AND FRIVOLOUS, AND SHOULD NOT BE CONSIDERED WHEN JUDGEMENT IS RENDERED REGARDING THIS ISSUE.

(D) REGARDING RATIFICATION; THE PLAINTIFF NEVER STOOD BY IDILY ANY TACIT OR IN PASSIVE ACCEPTANCE WHEN HE WAS BEING INJURED OR VIOLATED, THE PLAINTIFF VERBALIZED EACH AND EVERY TIME, NO, NO, NO, I DONT WANT TO BE INJECTED WITH PSYCHOTROPIC DRUGS, STOP, STOP, STOP. THEREFORE THE DEFENDANTS DEFENSE OF ACQUIESCENCE IS BOTH MERITLESS AND FRIVOLOUS, AND SHOULD NOT BE CONSIDERED WHEN JUDGEMENT IS RENDERED REGARDING THIS ISSUE.

(E) REGARDING WAIVER; THE PLAINTIFF NEVER STOOD BY IDILY TACIT OR IN PASSIVE ACCEPTANCE WHEN HE WAS BEING INJURED OR VIOLATED. THE PLAINTIFF VERBALIZED EACH AND EVERY TIME, NO, NO NO, I DONT WANT TO BE INJECTED WITH PSYCHOTROPIC DRUGS, STOP, STOP, STOP, THEREFORE THE DEFENDANTS DEFENSE OF UNCLEAN HAND AND WAIVER IS BOTH MERITLESS AND FRIVOLOUS, AND SHOULD NOT BE CONSIDERED WHEN JUDGEMENT IS RENDERED REGARDING THIS ISSUE.

9.) THE PLAINTIFF HEREBY GIVES NOTICE THAT HE INTENDS TO RELY UPON SUCH OTHER AND FURTHER AFFIRMATIVE DEFENSES WHICH BECOME AVAILABLE OR APPARENT DURING PRETRIAL DISCOVERY OR LITIGATION PROCEEDINGS IN THIS CIVIL ACTION, AND HEREBY RESERVES THE RIGHT TO ASSERT ANY SUCH AFFIRMATIVE DEFENSES WHICH ARE INCORPORATED HEREIN BY REFERENCE AND MADE PART HEREOF AS THOUGH SO SET FORTH FULLY HEREIN.

FOR THE FOREGOING REASONS STATED HEREIN
THE PLAINTIFF HEREBY REQUEST THAT THIS HONORABLE
COURT TO RENDER JUDGEMENT THAT THE DEFENDANTS
HAVE FAILED TO AT LEAST SHOW AND PROVE THAT
THERE IS AT LEAST SOME METAPHYSICAL DOUBT
AS TO THE MATERIAL FACTS OF THE PLAINTIFF'S CLAIMS
AS STATED IN HIS SECOND AMENDED COMPLAINT,
FOR WHICH VALIDATES AND SUPPORT THE COURT
RENDERING JUDGEMENT THAT THERE ARE GENUINE
ISSUES FOR TRIAL.

CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS
DUE HEREBY CERTIFY ON THIS __17TH__, DAY OF __OCT__,
2006, THAT I DID MAIL ONE TRUE AND CORRECT COPY
OF THE PLAINTIFF'S AMENDED RESPONSE TO
DR. SYLVIA FOSTERS ANSWER TO THE PLAINTIFF'S
SECOND AMENDED COMPLAINT, BY U.S MAIL TO
THE FOLLOWING:

CLERK OF THE COURT (GMS)            CYNTHIA G. BEAM ESQ
U.S. DISTRICT COURT                 1001 JEFFERSON PLAZA, SUITE 202
844 N. KING ST, LOCKBOX 18          WILMINGTON, DE 19801
WILMINGTON, DE 19801

DATE: 10/17/06                      Jimmie Lewis
                                    SBI # 506622
                                    DEL. CORR. CENTER
                                    1181 PADDOCK RD
                                    SMYRNA, DE 19977

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1350 GMS |
| | ) |
| DR. SYLVIA FOSTER, STAFF | ) |
| MEMBERS, and MR. GRAY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

RECEIVED
JUL 1 4 2006
H&F

## AMENDED MEMORANDUM

## I.   INTRODUCTION

Jimmie Lewis ("Lewis") is presently incarcerated at the Delaware Correctional Center (the "DCC"), which is located in Smyrna, Delaware. On October 13, 2004, Lewis filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. This action arises out of incidents that allegedly occurred while Lewis was confined to the Delaware Psychiatric Center (the "DPC") in order to undergo a mental health evaluation, pursuant to a court order signed by Judge Charles Toliver. In his complaint and amended complaint (D.I. 10) Lewis alleges that Sylvia Foster, M.D. ("Dr. Foster"), Robert Gray ("Gray"), and other DPC staff members ("DPC Staff Members") have violated his constitutional rights.

Presently before the court are the following motions: (1) Dr. Foster's motion to dismiss for lack of jurisdiction; (2) Dr. Foster's motion to dismiss for failure to state a claim; (3) Gray's motion to dismiss for failure to state a claim; and (4) Lewis' motion to amend and supplement thereto. For the reasons stated below, the court will deny Dr. Foster's motion to dismiss for lack of jurisdiction; the court will grant in part and deny in part Dr. Foster's motion to dismiss for failure to state a claim;

(3) the court will deny Gray's motion to dismiss for failure to state a claim; and the court will grant in part and deny in part Lewis' motion to amend and supplement thereto.

## II.    BACKGROUND

Lewis' first complaint alleges that Dr. Foster diagnosed Lewis as "malingering"[1] and stated that he received no "psychotropic" medication during his stay at the DPC, because he "revealed no evidence of mood disorder." (D.I. 2 ¶ 4.)   Lewis further alleges that, contrary to Dr. Foster's diagnosis, he was "strapped down with restraints and injected with psychotropic drugs[,] such as Haldol, Ativan and Geodon." (*Id.*) He requests the court to investigate his claim and award him monetary relief for pain and suffering because he was "violated." (*Id.* ¶ 5.)

On March 8, 2005, Lewis filed an amended complaint naming Dr. Foster, as well as several DPC Staff Members, including Gray, as defendants. (*See* D.I. 10.) According to Lewis, "Judge Charles H. Toliver IV ordered that [he] be transfered [sic] to the Delaware Psychiatric Center for a psychiatric evaluation to determine [his] competency [to assist in the defense of criminal charges against him] and to receive treatment." (D.I. 10, at 1.) Lewis also alleges that after he arrived at the DPC he "was ill and couldn't complete the admissions interview," which resulted in a "disciplinary restriction." (*Id.*)

According to the amended complaint, on June 6, 2004, Lewis was "strapped down with four point restraint [sic] and injected with psychotropic medicines for disciplinary reasons, not for psychiatric reasons per Dr. Foster." (*Id.*) The amended complaint then documents several occasions during which Lewis was "strapped down with four point restraints and injected with psychotropic

---

[1] Malingering is defined as "the purposeful exaggeration of physical or psychological complaints in order to receive some kind of reward." *Psychology Today*, available at www.psychologytoday.com/conditions/malingering.html (last visited January 24, 2006).

2

medicines." (*Id.* at 2.) Lewis alleges that Dr. Foster ordered him restrained for disciplinary, rather than psychiatric reasons, amounting to deliberate indifference on her part. (*Id.* at 1-2.)

