# EXHIBIT "A"

05-609

*filed 8/9/06*
*Recd. 8/10/06*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

V.                          CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL,

PLAINTIFFS MOTION FOR DISCOVERY

COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE
SUBMITS THIS MOTION TO THIS HONORABLE COURT FOR
AN ORDER GRANTING THE PLAINTIFF'S MOTION FOR
DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 34, IN ORDER TO OBTAIN THE TRUTH,
THE WHOLE TRUTH AND NOTHING BUT THE TRUTH IN
THIS CASE.

1.) THE DATE(S) GEODON WAS PRESCRIBED,
    FOR HOW LONG IT WAS PRESCRIBED, AND
    THE DATE(S) IT WAS DISCONTINUED.

2.) THE DATE(S) BENADRYL WAS PRESCRIBED,
    FOR HOW LONG IT WAS PRESCRIBED,
    THE DATE(S) IT WAS DISCONTINUED.



FILED

AUG - 9 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

scanned

3.) THE DATE(S) "FARIDIUM" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

4.) THE DATE(S) "HALDOL" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

5.) THE DATE(S) "ATIVAN" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

6.) THE DATE(S) "EFFEXOR" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

7.) THE DATE(S) "SEROQUEL" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

8.) THE DATE(S) "BACTRIM" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

9.) THE DATE(S) THE "CHEF SALAD" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

10.) THE DATE(S) THE PLAINTIFF JIMMIE LEWIS WAS PLACED ON DISCIPLINARY RESTRICTION, THE REASONS WHY, FOR HOW LONG THE RESTRICTION, AND THE DISCRIPTION OF THE DISCIPLINARY SANTION(S).

11.) PHOTOCOPIES OF THE WRITTEN NOTICES OF ANY AND ALL DISCIPLINARY REPORTS AND SANTIONS.

12.) THE NAMES OF NURSES WHOM WERE EMPLOYED AND WORKED BETWEEN THE DATES OF 5/20/04 TO 6/25/04, DURING THE DATES OF THE PLAINTIFFS STAY AT THE D.P.C.

13.) THE SPECIFIC REASON DR. SYLVIA FOSTER DOCUMENTED ON THE JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT THAT WAS SUBMITTED TO THE NEW CASTLE COUNTY SUPERIOR COURT, WHY THE PLAINTIFF JIMMIE LEWIS WAS BEING EVALUATED AT THE D.P.C.

14.) ANY AND ALL DIAGNOSIS THAT WERE DETERMINED AND DOCUMENTED BY DR. SYLVIA FOSTER THROUGH OUT THE COURSE OF THE PLAINTIFFS STAY AT THE D.P.C, ALONG WITH THE DATE(S) THOSE DIAGNOSIS WERE ACKNOWLEDGED AND OR DETERMINED.

15.) THE DATE THE PLAINTIFF RECEIVED HIS COMPETENCY HEARING IN THE MOCK COURT ROOM AT THE D.P.C, AND THE NAME OF THE COMMISSIONER AND OR JUDGE WHOM CONDUCTED THE COMPETENCY HEARING.

16.) THE DATE(S) THE PLAINTIFF JIMMIE LEWIS
    WAS ORDERED TO BE PLACED ON AND OR IN
    (4) POINT RESTRAINTS, WHO GAVE THE ORDER
    TO PLACE THE PLAINTIFF IN (4) POINT RESTRAINTS
    THE TIME THE PLAINTIFF WAS PLACED IN
    (4) POINT RESTRAINTS, WHAT MEDICATIONS WERE
    ADMINISTERED TO THE PLAINTIFF DURING SAID
    (4) POINT RESTRAINING PERIOD, AND THE TIME
    THE PLAINTIFF WAS RELEASED FOR (4) POINT
    RESTRAINTS.

17.) WHAT DATE(S) WERE THE DISCIPLINARY HEARINGS
    CONDUCTED, AND WHO CONDUCTED THE
    DISCIPLINARY HEARING(S).

18.) THE DATE THE CONSULTATION FOR THE
    PLAINTIFF WAS ORDERED TO VISIT THE UROLOGIST,
    AND WHO ORDERED THE CONSULTATION.

19.) THE DATE DR. SYLVIA FOSTER DOCUMENTED
    ON THE FORENSIC PSYCHIATRIC EVALUATION
    REPORT DATED JUNE 10, 2004, THAT WAS
    SUBMITTED TO THE NEW CASTLE COUNTY SUPERIOR
    COURT, THAT THE PLAINTIFF JIMMIE LEWIS
    WAS ARRESTED.

20.) THE NAMES OF THE R.N's (REGISTERED NURSES),
WHOM DR. FOSTER ORDERED TO INJECT THE
PLAINTIFF WITH PSYCHOTROPIC MEDICATIONS ON,
6/6/04, 6/14/04, 6/21/04, 6/24/04, 6/22/04,
AS IS DOCUMENTED ON THE PROGRESS NOTE(S) AND OR
THE DOCTORS NOTES REGARDING THE PLAINTIFF.

21.) THE NAME(S) OF NURSE ASSISTANCE WHOM
WHERE EMPLOYED AT THE D.P.C ON,
6/6/04, 6/14/04, 6/21/04, 6/22/04, 6/24/04.

