**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

JIMMIE LEWIS,                                    )
                                                 )
             Plaintiff,              )
                                                 )
      v.                                 )          C.A. No. 04-1350-GMS
                                                 )
DR. SYLVIA FOSTER, et al.,                       )
                                                 )
             Defendants.             )

**DEFENDANTS' (JOHNSON, SAGERS, GRAY AND MOFFETT)**
**RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY II**

1.     Dr. Foster's June 10, 04 Forensic report states, quote, he was angered by not receiving a certain salad at dinner to which he believed he was entitled and assaulted a peer and a staff member. (Denied by the plaintiff). Name the peer and staff member said to have been assaulted by the plaintiff, when did these incidents happened, who witnessed these incidents.

     Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

2.     Dr. Foster's June 10, 04 Forensic Report states, quote, he was noted attempting to intimidate one female therapist by facing her in the hallway stating, I just want to get my point across that whatever you said about me in team meeting was wrong and derogatory. (Denied in part- the plaintiff did not attempt or try to intimidate any female therapist). Who was the one female team therapist, who witnessed this incident, when did it happen.

     Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

3.     Dr. Foster's June 10, 04 Forensic Report states, quote, According to F.C.M. Records, the FCM mental health examiner documented that, he was frequently argumentative and loud. (Denied by the plaintiff). Who was this F.C.M Mental Health Examiner, when was this statement made, and did Dr. Foster witness the plaintiff display such behavior at the said time it is said to have happened.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

4.    Dr. Foster's June 10, 04 Forensic Report states, other therapist noted that he was disruptive in group setting, talking out of turn and making obscene comments while watching educational video's. (Denied by the Plaintiff). Who is the therapist who reported these remarks and or behaviors, what was the obscene comments, when were these comments made, and who witnessed the plaintiff make these comments.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

5.    Dr. Foster's June 10, 04 Forensic Report states, quote, He attended the American Business Institute, but did not stay long, ended up owing them money. (Denied by the plaintiff.) Provide the forensic evidence to support this statement.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

6.    Dr. Foster's June 10, 04 Forensic Report States, quote,  Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior to his incarceration.  (Denied by the plaintiff). Dr. Foster's statement erroneously draws an inference that the plaintiff was drinking alcohol only moments before the offense are said to have happened, but the plaintiff hand not drank alcohol (beer) for at least a week prior to his incarceration.  Questions, what date was Dr. Foster referring to when she state with his last use of alcohol just prior to his incarceration.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

7.    Dr. Foster's June 10, 04 Forensic Report states, while the other patients tried to have a calming influence, Mr. Lewis displayed no sense of boundaries or respect for authority.  (Denied by plaintiff).  What was the description of the incident(s) responsible for these slanderous remarks about the plaintiff, who witnessed these incidents, when these incidents occure.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

8.    Dr. Foster's June 10, 04 Forensic Report states, quote, Mr. Lewis stated that he needs to do "outlandish things" to get attention, such as wearing paper horns and his cat eye lenses.  (Denied by plaintiff). Who reported this statement, at what time and date, and who witnessed the plaintiff make such statements.

      Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

9.    Dr. Foster's June 10, 04 Forensic Report states, quote, The team psychologist stated that Mr. Lewis was arrogant, disruptive and instigating.  (Denied by the plaintiff).  What was the incident that caused the team psychologist to slander the plaintiff as arrogant, disruptive and instigating, who witnessed these incidents, and provide the full name of the team psychologist who reported these statements.

      Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

10.   Dr. Foster's June 10, 04 Forensic Report states, quote, Mr. Lewis dropped out of 10th grade, (denied by plaintiff).  Provide the Forensic Evidence to support this statement.

      Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

11.   In regards to Dr. Foster diagnosing the plaintiff as malingering, for which Dr. Foster defines in her June 10, 04 Forensic Report as, quote, the essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as getting out of prison into a psychiatric unit, unquote.  Was the plaintiff's alleged false or grossly exaggerated psychological symptoms presented as evidence at his trial, if no, describe why not.

      Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

12.   Dr. Foster's June 10, 04 Forensic Report states that the F.C.M. mental health examiner noted that, quote, Lewis asked for material and pornography, stating these items would be very helpful.  (Denied by the plaintiff).  Who was the F.C.M. mental health examiner, when was these statements made, and did Dr. Foster witness the plaintiff make these statements.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

13.    Dr. Foster's June 10, 04 Forensic report states, quote, According to FCM records, the FCM mental health examiner noted that he presented with broadmood and good eye contact, with no suicidal or homicidal ideation and no auditory or visual hallucinations, unquote.  (Denied by the plaintiff).  Who was the FCM mental health examiner, when was these statements made and did Dr. Foster witness these behaviors at the said time they are said to have occurred.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

14.    Can a person become mentally ill after incarceration.

Response: Answering defendants are without sufficient knowledge or information.  Answering defendants are not trained or authorized to diagnose mental illness, prescribe medication, or administer medication.

