IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1350-GMS |
| | ) |
| DR. SYLVIA FOSTER, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' (JOHNSON, SAGERS, GRAY AND MOFFETT)
RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY III**

1. When the plaintiff was (4) point restrained could he be a danger to himself, if yes, state how.

    Response: Yes, any person in four point restraints could still attempt to harm themselves by struggling against the restraints. By way of further answer, a staff member remains within sight of the restrained patient and staff re-assesses every 15 minutes, a nurse every hour, and doctor every two hours, if the patient is still in restraints.

2. When the plaintiff was (4) point restrained could he be a danger to any one else, if yes, state how.

    Response: No, not while in all four-points. However, a patient who is not in all four restraints can still harm himself or staff with the limb that is not restrained.

3. A total of how many times was the plaintiff placed in the seclusion room.

    Response: Plaintiff was placed in the seclusion room on four separate days: 6/6/04; 6/14/04; twice on 6/21/04; and 6/24/04.

4. Discribe the design of the seclusion room

    Response: Approximately 6' x 10' rectangular room with a bed in the center of the room and the restroom is attached. An observation window with mirrored glass permits staff to observe a person placed within the seclusion room. The seclusion room also contains a window so that the person can see the outside.

5.  Why was the chef salad ordered for the plaintiff.

    Response: Answering defendants are without sufficient knowledge or information.

6.  Why was the plaintiff's chef salad discontinued.

    Response: Answering defendants are without sufficient knowledge or information.

7.  Was James Floydd ordered a chef salad, if yes, on what date.

    Response: Answering defendants are without sufficient knowledge or information.

8.  Was James Floydd ordered a toss salad, if yes, on what date.

    Response: Answering defendants are without sufficient knowledge or information.

9.  When was the plaintiff's chef salad ordered.

    Response: Answering defendants are without sufficient knowledge or information.

10. Was James Floydd's toss salad discontinued, if yes, on what date.

    Response: Answering defendants are without sufficient knowledge or information.

11. Can a persons diet be linked to religious obligations.

    Response: Yes

12. Why did the plaintiff wear paper horns on his head.

    Response: Answering defendants are without sufficient knowledge or information.

13. How long has the no shaving head with razors been in effect, produce the rule stating this.

    Response: Since the Mitchell building opened patients have not been permitted to shave their heads, however this rule has not been reduced to writing.

14. Do the defendants want trial by judge or trial by jury.

    Response: Trial by jury

15. Why did it take 6 ½ months to transfer Lewis to the D.P.C.

    Response: Answering defendants are without sufficient knowledge or information.

16. Who is responsible for the plaintiff not receiving a competency hearing before being transferred back to the D.O.C.

    Response: Answering defendants are without sufficient knowledge or information.

17. Why did Dr. Foster choose to claim that, the plaintiffs claims in full or in part are barred by the doctrine of comparative negligence and or assumption of risk, as if to say the plaintiff should have been expecting to be treated in the manner described in his complaint.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

18. Why wasn't the plaintiff's emergency contact not notified before he was (4) point restrained and or before he was injected with psychotropic drugs.

    Response: Answering defendants are not involved in making those decisions.

19. Why did Dr. Foster claim that the plaintiff's claims are barred by doctrines of laches.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

20. Why did Dr. Foster claim that the plaintiff's claims are barred by doctrines of estoppel.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

21. Why did Dr. Foster claim that the plaintiff's claims are barred by doctrines of acquiescence.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

22. Why did Dr. Foster claim that the plaintiff's claims are barred by the doctrines of ratification.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

23. Why did Dr. Foster claim that he plaintiffs claims are barred by doctrines of unclean hands and waiver.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

                                        STATE OF DELAWARE
                                        DEPARTMENT OF JUSTICE

                                        /s/_____
                                        Gregory E. Smith, ID No. 3869
                                        Deputy Attorney General
                                        820 North French Street, 6th Floor
                                        Carvel State Building
                                        Wilmington, Delaware 19801
                                        (302) 577-8398
                                        Attorney for Defendants Johnson,
Dated: November 30, 2006                Moffett, Sagers, and Gray