IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1350-GMS |
| | ) | |
| DR. SYLVIA FOSTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' (JOHNSON, SAGERS, GRAY AND MOFFETT)
RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY VI**

1. What is an overdose of Benadryl for 235 lbs.

   Response: Answering defendants are without sufficient knowledge or information.

2. What is a lethal dose of Benadryl for 235 lbs.

   Response: Answering defendants are without sufficient knowledge or information.

3. Dr. Foster define psychopath as a psychiatrist would diagnos it.

   Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

4. Dr. Foster are psychopaths mentally ill, if no, state the reasons why not.

   Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

5. Dr. Foster did you or your staff at the D.P.C. try to teach the plaintiff about agitation, if yes, provide the details.

   Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

6. Dr. Foster, do psychopaths need treatment for their very own well being, if yes, describe the type of treatment a psychopath would receive at the D.P.C.

   Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

7. Dr. Foster are competency evaluations to stand trial conducted before or after the persons trial, if after the trial, state if you would be informed that said person alredy stood trial.

   Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

8. Can psychotropic drugs cause dystonia, if yes, what are the symptoms of dystonia.

   Response: Answering defendants are without sufficient knowledge or information.

9. Are a percentage of persons hypersensitive to psychotropic drug in a way that causes them to be more receptive to detrimental side effects, such as dystonia, akathesia, parkinsonism and tardive dyskinesia.

   Response: Answering defendants are without sufficient knowledge or information.

10. Can the side effects of psychotropic drugs be permanent, if no, state the reasons why not.

    Response: Answering defendants are without sufficient knowledge or information.

11. Is it in deed true that Dr. Joshi's and Don Napolins' petitions to the court to have the plaintiff committed, signifies that the plaintiffs commitment was involuntary, if no, state why not.

    Response: Answering defendants are without sufficient knowledge or information.

12. Should hearsay information be utilized as forensic evidence noted in a competency report, if yes, state the reasons why.

       Response: Answering defendants are without sufficient knowledge or information.

13. Can the drugs named, psychotropic, neuroceptic, and or anti-psychotic cause brain damage.

    Response: Answering defendants are without sufficient knowledge or information.

14. Was the plaintiff prescribed Cogentin during his stay at the D.P.C from 5.21.04 to 6/25/04.

    Response: Answering defendants neither prescribe nor administer medications to patients. By way of further answer, a review of Plaintiff's medical records during his stay at DPC do not reveal a drug by the name of "Cogentin."

15. Is the mental health treatment of psychotropic drugs supposed to be followed up with psychotherapy.

    Response: Answering defendants are without sufficient knowledge or information.

16. What are the side effects of Benadryl.

    Response: Answering defendants are without sufficient knowledge or information.

17. Provide the names, addresses and phone numbers of the persons the defendants intend to call as witnesses during pre-trial or trial.

    Response: Dr. Sylvia Foster; Dr. Charlotte Selig; NA, Michael Ericksen; RM, Ken Creasey; Charge Nurse, Helen Hanlon, Unit director (Mitchell), Diane Stachowski; SW, Florence Scott-Cobb; Shift Super Dave Saxton; NA, Clarence Oates; Nurse Manager (Mitchell), Curtis Cornish; NA, William Evans; Psychologist Dr. Katherine Sheneman; Head Nutritionist, Nancy Anderson. The persons listed all work at the DPC, and all share the mailing address of 1901 N. DuPont Highway, New Castle, DE 19720.

18. Are psychotropic drugs sometimes called neuroleptic or antipsychotic drugs, if yes, define psychotropic, neuroceptic, and anti-psychotic.

    Response: Answering defendants are without sufficient knowledge or information.

19. If a judicial hearing would have been conducted in order to involuntariliy administer psychotropic drugs to the plaintiff would he have had to be denied

       incompetent first, yes or no, if no state the reasons why.

       Response: Answering defendants are without sufficient knowledge or information.

20. If a judicial hearing would have been conducted in order to involuntarily administer psychotropic drugs to the plaintiff, would the plaintiff have had to be given a competency hearing prior to his being subjected to superior court procedures, yes or no, if not state the reasons why no.

    Response: Answering defendants are without sufficient knowledge or information.

21. Can psychotropic drugs cause tardive dyskensia, if yes, what are the symptoms of tardive dyskinesia.

    Response: Answering defendants are without sufficient knowledge or information.

22. Dr. Foster, why did you place the plaintiff on disciplinary sanction on 5/21/04

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

23. Provide the written notice(s) the plaintiff received, regarding the alleged disciplinary codes he was sanctioned for violating on the following dates: 5/21/04, 6/6/04, 6/13/04, 6/14/04, 6/14-15/04, 6/21/04 and 6/24/04.

    Response: There are no written notices of disciplinary action.

24. How long was the plaintiff's disciplinary sanction, for the alleged disciplinary code he was sanctioned for violating on 5/21/04.

    Response: Plaintiff was admitted to the DPC on 5/21/04. Answering defendants are not aware of an incident that resulted in a disciplinary sanction on that day.

