**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JIMMIE LEWIS,                              )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        C.A. No. 04-1350-GMS
                                          )
DR. SYLVIA FOSTER, et al.,                )
                                          )
                Defendants.               )


**DEFENDANTS' (JOHNSON, SAGERS, GRAY AND MOFFETT)
RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY VII**

1.      Would the defendants object to the plaintiff contacting the media.

        Response: No

2.      Does the rate of side effects to psychotropics increase over time.

        Response: Answering defendants are without sufficient knowledge or
        information.

3.      Did the plaintiff request to receive any PRN psychotropic drugs introveneously, if
        yes, on what date, who injected said PRN psychotropic drugs, name the
        psychotropic drugs, and who ordered the standing PRN psychotropic drugs.

        Response: Answering defendants are without sufficient knowledge or
        information.

4.      Dr. Foster, does the statements noted in Annabel Lee Fields May 24, 04 TP3
        psychological assessment under the title "Affect-thought process", the missing
        persons add of the plaintiff placed 7 days prior to his arrest on May 26, 03, the
        plaintiff's wilm. Police dept. detainee assessment property receipt, the plaintiff's
        mental health treatment plan, along with your statement noted in your June 10, 04
        Forensic report, under the title "opinion", (attached as exhibit), stating these
        opinions are subject to change if additional information or records become
        available; signify that the plaintiff may not have acknowledged the wrongfulness
        of the criminal acts placed against him on May 26, 03, if no, state the reasons
        why.

        Response: This question appears to be directed only to Dr. Foster, not answering
        defendants, and therefore no response is required.  To the extent a response is

required, answering defendants are without sufficient knowledge or information.

5.    On or about 5/19/03 seven days before the plaintiff was arrested on 5/26/03 (see attached exhibits), the plaintiff's mother placed a missing persons add in the Newark N.J. star ledger newspaper, that ran for two month, seeking the public's assistance in finding the plaintiff, stating diagnoses such as schizophrenia and bipolar disorder.

      Response:  This is not a question, request for admission, or request for production of documents.  No response is required.

6.    Dr. Foster's June 10, 04 Forensic Report notes, under the title, "current mental status exam", that the plaintiff denied paranoia, delusions and hyper-religiosity. (Denied by the plaintiff).  In support of the plaintiff's denial, Annabel Lee Fields May 24, 4 TP3 psychological assessment notes under the title, "affect-thought process", that the plaintiff indeed did report paranoia, delusions and hyperreligiosity. Does the defendant Dr. Foster admit that the notes documented in Annabel Lee Fields May 24, 04 TP3 report undoubtedly verifies that she lied when she authored her June 10, 04 Forensic report regarding the said issues noted herein, if no, state why no.

      Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

7.    Dr. Foster, is there another term that could have been utilized in the June 10, 04 Forensic report, instead of malingering, that would have defined that the plaintiff was stable and or competent.

      Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required.  To the extent a response is required, answering defendants are without sufficient knowledge or information.

8.    Provide Ronald Steven's address, an inmate patient that was at the D.P.C. during the plaintiff's stay at the D.P.C. from 5/21/04 to 6/25/04

      Response: Answering defendants are without sufficient knowledge or information.  By way of further answer, defendants are not authorized to disclose other patient's information.

9.    Provide James Smith's address, an inmate patient that was at the D.P.C. during the plaintiff's stay at the D.P.C. from 5/21/04 to 6/25/04.

      Response: Answering defendants are without sufficient knowledge or information.  By way of further answer, defendants are not authorized to disclose

other patient's information.

10.     Who handles the D.P.C. inmate disciplinary procedure.

        Response: Ken Creasey is presently the Risk Manager.

11.     Is there a D.P.C. disciplinary procedure, if yes, describe the D.P.C. disciplinary procedure.

        Response: No

12.     Provide the D.P.C. disciplinary procedure rules and regulation handbook.

        Response:  See patient handbook that is being produced as a document production response.

13.     Is thorazine a psychotropic

        Response: Answering defendants are without sufficient knowledge or information.

14.     Is depakote a psychotropic

        Response: Answering defendants are without sufficient knowledge or information.

15.     Is Vistaril a psychotropic

        Response: Answering defendants are without sufficient knowledge or information.

16.     Is Rysperdal a psychotropic

        Response: Answering defendants are without sufficient knowledge or information.

17.     Because the 11/17/03 date stated as the date the plaintiff was arrested, noted in Dr. Foster's  June 10, 04 Forensic Report, doesn't relate to anything regarding the criminal offense that the plaintiff is incarcerated for, nor does 11/17/03 relate to the reasons the plaintiff was ordered to undergo a competency evelation and to receive treatment for his very own well being.  Gives partial reason why the plaintiff draw the inference of conspiracy between Dr. Foster and the states District Attorney Brian J. Robertson, because on 11/18/03 D.A. Brian J. Robertson filed a petition seeking felony conviction information from the eleventh circuit court of Miami FL, in order to sentence the plaintiff as an habitual offender under 11 Del. C. (see attached exhibit)

Does the Defendant Dr. Foster admit that the reason the 11/17/03 date is noted in her June 10, 04 forensic report as the date of the plaintiff's arrest, is because she conspired with the State's D.A. Brian J. Robertson, and therefore diagnosed the plaintiff as malingering in order so that the D.A. could proceed with having the plaintiff sentenced as an habitual offender, if no, what does the 11/17/03 date noted in Dr. Foster's June 10, 04 Forensic Report relate to.

Response: This question appears to be directed only to Dr. Foster, not answering defendants, and therefore no response is required. To the extent a response is required, answering defendants are without sufficient knowledge or information.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/_____
Gregory E. Smith, ID No. 3869
Deputy Attorney General
820 North French Street, 6th Floor
Carvel State Building
Wilmington, Delaware  19801
(302) 577-8398
Attorney for Defendants Johnson, Moffett, Sagers, and Gray

Dated: November 30, 2006