Additionally, Lewis alleges that, on or about June 13, 2004, "Nurse Helen" instructed four or five DPC Staff Members to forcibly remove a bag of M&Ms candy from his hand because he was on disciplinary restriction. (*Id.* at 2.) According to Lewis, one of the DPC Staff Members, "Grey [sic]," choked him while the other staff members assaulted him. (*Id.*) After he was subdued, one or several unnamed DPC Staff Members put him in restraints and injected with psychotropic medicine. (*Id.*)

On June 25, 2005, the DPC released Lewis and transferred him back to the DCC. (*Id.* at 3.) Lewis makes several allegations regarding the absence of a court order for his transfer, as well as erroneous responses to a Writ of Habeas Corpus filed in the state court. However, he does not explain the significance of these events to the case at bar. (*See id.*)

## III.    DISCUSSION

### A.    Dr. Foster's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dr. Foster has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Dr. Foster contends that Lewis' claims must be dismissed because the court is without jurisdiction to hear them. Specifically, Dr. Foster contends that Lewis has not presented a federal question because he seeks monetary damages only for pain and suffering. (D.I. 15 ¶ 3.) Dr. Foster further contends that Lewis raises no issues in his pleadings based on his imprisonment. Therefore, his complaint cannot even arguably be construed as stating claims under

3

42 U.S.C. § 1983. (*Id.* ¶ 4.)[2] Lastly, Dr. Foster contends that Lewis' complaint fails to meet the requirements under the diversity of citizenship statute, 28 U.S.C. § 1323, because it does not allege that the parties are citizens of different states. (*Id.* ¶¶ 6-7.)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Dr. Foster's motion makes several facial challenges to the complaint because her arguments are based solely upon the application of legal principles to the facts as alleged in the complaint. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiffs' favor. *See id.*

After having considered Lewis' allegations as true and drawing all reasonable inferences therefrom, the court concludes that Dr. Foster's motion is without merit. Federal courts are vested with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nothing in the language of section 1331 requires a plaintiff to plead any type of damages, i.e. compensatory or punitive. Lewis' amended complaint states that Dr. Foster was deliberately indifferent when she ordered him to be strapped down and given "psychotropic" medicines for disciplinary reasons. (D.I. 10, at 1.) Because Lewis is imprisoned and he complains, at the very least, about his conditions of confinement, his claims arise under 42 U.S.C. § 1983, a law of the United States. The court, therefore, has jurisdiction over Lewis' claims. Accordingly, the court will not address Dr. Foster's additional jurisdictional attacks.

---

[2] Dr. Foster contends in this motion that Lewis has not made any allegations in his pleadings based on his imprisonment. However, in her motion to dismiss for failure to state a claim Dr. Foster states that Lewis is a "prisoner" and that the court may construe his claims as being based on his imprisonment under the Civil Rights Act. (D.I. 16 ¶¶ 1, 5-6.) Thus, she concedes that Lewis' claims arise under 42 U.S.C. § 1983.

4

## B.    Whether Lewis has Stated Claims against Dr. Foster and Gray Under Section 1983

Dr. Foster and Gray have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 183 (3d Cir. 1993). Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir.1997). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Lewis filed his complaint and amended complaint against Dr. Foster and Gray, alleging civil rights violations pursuant to 42 U.S.C. § 1983. In order to recover against the defendants, Lewis

5

must show that he was deprived of a constitutional right by a person acting under the color of state law. 42 U.S.C. § 1983; *see, e.g.*, *Groman v. Tp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Here, it is clear that Dr. Foster and Gray were acting under color of state law because, at the time of the alleged incidents, Dr. Foster was Chief Forensic Psychiatrist for the State of Delaware and Gray was an employee of the DPC, an agency of the State of Delaware. *See West v. Atkins*, 487 U.S. 42, 48-54 (1988). Therefore, the court next turns to whether Lewis has sufficiently alleged that Dr. Foster and/or Gray deprived him of any constitutional rights.

1.   Whether Lewis has sufficiently stated a claim that Dr. Foster's order to restrain him violated his Fourteenth Amendment right to be free from restraint

Lewis alleges that Dr. Foster ordered several unnamed DPC staff members to strap him in four point restraints on several occasions. Implicit in Lewis' allegation is a claim that Dr. Foster and the DPC Staff Members violated his Fourteenth Amendment right to be free from restraint. Dr. Foster concedes that Lewis has alleged a Fourteenth Amendment claim. However, she contends that the claim must fail under a "freedom from restraint" analysis because Lewis cannot meet the "atypical and significant hardship" requirement enunciated by the Supreme Court in *Sandin v. Conner*. (*Id.*) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The court agrees.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources, the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part by Sandin v. Conner*, 515 U.S. 472 (1995); *Bd of Regents v. Roth*, 408 U.S. 564, 575 (1972). In *Sandin*, the Supreme Court explained that state created liberty interests under the due process clause are limited to "freedom from restraint" that imposes "atypical and significant hardship

6

in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. In determining whether an inmate has suffered an "atypical and significant hardship" as a result of his confinement, the court considers two factors: "1) the amount of time the prisoner was placed into disciplinary segregation, and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in solitary confinement." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (citing *Sandin*, 515 U.S. at 486).

In the present case, Lewis alleges only that Dr. Foster's decision to strap him down with four point restraints was disciplinary. The complaint does not allege that Lewis was placed in restraints for an unusual amount of time, or that he was treated differently than the other inmate patients at the DPC. Thus, the court cannot conclude that Lewis suffered an "atypical and significant hardship" when he was placed in restraints. Consequently, Lewis' "freedom from restraint" claim has no arguable basis in law or in fact. As such, the court will grant Dr. Foster's motion to dismiss this claim.

2. Whether Lewis has sufficiently stated a claim that Dr. Foster's order to have him injected with antipsychotic medicines against his will violates his Fourteenth Amendment rights

Lewis' amended complaint alleges that Dr. Foster's decision to have him injected with psychotropic drugs was against his will, thereby violating his constitutional rights. It is clear that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteen Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). In *Harper*, the Supreme court explained that this liberty interest is protected by principles of both procedural and substantive due process. *Id.* at 220-23. "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness

7

with antipsychotic drugs against his will, [only] if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. Moreover, "forcing antipsychotic drugs on a convicted [or pretrial] prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

Here, the amended complaint alleges that Dr. Foster ordered Lewis to be injected with unwanted psychotropic drugs. Lewis, therefore, has stated a claim for violation of his Fourteenth Amendment Due Process rights. Absent from Dr. Foster's motion to dismiss, however, is any discussion of this claim, or why the antipsychotic drugs were given to Lewis against his will. Thus, it appears to the court at this juncture that Lewis can prove a set of facts that would entitle him to relief with respect to this claim. Accordingly, the court will allow this claim to go forward.

3.    Whether Lewis has sufficiently stated a claim that Dr. Foster's order to have him restrained and injected with antipsychotic medicines violates his Eighth Amendment right to be free form cruel and unusual punishment

The amended complaint also alleges that although Dr. Foster's report to the Delaware Superior Court stated that Lewis "demonstrated no evidence of a mood disorder or psychosis during his admission to [the] DPC,"[3] she ordered him strapped down with restraints and injected with psychotropic medicines for disciplinary reasons. (D.I. 10, at 1.) According to Lewis, Dr. Foster's order demonstrates deliberate indifference on her part. (*Id.*) Thus, Lewis alleges that Dr. Foster violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment of the United States Constitution governs penal measures and prison conditions, and prohibits use of penal measures and existence of conditions which violate civilized

---

[3] This quotation is from Dr. Foster's report that she submitted to the Delaware Superior Court. The report is attached as a non-numbered exhibit to Lewis' amended complaint.

8

standards and concepts of humanity and decency. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). In the prison context, however, "[n]ot every governmental action affecting the interest or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). Only those actions that impose an unnecessary and wanton infliction of pain rise to the level of cruel and unusual punishment. *Id.*

Lewis' claims constitute a challenge to his conditions of confinement at the DPC. As such, the court analyzes the claims under the deliberate indifference standard of the Eighth Amendment. Prison officials violate an inmate's rights under the Eighth Amendment when they act with deliberate indifference or reckless disregard toward an inmate's rights, health or safety, and their conduct is objectively serious, or has caused an objectively serious injury to the inmate. *See Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994). Under this partly objective, partly subjective test, a prison official's conduct is "objectively serious" if it is "incompatible with 'contemporary standards of decency.'" *Carrigan v. Davis*S, 70 F. Supp. 2d 448, 452 (D. Del. 1999) (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). The deliberate indifference prong of the test is met only if the prison official "knows and disregards an excessive risk to inmate rights, health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294 (1991). Mere allegations of negligence do not meet the pleading standards for deliberate indifference. *See Estelle*, 429 U.S. at 105-106.