22.) THE PLAINTIFF'S (G.A.F) GLOBAL ASSESSMENT
OF FUNCTIONING SCALE WHEN HE WAS ADMITTED
ON OR ABOUT 5/20/04, AND THE PLAINTIFF'S
(G.A.F) SCALE WHEN HE WAS DISCHARGED ON
6/25/04.

23.) PHOTOCOPIES OF THE (F.C.M) FIRST CORRECTIONAL
MEDICAL MEDICAL RECORDS UTILIZED BY DR. FOSTER
TO CONDUCT THE PLAINTIFF JIMMIE LEWIS'
FORENSIC PSYCHIATRIC EVALUATION.
(SEE ATTACHED EXHIBIT), DOCUMENTED UNDER THE
TITLE " SOURCE OF INFORMATION".

24.) THE DOCUMENTS AND OR MATERIAL TITLED EXHIBIT A + B, DOCUMENTED UNDER THE TITLE " SOURCE OF INFORMATION " ON DR. FOSTERS JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT. ( SEE ATTACHED EXHIBIT )

25. A PHOTOCOPY OF THE OFFICIAL COURT ORDER FROM THE SUPERIOR COURT JUDGE OR COMMISSIONER, DOCUMENTING THAT THE DEFENDANT WAS JUDICIALLY COMPETENT AND RETURNED TO THE DEPARTMENT OF CORRECTION TO PARTAKE IN COURT PROCEEDINGS.

26.) THE ADDRESS OF " JAME SMITH ", AN INMATE PATIENT ABOUT 19 YEARS OF AGE THAT WAS UNDERGOING TREATMENT AT THE D.P.C DURING THE PLAINTIFF'S STAY AT THE D.P.C. MR. JAMES SMITH' ADDRESS IS REQUESTED BECAUSE HE IS A CRUCIAL WITNESS TO EVENTS AND OR INCIDENT(S) THE PLAINTIFF CLAIMS IN HIS COMPLAINT.

27.) A PHOTOCOPY OF THE DEPOSITION TAKEN OF AND OR FROM THE PLAINTIFF JIMMIE LEWIS PER COURT ORDER

28.) THE DOCUMENTS TITLED, "CASE CHARGE LIST", UNDER "SOURCE OF INFORMATION" ON DR. FOSTERS JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT. (SEE ATTACHED EXHIBIT).

29.) THE DOCUMENTS TITLED, "CHARGE HISTORY RECORD" UNDER "SOURCE OF INFORMATION" ON DR. FOSTERS JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT. (SEE ATTACHED EXHIBIT).

THE PLAINTIFF JIMMIE LEWIS HEREBY RESPECTFULLY REQUEST FOR THIS HONORABLE COURT TO GRANT HIS MOTION FOR DISCOVERY, DUE TO SAID INFORMATION NOT BEING LEGIBLE AND THEREFOR NEEDING TO BE TRANSLATED FOR FACTUAL ACKNOWLEDGEMENT, AND OR IN THE SEARCH FOR THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH IN THIS CASE. THIS DISCOVERY REQUEST SHOULD BE MADE AVAILABLE TO THE PLAINTIFF AND THE COURT BY JAN 29, 2007, IN ACCORDANCE WITH THE HONORABLE COURTS JULY 28TH 2006 COURT ORDER. (SEE ATTACHED EXHIBIT).

DATE: 8/7/06

Jimmie Lewis
SBI# S06622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS DUE HEREBY CERTIFY ON THIS ___7TH___ DAY OF ___AUG___, 2006, THAT I DID MAIL ONE TRUE AND CORRECT COPY OF THE MOTION FOR DISCOVERY BY U.S MAIL TO THE FOLLOWING:

CYNTHIA BEAM ESQ
1001 JEFFERSON PLAZA, SUITE 202
WILMINGTON, DE 19801

CLERK OF THE COURT
U.S DISTRICT COURT
844. N. KING ST LOCKBOX 18
WILMINGTON, DE 19801

GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST, 7TH FL
CARVEL STATE BUILDING
WILMINGTON, DE 19801

DATE: 8/7/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977



DELAWARE HEALTH
AND SOCIAL SERVICES

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

EXHIBIT

DELAWARE PSYCHIATRIC CENTER

June 15, 2004

The Honorable Charles H. Toliver IV
Superior Court of Delaware
500 King Street, Suite 10400
W_____ DE 19801

RE:    Lewis, Jimmy
ID#:   0305016966

Dear Judge Toliver:

Enclosed herewith, please find the written report (s) by Sylvia Foster, MD, concerning the above named defendant.

Should you require any further information, please do not hesitate to contact me.

Respectfully,

Michael S. Talmo, M.Ed.
Director
Delaware Psychiatric Center

MST/jld

cc:    Phebe Young, Deputy Attorney General
       Dianne Stachowski, Unit Director
       Richard Sadowsky, Ph.D.
       Ranga Ram, MD
       John Edinger, Esquire
       Deputy Attorney General's Office

*P. 2*

# Delaware Psychiatric Center
## Forensic Unit
### (Jane E. Mitchell Building)

### Forensic Psychiatric Evaluation

| | | |
|---|---|---|
| Examinee: | Jimmy Lewis | ID #: 0305016966 |

Date of Birth:    25 December 1966 (Current Age: 38)
~~Examiner~~ :     Sylvia Foster, M.D.
Period of Evaluation:  21 May 2004 - *present*
Date of Report:   10 June 2004

## REASON FOR EVALUATION:

Mr. Lewis was referred to The Delaware Psychiatric Center (DPC) for forensic psychiatric evaluation by *Motion and Order* of the Honorable Charles H. Toliver, In the Superior Court of the State of Delaware, In and For New Castle County, on 1 December 2003, to determine his competency to stand trial and to obtain treatment for his own well-being.