15.    In every case, does a person need to be given psychotropic drugs in order to stabilize from mental illness.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information. Answering defendants are not trained or authorized to diagnose mental illness, prescribe medication, or administer medication.

16.    Can mental illness go undetected.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information. Answering defendants are not trained or authorized to diagnose mental illness, prescribe medication, or administer medication.

17.    Can mental illness go undetected for months.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information. Answering defendants are not trained or authorized to diagnose mental illness, prescribe medication, or administer medication.

18.     Can mental illness go undetected for a year.

        Response: This question appears to be directed only to Dr. Foster, not answering
        defendants, and therefore no response is required.  To the extent a response is
        required, answering defendants are without sufficient knowledge or information.
        Answering defendants are not trained or authorized to diagnose mental illness,
        prescribe medication, or administer medication.

19.     Can mental illness go undetected for years.

        Response: This question appears to be directed only to Dr. Foster, not answering
        defendants, and therefore no response is required.  To the extent a response is
        required, answering defendants are without sufficient knowledge or information.
        Answering defendants are not trained or authorized to diagnose mental illness,
        prescribe medication, or administer medication.

20.     Does schizophrenia manifest its symptoms the exact same way in every person, if
        no, state the reasons why.

        Response: This question appears to be directed only to Dr. Foster, not answering
        defendants, and therefore no response is required.  To the extent a response is
        required, answering defendants are without sufficient knowledge or information.
        Answering defendants are not trained or authorized to diagnose mental illness,
        prescribe medication, or administer medication.

21.     Would the defendants object to a board certified psychiatrist reviewing the
        answers to the discovery motions.

        Response: No

22.     In regards to Dr. Foster's June 10, 04 Forensic Report, did Dr. Foster in any way
        misinterpret the reason why the plaintiff was ordered to be psychiatrically
        evaluated for competency and to receive treatment for his very own well being, if
        yes, state how.

        Response: This question appears to be directed only to Dr. Foster, not answering
        defendants, and therefore no response is required.  To the extent a response is
        required, answering defendants are without sufficient knowledge or information.

23.     Dr. Foster's June 10, 04 Forensic report states, any threats made by Mr. Lewis to
        harm himself or others should be taken seriously as he is highly manipulative and
        will stop at little to obtain his goal.  What does Dr. Foster specifically mean he is
        highly manipulative, and specificly what are the "goals" that the plaintiff will stop
        at little to obtain.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

24.  Dr. Foster's June 10, 04 Forensic Report states, he saw a counselor as a child in New Jersey where he grew up. Did Dr. Foster obtain mental health records form the counselor, if no, tate the reason for not obtaining the records.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

25.  Dr. Foster, did you consider the TP 3 psychological assessment authored by Annebel Leefields on May 24, 04, if yes define what portions, and why you took said portions of the TP 3 Assessment into considerations.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

26.  In the 30 days the plaintiff waited to be transferred in the H.R.Y.C.I. infirmary could he have stabilized from the symptoms he displayed while in the infirmary.

Response: Answering defendants are without sufficient knowledge or information.

27.  In the 61/2 months after the superior court order was granted on Dec 1, 03, could the plaintiff have stabilized from the symptoms that gave reason to issue a court order for forensic evaluation before he was transferred to the D.P.C. on 5/21/04.

Response: Answering defendants are without sufficient knowledge or information.

28.  Mr. R. Gray were you in your correct state of mind during the plaintiff's stay at the D.P.C. from May 21, 04 to June 25, 04.

Response: Yes.

29.  Dr. Foster's June 10, 04 Forensic report states on page 5 of 6, however, seroquel was begun after it became evident that Mr. Lewis had difficulty managing his his anger, and controlling his impulses. And in conjunction of page 6 of 6, Mr. Lewis may need to remain on his medication to help with anger management and impulse control. Question, why did Dr. Foster choose to prescribe the plaintiff seroquel while he was at the DPC, and advise on her June 10, 04 that the plaintiff continue to receive seroquel. Why did Dr. Foster abuse seroquel, why did Dr. Foster advise seroquel a psychotropic medication to a person whom she

diagnosed as malingering, instead of advising the sedative Benadryl, a non psychotropic medicine.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

30.    Dr. Foster's June 10, 04 Forensic Report states any threats made by Mr. Lewis to harm himself or others should be taken seriously, can this statement be utilized to describe someone who is not mentally ill.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

31.    Did the plaintiff receive injections of psychotropic medicines during his stay at the DPC.

Response: Answering defendants are aware that Plaintiff received medications by way of injection, but have no personal knowledge of the specific medications. None of the answering defendants personally administered any medication to Plaintiff.

32.    Are the video camera's on the unit where the plaintiff was housed.

Response: Yes, video cameras are on the Northside of Jane E. Mitchell Unit.