25. For the disciplinary sanctions the plaintiff received on 5/21/04, 6/6/04, 6/13/04, 6/14/04 at or about 8:00 pm, 6/14-15/04 at or about 11:00pm, 6/21/04 and 6/24/04, was the plaintiff 1.) Allowed to confront his accuser, 2) call witnesses in his behalf, 3.) Choose a counselor to represent him. 4.) Be present at the disciplinary hearing, 5.) Receive notice of having the right to have his rights read to him, 6.) Allowed to appeal, if yes provide said written notices.

    Response: No

26. Would Dr. Foster object to a disinterested board certified forensic psychiatrist analizing the D.P.C. doctors notes, the D.P.C. progress notes, Dr. fosters June 10, 04 forensic report as well as the answers to the plaintiffs motions for discovery, then submitting a report on the said materials, yes or no.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

27. Provide a photocopy of Dr. Fosters forensic psychiatrist license, that granted her the right to practice forensic psychiatry dating from 5/21/04 to 6/25/04.

    Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

28. Was there any reasonable alternative offered and or given to the plaintiff regarding his being ordered to be confined in the isolation room, state details and provide written notices.

    Response:  During the M&M incident, Mr. Gray talked with Lewis to re-direct his behavior and Lewis did not cooperate.

29. Was there any reasonable alternative offered and or given to the plaintiff regarding his being ordered to be (4) point restrained in the isolation room, state details and provide written notices.

    Response: Answering defendants are without sufficient knowledge or information.

30. Was there any reasonable alternative offered and or given to the plaintiff regarding his being involuntarily administered psychotropic drug while he was (4) point restrained in the isolation room.

    Response: Answering defendants neither prescribe nor administer medications to patients.  By way of further answer, answering defendants are without sufficient knowledge or information.

31. Can psychotropic drugs cause Akathesia, if yes what are the symptoms of akathesia.

    Response: Answering defendants are without sufficient knowledge or information.

32. Because the plaintiff refused to take psychotropic drugs introveniously, was a special committee consisting of a psychiatrist, a psychologist, an official, none of

       whom were involved in the plaintiff's diagnosis or treatment called to conduct a judicial hearing and informing the plaintiff of the following: (a) a written notice of said judicial hearing, (b) written notice of his right to attend (c) written notice of his right to present evidence, (d) written notice of his right to cross examine and or confront witnesses, (e) written notice of his right to be represented by an disinterested lay adviser, (f) written notice of his right to appeal (g) written notice of his right to periodic review of any involuntary psychotropic drugs on 6/6/04, 6/13/04, 6/14/04 at or about 8:00pm, 6/14-15/04 at or about 11:00pm, 6/21/04, 6/22/04, and 6/24/04, if yes provide names of said person described hearin, as well as the written notices and the decision why involuntary administration of drugs necessary.

       Response: No

33. What are the basic fundamental reasons for the use of psychotropic drugs.

       Response: Answering defendants are without sufficient knowledge or information.

34. Can psychotropic drugs cause parkinsonism, if yes what are the symptoms of parkinsonism.

       Response: Answering defendants are without sufficient knowledge or information.

35. Because the plaintiff refused to take psychotropic drugs intravenously, did the D.P.C. medical team (A) Give the plaintiff a written notice of the hearing, (B) A notice of his right to attend, (C) A notice of his right to present evidence, (D) a notice of his right to counsel, (E) A notice of his right to cross examine or confront witnesses, (F) A notice of his right to periodic review of any involuntary psychotropic drugs ordered, (G) A notice of his right to appeal, before or after the plaintiff was involuntary administer psychotropic drugs on 6/6/04, 6/13/04, 6/14/04 on or about 8:00 pm, 6/14-6/15/06 at or about 11:00pm, 6/21/04 and 6/24/04, if yes, provide names of said staff members, written notices and the written decisions of why involuntary administration of psychotropic drugs was necessary.

       Response: No

36. What is the duration effect of Haldol 5 mg, Ativan 2 mg, Geodon 20 mg, Benadryl 50 mg, Effexor 25 mg for 253 lbs.

       Response: Answering defendants are without sufficient knowledge or information.

37. Defendants, was the plaintiff reported and or noted as being more regularly

agitated before 6/6/04 when the involuntary administration of psychotropics began intravenously or after 6/6/04.

Response: Answering defendants are without sufficient knowledge or information.

38. What is the male nurse name, who injected the plaintiff with psychotropic's on 6/14-6/15/04 at or about 11:00 pm.

Response:  *See* p. 84 of Answering Defendants' Document Production.  By way of further response, answering defendants are without sufficient knowledge or information.

39. Is the psychotropic drug side effect, "neuroceptic malignant syndrome 30 % fatal."

Response: Answering defendants are without sufficient knowledge or information.

          STATE OF DELAWARE
          DEPARTMENT OF JUSTICE

          /s/_____
          Gregory E. Smith, ID No. 3869
          Deputy Attorney General
          820 North French Street, 6th Floor
          Carvel State Building
          Wilmington, Delaware  19801
          (302) 577-8398
          Attorney for Defendants Johnson,
Dated: November 30, 2006          Moffett, Sagers, and Gray