Here, the amended complaint contains more than mere allegations of negligence. Indeed, Lewis alleges that Dr. Foster acted with deliberate indifference when she disciplined him by ordering

9

him restrained and injected with medications. Based on these allegations, the court concludes that Lewis may be able to show that Dr. Foster unnecessarily and wantonly inflicted pain on him, thereby exhibiting deliberate indifference to his rights. Because Dr. Foster has not addressed this section 1983 claim in her motion to dismiss, the court cannot conclude at this juncture that Lewis has failed to state a claim against her under the Eighth Amendment.[4]

4.    Whether Lewis has sufficiently stated a claim that Gray used excessive force against him, thereby violating his Eighth Amendment right to be free form cruel and unusual punishment

Gray asserts that the court should dismiss Lewis' claims against him because the complaint fails to include any allegation sufficient to sustain recovery under 42 U.S.C. § 1983. According to the motion, Lewis mentions Gray only on page two of his complaint, when describing an altercation among Lewis and several other DPC Staff Members, including Gray. (D.I. 24 ¶ 3.) Gray also asserts that Lewis fails to identify, either overtly or by implication, any constitutional or statutorily protect right of which Gray deprived him. (*Id.* ¶ 4.) The court cannot agree.

After having read Lewis' amended complaint, the court concludes that it implicitly, if not overtly, alleges a claim under the Eighth Amendment based on the use of excessive force. The "altercation" between Lewis and Gray that the complaint describes concerns Gray forcibly removing of a bag of M&Ms candy from Lewis' hand, and then choking Lewis. (D.I. 10, at 2.) While it is difficult for the court to conclude that the removal of a bag of candy from a prisoner's hand is "excessive," surely a prisoner's claim that he was choked is an allegation of excessive force.

---

[4] The court will allow Lewis to amend his complaint in order to allege any physical injuries that resulted from Dr. Foster's alleged conduct. The court will discuss its rationale for allowing Lewis to amend in section III.C. below.

The standard that the court must use to determine whether a state actor's conduct violated the Eighth Amendment is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (citations omitted). The court must consider the following factors in applying this standard: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Accepting Lewis' allegations as true, the court concludes that his complaint alleges facts sufficient to state an excessive force claim under the Eighth Amendment. As previously explained, Lewis specifically alleges that Gray choked him while three or four other male DPC Staff Members assaulted him with their fists and feet. Gray's motion to dismiss contends only that Lewis has not alleged any deprivation of a constitutional right. In other words, Gray's motion neither mentions nor addresses any of the above-discussed factors regarding Lewis' excessive force allegation. Accordingly, the court will deny Gray's motion to dismiss at this time.

## C.    Whether 42 U.S.C. § 1997e(e) Bars Lewis from Recovery for Alleged Constitutional Violations

Dr. Foster's motion contends that Lewis' complaint alleges no physical injury and, therefore, should be read as one for emotional damages. (D.I. 16 ¶ 9.)[5] Additionally, Dr. Foster contends that 42 U.S.C. § 1997e(e) acts as a complete bar to Lewis' constitutional claims that are

---

[5] Gray's motion to dismiss does not address this issue. However, this discussion applies to Lewis' Eighth Amendment claim against Gray, as it is an alleged constitutional violation.

11

premised on emotional injuries.

Section 1997e(e) of the Prison Litigation Reform Act provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injuries suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit has held that section 1997e(e)'s physical injury requirement applies only to claims for compensatory damages, because "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (quoting *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000)). Further, section 1997e(e) does not apply to claims seeking injunctive or declaratory relief. *Mitchell*, 318 F.3d at 533-34. Thus, section 1997e(e)'s "physical injury" requirement will not effect any nominal, punitive, or injunctive relief that a plaintiff has requested in his complaint.

Turning to Lewis' complaint, the relief that he requests is twenty million dollars for "pain and suffering," and for the court to "notify the Superior Court that [Dr. Foster's] report cannot be relied on by the doctor herself." (D.I. 10, at 4.) Lewis' complaint, therefore, requests compensatory damages and injunctive relief. With respect to Lewis' request for compensatory damages, the court agrees with Dr. Foster, and concludes that the complaint does not state a claim for physical injury. However, the court will grant Lewis leave to amend his complaint in order to provide allegations with respect to any physical injuries he received when he was restrained and injected with medicines, as well as when he was choked and assaulted.

Additionally, Lewis has not requested nominal or punitive damages from the defendants. With respect to the former, the court will also grant Lewis leave to amend his complaint to

12

specifically request punitive damages, based on the alleged violations of his Fourteenth and Eighth Amendment rights discussed above. As for the latter, "'it is not necessary to allege nominal damages.'" *Allah*, 226 F.3d at 251 (quoting *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965)). Thus, at this juncture, Lewis may recover nominal damages to vindicate his constitutional rights, as well as the injunctive relief that he requests. Accordingly, the court will grant in part and deny in part Dr. Foster's motion to dismiss based on 42 U.S.C. § 1997e(e), as well as grant Lewis leave to amend his complaint in the manner previously discussed.

## D.     Lewis' State Law Claims

1.     Whether Lewis has stated a medical negligence claim against Dr. Foster

Lewis alleges that Dr. Foster's report states he received no psychotropic medication during his time at the DPC because he demonstrated no evidence of psychosis or mood disorder. Lewis further alleges, however, that on five or more occasions he was strapped down with four point restraints and injected with drugs. Next to these allegations appears the word "malpractice." (D.I. 2 ¶ IV.) A fair inference the court draws from this language is the allegation that Dr. Foster's order to have him restrained and injected with medicine against his will constitutes medical malpractice. Dr. Foster concedes that the complaint sets forth allegations regarding common law medical malpractice. Nonetheless, Dr. Foster maintains that Lewis' claim must be dismissed because he has not provided an affidavit of merit signed by an expert witness, as required by Del. Code Ann. tit. 18 § 8653. (D.I. 16 ¶ 14.)

Medical malpractice is a negligence action and is governed by the Delaware Health Care Negligence Insurance and Litigation Act (the "Act"). The Act defines medical negligence as:

any tort or breach of contract based on health care or professional services rendered,

13

> or which should have been rendered, by a health care provider to a patient. The standard of skill and care required of every health care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence.

Del. Code Ann. tit. 18 § 6801(7). When a party alleges medical negligence, Delaware law requires the party to produce expert medical testimony detailing: "(1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted). Specifically, the Act requires that any complaint alleging medical negligence be accompanied by "[a]n affidavit of merit as to each defendant signed by an expert witness, as defined in § 6854 of this title, and accompanied by a current curriculum vitae of the witness, stating that there are reasonable grounds to believe that there has been healthcare medical negligence committed by each defendant." Del. Code Ann. tit. 18 § 8653. In addition, the Act directs the court to refuse to file and docket the complaint if it is not accompanied by an expert affidavit.

Here, Lewis alleges that Dr. Foster committed medical negligence. However, he did not include an affidavit of merit signed by an expert witness with his complaint. As such, the court will grant Dr. Foster's motion to dismiss Lewis' state law medical malpractice claims. *See Jackson v. First Correctional Med.*, 380 F. Supp. 2d 387, 392 n.2 (D. Del. 2005) (citing Del. Code Ann. tit. 18 § 6853).

14

2.    Whether Lewis has Stated a Claim for Civil Assault and Battery Under Delaware
Law

Lewis' amended complaint alleges that Gray choked him, while three or four other DPC Staff
Members assaulted him with their fists and feet. (D.I. 10, at 2.) By implication, the complaint
alleges that these acts constituted a battery. Lewis' statements that Dr. Foster ordered him to be
administered medicine against his will also allege a claim for battery. The state of Delaware has
adopted the definition of battery from the Restatement (Second) of Torts, which states "[a]n actor
is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive
contact with the person . . . and (b) a harmful contact with the person of the other directly or
indirectly results." *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995) (quoting *Restatement
(Second) of Torts* § 18 (1965)); *see* W. Page Keeton, et al., Prosser and Keeton on Torts § 9, at 39
(5th ed. 1984) ("A harmful or offensive contact with a person, resulting from an act intended to
cause the plaintiff or third person to suffer such a contact, or apprehension that such contact is
imminent, is a battery."). Lack of consent is an essential element of battery. *Brzoska*, 668 A.2d at
1360.