## NOTIFICATION:

Upon admission to the Forensic Unit, Mr. Lewis was informed that he was being evaluated by Court Order, and that the results of all evaluations performed during this admission would not remain confidential, but would be disseminated to the Court, the prosecution, and his attorney.

## EXAMINER:

Medical Doctor specializing in Psychiatry with Board Certification, sub-specializing in Forensic Psychiatry

## LIST OF CHARGES:

Carjacking 2nd Degree
Theft $1000 or greater
Resisting Arrest

## SOURCES OF INFORMATION:

Face-to-face interview with Mr. Lewis on 21 May 2004 and various times thereafter
   on the Forensic Unit at DPC
Superior Court Criminal Docket

Seven page statement by Mr. Lewis regarding his social and legal history and his account
    of the crime, undated
Medical Records, Delaware Psychiatric Center, 21 May 2004 – present
Medical Records, First Correctional Medical (FCM), 5 March 2003 – 31 March 2004
Case Charge List
Complaint and Warrant
Exhibit A & B
Charge History Record
Letter from Donald Napolin, LSCW, to The Honorable Charles H. Toliver, 5 May 2004

## CURRENT MEDICATIONS:

Seroquel 50 mg twice daily for anger management and impulse control
Atenolol 25 mg daily for hypertension

## BACKGROUND INFORMATION:

Mr. Lewis was a 38-year-old African American male who presented to the Mitchell
Building based on an evaluation by Dr. Joshi, a prison psychiatrist. Dr. Joshi described
Mr. Lewis on 27 May 2003 as "psychotic and delusional, a danger to self and others,
refusing to take medication." He had assaulted a Correctional Officer, and was
transferred to the infirmary. Mr. Lewis was described as saying, "I can't distinguish
between right and wrong. I am hearing voices telling me to hurt myself and I'm seeing
shadows."

Mr. Lewis had been incarcerated on 17 November 2003 and convicted of Carjacking,
Theft and Resisting Arrest. According to the police report, Mr. Lewis was picked up by a
male driver who was out looking for a male companion for the evening. Mr. Lewis
allegedly attempted to rob the driver, at which point the driver jumped out of the vehicle
in fear, and Mr. Lewis drove off with the car. He allegedly resisted arrest when caught,
and was identified by the driver as the person who stole his car.

According to FCM records, Mr. Lewis was "flirtatious" at times, and had to be redirected
for asking personal questions of the mental health examiner. She confronted his
"narcissism and attention-seeking behaviors," and questioned the diagnosis of
Schizophrenia that had been given him by the physician. Mr. Lewis refused all
medication, requesting only Xanax and Valium (highly addictive drugs of the
Benzodiazepine family). He asked for art materials, and pornography, stating that these
items would be very helpful. He presented with, "broad mood and good eye contact, with
no suicidal, homicidal ideation and no auditory or visual hallucinations." He was
frequently argumentative and loud. He was observed wearing "paper horns," saying, that
they made him feel more comfortable. "It helps me deal with whatever I'm going
through. The horns are like a mask. If I deal with these things within me, I'll be a better
person, being unjustly accused." He was also described as calm and controlled. He
spoke of hearing voices but stated, "I don't know whether it's voices or just my

P. 4

thoughts." Mr. Lewis stated later that he wore the paper horns and the cat's eye contact lenses for the "scare" factor.

Not much is known about Mr. Lewis' legal history as he is from out of state. However, he said that he had been in prison for six or seven years in New Jersey, from about 1993 to 2000. He added that he had been sentenced to six years for Robbery, "I pick-pocketed somebody," but his jail time had been prolonged for fighting.

Mr. Lewis had no psychiatric history. He saw a counselor as a child in New Jersey where he grew up. At first he said he didn't remember why, but shortly thereafter remembered that it was because his mother had become involved in a Lesbian relationship. "I didn't approve of it and I voiced my opinion to her, and I started misbehaving. I didn't like the lady and I didn't like the idea of the relationship." He went on to explain, "I might have accepted it if it had been presented to me differently, but I saw this lady actually twist my mother's arm to tell me about the [Lesbian nature of the] relationship. I had thought they were just close friends." Mr. Lewis' mother told the team social worker that he had been attention-seeking as a youth, and that he felt no one ever paid enough attention to him. She said he always felt that whatever someone was doing, they should stop, and attend to his needs. He blamed his mother for his current problems due to her homosexual affair. His parents had separated when Mr. Lewis was two years old, at which time Mr. Lewis' father had gone to live in North Carolina.

Mr. Lewis stated that he had been employed in construction and as a porter. "Whatever job was open, I was doing it." However, he added, "I've been fired more than ten times." The longest job he ever held was three months. "I would always argue, or go in late, and I'd get fired." He admitted to selling drugs off and on. "That's what I had to do to have money. Then I got to selling bootleg CD's and DVD's."