33.    Dr. Foster, if someone in their correct state of mind intentionally hurt someone physically and intentionally violates their constitutional rights, should that person be held liable and punished with incarceration.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

34.    Dr. Foster were you in your correct state of mind during the plaintiff's stay at the DPC from May 21, 04 to June 25, 04.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

35.    Dr. Foster were R. Gray, Moffitt, Sagers, Jame Evans acting under your authority on 6/14/04 at or about 8:00pm as stated in the plaintiffs complaint, if no, state who's authority they were acting under.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

36.    Dr. Foster was Helen Hanlon acting under your authority on 6/14/04 at or about 8:00 pm as stated in the plaintiffs complaint, if no, state who's authority she was acting under.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

37.    Mr. R. Gray if someone in their correct state of mind intentionally hurt someone physically and intentionally violates their constitutional rights, should that person be held liable and punished with incarceration.

Response: This question calls for a legal conclusion to which no answer is required.

38.    Is it okay to hold someone down with force and give them psychotropic medication, where there is no sign of mood disorder.

Response: Yes, there are numerous circumstances when it can be appropriate.

39.    Is it okay to hold someone down with force and give them psychotropic medication, when there is no sign of psychosis.

Response: Yes, there are numerous circumstances when it can be appropriate

40.    Dr. Foster why didn't you discontinue all the psychotropic medications prescribed for the plaintiff after you authored your June 10, 04 forensic report that notes that the plaintiff is diagnosed as malingering.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

41.    Can psychotropic medications be used to put a patient into a hypnotic state.

Response: Answering defendants are without sufficient knowledge or information.

42.    While the plaintiff was under the influence of the cocktails of psychotropic medication, was it taken into consideration that involuntary medicating the plaintiff may cause negative reactions, if yes, please describe what the possible negative reations.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information

43.    Did the D.P.C. staff video record the plaintiff when he was involuntarily medicated with psychotropic.

Response: No

44.    There are camera's on the unit where the plaintiff was housed, produce the video surveillance of the incidents dating 6/6/04, 6/14/04,6/14-15/04, 6/21/04, 6/22/04 and 6/24/04, as stated in the plaintiff's complaint.

Response: Cameras did not record the incidents on the above dates.

45.    At the D.P.C. on 6/6/04 who was the person or persons who's safety was put in jeopardy by the plaintiff, who witnessed the alleged incidents, describe the said incident(s).

Response: *See* pp. 77-78 of Answering Defendants' Document Production.

46.    At the D.P.C. on 6/14/04 at or about 8:00 pm who was the person or persons who's safety was put in jeopardy by the plaintiff, who witnessed the alleged incidents, describe the said incident(s).

Response: *See* pp. 84, 127 of Answering Defendants' Document Production. Robert Gray witnessed the incident and was placed in jeopardy by Plaintiff. David Moffett also witnessed the incident, and was placed in jeopardy by Plaintiff.

47.    At the D.P.C. on 6/14/04 at or about 11:00 pm who was the person or persons who's safety was put in jeopardy by the plaintiff, who witnessed the alleged incident(s), describe the said incidents.

Response: *See* pp. 81, 85 of Answering Defendants' Document Production. Among others, Helen Hanlon observed Plaintiff's behavior while in seclusion.

48.    At the D.P.C. on 6/21/04 who was the person or persons who's safety was put in jeopardy by the plaintiff, who witnessed the alleged incidents, describe the said incidents.

Response: *See* pp. 130-132 of Answering Defendants' Document Production. Among others, Curtis Cornish, Karen Chamberlin, K. Ares, and Helen Hanlon observed Plaintiff's behavior while in seclusion.

49.    At the D.P.C. on 6/22/04 who was the person or persons who's safety was put in jeopardy by the plaintiff who witnessed the alleged incidents, describe the said incident(s).

Response: *See* pp. 79-80, 83, 88-89, 133-134 of Answering Defendants' Document Production. Among others, Brian Johnson, K. Ares and Curtis Cornish observed Plaintiff's behavior while in seclusion.

50.    At the D.P.C on 6/24/04 who was the person or persons who's safety was put in jeopardy by the plaintiff, who witnessed the alleged incident(s), describe the said incident(s).

Response: *See* pp. 96-99, 137-139 of Answering Defendants' Document Production. Among others, Tanya Wilson, Jennifer Pettyjohn, Alicia Jones, Joyce Hemmingway, and Curtis Cornish observed Plaintiff's behavior while in seclusion.

51.    The D.P.C. master treatment plan documents a plan date and a target date, but the plaintiff was returned to the D.P.C before the 7/2/04 target date, was this because the treatment for his well being was completed, if no, state the reason why the plaintiff was returned to the D.O.C. before treatment for his well being was completed.

Response: Answering defendants are without sufficient knowledge or information.

52.    Dr. Foster, what were the conditions of the plaintiffs confinement like in the cell he was housed in , cell # 197, the H.R.Y.C.I infirmary, 30 days prior to his being transferred to the D.P.C.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

53.    On the D.P.C seclusion or restraint nursing assessment form, what does involuntary administration of medication mean.

Response: To give medication by an injection.

54.    When a patient is put in the D.P.C. isolation room for agitation that does not threated himself with physical harm, why would four point restraints be necessary.