In the present case, Lewis alleges that he was choked by Gray and beaten by several DPC
Staff Members without his consent. This allegation is sufficient to state a claim for battery. Gray's
motion to dismiss addresses only whether Lewis has stated a claim against him under 42 U.S.C. §
1983. That is, Gray's motion is silent with respect to whether Lewis has appropriately pled any state
law claims against him. Accordingly, the court will not dismiss Lewis' claim against Gray for
battery.

Further, Lewis alleges that Dr. Foster was responsible for the administration of medication to him without his consent. Dr. Foster recognizes that Lewis has alleged a claim for battery, but contends that the court should dismiss the claim as it pertains to her actions because Lewis does not allege that she ever made any physical contact with him. (D.I. 16 ¶ 15.) The court is not persuaded.

The definition of battery under Delaware law does not require physical contact between the plaintiff and the defendant. The definition requires only an *act intending to cause harmful or offensive contact* with a plaintiff, and harmful or offensive contact as a direct or indirect result. According to Lewis, Dr. Foster ordered DPC Staff Members to administer medicine to him without his consent. Thus, Dr. Foster committed an act intending to cause offensive contact. As a result of Dr. Foster's order, the medicine was administered to Lewis. That is, the harmful or offensive contact that Lewis complains about was a direct result of Dr. Foster's order. Thus, Lewis has alleged sufficient facts to state a claim for battery against Dr. Foster.

Dr. Foster also relies on Del. Code Ann. tit. 11 § 468(3), (5), and (7) as a ground supporting dismissal of Lewis' battery claims. Dr. Foster contends that a person in her position, who is responsible for the safety of Lewis, the staff and other DPC patients, is permitted to order the use of force necessary to safeguard the welfare of the patient, staff and other patients. (D.I. 16 ¶ 16.) The court disagrees. Del. Code Ann. tit. 11 § 468 sets forth several defenses to battery. However, it explicitly states that the defenses provided are defenses to *criminal* battery, not civil battery. Dr. Foster concedes this fact in her motion to dismiss, but contends that "since Lewis' complaint may be alleging common law battery[, she] can avail herself of the[] statutory defenses." (*Id.*) Remarkably, Dr. Foster offers no explanation why statutory defenses to criminal battery are applicable to a claim for civil battery. Moreover, absent from Dr. Foster's motion is any citation to

16

a civil battery case in which a Delaware court (federal or state) applied Del. Code Ann. tit. 11 § 468(3), (5), or (7). Further, after its own search of federal and Delaware case law, the court is unable to find a civil battery case in which Del. Code Ann. tit. 11 § 468(3), (5), or (7) is discussed. Based on its findings, the court is unwilling to apply defenses that are reserved to resist criminal battery claims to a civil battery claim and, therefore, will deny Dr. Foster's motion to dismiss Lewis' battery claim.

## E.     Motions to Amend

On July 7, 2005, Lewis filed a motion requesting permission to amend the complaint ("First Motion") (D.I. 19). On August 4, 2005, Lewis filed another document, titled "Additional Points to Support Motion Requesting Permission to Amend Complaint" ("Second Motion") (D.I. 20). The court construes both documents as motions to amend. The motions request the court to amend the complaint to include new claims and additional defendants. The court will address these requests in turn.

Lewis first asks the court to amend his complaint by adding new claims in order to "cure deficiencies" in his prior pleadings.[6] Rule 15 of the Federal Rules of Civil Procedure permits a party

_____

[6] Lewis' First Motion requests the court to include the following claims: (1) First Amendment freedom of religion and freedom of speech violations; (2) Fourth Amendment violations for unreasonable searches and seizures; (3) Fifth Amendment due process violations; (4) Sixth Amendment speedy trial violations; (5) Eighth Amendment violations for cruel and unusual punishment; (6) Fourteenth Amendment due process violations; (7) statements of facts of unconstitutional treatment; (8) relief in regard to the petition of habeas corpus filed in state court; (9) a request for a jury trial; (10) a request for appointment of counsel; (11) a request for declaratory judgment; (12) a statement of physical injury; (13) a statement of emotional damage; (14) a request for expert psychiatric witnesses; (15) a claim for medical negligence; (16) a request for an expert physician; (17) a civil rights statute; (18) several statutory statutes; (19) statements that the plaintiff has been subjected to extended incarceration due to constitutional violations; (20) a statement of atypical and significant hardships as a result of being assaulted confined and restrained with four point restraints; (21) claims for the common law torts of

17

to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." FED. R. CIV. P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 646 F. Supp. 118, 120 (D. Del. 1986). In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss." *Id.*

In the present case, there is no evidence of undue delay, bad faith, dilatory motive or undue prejudice to the defendants. However, even affording Lewis' requested claim additions the most liberal construction, it appears "beyond doubt that [he] can prove no set of facts in support of his claim[s] that would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Lewis has not included allegations regarding any of the claims he seeks to add. Rather, with respect to his constitutional claims, he merely writes the number and title of the amendment for which he seeks

---

assault, battery, libel and slander; (22) claims for several criminal offenses, such as assault, kidnapping, possession of a deadly weapon during the commission of a felony, attempted murder, and robbery; and (23) a request for polygraph testing. (D.I. 19 ¶¶ 1-20, 22-24.) Lewis' Second Motion asks the court to allow him to include the following: (1) specific details in regard to Dr. Foster and other persons he seeks to add as defendants "never"offering him a hearing before violating his civil rights; (2) valid factual documents that support the fact that Dr. Foster and other persons he seeks to add as defendants conspired to violate his civil rights; (3) detailed statements of atypical and significant hardships; (4) a request for liens on the defendants' assets; (5) specific details as to how each defendant violated his civil rights, as well as which rights each violated; (6) a civil cover sheet JS 44; and (7) a request for preliminary injunction. (D.I. 20 ¶¶ 2-8.)

18

to allege violations, and states that he would like to amend his complaint to include a violation of that amendment.[7] Further, with respect to his other claims, Lewis simply states he would like "to include" or "to request," and then lists his request.[8] Lewis does not provide any other information. Nor does he state the identity of the defendants involved in the violations. In fact, Lewis states in the Second Motion that he would like to amend the complaint "to include specific details of how each defendant violated [his] civil rights, as well as to specify exactly what right(s) they violated collectively or individually, under the color of law." (D.I. 20 ¶ 6.) Given the foregoing statement, it is clear to the court that the amended complaints fail to provide "a short and plain statement of the claims showing that [Lewis] is entitled to relief. . . ." Fed. R. Civ. P. 8(a); *see Green v. Howard R. Young Corr. Inst.*, 229 F.R.D. 99, 105 (D. Del. 2005). Accordingly, both of Lewis' motions to amend fail to state claims upon which relief can be granted against the defendants and are, therefore, futile. *See* Fed. R. Civ. P. 12(b)(6). As such, the court will deny Lewis' motions to amend, without prejudice, insofar as they seek to add new claims.

Lewis' motions also seek to add new defendants to his claims under 42 U.S.C. § 1983.[9]

---

[7] For example, the first numbered paragraph of Lewis' First Motion states that he would like "to include violations against the plaintiff's right to freely exercise religion and freedom of speech; 1st Amendment U.S.C." (D.I. 19 ¶ 1.)

[8] Lewis' claims include requests for appointment of counsel, expert psychiatric witnesses, and an expert physician. These "claims" are not allegations against any of the defendants. Instead, they are requests that are properly raised in motions to the court, in order to allow the defendants an opportunity to address them.