Mr. Lewis dropped out of the tenth grade, but later obtained a GED. He changed that idea later, and said that he had a high school diploma. His mother maintained that he actually had a GED. He said, "She thought wrong." He attended the American Business Institute, but did not stay long, ending up owing them money. He related that he had been attending commercial drivers' school to drive eighteen-wheelers just prior to his incarceration. "It was going to be my first job; Poland Springs was going to hire me."

Mr. Lewis stated that he been shot by a police officer ten years ago, with gunshot wounds to the left hip and left arm. He had history of hypertension for which he was being medicated, and history of kidney infection. He had no other significant medical or surgical history.

Mr. Lewis had never married, stating, "Every time I get into a relationship, we always argue." He was with one girlfriend off and on for eight years.

Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior to his had history of blackouts, but did not elaborate. He denied heavy

P. 5

use. He also admitted to smoking marijuana sixteen years ago, but denied all other illicit drug use. It was considered probable that he was minimizing his addiction issues.

## HOSPITAL COURSE:

Mr. Lewis became verbally unresponsive, selectively mute, and categorically refused to answer any questions on the day of admission. He also refused the initial physical examination. Later the same day, Mr. Lewis was observed interacting in a normal manner on the unit. Several days later, the initial examinations were completed without problem. He eventually explained that he had not felt like speaking on the first day.

Mr. Lewis' hospital course has been complicated by his aggressive, assaultive behavior. He was overheard making physical threats, observed taunting and laughing at his peers, taking pleasure in embarrassing them, and was                     . He complained of hearing voices sporadically but displayed no evidence of preoccupation with internal stimuli when he believed he was not being observed.

The team psychologist described Mr. Lewis in the following manner in the anger management group: arrogant, disruptive and instigating. While the other older patients tried to have a calming influence, Mr. Lewis displayed no sense of boundaries or respect for authority. She added that there was nothing odd or bizarre about his behavior that would suggest a psychotic disorder. Other therapists noted that he was disruptive in the group setting, talking out of turn, and making obscene comments while watching educational videos. When evaluated by the team, he made it clear that he would rather be at DPC rather than in jail in order to "get some help." When asked what help he needed, or what we could do for him, he answered he didn't know.

One staff member stated that she found Mr. Lewis to be engaging, intelligent and articulate, but noted his sense of entitlement, and his demand that things be done his way. Mr. Lewis stated that he needs to do "outlandish things" to get attention, such as wearing paper horns and wearing his cat's eye lenses. It was explained to him that he would not be allowed to wear his paper horns at any time while at DPC, after he placed them on his head at one point. He understood, and did not attempt to wear them again. He was noted to attempt to intimidate one female therapist by facing her in the hallway and stating, "I just want to get my point across that whatever you said about me in team meeting was wrong and derogatory."

On 6/7/04, a special meeting with Mr. Lewis was called to address his grossly inappropriate behavior on the unit the night before. He was angered by not receiving a certain salad at dinner to which he believed he was entitled, and assaulted a peer and a staff member, escalating to the point where he was difficult to redirect. In summary, he was noted to be disruptive in the group setting, to taunt his peers, to intimidate and flirt with therapists, and to make obscene comments. There were reports to the contrary by other staff members who reported that Mr. Lewis was cooperative and helpful in the milieu, tending to get loud and demanding at times when he felt his needs were not being met in a timely fashion.

Initially, Mr. Lewis was prescribed no psychotropic medication, as there was no evidence of a mood disorder, and no evidence of psychosis. However, Seroquel was begun after it became evident that Mr. Lewis had difficulty managing his anger, and controlling his impulses.

## CURRENT MENTAL STATUS EXAM:

Mr. Lewis presented with shaved head, and was appropriately dressed. He was cooperative, and able to sit quietly for the examination with no abnormal motor activity. His speech was normal in rate, tone and volume, and there was no evidence of loud, pressured speech. He stated that his mood was "sensitive, and easily irritated." His affect was full range. His thought processes, assessed by the verbalizations of his thoughts and feelings, were goal directed; there was no evidence of loosening of associations or tangentiality. His thought content displayed no delusions. He was not thinking about suicide, although he maintained that he had been thinking about it. "But I don't really want to do it." He was not thinking about hurting others, and stated, "I'm not on the defensive unless there's a reason." He denied obsessions, compulsions, racing thoughts, paranoia, delusions, special powers, hyper-religiosity, and grandiosity. His cognitive functions were intact grossly. His insight and judgment were considered intact.

## COMPETENCY ASSESSMENT:

Mr. Lewis was presented the questions to the McGarry Criteria as cited in State of Delaware v. Joseph A. Shields, 593 A.2nd, 986 (Del. Super. 1990), p. 1000. Based upon the present examination, Mr. Lewis demonstrated that he does have sufficient present capacity to consult with an attorney with a reasonable degree of rational understanding of court procedures. He is fully able to understand the nature of the proceedings against him, to give evidence in his own defense and to instruct counsel on his behalf.

It should be noted that Mr. Lewis handed out a highly articulate, well-written explanation of his actions on the day of the alleged crime. It reveals a high level of education and intelligence, and highlights his excellent ability to give evidence in his own defense and to instruct counsel on his behalf.