Response: Answering defendants do not make the decision to place a patient into seclusion or four point restraints. By way of further answer, answering defendants are without sufficient knowledge or information.

55.    On the D.P.C. seclusion or restraint nursing assessment form, provide a photocopy of the advance directive query form.

Response:  Upon review of Plaintiff's medical records, Lewis does not appear to have created an advance directive.

56.    Provide a typed memo of the handwritten information noted on the D.P.C. seclusion/restraint patient feedback form(s), provided via discovery, because said hand written information is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

57.    Provide a typed memo of the hand written information noted on the D.P.C. seclusion or restraint forms, provided via discovery, because said hand written information not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

58.    What date was the plaintiff checked and or received therapy from a psychologist for the psychological dilemmas he reported receiving from R. Gray, Sagers, Moffit and James Evans on 6/14/04.

Response: Defendants Sagers and Johnson were not present for the 6/14/04 incident.  By way of further response, defendants deny that Plaintiff received injuries from the 6/14/04 incident.  By way of further response, Plaintiff was examined by medical staff on several occasions on 6/14/04.  *See* pp126-128 of Answering Defendants' Document Production.

59.    Provide a typed memo of the hand written information noted on the D.P.C. seclusion and restraint nursing assessment form(s), provided via discovery, because said information is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

60.    Does a hyperdermic needle utilized to inject psychotropic medicines break the skin in a way that blood may exit the area that the hyperdermic needle entered the skin.

Response:  Yes

61.     Do drugs kill brain cells.

Response:  Answering defendants are without sufficient knowledge or information.

62.     Can an allergic reaction to psychotropic medication kill.

Response:  Answering defendants are without sufficient knowledge or information.

63      Are psychotropic medications considered drugs.

Response: Yes

64.      Provide a D.P.C. inmate patient rule and regulation handbook.

Response: Document production

65.     Mr. Johnson, if someone in their correct state of mind intentionally hurts someone physically and intentionally violates their constitutional rights, should that person be held liable and punished with incarceration.

Response: This question calls for a legal conclusion to which no answer is required.

66.     Mr. Johnson were you in your correct state of mind during the plaintiffs stay at the D.P.C. from May 21, 04 to June 25, 04.

Response: Yes

67.     Will the defendants answer discovery questions regarding the witnesses the plaintiff attempted to depose.

Response: No, answering defendants will only respond to questions direct to them.

68.     On the D.P.C. incident report, provided via discovery, what does risk MGR mean, who is this person and what qualifies as reason to contact the risk MGR.

Response: The Risk Manager is a DPC employee who reviews all incident reports.  The generation of any incident report is sufficient to contact risk manager.

69.     On the D.P.C. incident report, provide via discovery, what does DLTCRP mean.

Response: Delaware Long-Term Care Residents Protection

70. What date was the plaintiff checked by a physician for the physical injuries he reported receiving from R. Gray, Sagers, Moffitt and James Evans on 6/14/04.

Response: Defendants Sagers and Johnson were not present for the 6/14/04 incident. By way of further response, defendants deny that Plaintiff received injuries from the 6/14/04 incident. By way of further response, Plaintiff was examined by medical staff on several occasions on 6/14/04. *See* pp126-128 of Answering Defendants' Document Production.

71. At the time of the plaintiff's trial, could he both give and receive advise to and from his attorney, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

72. Dr. Fosters June 10, 04 Forensic report states, not much is known about Mr. Lewis' legal history as he is from out of state. However, he said that he had been in prison for six or seven years in New Jersey from about 1993 to 2000. (Denied by the plaintiff). The Plaintiff hereby request the forensic evidence Dr. Foster utilized to note these statements in her June 10, 04 Forensic report.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information

73. At the time of the plaintiff's trial, could he divulge facts without paranoid distress, if yes state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

74. At the time of the plaintiff's trial was he competent, if yes state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

75. At the time of the plaintiff's trial, could he make simple decisions, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

76. At the time of the plaintiff's arrest, could he make simple decisions, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

77.     Were both the McGarry functions and the Guatney presented to the plaintiff before his trial.

Response:  Answering defendants are without sufficient knowledge or information.

78.     Dr. Fosters June 10, 04 Forensic Report states, that the mental health examiner, confronted his narcissism and attention seeking behaviors, and questioned the diagnosis of schizophrenia given him by the physician.  Who was the FCM mental health examiner, when was these statements made, and did Dr. Foster witness the behaviors responsible for the FCM mental health examiner making these statements against the plaintiff.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information

79.     Dr. Fosters June 10, 04 Forensic report states that the FCM mental health examiner documented Mr. Lewis refused all medications requesting only xanax and valium, (highly addictive drugs of the benzodiazepine family) (the plaintiff denies this).  Who was the FCM mental health examiner, when was this statement made, and did Dr. foster witness the plaintiff make these statement.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information

80.     Dr. Foster define agitation.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information

81.     Why was it determined that the plaintiff should receive psychotropic medication for agitation.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information

82.     Dr. Foster define what forensic psychiatric evaluation for competency.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information

83. Dr. Foster define what treatment for his well being means.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information

84. At the time of the plaintiff's trial, could he provide his attorney with pertinent facts concerning the offenses, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

85. What date did the plaintiff stand trial.

Response: Answering defendants are without sufficient knowledge or information.