[9] The First Motion seeks to add the following defendants: Nurse Helen, Pat Riley, Rose, Karen Chamberlin, Diane Stachowski, Dave Moffitt, Mark Diggs, Florence Scott Cobbs, "Caucasian" Mr. Johnson, Sagil, Gloria Banks, "African American" Mr. Johnson, Dr. Kathryn Sheneman, and Dr. Eugene Lopez. Lewis' Second Motion seeks to add some of the same people as defendants, as well as Michael S. Talmo DPC Director, Head Nurse Curtis Cornish, Lance Sapers, C. Oats, Dr. Ovreishi, Tanya Wilson, Donna Lawrence, Pat Riley, J. Conyer, Margaret

19

As previously discussed in the context of Dr. Foster's and Gray's motions to dismiss, in order for Lewis to state a section 1983 claim against those he seeks to add as defendants, he must show that: (1) the alleged defendants deprived him of a constitutional right; and (2) the alleged defendants were acting under the color of state law. 42 U.S.C. § 1983; *see, e.g., Groman v. Tp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Additionally, Lewis must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff establishes a causal connection by showing that the defendant was personally involved in the alleged wrongs through allegations of either personal direction or actual knowledge and acquiescence. *Id.* Finally, a plaintiff must allege personal involvement with particularity, stating the time, place, and persons responsible for the violations. *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).

Here, each motion to amend contains a laundry list of names. However, Lewis alleges only that "Caucasian" Mr. Johnson ("Johnson One"), "African American" Mr. Johnson ("Johnson Two"), Lance Sapers ("Sapers"), and Dave Moffitt ("Moffitt") were personally involved in the incidents alleged in his amended complaint. The court will address these allegations below. With respect to the other people listed as defendants, Lewis has failed to indicate how they were personally involved in any deprivation of his constitutional rights. More important, Lewis has not alleged that any of them deprived him of a constitutional right. Thus, Lewis has not satisfied one of the essential elements of successfully pleading a section 1983 claim against those defendants. Accordingly, the court will deny his motion to amend, as it pertains to adding the following defendants: Nurse Helen, Pat Riley, Rose, Karen Chamberlin, Diane Stachowski, Mark Diggs, Florence Scott Cobbs, Sagil,

Wilson, and District Attorney Brian J. Robertson.



**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

$EXHIBIT \; I, \; P. \; I$

DELAWARE PSYCHIATRIC CENTER

June 15, 2004

The Honorable Charles H. Toliver IV
Superior Court of Delaware
500 King Street, Suite 10400
Wilmington, DE 19801

RE: Lewis, Jimmy
ID#: 0305016966

Dear Judge Toliver:

Enclosed herewith, please find the written report (s) by Sylvia Foster, MD. concerning the above named defendant. .

Should you require any further information, please do not hesitate to contact me.

Respectfully,

Michael S. Talmo, M.Ed.
Director
Delaware Psychiatric Center

MST/jld

cc:   Phebe Young, Deputy Attorney General
      Dianne Stachowski, Unit Director
      Richard Sadowsky, Ph.D.
      Ranga Ram, MD
      John Edinger, Esquire
      Deputy Attorney General's Office

*P. 2*

# Delaware Psychiatric Center
## Forensic Unit
### (Jane E. Mitchell Building)

### Forensic Psychiatric Evaluation

| | | |
|---|---|---|
| Examinee: | Jimmy Lewis | ID #: 0305016966 |

| | |
|---|---|
| Date of Birth: | 25 December 1966 (Current Age: 38) |
| Examiner: | Sylvia Foster, M.D. |
| Period of Evaluation: | 21 May 2004 - present |
| Date of Report: | 10 June 2004 |

## REASON FOR EVALUATION:

Mr. Lewis was referred to The Delaware Psychiatric Center (DPC) for forensic psychiatric evaluation by *Motion and Order* of the Honorable Charles H. Toliver, In the Superior Court of the State of Delaware, In and For New Castle County, on 1 December 2003, to determine his competency to stand trial and to obtain treatment for his own well-being.

## NOTIFICATION:

Upon admission to the Forensic Unit, Mr. Lewis was informed that he was being evaluated by Court Order, and that the results of all evaluations performed during this admission would not remain confidential, but would be disseminated to the Court, the prosecution, and his attorney.

## EXAMINER:

Medical Doctor specializing in Psychiatry with Board Certification, sub-specializing in Forensic Psychiatry

## LIST OF CHARGES:

Carjacking 2nd Degree
Theft $1000 or greater
Resisting Arrest

## SOURCES OF INFORMATION:

Face-to-face interview with Mr. Lewis on 21 May 2004 and various times thereafter
on the Forensic Unit at DPC
Superior Court Criminal Docket

Seven page statement by Mr. Lewis regarding his social and legal history and his account
    of the crime, undated
Medical Records, Delaware Psychiatric Center, 21 May 2004 – present
Medical Records. First Correctional Medical (FCM). 5 March 2003 – 31 March 2004
Case Charge List
Complaint and Warrant
Exhibit A & B
Charge History Record
Letter from Donald Napolin, LSCW. to The Honorable Charles H. Toliver, 5 May 2004

## CURRENT MEDICATIONS:

Seroquel 50 mg twice daily for anger management and impulse control
Atenolol 25 mg daily for hypertension

## BACKGROUND INFORMATION:

Mr. Lewis was a 38-year-old African American male who presented to the Mitchell
Building based on an evaluation by Dr. Joshi, a prison psychiatrist. Dr. Joshi described
Mr. Lewis on 27 May 2003 as "psychotic and delusional, a danger to self and others,
refusing to take medication." He had assaulted a Correctional Officer, and was
transferred to the infirmary. Mr. Lewis was described as saying, "I can't distinguish
between right and wrong. I am hearing voices telling me to hurt myself and I'm seeing
shadows."

Mr. Lewis had been incarcerated on 17 November 2003 and convicted of Carjacking,
Theft and Resisting Arrest. According to the police report, Mr. Lewis was picked up by a
male driver who was out looking for a male companion for the evening. Mr. Lewis
allegedly attempted to rob the driver, at which point the driver jumped out of the vehicle
in fear, and Mr. Lewis drove off with the car. He allegedly resisted arrest when caught,
and was identified by the driver as the person who stole his car.

According to FCM records, Mr. Lewis was "flirtatious" at times, and had to be redirected
for asking personal questions of the mental health examiner. She confronted his
"narcissism and attention-seeking behaviors," and questioned the diagnosis of
Schizophrenia that had been given him by the physician. Mr. Lewis refused all
medication, requesting only Xanax and Valium (highly addictive drugs of the
Benzodiazepine family). He asked for art materials, and pornography, stating that these
items would be very helpful. He presented with, "broad mood and good eye contact, with
no suicidal, homicidal ideation and no auditory or visual hallucinations." He was
frequently argumentative and loud. He was observed wearing "paper horns," saying, that
they made him feel more comfortable. "It helps me deal with whatever I'm going
through. The horns are like a mask. If I deal with these things within me, I'll be a better
person, being unjustly accused." He was also described as calm and controlled. He
spoke of hearing voices but stated, "I don't know whether it's voices or just my

*P. 4*

thoughts." Mr. Lewis stated later that he wore the paper horns and the cat's eye contact lenses for the "scare" factor.

Not much is known about Mr. Lewis' legal history as he is from out of state. However, he said that he had been in prison for six or seven years in New Jersey, from about 1993 to 2000. He added that he had been sentenced to six years for Robbery. "I pick-pocketed somebody," but his jail time had been prolonged for fighting.

Mr. Lewis had no psychiatric history. He saw a counselor as a child in New Jersey where he grew up. At first he said he didn't remember why, but shortly thereafter remembered that it was because his mother had become involved in a Lesbian relationship. "I didn't approve of it and I voiced my opinion to her, and I started misbehaving. I didn't like the lady and I didn't like the idea of the relationship." He went on to explain, "I might have accepted it if it had been presented to me differently, but I saw this lady actually twist my mother's arm to tell me about the [Lesbian nature of the] relationship. I had thought they were just close friends." Mr. Lewis' mother told the team social worker that he had been attention-seeking as a youth, and that he felt no one ever paid enough attention to him. She said he always felt that whatever someone was doing, they should stop, and attend to his needs. He blamed his mother for his current problems due to her homosexual affair. His parents had separated when Mr. Lewis was two years old, at which time Mr. Lewis' father had gone to live in North Carolina.