## DIAGNOSIS:[1]

|  |  |
|---|---|
| Axis I: | Malingering; Alcohol Abuse; History of Conduct Disorder |
| Axis II: | Antisocial Personality Disorder |
| Axis III: | Hypertension |
| Axis IV: | Psychosocial and Environmental Problems: Incarceration |
| Axis V: | Global Assessment of Functioning (GAF) Scale (1 – 100): 50 |
|  | Serious impairment in social and occupational functioning |

---

[1] American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

Forensic Psychiatric Evaluation: Jimmy Lewis                    19 June 2004, Page 6 of 6

OPINION:

The opinions expressed in this report are held with a reasonable degree of medical certainty, and are based upon the direct examination of Mr. Lewis, the observations reported by staff and therapists on the Forensic Unit, and the previous reports and records available for review. These opinions are subject to change if additional information or records become available.

Assessment:

The essential feature of Malingering is the intentional production of false or grossly exaggerated *physical or psychological symptoms, motivated by external incentives* such as ~~getting out of~~ prison into a psychiatric unit. Malingering should be strongly suspected ~~in the presence~~ce of Antisocial Personality Disorder.

Mr. Lewis demonstrated no evidence of a mood disorder or psychosis during his admission to DPC, and it is not likely that he ever had Schizophrenia or any other chronic psychotic disorder.

SUMMARY OF OPINIONS AND RECOMMENDATIONS:

1.    Mr. Lewis is psychiatrically stable and can be returned to prison.

2.    It is my opinion that Mr. Lewis is competent to stand trial.

3.    It is my opinion that, as in the case of many people with Antisocial Personality Disorder, Mr. Lewis may need to remain on his medication to help with anger management and impulse control

4.    Any threats made by Mr. Lewis to harm himself or others should be taken *seriously as he is highly manipulative and will stop at little to obtain his goals.*

Sylvia Foster, M.D.
Forensic Psychiatrist

(72)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS                          )
                                      )
        *Pro Se* Plaintiff             )
                                      )
        v.                            )       Civil Action No. 04-1350 GMS
                                      )
~~DR. SYLVIA~~ FOSTER, et al.           )
                                      )
        Defendants                    )

## SCHEDULING ORDER

At Wilmington this 28th day of July, 2006, pursuant to Fed.R.Civ.P. 16 and D.Del.L.R. 16.2;

IT IS ORDERED that:

1.      **Joinder of other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before September 28, 2006.

2.      **Discovery.** All discovery shall be initiated so that it will be completed on or before January 29, 2007.

3.      **Application by Motion.** Any application to the Court shall be by written motion filed with the Clerk.

4.      The parties shall not send or deliver any correspondence to Chambers. All correspondence and pleadings must be filed directly with the Clerk of the Court. It shall be the responsibility of the parties to inform the court of any change of address.

5.      **Summary Judgment Motions.** All summary judgment motions, with accompanying briefs and affidavits, if any, shall be served and filed on or before March 1, 2007. The Answering

brief shall be filed on or before March 15, 2007, and the Reply brief due on or before March 29, 2007.

      6.    <u>Scheduling</u>.  The parties shall direct any requests or questions regarding the scheduling and management of this matter to chambers at (302) 573-6470.

    Any request for extensions of time as set forth in this Scheduling Order must be made no later than twenty-one days prior to the expiration of time.

                                  UNITED STATES DISTRICT JUDGE



IM Jimmie Lewis
SBI# 506620 UNIT BLD 23-D-42
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

CLERK OF THE COURT (GMS)
U.S DISTRICT COURT
844 N. KING ST, LOCKBOX 18
WILMINGTON, DELAWARE
19801

**Tracy Hughes**

| | |
|---|---|
| **From:** | Cynthia G. Beam, Esquire |
| **Sent:** | Thursday, August 10, 2006 10:55 AM |
| **To:** | Tracy Hughes |
| **Subject:** | FW: Activity in Case 1:04-cv-01350-GMS Lewis v. Foster "Motion for Discovery" |

**Reger**
**Rizzo**
**Kavulich**
**&Darnall** LLP
ATTORNEYS AT LAW

Suite 202
1001 Jefferson Street
Wilmington, DE 19801
Phone: 302.652.3611
Fax: 302.652.3620
Web: www.rrkdlaw.com

Cynthia G. Beam, Esquire
cbeam@rrkdlaw.com

NEW IRS RULES RESTRICT WRITTEN FEDERAL TAX ADVICE FROM LAWYERS AND ACCOUNTANTS. WE INCLUDE THIS STATEMENT IN ALL OUTBOUND EMAILS BECAUSE EVEN INADVERTENT VIOLATIONS MAY BE PENALIZED. NOTHING IN THIS MESSAGE IS INTENDED TO BE USED, OR MAY BE USED, TO AVOID ANY PENALTY UNDER FEDERAL TAX LAWS. THIS MESSAGE WAS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF ANY TRANSACTION. CONTACT THE SENDER IF YOU WISH TO ENGAGE US TO PROVIDE FORMAL WRITTEN ADVICE AS TO TAX ISSUES.
THIS E-MAIL MAY CONTAIN PRIVILEGED, CONFIDENTIAL, COPYRIGHTED, OR OTHER LEGALLY PROTECTED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT (EVEN IF THE E-MAIL ADDRESS ABOVE IS YOURS), YOU MAY NOT USE, COPY, OR RETRANSMIT IT. IF YOU HAVE RECEIVED THIS BY MISTAKE PLEASE NOTIFY US BY RETURN E-MAIL, THEN DELETE. THANK YOU.