86. What date did the plaintiff take the stand.

Response: Answering defendants are without sufficient knowledge or information.

87. At the time of the plaintiff's trial could he challenge prosecution witnesses, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

88. What was the plaintiff's state of mind at the time of the alleged offenses.

Response: Answering defendants are without sufficient knowledge or information.

89. What was the plaintiff's state of mind at the time of his trial.

Response: Answering defendants are without sufficient knowledge or information.

90. Dr. Foster's June 10, 04 forensic report states, Mr. Lewis was flirtatious at times, with whom was Mr. Lewis flirtatious with, when was this statement made, and did Dr. Foster witness the plaintiff display this flirtatious behavior noted in her June 18, 2004 report.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information

91.     At the time of the plaintiff's trial, could he confer coherently with some appreciation of the proceeding, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

92.     At the time of the plaintiff's trial was he motivated towards self defense, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

93.     At the time of the plaintiff's trial, was he able to follow the testimony reasonable well, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

94.     At the time of the plaintiff's trial, was he able to meet stresses without his rationality or judgment breaking down, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

95.     At the time of the plaintiff's arrest did he have minimal contact with reality, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

96.     At the time of the plaintiff's trial did he have minimal contact with reality, if yes state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

97.     At the time of the plaintiff's arrest could he appreciate the range and nature of possible penalties, if yes, state the reasons why.

Response: Answering defendants are without sufficient knowledge or information.

98.     At the time of the plaintiff's trial, could he appreciate the range and nature of possible penalties, if yes, state the reasons why.

        Response:  Answering defendants are without sufficient knowledge or information.

99.     At the time of the plaintiff's trial, could he perceive realistically the likely outcome of the trial, if yes, state the reasons why.

        Response:  Answering defendants are without sufficient knowledge or information.

100.    Is the Defendant Moffitt willing to take a polygraph test, in order to vindicate himself of the claims against him, regarding the incidents as they are stated in the plaintiff's complaint and or in regards to any and all discovery evidence submitted that pertains to him.

        Response: Objection.  Polygraph tests are inadmissible.

101.    Is the Defendant Sagers willing to take a polygraph test in order to vindicate himself of claims against him, regarding the incidents as they are stated in the plaintiffs complaint and or in regards to any and all discovery evidence submitted that pertains to him.

        Response: Objection.  Polygraph tests are inadmissible.

102.    Is the defendant Johnson willing to take a polygraph test, in order to vindicate himself of claims against him, regarding the incidents as they are stated in the plaintiff's complaint and or in regards to any and all discovery evidence submitted that pertains to him.

        Response: Objection.  Polygraph tests are inadmissible.

103.    If a psychiatrist, who is assigned to conduct a forensic evaluation on a patient, exclusively utilized reports written by mental health personel other than the assigned psychiatrist, should the psychiatric report be considered forensic, if yes state why.

        Response:  Answering defendants are without sufficient knowledge or information.

104.    At the time of the plaintiff's trial, could he testify relevantly, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

105.   At the time of the offenses that the plaintiff is incarcerated for, was he suicidal, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

106.   At the time of the offenses that the plaintiff is incarcerated for, was he delusional, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

107.   At the time of the offenses that the plaintiffs trial, was he suicidal, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

108.   At the time of the plaintiffs trial, was he delusional, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

109.   At the time of the plaintiff's trial, was he provided with the psychotropic medicine that Dr. Joshi prescribed for him, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

110.   At the time of the plaintiff's trial was the plaintiff able to consider realistically the possible legal defenses, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

111.   At the time of the plaintiff's trial, was the plaintiff able to manage his behavior to avoid disruptions, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

112.    At the time of the plaintiff's trial, was he able to relate to his attorney, please state the facts of the matter.

Response:  Answering defendants are without sufficient knowledge or information.

113.    Did any inmate patient sign a notarized statement that the plaintiff harmed or hurt them psychologically or physically.  If yes, provide said statement.

Response:  Answering defendants are without sufficient knowledge or information.

114.    Did any staff of the D.P.C. sign a notarized statement that the plaintiff harmed or hurt them psychologically or physically.  If yes, provide said statement.

Response:  Answering defendants are without sufficient knowledge or information.

115.    Is the defendant Dr. Foster willing to take a polygraph test in order to vindicate herself of the claims against her, regarding the incidents as they are stated in the plaintiffs complaint, and or in regards to any and or all discovery evidence submitted that pertains to her.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information

116.    Is the defendant R. Gray willing to take a polygraph test in order to vindicate himself of the claims against him, regarding the incidents as they are stated in the plaintiffs complaint, and or in regards to any and or all discovery evidence submitted that pertains to him.