Mr. Lewis stated that he had been employed in construction and as a porter. "Whatever job was open, I was doing it." However, he added, "I've been fired more than ten times." The longest job he ever held was three months. "I would always argue, or go in late, and I'd get fired." He admitted to selling drugs off and on. "That's what I had to do to have money. Then I got to selling bootleg CD's and DVD's."

Mr. Lewis dropped out of the tenth grade, but later obtained a GED. He changed that idea later, and said that he had a high school diploma. His mother maintained that he actually had a GED. He said, "She thought wrong." He attended the American Business Institute, but did not stay long, ending up owing them money. He related that he had been attending commercial drivers' school to drive eighteen-wheelers just prior to his incarceration. "It was going to be my first job; Poland Springs was going to hire me."

Mr. Lewis stated that he been shot by a police officer ten years ago, with gunshot wounds to the left hip and left arm. He had history of hypertension for which he was being medicated, and history of kidney infection. He had no other significant medical or surgical history.

Mr. Lewis had never married, stating, "Every time I get into a relationship, we always argue." He was with one girlfriend off and on for eight years.

Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior

use. He also admitted to smoking marijuana sixteen years ago, but denied all other illicit drug use. It was considered probable that he was minimizing his addiction issues

## HOSPITAL COURSE:

Mr. Lewis became verbally unresponsive, selectively mute, and categorically refused to answer any questions on the day of admission. He also refused the initial physical examination. Later the same day, Mr. Lewis was observed interacting in a normal manner on the unit. Several days later, the initial examinations were completed without problem. He eventually explained that he had not felt like speaking on the first day.

Mr. Lewis' hospital course has been complicated by his aggressive, assaultive behavior. He was overheard making physical threats, observed taunting and laughing at his peers, taking pleasure in embarrassing them, and was
                                                      . He complained of hearing voices sporadically but displayed no evidence of preoccupation with internal stimuli when he believed he was not being observed.

The team psychologist described Mr. Lewis in the following manner in the anger management group: arrogant, disruptive and instigating. While the other older patients tried to have a calming influence, Mr. Lewis displayed no sense of boundaries or respect for authority. She added that there was nothing odd or bizarre about his behavior that would suggest a psychotic disorder. Other therapists noted that he was disruptive in the group setting, talking out of turn, and making obscene comments while watching educational videos. When evaluated by the team, he made it clear that he would rather be at DPC rather than in jail in order to "get some help." When asked what help he needed, or what we could do for him, he answered he didn't know.

One staff member stated that she found Mr. Lewis to be engaging, intelligent and articulate, but noted his sense of entitlement, and his demand that things be done his way. Mr. Lewis stated that he needs to do "outlandish things" to get attention, such as wearing paper horns and wearing his cat's eye lenses. It was explained to him that he would not be allowed to wear his paper horns at any time while at DPC, after he placed them on his head at one point. He understood, and did not attempt to wear them again. He was noted to attempt to intimidate one female therapist by facing her in the hallway and stating, "I just want to get my point across that whatever you said about me in team meeting was wrong and derogatory."

On 6/7/04, a special meeting with Mr. Lewis was called to address his grossly inappropriate behavior on the unit the night before. He was angered by not receiving a certain salad at dinner to which he believed he was entitled, and assaulted a peer and a staff member, escalating to the point where he was difficult to redirect. In summary, he was noted to be disruptive in the group setting, to taunt his peers, to intimidate and flirt with therapists, and to make obscene comments. There were reports to the contrary by other staff members who reported that Mr. Lewis was cooperative and helpful in the milieu, tending to get loud and demanding at times when he felt his needs were not being met in a timely fashion.

Initially, Mr. Lewis was prescribed no psychotropic medication, as there was no evidence of a mood disorder, and no evidence of psychosis. However, Seroquel was begun after it became evident that Mr. Lewis had difficulty managing his anger, and controlling his impulses.

## CURRENT MENTAL STATUS EXAM:

Mr. Lewis presented with shaved head, and was appropriately dressed. He was cooperative, and able to sit quietly for the examination with no abnormal motor activity. His speech was normal in rate, tone and volume, and there was no evidence of loud, pressured speech. He stated that his mood was "sensitive, and easily irritated." His affect was full range. His thought processes, assessed by the verbalizations of his thoughts and feelings, were goal directed; there was no evidence of loosening of associations or tangentiality. His thought content displayed no delusions. He was not thinking about suicide, although he maintained that he had been thinking about it. "But I don't really want to do it." He was not thinking about hurting others, and stated, "I'm not on the defensive unless there's a reason." He denied obsessions, compulsions, racing thoughts, paranoia, delusions, special powers, hyper-religiosity, and grandiosity. His cognitive functions were intact grossly. His insight and judgment were considered intact.

## COMPETENCY ASSESSMENT:

Mr. Lewis was presented the questions to the McGarry Criteria as cited in State of Delaware v. Joseph A. Shields, 593 A.2nd, 986 (Del. Super. 1990), p. 1000. Based upon the present examination, Mr. Lewis demonstrated that he does have sufficient present capacity to consult with an attorney with a reasonable degree of rational understanding of court procedures. He is fully able to understand the nature of the proceedings against him, to give evidence in his own defense and to instruct counsel on his behalf.

It should be noted that Mr. Lewis handed out a highly articulate, well-written explanation of his actions on the day of the alleged crime. It reveals a high level of education and intelligence, and highlights his excellent ability to give evidence in his own defense and to instruct counsel on his behalf.

## DIAGNOSIS:[1]

| | |
|---|---|
| Axis I: | Malingering; Alcohol Abuse; History of Conduct Disorder |
| Axis II: | Antisocial Personality Disorder |
| Axis III: | Hypertension |
| Axis IV: | Psychosocial and Environmental Problems: Incarceration |
| Axis V: | Global Assessment of Functioning (GAF) Scale (1 – 100): 50 |
| | Serious impairment in social and occupational functioning |

[1] American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

## OPINION:

The opinions expressed in this report are held with a reasonable degree of medical
certainty, and are based upon the direct examination of Mr. Lewis, the observations
reported by staff and therapists on the Forensic Unit, and the previous reports and records
available for review. These opinions are subject to change if additional information or
records become available.

### Assessment:

The essential feature of Malingering is the intentional production of false or grossly
exaggerated physical or psychological symptoms, motivated by external incentives such
as getting out of prison into a psychiatric unit. Malingering should be strongly suspected
in the presence of Antisocial Personality Disorder.

Mr. Lewis demonstrated no evidence of a mood disorder or psychosis during his
admission to DPC, and it is not likely that he ever had Schizophrenia or any other chronic
psychotic disorder.

## SUMMARY OF OPINIONS AND RECOMMENDATIONS:

1.    Mr. Lewis is psychiatrically stable and can be returned to prison.

2.    It is my opinion that Mr. Lewis is competent to stand trial.

3.    It is my opinion that, as in the case of many people with Antisocial Personality
      Disorder, Mr. Lewis may need to remain on his medication to help with anger
      management and impulse control

4.    Any threats made by Mr. Lewis to harm himself or others should be taken
      seriously as he is highly manipulative and will stop at little to obtain his goals.