**From:** ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
**Sent:** Thursday, August 10, 2006 9:42 AM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:04-cv-01350-GMS Lewis v. Foster "Motion for Discovery"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

## U.S. District Court

## District of Delaware

Notice of Electronic Filing

The following transaction was received from entered on 8/10/2006 at 10:41 AM EDT and filed on 8/9/2006

| | |
|---|---|
| **Case Name:** | Lewis v. Foster |
| **Case Number:** | 1:04-cv-1350 |
| **Filer:** | Jimmie Lewis |
| **Document Number:** | 75 |

**Docket Text:**
MOTION for Discovery - filed by Jimmie Lewis. (mmm)

8/10/2006

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/10/2006] [FileNumber=256421-0]
[60be05b58abe0acd0adc42bf146d1ea8d22b519541c65dc6d0d96ae41567455ac082
e038ac33a4e06cb5d94f547752ebbd928cf2b3b50c9bb883dbdec94593dd]]

**1:04-cv-1350 Notice will be electronically mailed to:**

Cynthia G. Beam    cbeam@regrizlaw.com

Gregory E. Smith    greg.smith@state.de.us,

Aleph Ann Woolfolk    ann.woolfolk@state.de.us, stephany.murray@state.de.us

**1:04-cv-1350 Notice will be delivered by other means to:**

Jimmie Lewis
SBI#506622
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

05-609
9-26-06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,                          )
                                       )
                    Plaintiff,         )        C.A. No.: 04-1350 (GMS)
                                       )
        v.                             )
                                       )
SYLVIA FOSTER, KATHYRN                 )
SHENEMAN, MICHAEL TALMO,               )
DIANE STACHOWSKI, HELEN                )
HANLON, MARGERET WILSON,               )
MALE NURSE, DONNA LAWRENCE,            )
GLORIA BANKS, FLORENCE SCOTT           )
COBB, LANCE SAPERS, DAVE               )
MOFFITT, R. GRAY, C. OATS, ROSE        )
ARES, PAT RILEY, DR. OVRESHI,          )
CURTIS CORNISH, KAREN                  )
CHAMBERLIN, SEGAL J., TANYA            )
WILSON, J. CONYER, MR. JOHNSON,        )
JOHN JOE,                              )
                                       )
                    Defendants.        )

## DEFENDANT DR. SYLVIA FOSTER'S
## RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY

Defendant, Sylvia Foster, M.D., hereby responds to Plaintiff's Motion for Discovery and

in support of her response, states as follows:

1.      The date(s) Geodon was prescribed, for how long it was prescribed and the des(s)

it was discontinued.

**RESPONSE:    Geodon was prescribed on the following dates: 6/11/04, 6/13/04, 6/14/04,**

**6/21/04 and 6/24/04. Geodon was discontinued on 6/25/04. By way of further response, see**

**attached medical records.**

2.      The date(s) Benadryl was prescribed, for how long it was prescribed, the date(s) it

was discontinued.

**RESPONSE:** 6/24/04, 6/14/04, 6/13/04, 6/6/04, 6/21/04, 5/28/04, 5/25/04 are the dates that was given. Benadryl, 50 mg. PO HS/PRN times 30 days was ordered on 5/25/04 and stopped on 6/22/04. By way of further response, see attached medical records.

3.     The date(s) "Paridium" was prescribed, for long it was prescribed and the date(s) it was discontinued.

**RESPONSE:** "Paridium" (sic) 6/2/04, 6/8/04 prescribed for five days BID. Discontinued on 6/14/04.

4.     The date(s) "Haldol" was prescribed, for how long it was prescribed and the date(s) it was discontinued.

**RESPONSE:** Haldol 5/21/04, discontinued on 6/20/04. By way of further response, please see the attached medical records.

5.     The date(s) "Ativan" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:** Prescribed on 5/21/04, discontinued on 7/9/04. By way further response, see attached medical records.

6.     The date(s) "Effexor" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:** Prescribed on 6/1/04, discontinued on 6/6/04. Prescribed on 6/6/04, discontinued on 7/6/04, 37.5 mg. PO every AM. Prescribed on 5/25/04, discontinued 5/31/04, Effexor 75 mg. PO every AM. Prescribed on 5/31/04, discontinued 6/5/04, Effexor 150 mg. PO every AM. Prescribed on 6/5/04, discontinued 7/3/04. By way of further response, see attached medical records.

7.    The date(s) "seroquel" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:    Prescribed 6/18/04, discontinued 7/28/04.**

8.    The date(s) "Bactrim" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:    Prescribed 6/2/04, discontinued 6/7/04.  By way of further response, please see medical records attached.**

9.    The date(s) the "chef salad" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:    6/2/04 - change in nutrition order read "Regular chef's salad with breakfast, small tossed salad at meals, cheese, peanut butter, banana and chef salad". Discontinues 6/10/04.**

10.    The date(s) the plaintiff Jimmie Lewis was placed on disciplinary restriction, the reasons why, for how long the restriction, and the description of the disciplinary sanction(s).