Response: Objection.  Polygraph tests are inadmissible

117.    Why did R. Foster avail herself on 6/20/06 in statutory defenses under 11 Del.C. § 468 (3); (5) and (7), in which states that she was permitted the authority by said statutes to order the use of force, when on 6/15/06 Dr. Foster stated that the plaintiff's alleged injuries were caused by individuals for which she had no control.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information

118.   Provide a typed memo of the hand written information noted on the D.P.C. doctor order sheets dating from 5/21/04 to 6/25/04 per discovery because said hand written information is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

119.   Dr. Fosters June 10, 04 Forensic report states, he also admitted to smoking marijuana sixteen years ago, but denied all other illicit drug use and that it was considered probable that he was minimizing his additio n issues. (Denied by the plaintiff), what forensic evidence did Dr. Foster utilize to come to the conclusions that the plaintiff smoked marijuana and that he was minimizing his addiction issues.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

120.   Dr. Fosters June 10, 04 forensic report states, Mr. Lewis' hospital course has been complicated by his aggressive, assultive behavior.  He was overheard making physical threats, observed taunting and laughing at his peers, and taking pleasure in embarrassing them. (denied by the plaintiff)  These are a wide array of slanderous accusations, and the plaintiff seeks to have Dr. Foster specificly identify exactly whom the plaintiff displayed aggressive and assultive behavior toward, who was he overheard making physical threats towards and who overheard him, who was the peer(s) Mr. Lewis took pleasure in embarrassing by taunting and laughing, and who witnessed Mr. Lewis display these behaviors.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

121.   Per discovery request, the plaintiff has received the Dec 1, 03 superior court order that was docketed with the clerk of the prothonotary stating that the plaintiff is to undergo a forensic evaluation for competency and to receive treatment for his very own well being, superior court docket #'s 25 and 26.   The plaintiff hereby request to receive the superior court order from the superior court jud ge or commissioner, that was filed with superior court clerk of the prothonotary and docketed-documenting that the plaintiff was deemed judicially competent and stable enough to be returned to the D.O.C. to be subjected to superior court procedures.

Response:  *See* p. 185 of Answering Defendants' Document Production.

122.    Dr. Foster, did the plaintiff request to be returned to the D.O.C.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

123.    Dr. Foster, if the plaintiff would have been given a competency hearing in the mock court room at the D.P.C. would we have had the opportunity to contest the forensic report you authored on June 10, 04.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

124.    Provide a typed memo of the hand written information noted on the D.P.C. incident reports provided via discovery, because said information is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

125.    Provide a typed memo of the hand written information noted on the F.C.M. consultation request dated June 9, 2004 provided via discovery, because said writing is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

126.    Provide a typed memo of the hand written information noted on the D.P.C. social assessment, 6 pages dated 5/24/04, provided via discovery, because said writing is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

127.    Does it take a court order for someone to be transferred from the D.O.C., to the D.P.C. Mitchell Building to undergo a forensic evaluation for competency, if no state how.

Response:  Answering defendants are without sufficient knowledge or information.

128.   Does it take a court order for someone to be transferred from the D.P.C. to the
       D.O.C., once the court ordered forensic evaluation for competency has been
       completed, if no state why.

       Response:  Answering defendants are without sufficient knowledge or
       information.

129.   Is it procedure for someone who has been court ordered to undergo a forensic
       evaluation for competency to receive a competency hearing at the D.P.C. before
       they are returned to the D.O.C., if no, state why not.

       Response:  Answering defendants are without sufficient knowledge or
       information.

130.   Mr. Moffit, isn't it robbery when someone utilizes un-necessary force to take
       something from someone, that is harmless and legally theirs.

       Response: This question calls for a legal conclusion to which no answer is
       required.

131.   Mr. Sagers, isn't it robbery when someone utilizes un-necessary force to take
       something from someone, that is harmless and legally theirs.

       Response: This question calls for a legal conclusion to which no answer is
       required.

132.   Mr. R. Gray, isn't it robbery when someone utilizes un-necessary force to take
       something form someone, that is harmless and legally theirs.

       Response: This question calls for a legal conclusion to which no answer is
       required.

133.   Does a person have to be retarded in order to be incompetent at the time of the
       offenses their accused of.

       Response:  Answering defendants are without sufficient knowledge or
       information.

134.   Does a person have to be retarded like Joseph A. Shields in order to be
       incompetent at the time of their trial.

       Response:  Answering defendants are without sufficient knowledge or
       information.

135.   Provide a typed memo of the hand written information noted on the D.P.C. consultation request and report dated June 9, 04 provided via discovery, because said writing is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

136.   In regards to Dr. Foster diagnosing the plaintiff as malingering; what are the false or grossly exaggerated physical or psychological symptoms. Discribe the details.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

137.   Dr. Foster's June 10, 04 Forensic report states Axis I: malingering, alcohol abuse, history of conduct disorder, including date(s), places, incidents and witnesses.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

138.   Define psychological and environmental problems incarceration; as it is noted in Dr. Fosters June 10, 04 forensic reports.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

139.   Define antisocial personality disorder, as it is noted in Dr. Foster June 10, 04 Forensic report.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

140.   What does the 11/17/03 date noted on Dr. Fosters June 10, Forensic report relate to regarding the plaintiff being ordered to undergo an forensic evaluation.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

141.   Dr. Foster's June 10, 04 forensic report states, on May 27, 2003 Lewis assaulted a correctional officer and was transferred to the infirmary. Provide the official documentation utilized to establish this forensic determination.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

142.   What did the plaintiff verbally state he did regarding his account of the offenses that he is incarcerated for, to whom did he make these verbal statements and what date.