Sylvia Foster, M.D.
Forensic Psychiatrist

IN THE UNITED STATES DISTRICT COURT $\left( \text{EX-B} \right)$

## FOR THE DISTRICT OF DELAWARE

```
JIMMIE LEWIS,                    )
                                 )
              Plaintiff,         )    C.A. No.: 04-1350 (GMS)
                                 )
    v.                           )
                                 )
DR. SYLVIA FOSTER, STAFF         )
MEMBERS, THE DELAWARE            )
PSYCHIATRIC CENTER and           )
MR. GREY,                        )
                                 )
              Defendants.        )
```

## **MOTION TO DISMISS**

COMES NOW Defendant Sylvia Foster, M.D. by and through her counsel and hereby moves this Honorable Court to dismiss the above-referenced matter pursuant to Federal Rule 12(b)(6) Failure to state a claim upon which relief can be granted. In support thereof Defendant Dr. Foster asserts the following:

1.    Mr. Lewis was transferred to the Delaware Psychiatric Center (hereinafter "DPC") pursuant to a Court Order signed by J. Toliver on December 1, 2003 to undergo a mental health evaluation to determine if he was mentally competent to assist in the defense of the criminal charges asserted against him. Since his confinement to DPC was pursuant to a Judge's Order in regards to a criminal matter, Mr. Lewis was confined to the secured building of the DPC. As such, Mr. Lewis would be considered a prisoner under the definition provided under 28 U.S.C. 1915 (h)

2.    Sylvia Foster, M.D. is the Chief Forensic Psychiatrist for the State of Delaware and in that capacity examined Mr. Lewis and authored a report which was submitted to the Delaware Superior Court in and of the County of New Castle. A copy of that report is an Exhibit

to Plaintiff's Complaint.

3.      Dr. Sylvia Foster is a contract employee and as such does not enjoy sovereign immunity which some government employees enjoy.

4.      In order to find that a claim should be dismissed under Rule 12(b)(6) the Court must first "accept as true factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom." *Mami v. Fauver*, 82 F.2d 63, 65 (Third Circuit 1996). Pro Se Complaints such as the one in this case are held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of this claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L. Ed 2d 652 (1972.) Therefore, counsel for Dr. Foster has set forth the possible interpretations of pro se Plaintiff's allegations and the defenses thereto in this motion.

5.      If the Court interprets Plaintiff's Complaint as being based on his imprisonment then he has only two avenues of relief available to him:

        a.      Petition for *habeas corpus* and;

        b.      A Complaint under the Civil Rights Act.

      Plaintiff's Complaint contains no language that would imply that he is disputing his sentence or that he is seeking any relief under a writ of *habeas*.

6.      If the Court construes the Plaintiff's Complaint as a 1983 Complaint for a violation of his Fourteenth Amendment Due Process Right than the right at issue would be "freedom from restraint" and Plaintiff must allege he has suffered an "atypical and significant hardship" under *Sandin v. Conner*, 515 U.S. 472, 484, 115 Supr. Ct. 2293, 132 L. Ed. 2nd 418 (1995). In determining whether an inmate had suffered an "atypical and significant hardship" as a result of his confinement

the Court must consider two factors: 1) The amount of time the prisoner is placed into disciplinary segregation and; 2) Whether the conditions of this confinement and disciplinary segregation were significantly more restrictive than those imposed on other inmates in solitary confinement. *Shoats v. Horn* 213 F.3d 140, 144 (Third Cir. 2000) (citing *Sandin,* 515 U.S. at 486).

7.      Plaintiff Mr. Lewis does not allege that the conditions of his confinement were unconstitutional. The Plaintiff does not allege that his treatment or confinement was "significantly more restrictive than that imposed" on other patients at the Delaware Psychiatric Center.

8.      Furthermore *Sandin* instructs that whether the restraint at issue imposes "atypical and significant hardship" depends on the particular state in which the Plaintiff is incarcerated. *Torres v. Fauver,* 292 F.3d 141, 151 (Third Cir. 2002). The District Court of Delaware has repeatedly determined that the Department of Corrections' statutes and regulations do not provide prisoners with liberty or property interests protected by the due process clause. *Jackson v. Brewington-Carr,* 97-270, 1999 U.S. Dist. Lexis 535 (D. Del. Jan. 15, 1999). Thus after *Sandin,* a prisoner in this district has no constitutional right to any procedural safeguards regardless of what the state statutes and regulations provide, unless the deprivation complained of imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Turner v. Tezac,* 2005 WL41563 (D. Del. Jan. 4, 2005) citing the *Sandin* opinion. Since Mr. Lewis does not allege that he was placed in disciplinary custody which caused a "atypical and significant hardship", then his claim that Mr. Grey and Dr. Foster violated his Fourteenth Amendment right to due process has no arguable basis in law or in fact.

9.      Additionally, Plaintiff's Complaint alleges no physical injury. Rather Mr. Lewis' Complaint should be read as one for emotional damages. The only reference to any physicality is at the top of the second page of Plaintiff's Complaint regarding an alleged altercation when a bag

of M & M chocolate candy was forcibly removed from his hand and then he allegedly was assaulted by "Mr. Grey and three or four staff members".

10.    If the Court were to conclude that the claims against Dr. Foster were for emotional damages then those claims are barred under 28 U.S.C. § 1997(e)(e) which provides: "No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injuries suffered while in custody without a prior showing of physical injury".

11.    Plaintiff's Complaint makes no claim of physical injury. To the contrary, a physician's note dated June 21, 2004 which was attached to Plaintiff's Complaint as an exhibit and which is attached hereto as Exhibit A, specifically addresses this issue. Dr. Eugene Lopez examined Mr. Lewis after Plaintiff complained of this alleged incident involving "Mr. Grey and four or five other staff members". The only physical finding of the examining physician was a rash on the Plaintiff's foot. There was no finding of any physical injury.

12.    Plaintiff has not claimed any physical injury. Since Mr. Lewis' claim against Dr. Foster has no arguable basis in law or fact, he therefore cannot receive damages, nominal or otherwise for his alleged "emotional damage". Thus, Mr. Lewis' request for compensatory damages based on his emotional damages is barred by 28 U.S.C. §1997(e)e. See *Turner v. Tezac,* 2005 WL41563 (D. Del.) at 4.

13.    Alternatively, if the Court were to construe Plaintiff's Complaint as a complaint of common law battery or medical negligence against Dr. Foster, then the District Court would apply the law of the forum. Under Delaware law, either of these allegations must be dismissed for failure to state a claim upon which relief may be granted.

14.    If the Court construes the Plaintiff's Complaint as being a complaint alleging medical negligence against Dr. Foster, then the Plaintiff's Complaint should be dismissed pursuant to 18 *Del. C.* §6853(1) since the Plaintiff has provided no affidavit of merit signed by an expert witness. This

requirement is an absolute prerequisite to the filing of any medical negligence claim in this forum. Thus, Plaintiff's Complaint must be dismissed.

15.    If the Court were to construe Plaintiff's Complaint as being an allegation of common law battery, then the claim must be dismissed since there is no allegation that Dr. Foster ever touched Mr. Lewis. The tort of battery is the intentional and unpermitted contact upon the person of another which is harmful or offensive. *Taylor v. Barwick*, 1997 WL527970 (Del. Super.). There is nothing in Plaintiff's Complaint that can be construed as alleging that Dr. Foster ever actually made any physical contact with Mr. Lewis.

16.    In addition, Dr. Sylvia Foster avails herself to defenses provided by Delaware law under 11 *Del. C.* 468. While principally enumerated as defenses available to criminal charges of assault and battery, since Plaintiff's Complaint may be alleging common law battery Dr. Foster avails herself to these statutory defenses. Under 11 *Del. C.* §468(3); (5); and (7), one in Dr. Foster's position, who is responsible not only for the safety of Mr. Lewis, but also for the safety of the other patients and the staff, is permitted to order the use of force which is necessary for the purpose of safeguarding the welfare of the patient and others and also for enforcing lawful rules or procedures of the institution.

17.    Nothing in Plaintiff's Complaint alleges a use of force which would fall outside of the parameters of 11 *Del. C.* §468.

18.    Thus, even in view of the liberal pleadings standards applied to pro se litigants, Mr. Lewis' Complaint does not adequately allege facts that, if proven, would give rise to a battery claim and as such his claim should be dismissed for failure to state a claim upon which relief may be granted. See *Browne v. Saunders,* 768 A.2d 467, (Del. Supr. 2001).

WHEREFORE, for the foregoing reasons Defendant Dr. Sylvia Foster hereby requests that

this Court dismiss the Plaintiff's Complaint against her as one which fails to state a claim upon

which relief may be granted.