**RESPONSE:    6/6/04 6:20 p.m. patient put in four point restraint for safety of self and others.  Not to exceed two hours.  6/6/05 6:30 p.m. restricted patio, pull playing visits and snacks until seen by treatment team.  6/7/04 6:45 p.m. restrict visit, patio, weight room, gym, vending machine for one week.  6/14/04 9:00 p.m. seclusion room for the safety of others.  Not to exceed more than two hours.  Can be released earlier when he calms down. 6/14/04 23:00 seclusion renewed, not to exceed two hours or until patient is calm.  6/15/04 5:40 p.m. continue restriction of patio, weight room, gym and vending machines for another week.  6/21/04 restrictions renewed for one week and then to be re-evaluated. 6/21/04 seclusion not to exceed two hours.  Patient extremely agitated, assaultive and poses**

a danger to others and self. **Patient can be released when calm and not dangerous anymore. 6/21/04 patient extremely agitated and assaultive. Four point restraint for extreme agitation. Patient trying to knock down the door and being a danger to self and others. Restraints not to exceed two hours. Can come off them when calm. 6/21/04 Four point restraints not to exceed two hours for continued physically aggressive, hostile combative. Can be discontinued when calm. 6/22/04 1:05 a.m. continued four point restraints not to exceed two hours for safety of self and others. 6/24/04 1:00 p.m. four point restrain for safety of self and others, not to exceed two hours. Can be released earlier if calm. 6/24/04 3:00 p.m. renew four point restraints due to extremely aggressive behavior. By way of further response, see attached medical records.**

    11.    Photocopies of the written notices of any and all disciplinary reports and sanctions.

**RESPONSE:    After reasonable investigation, it has been determined that no such written reports exist.**

    12.    The names of nurses whom were employed and worked between the dates of 5/20/04 and 6/25/04, during the dates of the plaintiff's stay at the D.P.C.

**RESPONSE:    Objection. The request is overly broad and burdensome and not likely to result in production of discoverable materials. By way of further response, see attached medical records.**

    13.    The specific reason Dr. Sylvia Foster documented on the June 10, 2004 Forensic Psychiatric Report that was submitted to the New Castle County Superior Court, why the plaintiff Jimmie Lewis was being evaluated at the D.P.C.

**RESPONSE:**    **Jimmie Lewis was transferred to the Delaware State Hospital for psychiatric evaluation for the purpose of determining competency and to obtain treatment for his own well being, pursuant to Court Order by Judge Toliver of the Superior Court of the State of Delaware in and for New Castle County, pursuant to an Order dated December 1, 2003. By way of further response, see attached medical records.**

14.    Any and all diagnosis that were determined and documented by Dr. Sylvia Foster throughout the course of the plaintiff's stay at the D.P.C., along with the date(s) those diagnoses were acknowledged and/or determined.

**RESPONSE:**    **Final clinical diagnosis documented by Dr. Sylvia Foster in her release summary dated 7/26/04 was malingering alcohol abuse, history of conduct disorder, anti-social personality disorder, hypertension, severity of psychosocial stressers: incarceration, global assessment of functioning: current GIF-50 with severe impairment and social and occupational functioning, highest level last year, unknown. By way of further response, see enclosed medical records.**

15.    The date the plaintiff received his competency hearing in the mock court room at the D.P.C. and the name of the commissioner and/or judge whom conducted the competency hearing.

**RESPONSE:**    **After reasonable investigation, Answering Defendant is without sufficient information to respond. Upon information and belief, that information is not contained in the medical records and, therefore, not available to Answering Defendant.**

16.    The date(s) the plaintiff, Jimmie Lewis, was ordered to be placed on and or in (4) point restraints, who gave the order to place the plaintiff in (4) point restraints, the time the plaintiff was place in (4) point restraints, what medications were administered to plaintiff during

said (4) point restraining period, and the time the plaintiff was released for (4) point restraints.

**RESPONSE:    6/6/04 Jimmie Lewis hit another patient and also hit a staff member in the face.  He was given Haldo and Benadryl, continued to be agitated and he refused to contract for safety of himself and others and was put in four point restraints.  Began at 6:15 p.m. and ended at 7:00 p.m.  Behavior leading to intervention, threatening harm and imminent risk of harm to patients, hitting upon on provoked aggression.  6/21/04 patient had lost privileges stated he was going to punch someone.  He attacked a patient without provocation hitting them.  He continued to be imminent risk of harm to patients and the staff so he was placed in seclusion at 8:30 p.m.  Seclusion was ended at 11:00 a.m. and four point restraints were initiated due to threats to others.  He was in restraints from 11:00 p.m. to 3:00 a.m.  Patient was given Ativan, Geodon, Benadryl and Seroquel.  6/24/04 four point restraints begin when Lewis began throwing trays began at 1:00 p.m. and ended at 5:00 p.m. when he agreed to contract for safety.  Medications given: Geodon, Ativan and Benadryl.  By way of further response see attached medical records.**

17.    What date(s) were the disciplinary hearings conduct, and who conducted the disciplinary hearing(s)?

**RESPONSE:    After reasonable investigation, Answering Defendant does not know of any disciplinary hearings that were held.**

18.    The date the consultation for the plaintiff was ordered to visit the urologist and who ordered the consultation.

**RESPONSE:    The consult with a urologist to evaluate for possible current urethritis was ordered on 6/4/04 at 9:00 a.m. by Dr. Sylvia Foster.  By way of further response, see attached medical records.**

19.    The date Dr. Sylvia Foster on the forensic psychiatric evaluation report dated June 10, 2004, that was submitted to the New Castle County Superior Court, that the Plaintiff Jimmie Lewis was arrested.