Response: Answering defendants are without sufficient knowledge or information.

143.   Is it indeed a fact that Mr. Lewis displayed no evidence of a mood disorder and no evidence of psychosis during the course of his stay at the D.P.C., as it is noted in Dr. Fosters June 10, 04 Forensic Report.

Response: Answering defendants are without sufficient knowledge or information.

144.   Who wrote the order for the standing P.R.N. psychotropic medications.

Response: Answering defendants are not aware of the existence of a "standing order."

145.   Could the hospital staff at the D.P.C. give the plaintiff any P.R.N. psychotropic medications, if the psychiatrist who ordered the standing P.R.N. psychotropic medications, had not ordered the psychotropic medications.

Response: To the extent the question is directed to answering defendants, defendants do not administer any medications.

146.   Dr. Fosters June 10, 04 forensic report states, that Mr. Lewis' mother told the team social worker that he had been attention seeking as a youth, and that he felt no one ever paid enough attention to him. And that he always felt that whatever someone was doing, they should stop, and attend to these needs. (Denied by the plaintiff) Does Dr. Foster have a signed affidavit to validate this claim and is Florence Scott Cobbs willing to ..(unreadable)

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

147.   What is the intended results or purpose for utilizing a cocktail of psychotropic medications on a patient.

Response:  Answering defendants are without sufficient knowledge or information.

148.    Provide a photocopy of the deposition taken from the plaintiff per court order.

Response:  A copy of Plaintiff's deposition transcript will be provided when taken.

149.    What are the side effects of Ativan.

Response:  Answering defendants are without sufficient knowledge or information.

150.    What are the side effects of Geodon.

Response:  Answering defendants are without sufficient knowledge or information.

151.    What are the side effects of Effexor.

Response:  Answering defendants are without sufficient knowledge or information.

152.    Apon Mr. Lewis arrival at the D.P.C. his G.A.F. scale was 20, but before he was transferred back to the D.O.C. his G.A.F. scale was 50.  Does the Defendants consider that the plaintiffs G.A.F. scale indicates that he was stable enough to be transferred back to the D.O.C. as Dr. Foster states in her June 10, 04 Forensic report.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

153.    Provide a typed memo of the hand written information noted on the D.P.C. Department of Health and Social Services institutional admission record dated 5/21/04, provided via discovery, because said written information is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes.

154.    Provide a typed memo of the hand written information noted on the D.P.C. interdisciplinary group therapy documentation sheet, provided via discovery, because said information is not legible.

Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes

155.     What is the results of the investigation conducted, as it is stated ont eh plaintiff's June 20, 2004 grievance, pertaing to the injuries he received from R. gray, Sagers, Moffitt and Jame Evans.

Response:  The grievance was closed as unsubstantiated

156.     What is the overall duty and obligation to a patient form his primary psychiatrist.

Response:  Answering defendants are without sufficient knowledge or information.

157.     What are the side effects of Haldol.

Response:  Answering defendants are without sufficient knowledge or information.

158.     What are the side effects of Seroquel.

Response:  Answering defendants are without sufficient knowledge or information.

159.     Is it common practice for psychiatrist to utilize psychotropic medications for non-psychiatric reasons.

Response:  Answering defendants are without sufficient knowledge or information.

160.     What is a lethal dose of Ativan.

Response:  Answering defendants are without sufficient knowledge or information.

161.     What is a lethal dose of Geodon.

Response:  Answering defendants are without sufficient knowledge or information.

162.     What is a lethal dose of Haldol.

Response:  Answering defendants are without sufficient knowledge or information.

163.    What is a lethal dose of seroquel.

        Response:  Answering defendants are without sufficient knowledge or information.

164.    Dr. Fosters June 10, 04 Forensic report states, it should be noted that Mr. Lewis handed out a highly articulate, well written explanation of his actions on the day of the alleged crime.  (Denied by the plaintiff) to whom was this written explanation given to, at what date was it given, and who witnessed the plaintiff giving the written explanation, provide a photocopie.

        Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

165.    Provide a typed memo of the hand written information noted on the D.P.C progress notes, dating from 5/21/04 to 6/25/04 provided via discovery, because said written information is not legible.

        Response: The document produced was not authored by answering defendants. By way of further answer, answering defendants are without sufficient knowledge or information to clarify handwritten notes

166.    According to the D.P.C. master treatment plan, (for which is typed), Dr. foster was the plaintiff's primary psychiatrist, is this correct.

        Response: Yes.  *See* p. 48 of Answering Defendants' Document Production.