Respectfully Submitted,

REGER RIZZO KAVULICH & DARNALL, LLP


_/s/ Cynthia G. Beam, Esquire_
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:   June 20, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,                          )
                                       )
                Plaintiff,             )      C.A. No.: 04-1350 (GMS)
                                       )
                                       )
                                       )
DR. SYLVIA FOSTER, STAFF               )
MEMBERS, THE DELAWARE                  )
PSYCHIATRIC CENTER and                 )
MR. GREY,                              )
                                       )
                Defendants.            )

## ORDER

**AND NOW, TO WIT**, this _____ day of _____, 2005, having considered

Defendant Dr. Sylvia Foster's Motion to Dismiss, and the Response thereto, if any:

**IT IS HEREBY ORDERED** that Defendant Dr. Sylvia Foster's Motion to Dismiss has

been GRANTED and the above-captioned action is dismissed with prejudice.

**BY THE COURT:**

_____

**The Honorable Gregory M. Sleet**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| | ) |
| Plaintiff, | ) C.A. No.: 04-1350 (GMS) |
| | ) |
| | ) |
| | ) |
| DR. SYLVIA FOSTER, STAFF | ) |
| MEMBERS, THE DELAWARE | ) |
| PSYCHIATRIC CENTER and | ) |
| MR. GREY, | ) |
| | ) |
| Defendants. | ) |

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify on this 20ᵗʰ day of June, 2005 that two true and correct copies of Defendant Dr. Sylvia Foster's Motion to Dismiss have been served by first class mail, postage prepaid, to the following:

Jimmie Lewis
SBI#506622
H.R.Y.C.I.
P.O. Box 9561
Wilmington, DE 19809

REGER RIZZO KAVULICH & DARNALL, LLP

*/s/ Cynthia G. Beam, Esquire*

Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated: June 20, 2005

MONTH: Mary 2004

MEDICATIONS

BENADRYL 50mg (PO) HS/PRN
X 30 DAYS
STOP DATE 6/29/04

EFFEXOR XR 37.5mg (PO)q AM
x 5 DAYS
STOP DATE 5/30/04

EFFEXOR XR 75mg (PO)q AM
X 5 DAYS
STOP DATE 6/5/04

EFFEXOR XR 150mg (PO)q AM THEN
X 30 DAYS
7/3/04   6/5/04

NURSE'S SIGNATURE / INITIAL

PHYSICIAN FOSTER
ROOM #

ACUITY NAME BPO
BOTTOM MITCHELL
NS ALLERGY

PATIENT # 2
PATIENT NAME LEWIS / JAMES

00187

Copyright 569 (Rev. 1/94) All Rights Reserved  Owen Healthcare  OH-1304

## PRN MEDICATIONS ADMINISTERED AND MEDICATIONS NOT ADMINISTERED

| DATE | TIME | DRUG/STRENGTH | REASON | EFFECTIVE | NURSE INT. | DATE | TIME | DRUG/STRENGTH | REASON | EFFECTIVE | NURSE INT. |
|------|------|---------------|--------|-----------|-----------|------|------|---------------|--------|-----------|-----------|
| 5/25/04 | 2235 | Benadryl 50mg PO | sleep | | A | | | | | | |
| 5/06/04 | 1430 | Effexor XR 37.5mg | given @ 1545 µ | | KC | | | | | | |
| 5/29/04 | 08 | Effexor 37.5mg PO Refused | | | A | | | | | | |
| 5/29/04 | 2000 | Effexor XR refused | error (A) | | XC | | | | | | |
| 5/30/04 | 08 | Effexor 37.5mg PO Refused | — | | XC | | | | | | |
| 5/31/04 | 08 | Effexor 75mg PO Refused | w/t makes me sick | | NC | | | | | | |
| | | | | | | | | | | | |



00179

## PRN MEDICATIONS ADMINISTERED AND MEDICATIONS NOT ADMINISTERED

| DATE | TIME | DRUG/STRENGTH | REASON | EFFECTIVE | NURSE INT. | DATE | TIME | DRUG/STRENGTH | REASON | EFFECTIVE | NURSE INT. |
|------|------|---------------|--------|-----------|------------|------|------|---------------|--------|-----------|------------|
| 5/28/04 | 8 am | Risperdal | increase in outbursts | | ✓ | | | | | | |
| 5/28/04 | 2100 | Ativan 2mg PO | Agitation | | ᴵ⁰ | | | | | | |
| 5/28/04 | 2100 | Benadryl 25mg PO | EPS | | iul | | | | | | |
| 5/28/04 | 2100 | Haldol 5mg PO | Agitation | | iul | | | | | | |
| 5/29/04 | 2000 | Haldol 5mg | ordered. | | ᵈˡ | | | | | | |

MONTH

| MEDICATIONS | STOP DATE | HR... | 31 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Cardinal Health

00181

NURSE'S SIGNATURE    INITIAL    NURSE'S SIGNATURE    INITIAL

PATIENT NAME

Consolidated EOB (Rev. 1/94) All Rights Reserved    Cardinal Health    CAH1304

## PRN MEDICATIONS ADMINISTERED AND MEDICATIONS NOT ADMINISTERED

| DATE | TIME | DRUG/STRENGTH | REASON | EFFECTIVE | NURSE INT. | DATE | TIME | DRUG/STRENGTH | REASON | EFFECTIVE | NURSE INT. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/04 | 9.am | Ebbster 25mg | prn agitation | ✓ | | | | | | | |
| 6/5/04 | 1920 | Haldol 5mg IM | agitation IM | ✓ | | | | | | | |
| 6/6/04 | 1820 | Benadryl 50mg | the agitation | ✓ | | | | | | | |
| 6/6/04 | 1820 | Haldol 5mg IM | agitation IM | ✓ | | | | | | | |
| 6/10/04 | 8:30 | Attarade 25mg po | prn agitation sip | ✓ | | | | | | | |
| 6/14/04 | 9:30 | Attarade 25mg po | prn sip 1/14/04 | ✓ | | | | | | | |
| 6/21/04 | 2030 | Ativan 2mg PO | agitation | ✓ | | | | | | | |
| 6/24/04 | 3030 | Benadam 20mg PO | agitation | ✓ | | | | | | | |
| 6/29/04 | 3030 | Benadryl 50mg PO | agitation | ✓ | | | | | | | |
| 6/5/04 | 3255 | Ativan 2mg IM | agitation | ✓ | | | | | | | |
| 6/30/04 | 3235 | Trecoton 100mg IM | agitation | ✓ | | | | | | | |
| 6/24/04 | 12m | Ativan 2mg IM | severe | ✓ | | | | | | | |
| 6/24/04 | 12m | Benadryl 50mg IM | a sit | ✓ | | | | | | | |



## PRN MEDICATIONS ADMINISTERED AND MEDICATIONS NOT ADMINISTERED

| DATE | TIME | DRUG/ STRENGTH | REASON | EFFECTIVE | NURSE INT. | DATE | TIME | DRUG/ STRENGTH | REASON | EFFECTIVE | NURSE INT. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/04 | 1830 | Ativan 2mg PO | agitation | yes | KC | | | | | | |
| 6/18/04 | 1830 | Geodon 20 mg PO | agitation | yes | KC | | | | | | |
| 6/13/04 | 1145 | Ativan 2mg IM | | 45 | PC | | | | | | |
| 6/13/04 | 1145 | Benadryl 50 mg PO | | ragx5 | 4 | | | | | | |
| 6/13/04 | 1145 | Geodon 20 mg PO | | yes | 4 | | | | | | |
| 6/14/04 | 2100 | Geodon 20mg IM | ↑ Agitation | ⊕ Good | 60 | | | | | | |
| | 2100 | Ativan 2mg IM | ↑ Agitation | ⊕ Good | 60 | | | | | | |
| | 2100 | Benadryl 50mg IM | ↑ Agitation | ⊕ Good | 60 | | | | | | |
| | | M/IM 30cc PO 7ml X 1 dose | f. 24° | | | | | | | | |
| 6/21/04 | 2070 | Seroquel 50mg PO | Pt requested | | | | | | | | |
| 6/24/04 | 1530 | Benadryl 50mg IM | agitation | ⊕ Good | | | | | | | |