**RESPONSE:    The report reflects the date of the car jacking performed by Jimmie Lewis - 5/26/03. The report also reflects the date that Lewis was incarcerated for car jacking second degree theft $1,000 or greater and resisting arrest - 11/17/03. The report does not reflect the date that Lewis was arrested. By way of further response, see attached medical records.**

20.    The names of the R.N.'s (registered nurses), whom Dr. Foster ordered to inject the Plaintiff was psychotropic medications on 6/6/04, 6/14/04, 6/21/04, 6/24/04, 6/22/04 as is documented on the progress note(s) and or the doctors notes regarding the Plaintiff.

**RESPONSE:    After reasonable investigation, Answering Defendant asserts that Dr. Foster never directly ordered anyone to inject the Plaintiff was Psychotropic medication. With the exception of Benadryl given at 15:20 hours on 6/24/04, all of the other medication orders were standing PRN orders given at the discretion of the hospital staff depending on their professional judgment and assessment of the conduct and behavior of Lewis, as well as his status concerning eminent threats to himself, other patients and staff. By way of further response, see attached medical records.**

21.    The name(s) of nurse assistance whom were employed at the D.P.C. on 6/6/04, 6/14/04, 6/21/04, 6/22/04, 6/24/04.

**RESPONSE:    Objection. This request is overly broad and burdensome and not likely to result in production of discoverable materials. By way of further response, see attached medical records.**

22.    The Plaintiff's (G.A.F.) Global Assessment of Functioning Scale when he was admitted on or about 5/20/04 and the Plaintiff's (G.A.F.) scale when he was discharged on 6/25/04.

**RESPONSE:    Provision of clinical diagnosis current G.A.F.-20 by way of further response, see attached medical records.**

23 .    Photocopies of the (F.C.M.) First Correctional Medical medical records utilized by Dr. Foster to conduct the plaintiff Jimmie Lewis' forensic psychiatric evaluation.  (See attached exhibit), documents under the title "source of information".

**RESPONSE:    See attached medical records.**

24.    The documents and or material titled exhibit A&B, documented under the title "source of information" on Dr. Fosters June 10, 2004 Forensic  Psychiatric Report.  (See attached exhibit).

**RESPONSE:    Is not in possession of the requested documents.  To the extent that Answering Defendant learns such information or obtain such document, they will supplement this response.**

25.    A photocopy of the official court order from the superior court judge or commissioner, documenting that  the defendant was judicially competent and returned to the department of correction to partake in court proceedings.

**RESPONSE:    Answering Defendant is not in possession of such court order.  To the extent that Answering Defendant is able to obtain a copy of said order, it will be provided.**

26.    The address of "Jame Smith", an inmate patient about 19 years of age that was undergoing treatment at the D.P.C. during the plaintiff's stay at the D.P.C.  Mr. James Smith' address is requested because he is a crucial witness to events and or incident(s) the plaintiff

claims in his complaint.

**RESPONSE:   Answering Defendant, after reasonable investigation, is without sufficient information or knowledge to respond to this request.**

27.   A photocopy of the deposition taken of and or from the plaintiff Jimmie Lewis per court order.

**RESPONSE:   Answering Defendant has no knowledge of a deposition taken of or from plaintiff Jimmie Lewis per Court Order.**

28.   The documents titled, "case charge list", under "source of information" on Dr. Fosters June 10, 2004 Forensic Psychiatric report.  (See attached exhibit).

**RESPONSE:   After reasonable investigation, Answering Defendant has produced the offenders status sheet which is enclosed with the medical records.**

29.   The documented titled "charge history record" under "source of information" on Dr. Fosters' June 10, 2004 Forensic psychiatric report.  (See attached exhibit).

**RESPONSE:   After reasonable investigation, Answering Defendant has produced the offenders status sheet which is enclosed with the medical records.**

REGER RIZZO KAVULICH & DARNALL LLP


*/s/ Cynthia G. Beam, Esquire*
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:   September 26, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,                              )
                        Plaintiff,         )
                                           )
            v.                             )
SYLVIA FOSTER, KATHYRN                     )   C.A. No.:  04-1350 (GMS)
SHENEMAN, MICHAEL TALMO,                   )
DIANE STACHOWSKI, HELEN                    )
HANLON, MARGERET WILSON,                   )
MALE NURSE, DONNA LAWRENCE,                )
GLORIA BANKS, FLORENCE SCOTT               )
COBB, LANCE SAPERS, DAVE                   )
MOFFITT, R. GRAY, C. OATS, ROSE            )
ARES, PAT RILEY, DR. OVRESHI,              )
CURTIS CORNISH, KAREN                      )
CHAMBERLIN, SEGAL J., TANYA                )
WILSON, J. CONYER, MR. JOHNSON,            )
JOHN JOE,                                  )
                                           )
                        Defendants.        )

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on this 26th day of September, 2006 that a true and correct copy of Defendant Dr. Sylvia Foster's Response to Plaintiff's Motion for Discovery has been served electronically and/or by first class mail, postage prepaid, to the following:

Jimmie Lewis                        Gregory E. Smith
SBI#506622                          Deputy Attorney General
1181 Paddock Road                   820 North French Street, 7th Floor
Delaware Correctional Center        Carvel State Office Building
Smyrna, DE 19977                    Wilmington, DE 19801

REGER RIZZO KAVULICH & DARNALL LLP

*/s/ Cynthia G. Beam, Esquire*
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:  September 26, 2006