167.    Can a patients primary psychiatrist forfill their duty and or obligation to a patient if they are not notified of mood disorders, psychotic disorders or behavior disorders by the D.P.C. medical staff, if yes, state how.

        Response:  Answering defendants are without sufficient knowledge or information.

168.    Provide the chart a psychiatrist utilizes to prescribe psychotropic medicines to a patient according to their, weight, height, etc., etc.

        Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

169.    At the time of the plaintiff's trial, was the plaintiff able to participate with his attorney to plan legal strategy, if yes, state the reason why.

Response:  Answering defendants are without sufficient knowledge or information.

170.    At the time of the plaintiff's trial, was he able to understand the role of various participants in the trial, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

171.    At the time of the plaintiff's trial, was he able to understand court procedures, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

172.    What is the correct date the plaintiff was incarcerated for the offenses he was ordered to forensically evaluated for.

Response:  Answering defendants are without sufficient knowledge or information.

173.    Is there a substantial risk factor of serious harm when someone injects pschotropic medicines into a patient, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

174.    Dr. Foster, why did you utilize Joesph A.Shields as an incompetent standard noted in the plaintiffs forensic report.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

175.    Provide a photocopy of the Barber's attendance at the D.P.C. between the dates of May 21, 04 and June 25, 04, along with photocopies of check receipts verifying the barber's payment for the dates stated.

Response:  Defendants do not possess the requested documents.  In the event they are able to obtain such documents, they will supplement their document production.

176.    Why does Dr. Fosters June 10, 04 Forensic report state, the plaintiff was referred to the D.P.C. to determine competency to stand trial, when the plaintiff already stood trial.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

177.    Mr. Sagers, if someone in their correct state of mind intentionally hurts someone physically and intentionally violates their constitutional rights, should that person be held liable and punished with incarceration.

Response: This question calls for a legal conclusion to which no answer is required.

178.    Mr. Sagers, were you in your correct state of mind during the plaintiff's stay at the D.P.C. from May 21, 04 to June 25, 04.

Response: Yes

179.    Mr. Moffitt, if someone in their correct state of mind intentionally hurts someone physically and intentionally violates their constitutional rights should that person be held liable and punished with incarceration.

Response: This question calls for a legal conclusion to which no answer is required.

180.    Mr. Moffitt, were you in your correct state of mind during the plaintiff's stay at the D.P.C. from May 21, 04 to June 25, 04.

Response: Yes

181.    At the time of the plaintiff's trial, could he appreciate the charges, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

182.    At the time of the plaitniff's arrest, could he appreciate the charges, if yes, state the reasons why.

Response:  Answering defendants are without sufficient knowledge or information.

183.    How many forensic psychiatric evaluations to determine competency has Dr. Foster done, how many involve black people, how many of the black people received malingering diagnosis, how many received alcohol abuse diagnosis, how many receive anti-social personality disorder, how many reports was the D.A. Brian Robertson involved with.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

184.   Does Dr. Foster still work as an forensic psychiatrist at the Mitchell building, if no since when.

Response: No she does not. Answering defendants have no personal knowledge of the date that Dr. Foster discontinued her relationship with the Delaware Psychiatric Center.

185.   Is Dr. Foster still the chief forensic psychiatrist for the state of Delaware, if no, since when.

Response: Answering defendants have no personal knowledge of the sate that Dr. Foster discontinued her relationship with the Delaware Psychiatric Center.

186.   On numerous occasions when the plaintiff was injected with psychotropic drugs against his will, the term agitation was utilized as the reason. Discribe exactly what agitation means to a psychiatrist that prescribes cocktails of psychotropic drugs.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

187.   In previous pleadings Dr. Foster availed herself in defense under 11 Del. C. §468 in order to justify the actions that the plaintiff stated she committed, i.e. ordering the plaintiff strapped down with (4) point restraints against his will, and injecting him with psychotropic drugs against his will. Why did Dr. Foster avail herself in what was presented as justifiable defense under 11 Del. C. §468, instead of actual innocence.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

188.   Who was able to order that the plaintiff be injected with psychotropic drugs such as haldol, ativan, geodon, without Dr. Fosters verbal order, written order, or standing P.R.N. order. Name the person or persons, and the dates and psychotropic drugs ordered.

Response: Answering defendants are without sufficient knowledge or information.

189.    File your answers to the complaint.

        Response:  Defendants filed an Answer to the Second Amended Complaint
        (D.I.59).

190.    State your affirmative defense.

        Response: All defenses were stated in the Answer to the Second Amended
        Complaint (D.I. 59).

                                        STATE OF DELAWARE
                                        DEPARTMENT OF JUSTICE

                                        /s/_____
                                        Gregory E. Smith, ID No. 3869
                                        Deputy Attorney General
                                        820 North French Street, 6th Floor
                                        Carvel State Building
                                        Wilmington, Delaware  19801
                                        (302) 577-8398
                                        Attorney for Defendants Johnson,
Dated: November 30, 2006                Moffett, Sagers, and Gray