IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,                          )
                                       )
          Plaintiff,                   )     C.A. No.:  04-1350 (GMS)
                                       )
     v.                                )
                                       )
SYLVIA FOSTER, KATHYRN                 )
SHENEMAN, MICHAEL TALMO,               )
DIANE STACHOWSKI, HELEN                )
HANLON, MARGERET WILSON,               )
MALE NURSE, DONNA LAWRENCE,            )
GLORIA BANKS, FLORENCE SCOTT           )
COBB, LANCE SAPERS, DAVE               )
MOFFITT, R. GRAY, C. OATS, ROSE        )
ARES, PAT RILEY, DR. OVRESHI,          )
CURTIS CORNISH, KAREN                  )
CHAMBERLIN, SEGAL J., TANYA            )
WILSON, J. CONYER, MR. JOHNSON,        )
JOHN JOE,                              )
                                       )
          Defendants.                  )

## DEFENDANT DR. SYLVIA FOSTER'S MOTION FOR PROTECTIVE ORDER

COME NOW, Defendant, Dr. Sylvia Foster, by and through her undersigned counsel and

requests a protective order, pursuant to Federal Rule of Civil Procedure 26, and in support

thereof, avers the following:

1.      Plaintiff, Jimmie Lewis, filed a Motion for Discovery on August 9, 2006.  That

Motion for Discovery contained 29 separate Interrogatories.  Defendant, Dr. Sylvia Foster,

responded to that discovery request on September 26, 2006.  Attached hereto are true and

accurate copies of both the Motion for Discovery and Response thereto (without response

attachments) as Exhibit "A".

2.    Plaintiff, Jimmie Lewis, has filed "Plaintiff's Motion for Discovery #II" dated 10/10/06 which contains 190 Interrogatories, as well as "Plaintiff's Motion for Discovery #III" dated 10/1006 which contains 23 Interrogatories. Exhibit "B".

3.    Plaintiff has also filed "Plaintiff's Motion to Discovery #IV" dated 10/12/06 with twenty two (22) additional interrogatories. Exhibit "C". Plaintiff has filed "Plaintiff's Motion for Discovery #VI" dated 10/20/06. Exhibit "D".

4.    Additionally, Plaintiff has filed a "Motion for Order of Disclosure" dated 10/14/06 with two additional interrogatories. Exhibit "E".

5.    District Court Civil Rule 26.1(b)..."but no party shall propound more than 50 interrogatories to any other party. Each subpart shall be counted as a separate interrogatory." Plaintiff's additional 276 Interrogatories are improper under the applicable Court rules and Defendant, Dr. Sylvia Foster, requests an Order denying Plaintiff's Motion for Discovery #II, #III, #IV and Motion for Order of Disclosure and seeks an order prohibiting the Plaintiff from propounding more than 50 Interrogatories in total.

RESPECTFULLY SUBMITTED,

REGER RIZZO KAVULICH & DARNALL LLP


/s/ Cynthia G. Beam, Esquire
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:  October 26, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMIE LEWIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| SYLVIA FOSTER, KATHYRN | ) | C.A. No.: 04-1350 (GMS) |
| SHENEMAN, MICHAEL TALMO, | ) | |
| DIANE STACHOWSKI, HELEN | ) | |
| HANLON, MARGERET WILSON, | ) | |
| MALE NURSE, DONNA LAWRENCE, | ) | |
| GLORIA BANKS, FLORENCE SCOTT | ) | |
| COBB, LANCE SAPERS, DAVE | ) | |
| MOFFITT, R. GRAY, C. OATS, ROSE | ) | |
| ARES, PAT RILEY, DR. OVRESHI, | ) | |
| CURTIS CORNISH, KAREN | ) | |
| CHAMBERLIN, SEGAL J., TANYA | ) | |
| WILSON, J. CONYER, MR. JOHNSON, | ) | |
| JOHN JOE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

WHEREAS, Defendant, Dr. Sylvia Foster, having requested a Motion for Protective Order

pursuant to Federal Rule of Civil Procedure 26; and

WHEREAS, there being good cause shown for the granting of such motion;

IT IS HEREBY ORDERED this _____ day of _____, 2006, that Defendant Dr.

Sylvia Foster's Motion for Protective Order is granted and Plaintiff is prohibited from propounding more

than 21 more Interrogatories in total in this litigation. Defendant, Dr. Sylvia Foster, does not have to

respond to Plaintiff's current outstanding discovery requests.

_____
Gregory M. Sleet
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,                  )
             Plaintiff,          )
                      )
      v.                       )
SYLVIA FOSTER, KATHYRN       )     C.A. No.: 04-1350 (GMS)
SHENEMAN, MICHAEL TALMO,     )
DIANE STACHOWSKI, HELEN      )
HANLON, MARGERET WILSON,     )
MALE NURSE, DONNA LAWRENCE,   )
GLORIA BANKS, FLORENCE SCOTT   )
COBB, LANCE SAPERS, DAVE        )
MOFFITT, R. GRAY, C. OATS, ROSE   )
ARES, PAT RILEY, DR. OVRESHI,     )
CURTIS CORNISH, KAREN         )
CHAMBERLIN, SEGAL J., TANYA    )
WILSON, J. CONYER, MR. JOHNSON,   )
JOHN JOE,                     )
                      )
          Defendants.       )

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on this 27th day of October, 2006 that a true and correct copy of Defendant Dr. Sylvia Foster's Motion for Protective Order has been served electronically and/or by first class mail, postage prepaid, to the following:

Jimmie Lewis                         Gregory E. Smith
SBI#506622                          Deputy Attorney General
1181 Paddock Road              820 North French Street, 7th Floor
Delaware Correctional Center      Carvel State Office Building
Smyrna, DE 19977               Wilmington, DE 19801

REGER RIZZO KAVULICH & DARNALL LLP

*/s/ Cynthia G. Beam, Esquire*
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:   October 27, 2006

# EXHIBIT "A"

65-609
filed 8/9/06
Recd. 8/10/6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

    V.

                      CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL,

## PLAINTIFFS MOTION FOR DISCOVERY

COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE
SUBMITS THIS MOTION TO THIS HONORABLE COURT FOR
AN ORDER GRANTING THE PLAINTIFF'S MOTION FOR
DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 34, IN ORDER TO OBTAIN THE TRUTH,
THE WHOLE TRUTH AND NOTHING BUT THE TRUTH IN
THIS CASE.

1.) THE DATE(S) GEODON WAS PRESCRIBED,
    FOR HOW LONG IT WAS PRESCRIBED, AND
    THE DATE(S) IT WAS DISCONTINUED.

2.) THE DATE(S) BENADRYL WAS PRESCRIBED,
    FOR HOW LONG IT WAS PRESCRIBED,
    THE DATE(S) IT WAS DISCONTINUED.



**FILED**

AUG - 9 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

3.) THE DATE(S) "FARIDIUM" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

4.) THE DATE(S) "HALDOL" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

5.) THE DATE(S) "ATIVAN" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

6.) THE DATE(S) "EFFEXOR" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

7.) THE DATE(S) "SEROQUEL" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

8.) THE DATE(S) "BACTRIM" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

9.) THE DATE(S) THE "CHEF SALAD" WAS PRESCRIBED, FOR HOW LONG IT WAS PRESCRIBED, AND THE DATE(S) IT WAS DISCONTINUED.

10.) THE DATE(S) THE PLAINTIFF JIMMIE LEWIS WAS PLACED ON DISCIPLINARY RESTRICTION, THE REASONS WHY, FOR HOW LONG THE RESTRICTION, AND THE DISCRIPTION OF THE DISCIPLINARY SANTION(S).

11.) PHOTOCOPIES OF THE WRITTEN NOTICES OF ANY AND ALL DISCIPLINARY REPORTS AND SANTIONS.

12.) THE NAMES OF NURSES WHOM WERE EMPLOYED AND WORKED BETWEEN THE DATES OF 5/20/04 TO 6/25/04, DURING THE DATES OF THE PLAINTIFFS STAY AT THE D.P.C.

13.) THE SPECIFIC REASON DR. SYLVIA FOSTER DOCUMENTED ON THE JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT THAT WAS SUBMITTED TO THE NEW CASTLE COUNTY SUPERIOR COURT, WHY THE PLAINTIFF JIMMIE LEWIS WAS BEING EVALUATED AT THE D.P.C.

14.) ANY AND ALL DIAGNOSIS THAT WERE DETERMINED AND DOCUMENTED BY DR. SYLVIA FOSTER THROUGH OUT THE COURSE OF THE PLAINTIFFS STAY AT THE D.P.C, ALONG WITH THE DATE(S) THOSE DIAGNOSIS WERE ACKNOWLEDGED AND OR DETERMINED.

15.) THE DATE THE PLAINTIFF RECEIVED HIS COMPETENCY HEARINGS IN THE MOCK COURT ROOM AT THE D.P.C, AND THE NAME OF THE COMMISSIONER AND OR JUDGE WHOM CONDUCTED THE COMPETENCY HEARING.

16.) THE DATE(S) THE PLAINTIFF JIMMIE LEWIS
    WAS ORDERED TO BE PLACED ON AND OR IN
    (4) POINT RESTRAINTS, WHO GAVE THE ORDER
    TO PLACE THE PLAINTIFF IN (4) POINT RESTRAINTS
    THE TIME THE PLAINTIFF WAS PLACED IN
    (4.) POINT RESTRAINTS, WHAT MEDICATIONS WERE
    ~~ADMINISTERED~~ TO THE PLAINTIFF DURING SAID
    (4) POINT RESTRAINING PERIOD, ~~AND THE TIME~~
    ~~THE PLAINTIFF WAS RELEASED~~ FOR (4) POINT
    RESTRAINTS.

17.) WHAT DATE(S) WERE THE DISCIPLINARY HEARINGS
    CONDUCTED, AND WHO CONDUCTED THE
    DISCIPLINARY HEARING(S).

18.) THE DATE THE CONSULTATION FOR THE
    PLAINTIFF WAS ORDERED TO VISIT THE UROLOGIST,
    AND WHO ORDERED THE CONSULTATION.

19.) THE DATE DR. SYLVIA FOSTER DOCUMENTED
    ON THE FORENSIC PSYCHIATRIC EVALUATION
    REPORT DATED JUNE 10, 2004, THAT WAS
    SUBMITTED TO THE NEW CASTLE COUNTY SUPERIOR
    COURT, THAT THE PLAINTIFF JIMMIE LEWIS
    WAS ARRESTED.

20.) THE NAMES OF THE R.N's (REGISTERED NURSES),
WHOM DR. FOSTER ORDERED TO INJECT THE
PLAINTIFF WITH PSYCHOTROPIC MEDICATIONS ON,
6/6/04, 6/14/04, 6/21/04, 6/24/04, 6/22/04,
AS IS DOCUMENTED ON THE PROGRESS NOTE(S) AND OR
THE DOCTORS NOTES REGARDING THE PLAINTIFF.

21.) THE NAME(S) OF NURSE ASSISTANCE WHOM
WHERE EMPLOYED AT THE D.P.C ON,
6/6/04, 6/14/04, 6/21/04, 6/22/04, 6/24/04.

22.) THE PLAINTIFF'S (G.A.F) GLOBAL ASSESSMENT
OF FUNCTIONING SCALE WHEN HE WAS ADMITTED
ON OR ABOUT 5/20/04, AND THE PLAINTIFF'S
(G.A.F) SCALE WHEN HE WAS DISCHARGED ON
6/25/04.

23.) PHOTOCOPIES OF THE (F.C.M) FIRST CORRECTIONAL
MEDICAL MEDICAL RECORDS UTILIZED BY DR. FOSTER
TO CONDUCT THE PLAINTIFF JIMMIE LEWIS
FORENSIC PSYCHIATRIC EVALUATION.
(SEE ATTACHED EXHIBIT) DOCUMENTED UNDER THE
TITLE " SOURCE OF INFORMATION".

24.) THE DOCUMENTS AND OR MATERIAL TITLED EXHIBIT A + B, DOCUMENTED UNDER THE TITLE "SOURCE OF INFORMATION" ON DR. FOSTERS JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT. (SEE ATTACHED EXHIBIT)

25. A PHOTOCOPY OF THE OFFICIAL COURT ORDER FROM THE SUPERIOR COURT JUDGE OR COMMISSIONER, DOCUMENTING THAT THE DEFENDANT WAS JUDICIALLY COMPETENT AND RETURNED TO THE DEPARTMENT OF CORRECTION TO PARTAKE IN COURT PROCEEDINGS.

26.) THE ADDRESS OF "JAME SMITH", AN INMATE PATIENT ABOUT 19 YEARS OF AGE THAT WAS UNDERGOING TREATMENT AT THE D.P.C DURING THE PLAINTIFF'S STAY AT THE D.P.C. MR. JAMES SMITH' ADDRESS IS REQUESTED BECAUSE HE IS A CRUCIAL WITNESS TO EVENTS AND OR INCIDENT(S) THE PLAINTIFF CLAIMS IN HIS COMPLAINT.

27.) A PHOTOCOPY OF THE DEPOSITION TAKEN OF AND OR FROM THE PLAINTIFF JIMMIE LEWIS PER COURT ORDER

28.) THE DOCUMENTS TITLED "CASE CHARGE LIST", UNDER "SOURCE OF INFORMATION" ON DR. FOSTERS JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT. (SEE ATTACHED EXHIBIT).

29.) THE DOCUMENTS TITLED "CHARGE HISTORY RECORD" UNDER "SOURCE OF INFORMATION" ON DR. FOSTERS JUNE 10, 2004 FORENSIC PSYCHIATRIC REPORT. (SEE ATTACHED EXHIBIT).

THE PLAINTIFF JIMMIE LEWIS HEREBY RESPECTFULLY REQUEST FOR THIS HONORABLE COURT TO GRANT HIS MOTION FOR DISCOVERY, DUE TO SAID INFORMATION NOT BEING LEGIBLE AND THEREFOR NEEDING TO BE TRANSLATED FOR FACTUAL ACKNOWLEDGEMENT, AND OR IN THE SEARCH FOR THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH IN THIS CASE. THIS DISCOVERY REQUEST SHOULD BE MADE AVAILABLE TO THE PLAINTIFF AND THE COURT BY JAN 29, 2007, IN ACCORDANCE WITH THE HONORABLE COURTS JULY 28TH 2006 COURT ORDER. (SEE ATTACHED EXHIBIT).

DATE: 8/7/06

Jimmie Lewis
SBI# 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

CERTIFICATE OF SERVICE

I , THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS
DUE HEREBY CERTIFY ON THIS ___7TH___ , DAY OF
___Aug___ , 2006, THAT I DID MAIL ONE TRUE
AND CORRECT COPY OF THE MOTION FOR DISCOVERY
BY U.S MAIL TO THE FOLLOWING :

CYNTHIA BEAM ESQ.
1001 JEFFERSON PLAZA, SUITE 202
WILMINGTON, DE 19801

CLERK OF THE COURT
U.S DISTRICT COURT
844. N. KING ST LOCKBOX 18
WILMINGTON, DE 19801

GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST, 7TH FL
CARVEL STATE BUILDING
WILMINGTON, DE 19801

DATE : 8/7/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977



**DELAWARE HEALTH
AND SOCIAL SERVICES**
DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

*EXHIBIT.* 𝒟𝓊𝓁𝑒𝒾𝒶𝓁

DELAWARE PSYCHIATRIC CENTER

June 15, 2004

The Honorable Charles H. Toliver IV
Superior Court of Delaware
500 King Street. Suite 10400
W———— DE 19801

RE:    Lewis, Jimmy
ID#:    0305016966

Dear Judge Toliver:

Enclosed herewith, please find the written report (s) by Sylvia Foster. MD. concerning the above named defendant.

Should you require any further information. please do not hesitate to contact me.

Respectfully,

Michael S. Talmo, M.Ed.
Director
Delaware Psychiatric Center

MST/jld

cc:    Phebe Young, Deputy Attorney General
       Dianne Stachowski, Unit Director
       Richard Sadowsky, Ph.D.
       Ranga Ram, MD
       John Edinger, Esquire
       Deputy Attorney General's Office

$P.2$

## Delaware Psychiatric Center
## Forensic Unit
### (Jane E. Mitchell Building)

### Forensic Psychiatric Evaluation

Examinee:        Jimmy Lewis                    ID #: 0305016966

Date of Birth:           25 December 1966 (Current Age: 38)
~~Examiner~~          Sylvia Foster, M.D.
Period of Evaluation:    21 May 2004 - present
Date of Report:          10 June 2004

### REASON FOR EVALUATION:

Mr. Lewis was referred to The Delaware Psychiatric Center (DPC) for forensic
psychiatric evaluation by *Motion and Order* of the Honorable Charles H. Toliver, In the
Superior Court of the State of Delaware, In and For New Castle County, on 1 December
2003, to determine his competency to stand trial and to obtain treatment for his own well-
being.

### NOTIFICATION:

Upon admission to the Forensic Unit, Mr. Lewis was informed that he was being
evaluated by Court Order, and that the results of all evaluations performed during this
admission would not remain confidential, but would be disseminated to the Court, the
prosecution, and his attorney.

### EXAMINER:

Medical Doctor specializing in Psychiatry with Board Certification, sub-specializing in
Forensic Psychiatry

### LIST OF CHARGES:

Carjacking 2nd Degree
Theft $1000 or greater
Resisting Arrest

### SOURCES OF INFORMATION:

Face-to-face interview with Mr. Lewis on 21 May 2004 and various times thereafter
        on the Forensic Unit at DPC
Superior Court Criminal Docket

*ř · ċ*

Seven page statement by Mr. Lewis regarding his social and legal history and his account
of the crime, undated

Medical Records, Delaware Psychiatric Center, 21 May 2004 – present

Medical Records, First Correctional Medical , FCM , 5 March 2003 – 31 March 2004

Case Charge List

Complaint and Warrant

Exhibit A & B

Charge History Record

Letter from Donald Napolin, LSCW, to The Honorable Charles H. Toliver, 5 May 2004

## CURRENT MEDICATIONS:

Seroquel 50 mg twice daily for anger management and impulse control
Atenolol 25 mg daily for hypertension

## BACKGROUND INFORMATION:

Mr. Lewis was a 38-year-old African American male who presented to the Mitchell
Building based on an evaluation by Dr. Joshi, a prison psychiatrist. Dr. Joshi described
Mr. Lewis on 27 May 2003 as "psychotic and delusional, a danger to self and others,
refusing to take medication." He had assaulted a Correctional Officer, and was
transferred to the infirmary. Mr. Lewis was described as saying, "I can't distinguish
between right and wrong. I am hearing voices telling me to hurt myself and I'm seeing
shadows."

Mr. Lewis had been incarcerated on 17 November 2003 and convicted of Carjacking,
Theft and Resisting Arrest. According to the police report, Mr. Lewis was picked up by a
male driver who was out looking for a male companion for the evening. Mr. Lewis
allegedly attempted to rob the driver, at which point the driver jumped out of the vehicle
in fear, and Mr. Lewis drove off with the car. He allegedly resisted arrest when caught,
and was identified by the driver as the person who stole his car.

According to FCM records, Mr. Lewis was "flirtatious" at times, and had to be redirected
for asking personal questions of the mental health examiner. She confronted his
"narcissism and attention-seeking behaviors," and questioned the diagnosis of
Schizophrenia that had been given him by the physician. Mr. Lewis refused all
medication, requesting only Xanax and Valium (highly addictive drugs of the
Benzodiazepine family). He asked for art materials, and pornography, stating that these
items would be very helpful. He presented with "broad mood and good eye contact, with
no suicidal, homicidal ideation and no auditory or visual hallucinations." He was
frequently argumentative and loud. He was observed wearing "paper horns," saying, that
they made him feel more comfortable. "It helps me deal with whatever I'm going
through. The horns are like a mask. If I deal with these things within me, I'll be a better
person, being unjustly accused." He was also described as calm and controlled. He
spoke of hearing voices but stated, "I don't know whether it's voices or just my

P. 4

thoughts." Mr. Lewis stated later that he wore the paper horns and the cat's eye contact lenses for the "scare" factor.

Not much is known about Mr. Lewis' legal history as he is from out of state. However, he said that he had been in prison for six or seven years in New Jersey, from about 1993 to 2000. He added that he had been sentenced to six years for Robbery, "I pick-pocketed somebody," but his jail time had been prolonged for fighting.

Mr. Lewis had no psychiatric history. He saw a counselor as a child in New Jersey where he grew up. At first he said he didn't remember why, but shortly thereafter remembered that it was because his mother had become involved in a Lesbian relationship. "I didn't approve of it and I voiced my opinion to her, and I started misbehaving. I didn't like the lady and I didn't like the idea of the relationship." He went on to explain, "I might have accepted it if it had been presented to me differently, but I saw this lady actually twist my mother's arm to tell me about the [Lesbian nature of the] relationship. I had thought they were just close friends." Mr. Lewis' mother told the team social worker that he had been attention-seeking as a youth, and that he felt no one ever paid enough attention to him. She said he always felt that whatever someone was doing, they should stop, and attend to his needs. He blamed his mother for his current problems due to her homosexual affair. His parents had separated when Mr. Lewis was two years old, at which time Mr. Lewis' father had gone to live in North Carolina.

Mr. Lewis stated that he had been employed in construction and as a porter. "Whatever job was open, I was doing it." However, he added, "I've been fired more than ten times." The longest job he ever held was three months. "I would always argue, or go in late, and I'd get fired." He admitted to selling drugs off and on. "That's what I had to do to have money. Then I got to selling bootleg CD's and DVD's."

Mr. Lewis dropped out of the tenth grade, but later obtained a GED. He changed that idea later, and said that he had a high school diploma. His mother maintained that he actually had a GED. He said, "She thought wrong." He attended the American Business Institute, but did not stay long, ending up owing them money. He related that he had been attending commercial drivers' school to drive eighteen-wheelers just prior to his incarceration. "It was going to be my first job; Poland Springs was going to hire me."

Mr. Lewis stated that he been shot by a police officer ten years ago, with gunshot wounds to the left hip and left arm. He had history of hypertension for which he was being medicated, and history of kidney infection. He had no other significant medical or surgical history.

Mr. Lewis had never married, stating, "Every time I get into a relationship, we always argue." He was with one girlfriend off and on for eight years.

Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior ... He had history of blackouts, but did not elaborate. He denied heavy

P. 5

use. He also admitted to smoking marijuana sixteen years ago, but denied all other illicit drug use. It was considered probable that he was minimizing his addiction issues

## HOSPITAL COURSE:

Mr. Lewis became verbally unresponsive, selectively mute, and categorically refused to answer any questions on the day of admission. He also refused the initial physical examination. Later the same day, Mr. Lewis was observed interacting in a normal manner on the unit. Several days later, the initial examinations were completed without problem. He eventually explained that he had not felt like speaking on the first day.

Mr. Lewis' hospital course has been complicated by his aggressive, assaultive behavior. He was overheard making physical threats, observed taunting and laughing at his peers, taking pleasure in embarrassing them, and was
                                                    . He complained of hearing voices sporadically but displayed no evidence of preoccupation with internal stimuli when he believed he was not being observed.

The team psychologist described Mr. Lewis in the following manner in the anger management group: arrogant, disruptive and instigating. While the other older patients tried to have a calming influence, Mr. Lewis displayed no sense of boundaries or respect for authority. She added that there was nothing odd or bizarre about his behavior that would suggest a psychotic disorder. Other therapists noted that he was disruptive in the group setting, talking out of turn, and making obscene comments while watching educational videos. When evaluated by the team, he made it clear that he would rather be at DPC rather than in jail in order to "get some help." When asked what help he needed, or what we could do for him, he answered he didn't know.

One staff member stated that she found Mr. Lewis to be engaging, intelligent and articulate, but noted his sense of entitlement, and his demand that things be done his way. Mr. Lewis stated that he needs to do "outlandish things" to get attention, such as wearing paper horns and wearing his cat's eye lenses. It was explained to him that he would not be allowed to wear his paper horns at any time while at DPC, after he placed them on his head at one point. He understood, and did not attempt to wear them again. He was noted to attempt to intimidate one female therapist by facing her in the hallway and stating, "I just want to get my point across that whatever you said about me in team meeting was wrong and derogatory."

On 6/7/04, a special meeting with Mr. Lewis was called to address his grossly inappropriate behavior on the unit the night before. He was angered by not receiving a certain salad at dinner to which he believed he was entitled, and assaulted a peer and a staff member, escalating to the point where he was difficult to redirect. In summary, he was noted to be disruptive in the group setting, to taunt his peers, to intimidate and flirt with therapists, and to make obscene comments. There were reports to the contrary by other staff members who reported that Mr. Lewis was cooperative and helpful in the milieu, tending to get loud and demanding at times when he felt his needs were not being met in a timely fashion.

Initially, Mr. Lewis was prescribed no psychotropic medication, as there was no evidence of a mood disorder, and no evidence of psychosis. However, Seroquel was begun after it became evident that Mr. Lewis had difficulty managing his anger, and controlling his impulses.

## CURRENT MENTAL STATUS EXAM:

Mr. Lewis presented with shaved head, and was appropriately dressed. He was cooperative, and able to sit quietly for the examination with no abnormal motor activity. His speech was normal in rate, tone and volume, and there was no evidence of loud, pressured speech. He stated that his mood was "sensitive, and easily irritated." His affect was full range. His thought processes, assessed by the verbalizations of his thoughts and feelings, were goal directed; there was no evidence of loosening of associations or tangentiality. His thought content displayed no delusions. He was not thinking about suicide, although he maintained that he had been thinking about it. "But I don't really want to do it." He was not thinking about hurting others, and stated, "I'm not on the defensive unless there's a reason." He denied obsessions, compulsions, racing thoughts, paranoia, delusions, special powers, hyper-religiosity, and grandiosity. His cognitive functions were intact grossly. His insight and judgment were considered intact.

## COMPETENCY ASSESSMENT:

Mr. Lewis was presented the questions to the McGarry Criteria as cited in State of Delaware v. Joseph A. Shields, 593 A.2nd, 986 (Del. Super. 1990), p. 1000. Based upon the present examination, Mr. Lewis demonstrated that he does have sufficient present capacity to consult with an attorney with a reasonable degree of rational understanding of court procedures. He is fully able to understand the nature of the proceedings against him, to give evidence in his own defense and to instruct counsel on his behalf.

It should be noted that Mr. Lewis handed out a highly articulate, well-written explanation of his actions on the day of the alleged crime. It reveals a high level of education and intelligence, and highlights his excellent ability to give evidence in his own defense and to instruct counsel on his behalf.

## DIAGNOSIS:[1]

| | |
|---|---|
| Axis I: | Malingering; Alcohol Abuse; History of Conduct Disorder |
| Axis II: | Antisocial Personality Disorder |
| Axis III: | Hypertension |
| Axis IV: | Psychosocial and Environmental Problems: Incarceration |
| Axis V: | Global Assessment of Functioning (GAF) Scale (1 – 100): 50 |
| | Serious impairment in social and occupational functioning |

---

[1] American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

Forensic Psychiatric Evaluation: Jimmy Lewis                                19 June 2004, Page 5 of 5

## OPINION:

The opinions expressed in this report are held with a reasonable degree of medical certainty, and are based upon the direct examination of Mr. Lewis, the observations reported by staff and therapists on the Forensic Unit, and the previous reports and records available for review. These opinions are subject to change if additional information or records become available.

### Assessment:

The essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as getting out of prison into a psychiatric unit. Malingering should be strongly suspected in the presence of Antisocial Personality Disorder.

Mr. Lewis demonstrated no evidence of a mood disorder or psychosis during his admission to DPC, and it is not likely that he ever had Schizophrenia or any other chronic psychotic disorder.

## SUMMARY OF OPINIONS AND RECOMMENDATIONS:

1.    Mr. Lewis is psychiatrically stable and can be returned to prison.

2.    It is my opinion that Mr. Lewis is competent to stand trial.

3.    It is my opinion that, as in the case of many people with Antisocial Personality Disorder, Mr. Lewis may need to remain on his medication to help with anger management and impulse control

4.    Any threats made by Mr. Lewis to harm himself or others should be taken seriously as he is highly manipulative and will stop at little to obtain his goals.


Sylvia Foster, M.D.
Forensic Psychiatrist

72

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS                          )
                                      )
       *Pro Se* Plaintiff     )
                                      )
       v.                    )     Civil Action No. 04-1350 GMS
                                      )
DR. SYLVIA FOSTER, et al.             )
                                      )
       Defendants             )

## SCHEDULING ORDER

At Wilmington this 28th day of July, 2006, pursuant to Fed.R.Civ.P. 16 and D.Del.L.R. 16.2;

IT IS ORDERED that:

1.    **Joinder of other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before September 28, 2006.

2.    **Discovery.** All discovery shall be initiated so that it will be completed on or before January 29, 2007.

3.    **Application by Motion.** Any application to the Court shall be by written motion filed with the Clerk.

4.    The parties shall not send or deliver any correspondence to Chambers. All correspondence and pleadings must be filed directly with the Clerk of the Court. It shall be the responsibility of the parties to inform the court of any change of address.

5.    **Summary Judgment Motions.** All summary judgment motions, with accompanying briefs and affidavits, if any, shall be served and filed on or before March 1, 2007. The Answering

brief shall be filed on or before March 15, 2007, and the Reply brief due on or before March 29, 2007.

6.   _Scheduling_.   The parties shall direct any requests or questions regarding the scheduling and management of this matter to chambers at (302) 573-6470.

Any request for extensions of time as set forth in this Scheduling Order must be made no later than twenty-one days prior to the expiration of time.

UNITED STATES DISTRICT JUDGE



IM. Jimmie Lewis
SBI# 50 6622 UNIT. Bld 23. D-u 2
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Clerk of the Court (GMS)
U.S District court
844 N. King St, Lockbox 18
Wilmington, Delaware
19801

UNITED STATES POSTAL
$02.31°
02 1A
0004608915
MAILED FROM ZIP CODE 19977
AUG 08 2006

## Tracy Hughes

| | |
|---|---|
| **From:** | Cynthia G. Beam, Esquire |
| **Sent:** | Thursday, August 10, 2006 10:55 AM |
| **To:** | Tracy Hughes |
| **Subject:** | FW: Activity in Case 1:04-cv-01350-GMS Lewis v. Foster "Motion for Discovery" |

**Reger Rizzo Kavulich & Darnall**
ATTORNEYS AT LAW

Suite 202
1001 Jefferson Street
Wilmington, DE 19801
Phone: 302.652.3611
Fax: 302.652.3620
Web: www.rrkdlaw.com

Cynthia G. Beam, Esquire
cbeam@rrkdlaw.com

NEW IRS RULES RESTRICT WRITTEN FEDERAL TAX ADVICE FROM LAWYERS AND ACCOUNTANTS. WE INCLUDE THIS STATEMENT IN
ALL OUTBOUND EMAILS BECAUSE EVEN INADVERTENT VIOLATIONS MAY BE PENALIZED. NOTHING IN THIS MESSAGE IS INTENDED TO
BE USED, OR MAY BE USED, TO AVOID ANY PENALTY UNDER FEDERAL TAX LAWS. THIS MESSAGE WAS NOT WRITTEN TO SUPPORT
THE PROMOTION OR MARKETING OF ANY TRANSACTION. CONTACT THE SENDER IF YOU WISH TO ENGAGE US TO PROVIDE FORMAL
WRITTEN ADVICE AS TO TAX ISSUES.
THIS E-MAIL MAY CONTAIN PRIVILEGED, CONFIDENTIAL, COPYRIGHTED, OR OTHER LEGALLY PROTECTED INFORMATION. IF YOU ARE
NOT THE INTENDED RECIPIENT (EVEN IF THE E-MAIL ADDRESS ABOVE IS YOURS), YOU MAY NOT USE, COPY, OR RETRANSMIT IT. IF
YOU HAVE RECEIVED THIS BY MISTAKE PLEASE NOTIFY US BY RETURN E-MAIL, THEN DELETE. THANK YOU.

**From:** ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
**Sent:** Thursday, August 10, 2006 9:42 AM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:04-cv-01350-GMS Lewis v. Foster "Motion for Discovery"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without
charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from entered on 8/10/2006 at 10:41 AM EDT and filed on
8/9/2006

| | |
|---|---|
| **Case Name:** | Lewis v. Foster |
| **Case Number:** | 1:04-cv-1350 |
| **Filer:** | Jimmie Lewis |
| **Document Number:** | 75 |

**Docket Text:**
MOTION for Discovery - filed by Jimmie Lewis. (mmm)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/10/2006] [FileNumber=256421-0]
[60be05b58abe0acd0adc42bf146d1ea8d22b519541c65dc6d0d96ae41567455ac082
e038ac33a4e06cb5d94f547752ebbd928cf2b3b50c9bb883dbdec94593dd]]

**1:04-cv-1350 Notice will be electronically mailed to:**

Cynthia G. Beam    cbeam@regrizlaw.com

Gregory E. Smith    greg.smith@state.de.us,

Aleph Ann Woolfolk    ann.woolfolk@state.de.us, stephany.murray@state.de.us

**1:04-cv-1350 Notice will be delivered by other means to:**

Jimmie Lewis
SBI#506622
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,             )
                             )
                             )
         Plaintiff,      )     C.A. No.:  04-1350 (GMS)
                             )
     v.                   )
                             )
SYLVIA FOSTER, KATHYRN  )
SHENEMAN, MICHAEL TALMO,  )
DIANE STACHOWSKI, HELEN  )
HANLON, MARGERET WILSON,  )
MALE NURSE, DONNA LAWRENCE, )
GLORIA BANKS, FLORENCE SCOTT )
COBB, LANCE SAPERS, DAVE  )
MOFFITT, R. GRAY, C. OATS, ROSE )
ARES, PAT RILEY, DR. OVRESHI, )
CURTIS CORNISH, KAREN  )
CHAMBERLIN, SEGAL J., TANYA )
WILSON, J. CONYER, MR. JOHNSON, )
JOHN JOE,            )
                             )
        Defendants.    )

### DEFENDANT DR. SYLVIA FOSTER'S
### RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY

Defendant, Sylvia Foster, M.D., hereby responds to Plaintiff's Motion for Discovery and in support of her response, states as follows:

1.    The date(s) Geodon was prescribed, for how long it was prescribed and the des(s) it was discontinued.

**RESPONSE:** **Geodon was prescribed on the following dates: 6/11/04, 6/13/04, 6/14/04, 6/21/04 and 6/24/04.  Geodon was discontinued on 6/25/04.  By way of further response, see attached medical records.**

2.    The date(s) Benadryl was prescribed, for how long it was prescribed, the date(s) it was discontinued.

**RESPONSE:**    6/24/04, 6/14/04, 6/13/04, 6/6/04, 6/21/04, 5/28/04, 5/25/04 are the dates that

was given. Benadryl, 50 mg. PO HS/PRN times 30 days was ordered on 5/25/04 and

stopped on 6/22/04. By way of further response, see attached medical records.

3.    The date(s) "Paridium" was prescribed, for long it was prescribed and the date(s)

it was discontinued.

**RESPONSE:**    "Paridium" (sic) 6/2/04, 6/8/04 prescribed for five days BID. Discontinued

on 6/14/04.

4.    The date(s) "Haldol" was prescribed, for how long it was prescribed and the

date(s) it was discontinued.

**RESPONSE:**    Haldol 5/21/04, discontinued on 6/20/04. By way of further response,

please see the attached medical records.

5.    The date(s) "Ativan" was prescribed, for how long it was prescribed, and the

date(s) it was discontinued.

**RESPONSE:**    Prescribed on 5/21/04, discontinued on 7/9/04. By way further response,

see attached medical records.

6.    The date(s) "Effexor" was prescribed, for how long it was prescribed, and the

date(s) it was discontinued.

**RESPONSE:**    Prescribed on 6/1/04, discontinued on 6/6/04. Prescribed on 6/6/04,

discontinued on 7/6/04, 37.5 mg. PO every AM. Prescribed on 5/25/04, discontinued

5/31/04, Effexor 75 mg. PO every AM. Prescribed on 5/31/04, discontinued 6/5/04, Effexor

150 mg. PO every AM. Prescribed on 6/5/04, discontinued 7/3/04. By way of further

response, see attached medical records.

7.    The date(s) "seroquel" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:    Prescribed 6/18/04, discontinued 7/28/04.**

8.    The date(s) "Bactrim" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:    Prescribed 6/2/04, discontinued 6/7/04. By way of further response, please see medical records attached.**

9.    The date(s) the "chef salad" was prescribed, for how long it was prescribed, and the date(s) it was discontinued.

**RESPONSE:    6/2/04 - change in nutrition order read "Regular chef's salad with breakfast, small tossed salad at meals, cheese, peanut butter, banana and chef salad". Discontinues 6/10/04.**

10.    The date(s) the plaintiff Jimmie Lewis was placed on disciplinary restriction, the reasons why, for how long the restriction, and the description of the disciplinary sanction(s).

**RESPONSE:    6/6/04 6:20 p.m. patient put in four point restraint for safety of self and others. Not to exceed two hours. 6/6/05 6:30 p.m. restricted patio, pull playing visits and snacks until seen by treatment team. 6/7/04 6:45 p.m. restrict visit, patio, weight room, gym, vending machine for one week. 6/14/04 9:00 p.m. seclusion room for the safety of others. Not to exceed more than two hours. Can be released earlier when he calms down. 6/14/04 23:00 seclusion renewed, not to exceed two hours or until patient is calm. 6/15/04 5:40 p.m. continue restriction of patio, weight room, gym and vending machines for another week. 6/21/04 restrictions renewed for one week and then to be re-evaluated. 6/21/04 seclusion not to exceed two hours. Patient extremely agitated, assaultive and poses**

a danger to others and self. Patient can be released when calm and not dangerous anymore. 6/21/04 patient extremely agitated and assaultive. Four point restraint for extreme agitation. Patient trying to knock down the door and being a danger to self and others. Restraints not to exceed two hours. Can come off them when calm. 6/21/04 Four point restraints not to exceed two hours for continued physically aggressive, hostile combative. Can be discontinued when calm. 6/22/04 1:05 a.m. continued four point restraints not to exceed two hours for safety of self and others. 6/24/04 1:00 p.m. four point restrain for safety of self and others, not to exceed two hours. Can be released earlier if calm. 6/24/04 3:00 p.m. renew four point restraints due to extremely aggressive behavior. By way of further response, see attached medical records.

      11.    Photocopies of the written notices of any and all disciplinary reports and sanctions.

**RESPONSE:**   **After reasonable investigation, it has been determined that no such written reports exist.**

      12.    The names of nurses whom were employed and worked between the dates of 5/20/04 and 6/25/04, during the dates of the plaintiff's stay at the D.P.C.

**RESPONSE:**   **Objection. The request is overly broad and burdensome and not likely to result in production of discoverable materials. By way of further response, see attached medical records.**

      13.    The specific reason Dr. Sylvia Foster documented on the June 10, 2004 Forensic Psychiatric Report that was submitted to the New Castle County Superior Court, why the plaintiff Jimmie Lewis was being evaluated at the D.P.C.

**RESPONSE:**    Jimmie Lewis was transferred to the Delaware State Hospital for

psychiatric evaluation for the purpose of determining competency and to obtain treatment

for his own well being, pursuant to Court Order by Judge Toliver of the Superior Court of

the State of Delaware in and for New Castle County, pursuant to an Order dated December

1, 2003. By way of further response, see attached medical records.

14.    Any and all diagnosis that were determined and documented by Dr. Sylvia Foster

throughout the course of the plaintiff's stay at the D.P.C., along with the date(s) those diagnoses

were acknowledged and/or determined.

**RESPONSE:**    Final clinical diagnosis documented by Dr. Sylvia Foster in her release

summary dated 7/26/04 was malingering alcohol abuse, history of conduct disorder, anti-

social personality disorder, hypertension, severity of psychosocial stressers: incarceration,

global assessment of functioning: current GIF-50 with severe impairment and social and

occupational functioning, highest level last year, unknown. By way of further response, see

enclosed medical records.

15.    The date the plaintiff received his competency hearing in the mock court room at

the D.P.C. and the name of the commissioner and/or judge whom conducted the competency

hearing.

**RESPONSE:**    After reasonable investigation, Answering Defendant is without sufficient

information to respond. Upon information and belief, that information is not contained in

the medical records and, therefore, not available to Answering Defendant.

16.    The date(s) the plaintiff, Jimmie Lewis, was ordered to be placed on and or in (4)

point restraints, who gave the order to place the plaintiff in (4) point restraints, the time the

plaintiff was place in (4) point restraints, what medications were administered to plaintiff during

said (4) point restraining period, and the time the plaintiff was released for (4) point restraints.

**RESPONSE:    6/6/04 Jimmie Lewis hit another patient and also hit a staff member in the face. He was given Haldo and Benadryl, continued to be agitated and he refused to contract for safety of himself and others and was put in four point restraints. Began at 6:15 p.m. and ended at 7:00 p.m. Behavior leading to intervention, threatening harm and imminent risk of harm to patients, hitting upon on provoked aggression. 6/21/04 patient had lost privileges stated he was going to punch someone. He attacked a patient without provocation hitting them. He continued to be imminent risk of harm to patients and the staff so he was placed in seclusion at 8:30 p.m. Seclusion was ended at 11:00 a.m. and four point restraints were initiated due to threats to others. He was in restraints from 11:00 p.m. to 3:00 a.m. Patient was given Ativan, Geodon, Benadryl and Seroquel. 6/24/04 four point restraints begin when Lewis began throwing trays began at 1:00 p.m. and ended at 5:00 p.m. when he agreed to contract for safety. Medications given: Geodon, Ativan and Benadryl. By way of further response see attached medical records.**

17.    What date(s) were the disciplinary hearings conduct, and who conducted the disciplinary hearing(s)?

**RESPONSE:    After reasonable investigation, Answering Defendant does not know of any disciplinary hearings that were held.**

18.    The date the consultation for the plaintiff was ordered to visit the urologist and who ordered the consultation.

**RESPONSE:    The consult with a urologist to evaluate for possible current urethritis was ordered on 6/4/04 at 9:00 a.m. by Dr. Sylvia Foster. By way of further response, see attached medical records.**

19.    The date Dr. Sylvia Foster on the forensic psychiatric evaluation report dated June 10, 2004, that was submitted to the New Castle County Superior Court, that the Plaintiff Jimmie Lewis was arrested.

**RESPONSE:    The report reflects the date of the car jacking performed by Jimmie Lewis - 5/26/03. The report also reflects the date that Lewis was incarcerated for car jacking second degree theft $1,000 or greater and resisting arrest - 11/17/03. The report does not reflect the date that Lewis was arrested. By way of further response, see attached medical records.**

20.    The names of the R.N.'s (registered nurses), whom Dr. Foster ordered to inject the Plaintiff was psychotropic medications on 6/6/04, 6/14/04, 6/21/04, 6/24/04, 6/22/04 as is documented on the progress note(s) and or the doctors notes regarding the Plaintiff.

**RESPONSE:    After reasonable investigation, Answering Defendant asserts that Dr. Foster never directly ordered anyone to inject the Plaintiff was Psychotropic medication. With the exception of Benadryl given at 15:20 hours on 6/24/04, all of the other medication orders were standing PRN orders given at the discretion of the hospital staff depending on their professional judgment and assessment of the conduct and behavior of Lewis, as well as his status concerning eminent threats to himself, other patients and staff. By way of further response, see attached medical records.**

21.    The name(s) of nurse assistance whom were employed at the D.P.C. on 6/6/04, 6/14/04, 6/21/04, 6/22/04, 6/24/04.

**RESPONSE:    Objection. This request is overly broad and burdensome and not likely to result in production of discoverable materials. By way of further response, see attached medical records.**

22.    The Plaintiff's (G.A.F.) Global Assessment of Functioning Scale when he was admitted on or about 5/20/04 and the Plaintiff's (G.A.F.) scale when he was discharged on 6/25/04.

**RESPONSE:    Provision of clinical diagnosis current G.A.F.-20 by way of further response, see attached medical records.**

23 .    Photocopies of the (F.C.M.) First Correctional Medical medical records utilized by Dr. Foster to conduct the plaintiff Jimmie Lewis' forensic psychiatric evaluation.  (See attached exhibit), documents under the title "source of information".

**RESPONSE:    See attached medical records.**

24.    The documents and or material titled exhibit A&B, documented under the title "source of information" on Dr. Fosters June 10, 2004 Forensic  Psychiatric Report.  (See attached exhibit).

**RESPONSE:    Is not in possession of the requested documents.  To the extent that Answering Defendant learns such information or obtain such document, they will supplement this response.**

25.    A photocopy of the official court order from the superior court judge or commissioner, documenting that  the defendant was judicially competent and returned to the department of correction to partake in court proceedings.

**RESPONSE:    Answering Defendant is not in possession of such court order.  To the extent that Answering Defendant is able to obtain a copy of said order, it will be provided.**

26.    The address of "Jame Smith", an inmate patient about 19 years of age that was undergoing treatment at the D.P.C. during the plaintiff's stay at the D.P.C.  Mr. James Smith' address is requested because he is a crucial witness to events and or incident(s) the plaintiff

claims in his complaint.

**RESPONSE:    Answering Defendant, after reasonable investigation, is without sufficient information or knowledge to respond to this request.**

27.    A photocopy of the deposition taken of and or from the plaintiff Jimmie Lewis per court order.

**RESPONSE:    Answering Defendant has no knowledge of a deposition taken of or from plaintiff Jimmie Lewis per Court Order.**

28.    The documents titled, "case charge list", under "source of information" on Dr. Fosters June 10, 2004 Forensic Psychiatric report.  (See attached exhibit).

**RESPONSE:    After reasonable investigation, Answering Defendant has produced the offenders status sheet which is enclosed with the medical records.**

29.    The documented titled "charge history record" under "source of information" on Dr. Fosters' June 10, 2004 Forensic psychiatric report.  (See attached exhibit).

**RESPONSE:    After reasonable investigation, Answering Defendant has produced the offenders status sheet which is enclosed with the medical records.**

REGER RIZZO KAVULICH & DARNALL LLP


*/s/ Cynthia G. Beam, Esquire*
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:    September 26, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMIE LEWIS, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| SYLVIA FOSTER, KATHYRN | ) | C.A. No.: 04-1350 (GMS) |
| SHENEMAN, MICHAEL TALMO, | ) | |
| DIANE STACHOWSKI, HELEN | ) | |
| HANLON, MARGERET WILSON, | ) | |
| MALE NURSE, DONNA LAWRENCE, | ) | |
| GLORIA BANKS, FLORENCE SCOTT | ) | |
| COBB, LANCE SAPERS, DAVE | ) | |
| MOFFITT, R. GRAY, C. OATS, ROSE | ) | |
| ARES, PAT RILEY, DR. OVRESHI, | ) | |
| CURTIS CORNISH, KAREN | ) | |
| CHAMBERLIN, SEGAL J., TANYA | ) | |
| WILSON, J. CONYER, MR. JOHNSON, | ) | |
| JOHN JOE, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on this 26th day of September, 2006 that a true and correct copy of Defendant Dr. Sylvia Foster's Response to Plaintiff's Motion for Discovery has been served electronically and/or by first class mail, postage prepaid, to the following:

Jimmie Lewis
SBI#506622
1181 Paddock Road
Delaware Correctional Center
Smyrna, DE 19977

Gregory E. Smith
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Office Building
Wilmington, DE 19801

REGER RIZZO KAVULICH & DARNALL LLP

*/s/ Cynthia G. Beam, Esquire*
Cynthia G. Beam, Esquire
Delaware State Bar I.D. No. 2565
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated:   September 26, 2006

# EXHIBIT "B"

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


JIMMIE LEWIS,

  - VS -                          CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.


PLAINTIFF'S MOTION FOR DISCOVERY # II


COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE
AND SUBMITS THIS MOTION FOR DISCOVERY TO THIS
HONORABLE COURT, IN ACCORDANCE TO THE COURTS
ORDER GRANTING SAID MOTION, AND ASSERTS
THE FOLLOWING IN ORDER TO OBTAIN THE TRUTH,
THE WHOLE TRUTH AND NOTING BUT THE TRUTH IN
THIS CASE.


DATE: 10/10/06             Jimmie Lewis
                           SBI # 506622
                           DEL. CORR. CENTER
                           1181 PADDOCK RD
                           SMYRNA, DE 19977

1.) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE, HE WAS ANGERED BY NOT RECEIVING A CERTAIN SALAD AT DINNER TO WHICH HE BELIEVED HE WAS ENTITLED, AND ASSULTED A PEER AND A STAFF MEMBER. (DENIED BY THE PLAINTIFF) NAME THE PEER AND STAFF MEMBER SAID TO HAVE BEEN ASSULTED BY THE PLAINTIFF, WHEN DID THESE INCIDENTS HAPPEN, WHO WITNESSED THESE INCIDENTS.

2.) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. HE WAS NOTED ATTEMPTING TO INTIMIDATE ONE FEMALE THERAPIST BY FACING HER IN THE HALLWAY STATING, I JUST WANT TO GET MY POINT ACROSS THAT WHATEVER YOU SAID ABOUT ME IN TEAM MEETING WAS WRONG AND DEROGATORY. (DENIED IN PART — THE PLAINTIFF DID NOT ATTEMPT OR TRY TO INTIMIDATE ANY FEMALE THERAPIST.) WHO WAS THE ONE FEMALE TEAM THERAPIST, WHO WITNESSED THIS INCIDENT, WHEN DID IT HAPPEN,

3) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. ACCORDING TO F.C.M RECORDS, THE F.C.M MENTAL HEALTH EXAMINER DOCUMENTED THAT, HE WAS FREQUENTLY ARGUMENTIVE AND LOUD, ('DENIED BY THE PLAINTIFF). WHO WAS THIS F.C.M MENTAL HEALTH EXAMINER, WHEN WAS THIS STATEMENT MADE, AND DID DR. FOSTER WITNESS THE PLAINTIFF DISPLAY SUCH BEHAVIOR AT THE SAID TIME IT IS SAID TO HAVE HAPPENED.

4.) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES,
OTHER THERAPIST NOTED THAT HE WAS DISRUPTIVE IN GROUP
SETTING, TALKING OUT OF TURN AND MAKING OBSCENE OBSCENE
COMMENTS WHILE WATCHING EDUCATIONAL VIDEO'S.
( DENIED BY THE PLAINTIFF,) WHO IS THE THERAPIST WHO
REPORTED THESE REMARKS AND OR BEHAVIORS, WHAT WAS THE
OBSCENE COMMENTS, WHEN WERE THESE COMMENTS MADE,
AND WHO WITNESSED THE PLAINTIFF MAKE THESE COMMENTS

5.) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, QUOTE.
HE ATTENDED THE AMERICAN BUSINESS INSTITUTE, BUT DID NOT
STAY LONG, ENDED UP OWING THEM MONEY. (DENIED BY —
THE PLAINTIFF.) PROVIDE THE FORENSIC EVIDENCE TO
SUPPORT THIS STATEMENT.

6) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE.
MR. LEWIS REPORTED THAT HE BEGAN DRINKING ALCOHOL ALCOHOL IN
HIS TEENS, WITH HIS LAST USE JUST PRIOR TO HIS INCARCERATION.
(DENIED BY THE PLAINTIFF). DR. FOSTER'S STATEMENT ERRONEOUSLY
DRAWS AN INFERRENCE THAT THE PLAINTIFF WAS DRINKING ALCOHOL
ONLY MOMENTS BEFORE THE OFFENSES ARE SAID TO HAVE HAPPENED,
BUT THE PLAINTIFF HAD NOT DRANK ALCOHOL (BEER) FOR AT LEAST
A WEEK PRIOR TO HIS INCARCERATION. QUESTIONS, WHAT DATE
WAS WAS DR. FOSTER REFERRING TO WHEN SHE STATE WITH
HIS LAST USE OF ALCOHOL JUST PRIOR TO HIS INCARCERATION.

7.) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, WHILE THE OTHER PATIENTS TRIED TO HAVE A CALMING INFLUENCE, MR. LEWIS DISPLAYED NO SENSE OF BOUNDARIES OR RESPECT FOR AUTHORITY. (DENIED BY THE PLAINTIFF.) WHAT WAS THE DISCRIPTION OF THE INCIDENT(S) RESPONSIBLE FOR THESE SLANDEROUS REMARKS ABOUT THE PLAINTIFF, WHO WITNESSED THESE INCIDENT(S), WHEN DID THESE INCIDENT(S) OCCURE

8.) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. MR. LEWIS STATED THAT HE NEEDS TO DO "OUTLANDISH THINGS" TO GET ATTENTION, SUCH AS WEARING PAPER HORNS AND HIS CATS EYE LENSES. (DENIED BY THE PLAINTIFF). WHO REPORTED THIS STATEMENT, AT WHAT TIME AND DATE, AND WHO WITNESSED THE PLAINTIFF MAKE SUCH STATEMENTS.

9) DR. FOSTERS JUNE 10 04 FORENSIC REPORT STATES, QUOTE. THE TEAM PSYCHOLOGIST STATED THAT MR. LEWIS WAS ARROGANT, DISRUPTIVE AND INSTIGATING. (DENIED BY THE PLAINTIFF). WHAT WAS THE INCIDENT ON THAT CAUSED THE TEAM PSYCHOLOGIST TO SLANDER THE PLAINTIFF AS ARROGANT, DISRUPTIVE AND INSTIGATING, WHO WITNESSED THESE INCIDENT(S), AND PROVIDE THE FULL NAME OF THE TEAM PSYCHOLOGIST WHO REPORTED THESE STATEMENTS.

10) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. MR. LEWIS DROPPED OUT OF 10TH GRADE. (DENIED BY THE PLAINTIFF), PROVIDE THE FORENSIC EVIDENCE TO SUPPORT THIS STATEMENT.

11.) IN REGARDS TO DR. FOSTER DIAGNOSING THE PLAINTIFF AS MALINGERING, FOR WHICH DR. FOSTER DEFINES IN HER JUNE 10, 04 FORENSIC REPORT AS, QUOTE. THE ESSENTIAL FEATURE OF MALINGERIN IS THE INTENTIONAL PRODUCTION OF FALSE OR GROSSLY EXAGGERATED PHYSICAL OR PSYCHOLOGICAL SYMPTOMS, MOTIVATED BY EXTERNAL INCENTIVES SUCH AS GETTING OUT OF PRISON INTO A PSYCHIATRIC UNIT, UNQUOTE. WAS THE PLAINTIFF'S ALLEGED FALSE OR GROSSLY EXAGGERATED PSYCHOLOGICAL SYMPTOMS PRESENTED AS EVIDENCE AT HIS TRIAL, IF NO, DISCRIBE WHY NOT

12) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES THAT THE F.C.M MENTAL HEALTH EXAMINER NOTED THAT, QUOTE. LEWIS ASKED FOR MATERIAL AND PORNOGRAPHY, STATING THESE ITEMS WOULD BE VERY HELPFUL. (DENIED BY THE PLAINTIFF) WHO WAS THE F.C.M MENTAL HEALTH EXAMINER, WHEN WAS THESE STATEMENTS MADE, AND DID DR FOSTER WITNESS THE PLAINTIFF MAKE THESE STATEMENTS.

13) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, QUOTE. ACCORDING TO FCM RECORDS, THE FCM MENTAL HEALTH EXAMINER NOTED THAT HE PRESENTED WITH BROAD MOOD + GOOD EYE CONTACT, WITH NO SUICIDAL OR HOMICIDAL IDEATION AND NO AUDITORY OR VISUAL HALLUCINATIONS. UNQUOTE (DENIED BY THE PLAINTIFF). WHO WAS THE F.C.M MENTAL HEALTH EXAMINER, WHEN WAS THESE STATEMENTS MADE, AND DID DR. FOSTER WITNESS THESE BEHAVIORS AT THE SAID TIME THEY ARE SAID TO HAVE OCCURED.

14.) CAN A PERSON BECOME MENTALLY ILL AFTER INCARCERATION.

15) IN EVERY CASE, DOES A PERSON NEED TO BE GIVEN PSYCHOTROPIC DRUGS IN ORDER TO STABILIZE FROM MENTAL ILLNESS.

16) CAN MENTAL ILLNESS GO UNDETECTED

17) CAN MENTAL ILLNESS GO UN-DETECTED FOR MONTHS.

18) CAN MENTAL ILLNESS GO UNDETECTED FOR A YEAR.

19.) CAN MENTAL ILLNESS GO UNDETECTED FOR YEARS.

20) DOES SCHIZOPHRENIA MANIFEST IT'S SYMPTOMS THE EXACT SAME WAY IN EVERY PERSON, IF NO, STATE THE REASONS WHY.

21) WOULD THE DEPENDANTS OBJECT TO A BOARD CERTIFIED PSYCHIATRIST REVIEWING THE ANSWERS TO THE DISCOVERY MOTIONS.

22) IN REGARDS TO DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT, DID DR. FOSTER IN ANY WAY MISINTERPRET THE REASON WHY THE PLAINTIFF WAS ORDERED TO BE PSYCHIATRICLLY EVALUATED FOR COMPETENCY AND TO RECEIVE TREATMENT FOR HIS VERY OWN WELL BEING. IF YES STATE HOW.

23) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, ANY THREATS MADE BY MR. LEWIS TO HARM HIMSELF OR OTHERS SHOULD BE TAKEN SERIOUSLY AS HE IS HIGHLY MANIPULATIVE AND WILL STOP AT NOTHING LITTLE TO OBTAIN HIS GOAL. WHAT DOES DR. FOSTER SPECIFICLY MEAN HE IS HIGHLY MANIPULATIVE, AND SPECIFICLY WHAT ARE THE "GOALS" THAT THE PLAINTIFF WILL STOP AT LITTLE TO OBTAIN.

24.) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, HE SAW A COUNSELOR AS A CHILD IN NEW JERSEY WHERE HE GREW UP. DID DR. FOSTER OBTAIN MENTAL HEALTH RECORD FROM THE COUNSELOR, IF NO, STATE THE REASON FOR NOT OBTAINING THE RECORDS.

25) DR. FOSTER, DID YOU CONSIDER THE TP3 PSYCHOLOGICAL ASSESSMENT AUTHORED BY ANNEBEL LEEFIELDS ON MAY 24, 04, IF YES, DEFINE WHAT PORTIONS, AND WHY YOU TOOK SAID PORTIONS OF THE TP3 ASSESSMENT INTO CONSIDERATION.

26) IN THE 30 DAYS THE PLAINTIFF WAITED TO BE TRANSFERRED IN THE H.R.V.C.I INFIRMARY COULD HE HAVE STABILIZED FROM THE SYMPTOMS HE DISPLAYED WHILE IN THE INFIRMARY.

27) IN THE THE 6 1/2 MONTHS AFTER THE SUPERIOR COURT ORDER WAS GRANTED ON DEC 1, 03, COULD THE PLAINTIFF DECOMPENSATED HAVE STABILIZED FROM THE SYMPTOMS THAT GAVE REASON TO ISSUE A COURT ORDER FOR FORENSIC EVALUATION BEFORE HE WAS TRANSFERRED TO THE D.P.C. ON 5/21/04.

28) MR. R. GRAY WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFFS STAY AT THE O.P.C FROM MAY 21, 04 TO JUNE 25, 04.

29) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, ON PAGE 5 OF 6, HOWEVER, SEROQUEL WAS BEGUN AFTER IT BECAME EVIDENT THAT MR. LEWIS HAD DIFFICULTY MANAGING HIS HIS ANGER, AND CONTROLLING HIS IMPULSES.
AND IN CONJUNCTION OF PAGE 6 OF 6, MR LEWIS MAY NEED TO REMAIN ON HIS MEDICATION TO HELP WITH ANGER MANAGEMENT AND IMPULSE CONTROL. QUESTION, WHY DID DR. FOSTER CHOOSE TO PRESCRIBE THE PLAINTIFF SEROQUEL WHILE HE WAS AT THE D.P.C, AND ADVISE ON HER JUNE 10, 04 THAT THE PLAINTIFF CONTINUE TO RECEIVE SEROQUEL, WHY DID DR. FOSTER ADVISE SEROQUEL NONMEMBER A PSYCHOTROPIC MEDICATION TO A PERSON WHOM SHE DIAGNOSED AS MALINGERING, INSTEAD OF ADVISING THE M SEDATIVE BENADRYL, A NON PSYCHOTROIC MEDICINE.

30) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, ANY THREATS MADE BY MR. LEWIS TO HARM HIMSELF OR OTHER SHOULD BE TAKEN SERIOUSLY, CAN THIS STATEMENT BE UTILIZED TO DISCRIBE SOMEONE WHO IS NOT MENALLY ILL.

31) DID THE PLAINTIFF RECEIVE INJECTIONS OF PSYCHOTROPIC MEDICINES DURING HIS STAY AT THE D.P.C.

32) ARE THE VIDEO CAMERAS ON THE UNIT WHERE THE PLAINTIFF WAS HOUSED.

33) DR. FOSTER, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURT SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

34) DR. FOSTER WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFF'S STAY AT THE D.P.C FROM MAY 21,04 TO JUNE 25,04.

35) DR. FOSTER WERE R. GRAY, MOFFITT, SASERS, JAME EVANS ACTING UNDER YOUR AUTHORITY ON 6/14/04 AT OR ABOUT 8:00 PM AS STATED IN THE PLAINTIFFS COMPLAINT, IF NO, STATE WHO'S AUTHORITY THEY WERE ACTING UNDER.

36) DR. FOSTER WAS HELEN HANLON ACTING UNDER YOUR AUTHORITY ON 6/14/04 AT OR ABOUT 8:00 PM AS STATED IN THE PLAINTIFFS COMPLAINT, IF NO, STATE WHO'S AUTHORITY SHE WAS ACTING UNDER.

37) MR. R. GRAY IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURT SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

38.) IS IT OKAY TO HOLD SOMEONE DOWN WITH FORCE AND GIVE THEM PSYCHOTROPIC MEDICATION, WHEN THERE IS NO SIGN OF MOOD DISORDER.

39.) IS IT OKAY TO HOLD SOMEONE DOWN WITH FORCE AND GIVE THEM PSYCHOTROPIC MEDICATION, WHEN THERE IS NO SIGN OF PSYCHOSIS.

40) DR. FOSTER WHY DIDN'T YOU DISCONTINUE ALL THE PSYCHOTROPIC MEDICATIONS PRESCRIBED FOR THE PLAINTIFF AFTER YOU AUTHORED YOUR JUNE 10, 04 FORENSIC REPORT THAT NOTES THAT THE PLAINTIFF IS DIAGNOSED AS MALINGERING

41) CAN PSYCHOTROPIC MEDICATIONS BE USE TO PUT A PATIENT INTO A HYPNOTIC STATE

42) WHILE THE PLAINTIFF WAS UNDER THE INFLUENCE OF THE COCKTAIL(S) OF PSYCHOTROPIC MEDICATION, WAS IT TAKEN INTO CONSIDERATION THAT INVOLUNTARY MEDICATING THE PLAINTIFF MAY CAUSE NEGATIVE REACTIONS, IF YES, PLEASE DISCRIBE WHAT THE POSSIBLE NEGATIVE REATIONS :

43) DID THE D.P.C STAFF VIDEO RECORD THE PLAINTIFF WHEN HE WAS INVOLUNTARILY MEDICATED WITH PSYCHOTROPICS

44.) THERE ARE CAMERA'S ON THE UNIT WHERE THE PLAINTIFF WAS HOUSED, PRODUCE THE VIDEO SURVEILANCE OF THE INCIDENTS DATING 6/6/04, 6/14/04, 6/14-15/04, 6/21/04,

45.)

AT THE D.P.C ON 6/6/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

46.)

AT THE DPC ON 6/14/04 AT OR ABOUT 8:00 PM WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S)

47)

AT THE DPC ON 6/14/04 AT OR ABOUT 11:00 PM WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

48.)

AT THE DPC ON 6/21/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

49.)

AT THE DPC ON 6/22/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

50.)

AT THE D.P.C ON 6/24/04 WHO WAS THE PERSON OR PERSONS WHO'S SAFETY WAS PUT IN JEOPARDY BY THE PLAINTIFF, WHO WITNESSED THE ALLEGED INCIDENT(S), DISCRIBE THE SAID INCIDENT(S).

51)

THE D.P.C MASTER TREATMENT PLAN DOCUMENTS A PLAN DATE AND A TARGET DATE, BUT THE PLAINTIFF WAS RETURNED TO THE D.P.C BEFORE THE 7/2/04 TARGET DATE, WAS THIS BECAUSE THE TREATMENT FOR HIS WELL BEING WAS COMPLETED, IF NO, STATE THE REASON WHY THE PLAINTIFF WAS

52.) DR. FOSTER, WHAT WERE THE CONDITIONS OF THE PLAINTIFFS CONFINEMENT LIKE IN THE CELL HE WAS HOUSED IN, CELL #197, THE H.R.Y.C.I INFIRMARY, 30 DAYS PRIOR TO HIS BEING TRANSFERRED TO THE D.P.C

53) ON THE D.P.C SECLUSION OR RESTRAINT NURSING ASSESSMENT FORM, WHAT DOES INVOLUNTARY ADMINISTRATION OF MEDICATION MEAN.

54) WHEN A PATIENT IS PUT IN THE D.P.C ISOLATION ROOM FOR AGGITATION THAT DOES NOT THREATED HIMSELF WITH PHYSICAL HARM OR SOMEONE ELSE WITH PHYSICAL HARM, WHY WOULD 4 POINT RESTRAINTS BE NECESSARY.

55) ON THE D.P.C SECLUSION OR RESTRAINT NURSING ASSESSMENT FORM, PROVIDE A PHOTOCOPY OF THE ADVANCE DIRECTIVE QUERY FORM.

56) PROVIDE A TYPED MEMO OF THE HANDWRITTEN INFORMATION NOTED ON THE D.P.C SECLUSION/RESTRAINT PATIENT FEEDBACK FORM(S), PROVIDED VIA DISCOVERY, BECAUSE SAID HAND WRITTEN INFORMATION IS NOT LEGIBLE.

57) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C SECLUSION OR RESTRAINT FORMS, PROVIDED VIA DISCOVERY, BECAUSE SAID HAND WRITTEN INFORMATION IS NOT LEGIBLE.

58) WHAT DATE WAS THE PLAINTIFF CHECKED AND OR RECEIVED THERAPY FROM A PSYCHOLOGIST FOR THE PSYCHOLOGICAL DILEMMAS HE REPORTED RECEIVING FROM R. GRAY, SABERS, MOFFITT AND JAMES EVANS ON 6/14/04

59.) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C SECLUSION AND RESTRAINT NURSING ASSESSMENT FORM(S), PROVIDED VIA DISCOVERY, BECAUSE SAID INFORMATION IS NOT LEGIBLE.

60) DOES A HYPERDERMIC NEEDLE UTILIZED TO INJECT PSYCHOTROPIC MEDICINES BREAK THE SKIN IN A WAY THAT BLOOD MAY EXIT THE AREA THAT THE HYPERDERMIC NEEDLE ENTERED THE SKIN.

61) DO DRUGS KILL BRAIN CELLS.

62) CAN AN ALLERGIC REACTION TO PSYCHOTROPIC MEDICATION. KILL

63) ARE PSYCHOTROPIC MEDICATIONS CONSIDERED DRUGS.

64) PROVIDE A D.P.C INMATE PATIENT RULE AND REGULATION HANDBOOK.

65) MR. JOHNSON, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURTS SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

66) MR. JOHNSON WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFFS STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

67) WILL THE DEFENDANTS ANSWER DISCOVERY QUESTIONS REGARDING THE WITNESSES THE PLAINTIFF ATTEMPTED TO DEPOSE

68) ON THE D.P.C INCIDENT REPORT, PROVIDED VIA DISCOVERY, WHAT DOES RISK MGR MEAN, WHO IS THIS PERSON, AND WHAT QUALIFIES AS REASON TO CONTACT THE RISK M.GR.

69) ON THE D.P.C INCIDENT REPORT, PROVIDE VIA DISCOVERY, WHAT DOES DLTCRP MEAN.

70) WHAT DATE WAS THE PLAINTIFF CHECKED BY A PHYSICIAN FOR THE PHYSICAL INJURIES HE REPORTED RECEIVING FROM R. GRAY, SAGERS, MOFFITT AND JAMES EVANS ON 6/14/04.

71) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE BOTH GIVE AND RECEIVE ADVISE TO AND FROM HIS ATTORNEY, IF YES, STATE THE REASONS WHY.

72) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, NOT MUCH IS KNOWN ABOUT MR. LEWIS' LEGAL HISTORY AS HE IS FROM OUT OF STATE. HOWEVER, HE SAID THAT HE HAD BEEN IN PRISON FOR SIX OF SEVEN YEARS IN NEW JERSEY FROM ABOUT 1993 TO 2000. (DENIED BY THE PLAINTIFF) THE PLAINTIFF HEREBY REQUEST THE FORENSIC EVIDENCE DR. FOSTER UTILIZED TO NOTE THESE STATEMENTS IN HER JUNE 10, 04 FORENSIC REPORT.

73) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE DIVULGE FACTS WITHOUT PARANOID DISTRESS, IF YES STATE THE REASONS WHY.

74) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE COMPETENT, IF YES, STATE THE REASONS WHY.

75) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE MAKE SIMPLE DECISIONS, IF YES, STATE THE REASONS WHY.

76) AT THE TIME OF THE PLAINTIFF'S ARREST, COULD HE MAKE SIMPLE DECISIONS, IF YES, STATE THE REASONS WHY.

77) WERE BOTH THE MC GARRY FUNCTIONS AND THE GUATNEY PRESENTED TO THE PLAINTIFF BEFORE HIS TRIAL.

78) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES THAT THE MENTAL HEALTH EXAMINER, CONFRONTED HIS NARCISSISM AND ATTENTION SEEKING BEHAVIORS, AND QUESTIONED THE DIAGNOSIS OF SCHIZOPHRENIA GIVEN HIM BY THE PHYSICIAN. WHO WAS THE FCM MENTAL HEALTH EXAMINER, WHEN WAS THESE STATEMENTS MADE, AND DID DR. FOSTER WITNESS THE BEHAVIORS RESPONSIBLE FOR THE FCM MENTAL HEALTH EXAMINER MAKING THESE STATEMENTS AGAINST THE PLAINTIFF.

79) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES THAT THE FCM MENTAL HEALTH EXAMINER DOCUMENTED, MR. LEWIS REFUSED ALL MEDICATIONS REQUESTING ONLY XANAX AND VALUIM, (HIGHLY ADDICTIVE DRUGS OF THE BENZODIAZEPINE FAMILY) (THE PLAINTIFF DENIES THIS). WHO WAS THE FCM MENTAL HEALTH EXAMINER, WHEN WAS THIS STATEMENT MADE, AND DID DR. FOSTER WITNESS THE PLAINTIFF MAKE THIS STATEMENT.

80) DR. FOSTER DEFINE AGGITATION

81) WHY WAS IT DETERMINED THAT THE PLAINTIFF SHOULD RECEIVE PSYCHOTROPIC MEDICATION FOR AGGITATION.

82) DR. FOSTER DEFINE WHAT FORENSIC PSYCHIATRIC EVALUATION FOR COMPETENCY.

83) DR. FOSTER DEFINE WHAT TREATMENT FOR HIS WELL BEING MEANS.

84.) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE PROVIDE HIS ATTORNEY WITH PERTINENT FACTS CONCERNING THE OFFENSES, IF YES, STATE THE REASONS WHY.

85) WHAT DATE DID THE PLAINTIFF STAND TRIAL

86) WHAT DATE DID THE PLAINTIFF TAKE THE STAND.

87) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE CHALLENGE PROSECUTION WITNESSES, IF YES, STATE THE REASONS WHY.

88) WHAT WAS THE PLAINTIFF'S STATE OF MIND AT THE TIME OF THE ALLEGED OFFENSES.

89) WHAT WAS THE PLAINTIFF'S STATE OF MIND AT THE TIME OF HIS TRIAL.

90) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, MR. LEWIS WAS FLIRTATIOUS AT TIMES, WITH WHOM WAS MR. LEWIS FLIRTATIOUS WITH, WHEN WAS THIS STATEMENT MADE, AND DID DR. FOSTER WITNESS THE PLAINTIFF DISPLAY THIS FLIRTATIOUS BEHAVIOR NOTED IN HER JUNE 10, 2004 REPORT.

91) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE CONFER COHERENTLY WITH SOME APPRECIATION OF THE PROCEEDINGS, IF YES, STATE THE REASONS WHY.

92) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE MOTIVATED TOWARDS SELF DEFENSE, IF YES, STATE THE REASONS WHY.

93) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO FOLLOW THE TESTIMONY REASONABLE WELL, IF YES, STATE THE REASONS WHY.

94) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO MEET STRESSES WITHOUT HIS RATIONALITY OR JUDGEMENT BREAKING DOWN, IF YES, STATE THE REASONS WHY.

95) AT THE TIME OF THE PLAINTIFF'S ARREST, DID HE HAVE MINIMAL CONTACT WITH REALITY, IF YES, STATE THE REASONS WHY.

96) AT THE TIME OF THE PLAINTIFF'S TRIAL, DID HE HAVE MINIMAL CONTACT WITH REALITY, IF YES STATE THE REASONS WHY.

97) AT THE TIME OF THE PLAINTIFF'S ARREST, COULD HE APPRECIATE THE RANGE AND NATURE OF POSSIBLE PENALTIES, IF YES, STATE THE REASONS WHY.

98) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE APPRECIATE THE RANGE AND NATURE OF POSSIBLE PENALTIES, IF YES, STATE THE REASONS WHY.

99) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE PRECEIVE REALISTICLY THE LIKELY OUTCOME OF THE TRIAL, IF YES, STATE

100) IS THE DEFENDANT MOFFITT WILLING TO TAKE A POLYGRAPH TEST, IN ORDER TO VINDICATE HIMSELF OF THE CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFF'S COMPLAINT AND OR IN REGARDS TO ANY AND ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

101) IS THE DEFENDANT SEGERS WILLING TO TAKE A POLYGRAPH TEST, IN ORDER TO VINDICATE HIMSELF OF CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFFS COMPLAINT AND OR IN REGARDS TO ANY AND ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

102) IS THE DEFENDANT JOHNSON WILLING TO TAKE A POLYGRAPH TEST, IN ORDER TO VINDICATE HIMSELF OF CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFFS COMPLAINT AND OR IN REGARDS TO ANY AND ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

103) IF A PSYCHIATRIST, WHO IS ASSIGNED TO CONDUCT A FORENSIC EVALUATION ON A PATIENT, EXCLUSIVELY UTILIZED REPORTS WRITTEN BY MENTAL HEALTH PERSONEL OTHER THAN THE ASSIGNED PSYCHIATRIST, SHOULD THE PSYCHIATRIC REPORT BE CONSIDERED FORENSIC IF YES STATE WHY.

104) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE TESTIFY RELEVANTLY, IF YES, STATE THE REASONS WHY.

105)    AT THE TIME OF THE OFFENSES THAT THE PLAINTIFF IS INCARCERATED FOR, WAS HE SUICIDAL, PLEASE STATE THE FACTS OF THE MATTER.

106) AT THE TIME OF THE OFFENSES THAT THE PLAINTIFF IS INCARCERATED FOR, WAS HE DELUSIONAL, PLEASE STATE THE FACTS OF THE MATTER.

107) AT THE TIME OF THE OFFENSES THAT THE PLAINTIFF'S TRIAL, WAS HE SUICIDAL, PLEASE STATE THE FACTS OF THE MATTER.

108) AT THE TIME OF THE PLAINTIFFS TRIAL, WAS HE DELUSIONAL, PLEASE STATE THE FACTS OF THE MATTER.

109) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE PROVIDED WITH THE PSYCHOTROPIC MEDICINE THAT DR. D. JOSHI PRESCRIBED FOR HIM, PLEASE STATE THE FACTS OF THE MATTER.

110) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS THE PLAINTIFF ABLE TO CONSIDER REALISTICLY, THE POSSIBLE LEGAL DEFENSES, PLEASE STATE THE FACTS OF THE MATTER.

111) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS THE PLAINTIFF ABLE TO MANAGE HIS BEHAVIOR TO AVOID DISRUPTIONS, PLEASE STATE THE FACTS OF THE MATTER.

112) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO RELATE TO HIS ATTORNEY, PLEASE STATE THE FACTS OF THE MATTER.

113)    DID ANY INMATE PATIENT SIGN A NOTARIZED STATEMENT, THAT THE PLAINTIFF HARMED OR HURT THEM PSYCHOLOGICALLY OR PHYSICALLY. IF YES, PROVIDE SAID STATEMENT.

114)
DID ANY STAFF OF THE D.P.C SIGN A NOTARIZED STATEMENT THAT THE PLAINTIFF HARMED OR HURT THEM PSYCHOLOGICALLY OR PHYSICALLY. IF YES, PROVIDE SAID STATEMENT.

115)
IS THE DEFENDANT DR. FOSTER WILLING TO TAKE A POLYGRAPH TEST IN ORDER TO VINDICATE HERSELF OF THE CLAIMS AGAINTS HER, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFFS COMPLAINT, AND OR IN REGARDS TO ANY AND OR ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HER.

116)
IS THE DEFENDANT R. GRAY WILLING TO TAKE A POLYGRAPH TEST IN ORDER TO VINDICATE HIMSELF OF THE CLAIMS AGAINST HIM, REGARDING THE INCIDENTS AS THEY ARE STATED IN THE PLAINTIFFS COMPLAINT, AND OR IN REGARDS TO ANY AND OR ALL DISCOVERY EVIDENCE SUBMITTED THAT PERTAINS TO HIM.

117)
WHY DID DR. FOSTER AVAIL HERSELF ON 6/20/06 IN STATUTORY DEFENSES UNDER 11 DEL C § 468 (3);(5) + (7), IN WHICH STATES THAT SHE WAS PERMITTED THE AUTHORITY BY SAID STATUTES TO ORDER THE USE OF FORCE, WHEN ON 6/15/06 DR FOSTER STATED THAT THE PLAINTIFF'S ALLEGED INJURIES WERE CAUSED BY INDIVIDUALS FOR WHICH SHE HAD NO CONTROL,

118) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C DOCTOR ORDER SHEETS DATING FROM 5/21/04 TO 6/25/04 PER DISCOVERY, BECAUSE SAID HAND WRITTEN INFORMATION IS NOT LEGIBLE.

119) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, HE ALSO ADMITTED TO SMOKING MARIJUANA SIXT SIXTEEN YEAR AGO, BUT DENIED ALL OTHER ILLICIT DRUG USE. AND THAT IT WAS CONSIDERED PROBABLE THAT HE WAS MINIMIZING HIS ADDITION ISSUES. (DENIED BY THE PLAINTIFF), WHAT FORENSIC EVIDENCE DID DR. FOSTER UTILIZE TO COME TO THE CONCLUSIONS THAT THE PLAINTIFF SMOKED MARIJUANA, AND THAT HE WAS MINIMIZING HIS ADDICTION ISSUES.

120) DR. FOSTERS JUNE 10,04 FORENSIC REPORT STATES, MR. LEWIS' HOSPITAL COURSE HAS BEEN COMPLICATED BY HIS AGGRESSIVE, ASSULTIVE BEHAVIOR. HE WAS OVERHEARD MAKING PHYSICAL THREATS, OBSERVED TAUTING AND LAUGHING AT HIS PEERS, AND TAKING PLEASURE IN EMBARRASSING THEM. (DENIED BY THE PLAINTIFF) THESE ARE A WIDE ARRAY OF SLANDEROUS ACCUSATIONS, AND THE PLAINTIFF SEEKS TO HAVE DR. FOSTER SPECIFICLY IDENTIFY EXACTLY WHOM THE PLAINTIFF DISPLAYED AGGRESSIVE AND ASSULTIVE BEHAVIOR TOWARD, WHO WAS HE OVERHEARD MAKING PHYSICAL THREATS TOWARDS AND WHO OVERHEARD HIM, WHO WAS THE PEER(S) MR. LEWIS TOOK PLEASURE IN EMBARRASSING BY TAUNTING AND LAUGHING, AND WHO WITNESSED MR. LEWIS DISPLAY THESE BEHAVIORS.

121) PER DISCOVERY REQUEST, THE PLAINTIFF HAS RECEIVE THE DEC 1, 03 SUPERIOR COURT ORDER THAT WAS DOCKETED WITH THE CLERK OF THE PROTHONOTARY — STATING THAT THE PLAINTIFF IS TO UNDERGO A FORENSIC EVALUATION FOR COMPETENCY AND TO RECEIVE TREATMENT FOR HIS VERY OWN WELL BEING, SUPERIOR COURT DOCKET #'s 25 + 26.

/    THE PLAINTIFF HEREBY REQUEST TO RECEIVE THE SUPERIOR COURT ORDER FROM THE SUPERIOR COURT JUDGE OR COMMISSIONER, THAT WAS FILED WITH THE SUPERIOR COURT CLERK OF THE PROTHONOTARY AND DOCKETED — DOCUMENTS THAT THE PLAINTIFF WAS DEEMED JUDICIALLY COMPETENT AND STABLE ENOUGH TO BE RETURNED TO THE D.O.C TO BE SUBJECTED TO SUPERIOR COURT PROCEDURES.

122) DR. FOSTER, DID THE PLAINTIFF REQUEST TO BE RETURNED TO THE D.O.C

123) DR. FOSTER, IF THE PLAINTIFF WOULD HAVE BEEN GIVEN A COMPETENCY HEARING IN THE MOCK COURT ROOM AT THE D.P.C, WOULD HE HAVE HAD THE OPPORTUNITY TO CONTEST THE FORENSIC REPORT YOU AUTHORED ON JUNE 10, 04.

124) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C INCIDENT REPORTS PROVIDED VIA DISCOVERY, BECAUSE SAID INFORMATION IS NOT LEGIBLE

125) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE F.C.M CONSULTATION REQUEST DATED JUNE 9, 2004 PROVIDED VIA DISCOVERY, BECAUSE SAID WRITING IS NOT LEGIBLE.

126) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C SOCIAL ASSESSMENT, 6 PAGES DATED 5/24/04, PROVIDED VIA DISCOVERY, BECAUSE SAID WRITING IS NOT LEGIBLE.

127) DOES IT TAKE A COURT ORDER FOR SOMEONE TO BE TRANSFERRED FROM THE D.O.C, TO THE D.P.C MITCHELL BUILDING TO UNDERGO A FORENSIC EVALUATION FOR COMPETENCY, IF NO STATE HOW.

128) DOES IT TAKE A COURT ORDER FOR SOMEONE TO BE TRANSFERRED FROM THE D.P.C TO THE D.O.C ONCE THE COURT ORDERED FORENSIC EVALUATION FOR COMPETENCY HAS BEEN COMPLETED, IF NO STATE WHY.

129) IS IT PROCEDURE FOR SOMEONE WHO HAS BEEN COURT ORDERED TO UNDERGO A FORENSIC EVALUATION FOR COMPETENCY TO RECEIVE A COMPETENCY HEARING AT THE D.P.C BEFORE THEY ARE RETURNED TO THE D.O.C IF NO, STATE WHY NOT.

130) MR. MOFFITT, ISNT IT ROBBERY WHEN SOMEONE UTILIZES UN-NECESSARY FORCE TO TAKE SOMETHING FROM SOMEONE, THAT IS HARMLESS AND LEGALLY THEIRS.

131) MR. SAGERS, ISNT IT ROBBERY WHEN SOMEONE UTILIZES UN-NECESSARY FORCE TO TAKE SOMETHING FROM SOMEONE, THAT IS HARMLESS AND LEGALY THEIRS.

132) MR. R. GRAY, ISNT IT ROBBERY WHEN SOMEONE UTILIZES UN-NECESSARY FORCE TO TAKE SOMETHING FROM SOMEONE, THAT IS HARMLESS AND LEGALLY THEIRS,

133) DOES A PERSON HAVE TO BE RETARDED IN ORDER TO BE INCOMPETENT AT THE TIME OF THE OFFENSES THEIR ACCUSED OF.

134) DOES A PERSON HAVE TO BE RETARDED LIKE JOSEPH A. SHIELDS IN ORDER TO BE INCOMPETENT AT THE TIME OF THEIR TRIAL.

135) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C CONSULTATION REQUEST AND REPORT DATED JUNE 9, 04 PROVIDED VIA DISCOVERY, BECAUSE SAID WRITTING IS NOT LEGIBLE.

136) IN REGARDS TO DR. FOSTER DIAGNOSING THE PLAINTIFF AS MALINGERING; WHAT ARE THE FALSE OR GROSSLY EXAGGERATED PHYSICAL OR PSYCHOLOGICAL SYMPTOMS. DISCRIBE THE DETAILS.

137) DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES AXIS I: MALINGERING, ALCOHOL ABUSE, HISTORY OF CONDUCT DISORDER. DISCRIBE IN DETAIL THE HISTORY OF CONDUCT DISORDER, INCLUDING DATE(S), PLACES, INCIDENTS, AND WITNESSES.

138) DEFINE PSYCHOLOGICAL AND ENVIORMENTAL PROBLEMS ADULTINCULLARE INCARCERATION. AS IT IS NOTED IN DR. FOSTERS JUNE 10, 04 FORENSIC REPORT.

139) DEFINE ANTI SOCIAL PERSONALITY DISORDER, AS IT IS NOTED IN DR. FOSTER JUNE 10, 04 FORENSIC REPORT

140) WHAT DOES THE 11/17/03 DATE NOTED ON DR FOSTERS JUNE 10, 04 FORENSIC REPORT RELATE TO REGARDING THE PLAINTIFF BEING ORDERED TO UNDERGO AN FORENSIC EVALUATION.

141) WHANNANDN DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, ON MAY 21, 2003 LEWIS ASSULTED A CORRECTIONAL OFFICER AND WAS TRANSFERRED TO THE INFIRMARY. PROVIDE THE OFFICIAL DOCUMENTATION UTILIZED TO ESTABLISH THIS FORENSIC DETERMINATION.

142) WHAT DID THE PLAINTIFF VERBALLY STATE HE DID
REGARDING HIS ACCOUNT OF THE OFFENSES THAT HE IS
INCARCERATED FOR, TO WHOM DID HE MAKE THESE
VERBALL STATEMENTS TO, AND WHAT DATE.

143) IS IT INDEED A FACT THAT MR. LEWIS
DISPLAYED NO EVIDENCE OF A MOOD DISORDER, AND NO
EVIDENCE OF PSYCHOSIS DURING THE COURSE OF HIS STAY
AT THE D.P.C, AS IT IS NOTED IN DR. FOSTERS
JUNE 10, 04 FORENSIC REPORT.

144) WHO WROTE THE ORDERS FOR THE STANDING P.R.N
PSYCHOTROPIC MEDICATIONS.

145) COULD THE HOSPITAL STAFF AT THE D.P.C GIVE
THE PLAINTIFF ANY P.R.N PSYCHOTROPIC MEDICATIONS,
IF THE PSYCHIATRIST WHO ORDERED THE STANDING
P.R.N PSYCHOTROPIC MEDICATIONS, HAD NOT ORDERED
THE PSYCHOTROPIC MEDICATIONS.

146) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, THAT
MR. LEWIS' MOTHER TOLD THE TEAM SOCIAL WORKER THAT HE HAD
BEEN ATTENTION SEEKING AS A YOUTH, AND THAT HE FELT NO ONE
EVER PAID ENOUGH ATTENTION TO HIM. AND THAT HE ALWAYS
FELT THAT WHATEVER SOMEONE WAS DOING, THEY SHOULD STOP,
AND ATTEND TO HIS NEEDS. (DENIED BY THE PLAINTIFF)
DOES DR. FOSTER HAVE A SIGNED AFFIDAVIT TO VALIDATE
THIS CLAIM, AND IS FLORENCE SCOTT COBBS WILLING TO

147) WHAT IS THE INTENDED RESULTS OR PURPOSE FOR UTILIZING A COCKTAIL OF PSYCHOTROPIC MEDICATIONS ON A PATIENT.

148) PROVIDE A PHOTOCOPY OF THE DEPOSITION TAKEN FROM THE PLAINTIFF PER COURT ORDER

149) WHAT ARE THE SIDE EFFECTS OF ATIVAN

150) WHAT ARE THE SIDE EFFECT OF GEODON

151) WHAR THE SIDE EFFECTS OF EFFEXOR

152) APON MR. LEWIS ARRIVAL AT THE D.P.C HIS G.A.F SCALE WAS 20, BUT BEFORE HE WAS TRANSFERRED BACK TO THE D.O.C HIS G.A.F SCALE WAS 50. DOES THE DEFENDANTS CONSIDER THAT THE PLAINTIFFS G.A.F SCALE INDICATES THAT HE WAS STABLE ENOUGH TO BE TRANSFERRED BACK TO THE D.O.C AS DR. FOSTER STATES IN HER JUNE 10, 04 FORENSIC REPORT.

153) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C DEPARTMENT OF HEALTH AND SOCIAL SERVICES INSTITUTIONAL ADMISSION RECORD DATED 5/21/04, PROVIDED VIA DISCOVERY, BECAUSE SAID WRITTEN INFORMATION IS NOT LEGIBLE.

154) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C INTERDISCIPLINARY GROUP THERAPY DOCUMENTATION SHEET, PROVIDED VIA memo. DISCOVERY, BECAUSE SAID INFORMATION IS NOT LEGIBLE.

155) WHAT IS THE RESULTS OF THE INVESTIGATION CONDUCTED, AS IT IS STATED ON THE PLAINTIFF'S JUNE 20, 2004 GRIEVANCE, PERTAING TO THE INJURIES HE RECEIVED FROM R. GRAY, SAGERS, MOFFITT AND JAME EVANS.

156) WHAT IS THE OVERALL DUTY AND OBLIGATION TO A PATIENT, FROM HIS PRIMARY PSYCHIATRIST.

157) WHAT ARE THE SIDE EFFECTS OF HALDOL

158) WHAT ARE THE SIDE EFFECTS OF SEROQUEL

159) IS IT COMMON PRACTICE FOR A PSYCHIATRIST TO UTILIZE PSYCHOTROPIC MEDICATIONS FOR NON-PSYCHIATRIC REASONS.

160) WHAT IS A LETHAL DOSE OF ATIVAN

161) WHAT IS A LETHAL DOSE OF GEODON

162) WHAT IS A LETHAL DOSE OF HALDOL

163) WHAT IS A LETHAL DOSE OF SEROQUEL

164) DR. FOSTERS JUNE 10, 04 FORENSIC REPORT STATES, IT SHOULD BE NOTED THAT MR. LEWIS HANDED OUT A HIGHLY ARTICULATE, WELL WRITTEN EXPLANATION OF HIS ACTIONS ON THE DAY OF THE ALLEGED CRIME. (DENIED BY THE PLAINTIFF) TO WHOM WAS THIS WRITTEN EXPLANATION GIVEN TO, AT WHAT DATE WAS IT GIVEN, AND WHO WITNESSED THE PLAINTIFF GIVING THE WRITTEN EXPLANATION, PROVIDE A PHOTOCOPIE.

165) PROVIDE A TYPED MEMO OF THE HAND WRITTEN INFORMATION NOTED ON THE D.P.C PROGRESS NOTES, DATING FROM 5/21/04 TO 6/25/04 PROVIDED VIA DISCOVERY, BECAUSE SAID WRITTEN INFORMATION IS NOT LEGIBLE.

166) ACCORDING TO THE D.P.C MASTER TREATMENT PLAN, (FOR WHICH IS TYPED), DR. FOSTER WAS THE PLAINTIFFS PRIMARY PSYCHIATRIST, IS THIS CORRECT.

167) CAN A PATIENTS PRIMARY PSYCHIATRIST FORFILL THEIR DUTY AND OR OBLIGATION TO A PATIENT IF THEY ARE NOT NOTIFIED OF MOOD DISORDERS, PSYCHOTIC DISORDERS OR BEHAVIOR DISORDERS BY THE D.P.C MEDICAL STAFF, IF YES, STATE HOW.

168) PROVIDE THE CHART A PSYCHIATRIST UTILIZES TO PRESCRIBE AN PSYCHOTROPIC MEDICINES TO A PATIENT ACCORDING TO THEIR, WEIGHT, HEIGHT, ETC, ETC.

169) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS THE PLAINTIFF ABLE TO PARTICIPATE WITH HIS ATTORNEY TO PLAN LEGAL STRATEGY, IF YES, STATE THE REASON WHY.

170) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO UNDERSTAND THE ROLE OF VARIOUS PARTICIPANTS IN THE TRIAL, IF YES, STATE THE REASONS WHY.

171) AT THE TIME OF THE PLAINTIFF'S TRIAL, WAS HE ABLE TO UNDERSTAND COURT PROCEDURES, IF YES, STATE THE REASONS WHY.

172) WHAT IS THE CORRECT DATE THE PLAINTIFF WAS INCARCERATED FOR THE OFFENSES HE WAS ORDERED TO FORENSICLY EVALUATED FOR.

173) IS THERE A SUBSTANTIAL RISK FACTOR OF SERIOUS HARM WHEN SOMEONE INJECTS PSCHOTTROPIC MEDICINES INTO A PATIENT, IF YES, STATE THE REASONS WHY.

174) DR. FOSTER, WHY DID YOU UTILIZE JOSEPH A. SHIELDS AS AN INCOMPETENT STANDARD NOTED IN THE PLAINTIFFS FORENSIC REPORT.

175) PROVIDE A PHOTOCOPY OF THE BARBER'S ATTENDANCE AT THE D.P.C BETWEEN THE DATES OF MAY 21,04 AND JUNE 25, 2004, ALONG WITH PHOTOCOPIES OF CHECK RECEIPTS VARIFING THE BARBER'S PAYMENT FOR THE DATES STATED.

176) WHY DOES DR. FOSTERS JUNE 10, 04 FORENIS REPORT STATE, THE PLAINTIFF WAS REFERRED TO THE D.P.C TO DETERMINE COMPETENCY TO STAND TRIAL, WHEN THE PLAINTIFF ALREADY STOOD TRIAL.

177) MR. SAGERS, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURTS SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

178) MR. SAGERS, WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFF'S STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

179) MR. MOFFITT, IF SOMEONE IN THEIR CORRECT STATE OF MIND INTENTIONALLY HURTS SOMEONE PHYSICALLY AND INTENTIONALLY VIOLATES THEIR CONSTITUTIONAL RIGHTS, SHOULD THAT PERSON BE HELD LIABLE AND PUNISHED WITH INCARCERATION.

180) MR. MOFFITT, WERE YOU IN YOUR CORRECT STATE OF MIND DURING THE PLAINTIFF'S STAY AT THE D.P.C FROM MAY 21, 04 TO JUNE 25, 04.

181) AT THE TIME OF THE PLAINTIFF'S TRIAL, COULD HE APPRECIATE THE CHARGES, IF YES, STATE THE REASONS WHY.

182) AT THE TIME OF THE PLAINTIFF'S ARREST, COULD HE APPRECIATE THE CHARGES, IF YES, STATE THE REASONS WHY.

183) HOW MANY FORENSIC PSYCHIATRIC EVALUATIONS TO DETERMINE COMPETENCY HAS DR. FOSTER DONE, HOW MANY INVOLVE BLACK PEOPLE, HOW MANY OF THE BLACK PEOPLE RECEIVED MALINGERING DIAGNOSIS, HOW MANY RECEIVED ALCOHOL ABUSE DIAGNOSIS, HOW MANY RECEIVE ANTI-SOCIAL PERSONALITY DISORDERS, HOW MANY REPORTS WAS THE D.A BRIAN ROBERTSON INVOLVED WITH.

184) DOES DR. FOSTER STILL WORK AS AN FORENSIC PSYCHIATRIST AT THE MITCHELL BUILDING, IF NO SINCE WHEN.

185) IS DR. FOSTER STILL THE CHIEF FORENSIC PSYCHIATRIST FOR THE STATE OF DELAWARE, IF NO, SINCE WHEN.

186) ON NUMEROUS OCCASSIONS WHEN THE PLAINTIFF WAS INJECTED WITH PSYCHOTROPIC DRUGS AGAINST HIS WILL, THE TERM AGGITATION WAS UTILIZED AS THE REASON. DISCRIBE EXACTLY WHAT AGGITATION MEANS TO A PSYCHIATRIST THAT PRESCRIBES COCKTAILS OF PSYCHOTROPIC DRUGS

187)    IN PREVIOUS PLEADINGS DR. FOSTER AVAILED HERSELF
IN DEFENSE UNDER 11 DEL C§ 468 IN ORDER TO JUSTIFY THE
ACTIONS THAT THE PLAINTIFF STATED SHE COMMITTED, i.e ORDERING
THE PLAINTIFF STRAPPED DOWN WITH (4) POINT RESTRAINTS AGAINST
HIS WILL, AND INJECTING HIM WITH PSYCHOTROPIC DRUGS AGAINST
HIS WILL.   WHY DID DR. FOSTER AVAIL HERSELF IN WHAT WAS
PRESENTED AS JUSTIFIABLE DEFENSE UNDER 11 DEL C § 468,
INSTEAD OF ACTUAL INNOCENCE.

188)    WHO WAS ABLE TO ORDER THAT THE PLAINTIFF BE
INJECTED WITH PSYCHOTROPIC DRUGS SUCH AS HALDOL, ATIVAN,
GEODON, WITHOUT DR. FOSTERS VERBAL ORDER, WRITTEN ORDER,
OR STANDING P.R.N ORDER.
NAME THE PERSON OR PERSONS, AND THE DATES AND
PSYCHOTROPIC DRUGS ORDERED

189.)   FILE YOUR ANSWER TO THE COMPLAINT.

190.)   STATE YOUR AFFIRMATIVE DEFENSE.

# CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS, DUE HEREBY CERTIFY ON THIS ___10TH___, DAY OF ___SEPT___, 2006, THAT I DID MAIL ONE TRUE AND CORRECT COPY OF THE PLAINTIFF'S MOTION FOR DISCOVERY BY U.S POSTAGE TO THE FOLLOWING :

CLERK OF THE COURT (GMS)         CYNTHIA BEAM ESQ

U.S. DISTRICT COURT              1001 JEFFERSON PLAZA, SUITE 2

J. CALEB BOGGS FEDERAL BUILDING  WILM, DE 19801

844. N. KING ST, LOCKBOX 18

WILM, DE 19801


GREGORY E. SMITH

DEPUTY ATTORNEY GENERAL

820 N. FRENCH ST, 7TH FL

CARVEL STATE BUILDING

WILM, DE 19801


Jimmie Lewis

SBI # 506622

DATE: 10/10/06         DEL. CORR. CENTER

1181 PADDOCK RD

SMYRNA, DE 19977

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


Jimmie Lewis,

~VS~                              CA No. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.


PLAINTIFF'S MOTION FOR DISCOVERY # III


COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE
AND SUBMITS THIS MOTION TO THIS HONORABLE COURT
IN ACCORDANCE TO THIS COURT GRANTING A ORDER
FOR DISCOVERY, IN ORDER TO BRING FORTH THE TRUTH,
THE WHOLE TRUTH AND NOTHING BUT THE TRUTH,
AND ASSERTS THE FOLLOWING :


DATE : 10/10/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD.
SMYRNA, DE 19977

1.) WHEN THE PLAINTIFF WAS (4) POINT RESTRAINED COULD HE BE A DANGER TO HIMSELF, IF YES, STATE HOW.

2.) WHEN THE PLAINTIFF WAS (4) POINT RESTRAINED COULD HE BE A DANGER TO ANY ONE ELSE, IF YES, STATE HOW.

3.) A TOTAL OF HOW MANY TIMES WAS THE PLAINTIFF PLACED IN THE SECLUSION ROOM

4.) DISCRIBE THE DESIGN OF THE SECLUSION ROOM

5.) WHY WAS THE CHEF SALAD ORDERED FOR THE PLAINTIFF

6.) WHY WAS THE PLAINTIFF'S CHEF SALAD DISCONTINUED.

7.) WAS JAMES FLOYDD ORDERED A CHEF SALAD, IF YES, ON WHAT DATE.

8.) WAS JAMES FLOYDD ORDERED A TOSS SALAD, IF YES, ON WHAT DATE.

9.) WHEN WAS THE PLAINTIFF'S CHEF SALAD ORDERED.

10) WAS JAMES FLOYDD'S TOSS SALAD DISCONTINUED, IF YES, ON WHAT DATE.

11.) CAN A PERSONS DIET BE LINKED TO RELIGIOUS OBLIGATION.

12.) WHY DID THE PLAINTIFF WEAR PAPER HORNS ON HIS HEAD.

13.) HOW LONG HAS THE NO SHAVING HEAD WITH RAZORS
     BEEN IN EFFECT, PRODUCE THE RULE STATING THIS.

14) DO THE DEFENDANTS WANT TRIAL BY JUDGE OR TRIAL BY JURY.

15) WHY DID IT TAKE 6 1/2 MONTHS TO TRANSFER LEWIS TO THE D.P.C

16) WHO IS RESPONSIBLE FOR THE PLAINTIFF NOT RECEIVING A
     COMPETENCY HEARING BEFORE BEING TRANSFERED BACK TO THE D.O.C

17) WHY DID DR. FOSTER CHOOSE TO CLAIM THAT, THE PLAINTIFFS
    CLAIMS IN FULL OR IN PART ARE BARRED BY THE DOCTRINE
    OF COMPARATIVE NEGLIGENCE AND OR ASSUMPTION OF RISK,
    AS IF TO SAY THE PLAINTIFF SHOULD HAVE BEEN EXPECTING
    THE TO BE TREATED IN THE MANNER DISCRIBED IN HIS COMPLAINT

18.) WHY WASN'T THE PLAINTIFF'S EMERGENCY CONTACT NOT NOTIFIED
     BEFORE HE WAS (4) POINT RESTRAINED AND OR BEFORE HE
     WAS INJECTED WITH PSYCHOTROPIC DR DRUGS.

19.) WHY DID DR. FOSTER CLAIM THAT THE PLAINTIFFS CLAIMS ARE BARRED BY DOCTRINES OF LACHES.

20) WHY DID DR. FOSTER CLAIM THAT THE PLAINTIFFS CLAIMS ARE BARRED BY DOCTRINES OF ESTOPPEL.

21.) WHY DID DR. FOSTER CLAIM THAT THE PLAINTIFFS CLAIMS ARE BARRED BY DOCTRINES OF ACQUIESCENCE.

22) WHY DID DR. FOSTER CLAIM THAT THE PLAINTIFFS CLAIMS ARE BARRED BY DOCTRINES OF RATIFICATION.

23.) WHY DID DR. FOSTER CLAIM THAT THE PLAINTIFFS CLAIMS ARE BARRED BY DOCTRINES OF UNCLEAN HANDS AND WAIVER.

CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS PRO-SE
DUE HEREBY CERTIFY ON THIS ___10TH___, DAY OF
___SEPT___, 2006, THAT I DID MAIL ONE TRUE
AND CORRECT COPY OF THE PLAINTIFF'S MOTION FOR
DISCOVERY TO THE FOLLOWING:


CLERK OF THE COURT (GMS)        CYNTHIA BEAM ESQ.
J. CALEB BOGGS FEDERAL BUILDING  1001 JEFFERSON PLAZA, SUITE 202
844 N. KING ST, LOCKBOX 18       WILMINGTON, DE 19801
WILMINGTON, DE 19801


GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST, 7TH FL
CARVEL STATE BUILDING
WILMINGTON, DE 19801


DATE: 10/10/06            Jimmie Lewis
                          SBI #506622
                          DEL. CORR. CENTER
                          1181 PADDOCK RD
                          SMYRNA, DE 19977

# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

– VS –                                    CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.

PLAINTIFF'S MOTION FOR DISCOVERY # IV

COMES NOW, THE PLAINTIFF JIMMIE LEWIS, PRO-SE
AND SUBMITS THIS MOTION TO THIS HONORABLE COURT
IN ACCORDANCE TO THIS COURT GRANTING A ORDER
FOR DISCOVERY, IN ORDER TO BRING FORTH THE TRUTH,
THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH,
AND ASSERTS THE FOLLOWING :

DATE: 10/12/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

1.) WAS ANY OF THE INFORMATION NOTED IN DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT OF THE PLAINTIFF VIDEO RECORDED, IF YES, PROVIDE A COPY FOR REVIEW. TO THE COURT.

2.) WAS ANY OF THE INFORMATION NOTED IN DR. FOSTER'S JUNE 10, 04 FORENSIC REPORT OF THE PLAINTIFF AUDIO RECORDED, IF YES, PROVIDE A COPY FOR REVIEW TO THE COURT.

3.) WHAT ARE THE SIDE EFFECTS OF EFFEXOR.
   THIS IS A DUPLICATE FROM DISCOVERY MOTION # II, # 141, DUE TO IT NOT BEING LEGIBLE.

4.) DR FOSTER'S JUNE 10, 04 FORENSIC REPORT STATES, THAT MR. LEWIS' MOTHER TOLD THE TEAM SOCIAL WORKER THAT HE HAD BEEN ATTENTION SEEKING AS A YOUTH, AND THE. HE FELT NO ONE EVER. PAID ENOUGH ATTENTION TO HIM. AND THAT HE ALWAYS FELT THAT WHATEVER SOMEONE WAS DOING, THEY SHOULD STOP AND ATTEND TO HIS NEED. (DENIED BY THE PLAINTIFF, AND THE PLAINTIFF'S MOTHER.) DOES DR. FOSTER HAVE A SIGNED AFFIDAVIT FROM THE PLAINTIFF'S MOTHER, AND IS FLORENCE S. COBBS THE TEAM SOCIAL WORKER WILLING TO TESTIFY TO THIS CLAIM.

5.) PROVIDE A PHOTOCOPY OF DR. FOSTERS INSURANCE AGREEMENTS AND POLICY. OR POLICIES.

6.) PROVIDE A PHOTOCOPY OF R. GRAY'S INSURANCE AGREEMENTS AND POLICY OR POLICIES.

7.) PROVIDE A PHOTO COPY OF MOFFITT'S INSURANCE AGREEMENTS AND POLICY OR POLICIES.

8.) PROVIDE A PHOTO COPY OF SAGER'S INSURANCE AGREEMENTS AND POLICY OR POLICIES.

9.) PROVIDE A PHOTO COPY OF JOHNSON'S INSURANCE AGREEMENTS AND POLICY OR POLICIES.

10.) NAMES, ADDRESSES + PHONE #'S OF INDIVIDUALS WHO WORKED AT THE D.P.C FROM 5/21/04 TO 6/25/04 DURING THE PLAINTIFF'S STAY AT THE D.P.C, FOR THE PURPOSE TO BE SUBPOENA AS WITNESSES: DR. KATHRYN SHENEMAN, DIANE STACHOWSKI, DR. SANDHU, DR. OUREISHI, DR. SHETH, HELEN HANLON, JAME EVANS, DONNA LAURENCE R.N, FLORENCE S. COBBS, MARGRET WILSON, TONYA WILSON, MARK DIGGS, DA GLORIA BANKS, ROSE ARES, PAT RILEY, SEJAL, C. OATES, ALICIA JAMES, KAREN CHAMBLIN, CURTIS CORNISH,

11.) NAMES, ADDRESSES + PHONE #'S OF EACH WITNESS AND OR EXPERT WITNESS THAT THE DEFENDANTS MAY CALL TO PRESENT EVIDENCE DURING PRE-TRIA OR TRIAL, ALONG WITH ALL DOCUMENTS OR REPORTS INTENDED TO BE UTILIZED DURING PRE-TRIAL PROCEDURES OR AT TRIAL.

12.) DEFENDANT(S), DR. FOSTER, R. GRAY, SAGERS, MOFFITT, JOHNSON, PROVIDE PHOTO COPIES OF YOUR D.P.C WORK SCHEDULE FOR DATES 5/21/04 TO 6/25/04.

13.) PROVIDE THE WORK SCHEDULE FOR THE FOLLOWING INDIVIDUALS WHO WERE EMPLOYEE'S AT THE D.O.P.C DATING FROM 5/21/04 TO 6/25/04, FOR THE PURPOSE OF DETERMINING WHO MAY BE QUALIFIED TO BE SUBPOENAED AS A WITNESS FOR THE PLAINTIFF AND OR THE DEFENDANTS ;

MR. CURTIS CORNIS, HELEN HANLON, GLORIA BANKS, DIANE STACHOWSKI, FLORENCE S. COBBS, MARK DIGGS, TONYA WILSON, MARGRET WILSON, KAREN CHAMBLIN, KATHRYN SHENEMAN, DONNA LAURENCE, SETAL J, JAMES EVANS, C. OATES, PAT RILEY, DR. OUREISHI, DR. SHETH, DR. SANDHU, ROSE ARES, ALICIA JAMES

14.) DEFENDANT(S), DR. FOSTER, R. GRAY, SAGERS, MOFFITT, JOHNSON, PROVIDE PHOTO COPIES OF THA YOUR ; BONDS, LEASES, BANK ACCOUNT STATEMENTS FOR THE PAST 12 MONTHS, BEQUESTS, DEVISES, ANNUITIES, PENSION AND RETIREMENT BENEFITS, NOTES, INSURANCE BENEFITS, ALL DOCUMENTS OF TITLES, DEEDS, STOCKS, WAREHOUSE AND OR STORAGE RECEIPTS, DEBENTURES, CERTIFICATES, MORTGAGES, BILLS, DEPOSIT INSTRUMENTS RELATING TO ACCOUNTS OR CERTIFICATES OF DEPOSIT OF BANKS, SAVINGS AND LOAN STATEMENTS, JUDGEMENTS OF LIENS, SECURITY INSTRUMENTS AND OTHER DEBTS AND OBLIGATIONS IN WRITING OF WHATEVER KIND., INDORSEMENTS, ACQUITTANCES, 1040 OR 1040EZ + W2 TAX FORMS .

15) PROVIDE DR. FOSTER'S PREVIOUS CIVIL COMPLAINT ACTION NUMBER(S) DATE(S) AND FINAL JUDGEMENT DECISION(S) OF CIVIL COMPLAINTS PLACED AGAINST YOU.

16.) PROVIDE R. GRAY'S PREVIOUS CIVIL COMPLAINT ACTION NUMBER(S), DATE(S) AND FINAL JUDGEMENT DECISION(S) OF CIVIL COMPLAINTS PLACED AGAINST YOU.

17.) PROVIDE MOFFITT'S PREVIOUS CIVIL COMPLAINT ACTION NUMBER(S), DATE(S), AND FINAL JUDGEMENT DECISION(S) OF CIVIL COMPLAINTS PLACED AGAINST YOU.

18) PROVIDE SAGER'S PREVIOUS CIVIL COMPLAINT ACTION NUMBER(S), DATE(S), AND FINAL JUDGEMENT DECISION(S) OF CIVIL COMPLAINTS PLACED AGAINST YOU.

19.) PROVIDE JOHNSON'S PREVIOUS CIVIL COMPLAINT ACTION NUMBER(S), DATE(S), AND FINAL JUDGEMENT DECISION(S) OF CIVIL COMPLAINTS PLACED AGAINST YOU.

20.) DEFENDANTS, PHOTO COPIES OF YOUR JOB CONTRACT FOR THE D.P.C FOR WHICH SHOULD COVER DATES 5/21/04 TO 6/25/04, AS WELL AS EXPECTED DUTIES & OBLIGATIONS

21.) DEFENDANTS, WHAT WERE YOUR JOB TITLES FOR DATES 5/21/04 TO 6/25/04.

22.) WOULD DR. FOSTER OBJECT TO A BOARD CERTIFIED
FORENSIC PSYCHIATRIST ANNALIZING THE D.P.C DOCTORS NOTES,
~~PSYCHOGRAM~~ THE D.P.C PROGRESS NOTES, AND HER JUNE 10, 04
FORENSIC REPORT, THEN SUBMITTING A REPORT ON THE SAID
MATERIALS, IF YES, STATE THE REASON WHY.

CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS PRO-S(
DUE HEREBY CERTIFY ON THIS    12 TH    DAY OF
____SEPT____, 2006, THAT I DID MAIL ONE TRUE
AND CORRECT COPY OF THE PLAINTIFF'S MOTION FOR
DISCOVERY # IV TO THE FOLLOWING :


CLERK OF THE COURT (GMS)        CYNTHIA BEAM ESQ
J. CALEB BOGGS FEDERAL BUILDING    1001 JEFFERSON PLAZA, SUITE 202
844 . N KING ST, LOCKBOX 18        WILMINGTON, DE 19801
WILMINGTON, DE 19801


GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST 7TH FL.
CARVEL STATE BUILDING
WILMINGTON, DE 19801


DATE:  10/12/06                    Jimmie Lewis
                                   SBI # 506622
                                   DEL. CORR. CENTER
                                   1181 PADDOCK RD
                                   SMYRNA, DE 19977

# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

- VS -                          CA NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.

PLAINTIFF'S MOTION FOR DISCOVERY # VI

COMES NOW, THE PLAINTIFF JIMMIE LEWIS PRO-SE
AND SUBMITS THIS MOTION FOR DISCOVERY IN
ACCORDANCE TO WITH THE HONORABLE JUDGE GREGORY
M. SLEETS JULY 28, 06 COURT ORDER, IN ORDER TO
BRING FORTH THE TRUTH, THE WHOLE TRUTH AND
NOTHING BUT THE TRUTH, AND ASSERTS THE FOLLOWING:

DATE: 10/20/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

1.) WHAT IS AN OVERDOSE OF BENADRYL FOR 235 lbs.

2.) WHAT IS A LETHAL DOSE OF BENADRYL FOR 235 lbs.

3.) DR. FOSTER DEFINE PSYCHOPATH AS A PSYCHIATRIST WOULD DIAGNOS IT.

4.) DR. FOSTER ARE PSYCHOPATHS MENTALLY ILL, IF NO, STATE THE REASONS WHY NOT.

5.) DR. FOSTER DID YOU OR YOUR STAFF AT THE D.P.C TRY TO TEACH THE PLAINTIFF ABOUT AGGITATION, IF YES, PROVIDE THE DETAILS.

6.) DR. FOSTER, DO PSYCHOPATHS NEED TREATMENT FOR THEIR VERY OWN WELL BEING, IF YES, DISCRIBE THE TYPE OF TREATMENT A PSYCHOPATH WOULD RECEIVE AT THE D.P.C.

7.) DR. FOSTER ARE COMPETENCY EVALUATIONS TO STAND TRIAL CONDUCTED BEFORE OR AFTER THE PERSONS TRIAL, IF AFTER THE TRIAL, STATE IF YOU WOULD BE INFORMED THAT SAID PERSON ALREADY STOOD TRIAL.

8.) CAN PSYCHOTROPIC DRUGS CAUSE DYSTONIA, IF, YES, WHAT ARE THE SYMPTOMS OF DYSTONIA.

9.) ARE A PERCENTAGE OF PERSONS HYPER SENSITIVE TO PSYCHOTROPIC DRUG IN A WAY THAT CAUSES THEM TO BE MORE RECEPTIVE TO DETRIMENTAL SIDE EFFECTS, SUCH AS DYSTONIA, AKATHESIA, PARCINSONISM AND TARDIVE DYSKINESIA.

10.) CAN THE SIDE EFFECTS OF PSYCHOTROPIC DRUGS BE PERMANENT, IF NO, STATE THE REASONS WHY NOT.

11) IS IT INDEED TRUE THAT DR JOSHIS AND DON NAPOLINS PETITIONS TO THE COURT TO HAVE THE PLAINTIFF COMMITTED, SIGNIFIES THAT THE PLAINTIFFS COMMITMENT WAS INVOLUNTARY, IF NO, STATE WHY NOT.

12.) SHOULD HEARSAY INFORMATION BE UTILIZED AS FORENSIC EVIDENCE NOTED IN A COMPETENCY REPORT, IF YES, STATE THE REASONS WHY.

13) CAN THE DRUGS NAMED, PSYCHOTROPIC, NEUROLEPTIC, AND OR ANTI-PSYCHOTIC CAUSE BRAIN DAMAGE.

14) WAS THE PLAINTIFF PRESCRIBED COGENTIN DURING HIS STAY AT THE D.P.C FROM 5/21/04 TO 6/25/04.

15) IS THE MENTAL HEALTH TREATMENT OF PSYCHOTROPIC DRUGS SUPPOSE TO BE FOLLOWED UP WITH PSYCHOTHERAPY.

16) WHAT ARE THE SIDE EFFECTS OF BENADRYL.

17.) PROVIDE THE NAMES, ADDRESSES AND PHONE NUMBERS OF THE PERSONS THE DEFENDANTS INTEND TO CALL AS WITNESSES DURING PRE-TRIAL OR TRIAL.

18.) ARE PSYCHOTROPIC DRUGS SOMETIMES CALLED NEUROLEPTIC OR ANTIPSYCHOTIC DRUGS, IF YES, DEFINE PSYCHOTROPIC, NEUROLEPTIC, AND ANTI-PSYCHOTIC.

19) IF A JUDICIAL HEARING WOULD HAVE BEEN CONDUCTED IN ORDER TO INVOLUNTARILY ADMINISTER PSYCHOTROPIC DRUGS TO THE PLAINTIFF, WOULD HE HAVE HAD TO BE DEEMED INCOMPETENT FIRST, YES OR NO, IF NO STATE THE REASONS WHY.

20) IF A JUDICIAL HEARING WOULD HAVE BEEN CONDUCTED IN ORDER TO INVOLUNTARILY ADMINISTER PSYCHOTROPIC DRUGS TO THE PLAINTIFF, WOULD THE PLAINTIFF HAVE HAD TO BE GIVEN A COMPETENCY HEARING PRIOR TO HIS BEING SUBJECTED TO SUPERIOR COURT PROCEDURES, YES OR NO, IF NOT STATE THE REASONS WHY NO.

21) CAN PSYCHOTROPIC DRUGS CAUSE TARDIVE DYSKINESIA, IF YES, WHAT ARE THE SYMPTOMS OF TARDIVE DYSKINESIA.

22) DR FOSTER, WHY DID YOU PLACE THE PLAINTIFF ON DISCIPLINARY THE SANCTION ON 5/21/04

23) PROVIDE THE WRITTEN NOTICE(S) THE PLAINTIFF RECEIVED, REGARDING THE ALLEGED DISCIPLINARY CODES HE WAS SANCTIONED FOR VIOLATING ON THE FOLLOWING DATES: 5/21/04, 6/6/04, 6/13/04, 6/14/04, 6/14-15/04, 6/21/04 AND 6/24/04.

24) HOW LONG WAS THE PLAINTIFF'S DISCIPLINARY SANCTION FOR THE ALLEGED DISCIPLINARY CODE HE WAS SANCTIONED FOR VIOLATING ON 5/21/04.

25) FOR THE DISCIPLINARY SANCTIONS THE PLAINTIFF RECEIVED ON 5/21/04, 6/6/04, 6/13/04, 6/14/04 AT OR ABOUT 8:00 PM, 6/14-15/04 AT OR ABOUT 11:00 PM, 6/21/04 AND 6/24/04, WAS THE PLAINTIFF 1.) ALLOWED TO CONFRONT HIS ACCUSER, 2.) CALL WITNESSES IN HIS BEHALF, 3.) CHOOSE A COUNSELOR TO REPRESENT HIM, (4) BE PRESENT A THE DISCIPLINARY HEARING, 5) RECEIVE NOTICE OF HAVING THE RIGHT TO HAVE HIS RIGHTS READ TO HIM, 6.) ALLOWED TO APPEAL. IF YES PROVIDE SAID WRITTEN NOTICES.

26) WOULD DR. FOSTER OBJECT TO A DISINTERESTED BOARD CERTIFIED FORENSIC PSYCHIATRIS ANALIZING THE D.P.C DOCTORS NOTES, THE D.P.C PROGRESS NOTES, DR. FOSTERS JUNE 10, 04 FORENSIC REPORT As WELL As THE ANSWERS TO THE PLAINTIFFS MOTIONS FOR DISCOVERY, THEN SUBMITTING A REPORT ON THE SAID MATERIALS, YES OR NO.

27) PROVIDE A PHOTOCOPY OF DR. FOSTERS FORENSIC PSYCHIATRIST LICENCE, THAT GRANTED HER THE RIGHT TO PRACTICE FORENSIC PSYCHIATRY DATING FROM 5/21/04 TO 6/25/04

28.) WAS THERE ANY REASONABLE ALTERNATIVE OFFERED AND OR GIVEN TO THE PLAINTIFF REGARDING HIS BEING ORDERED TO BE CONFINED IN THE ISOLATION ROOM, STATE DETAILS AND PROVIDE WRITTEN NOTICE(S).

29) WAS THERE ANY REASONABLE ALTERNATIVE OFFERED AND OR GIVEN TO THE PLAINTIFF REGARDING HIS BEING ORDERED TO BE (4) POINT RESTRAINED IN THE ISOLATION ROOM, STATE DETAILS AND PROVIDE WRITTEN NOTICE(S?.

30) WAS THERE ANY REASONABLE ALTERNATIVE OFFERED AND OR GIVEN TO THE PLAINTIFF REGARDING HIS BEING INVOLUNTARILY ADMINISTERED PSYCHOTROPIC DRUG WHILE HE WAS (4) POINT RESTRAINED IN THE ISOLATION ROOM.

31) CAN PSYCHOTROPIC DRUGS CAUSE AKATHESIA, IF YES, WHAT ARE THE SYMPTOMS OF AKATHESIA.

82) BECAUSE THE PLAINTIFF REFUSED TO TAKE PSYCHOTROPIC DRUGS INTROVENIOUSLY, WAS A SPECIAL COMMITTEE CONSISTING OF A PSYCHIATRIST, A PSYCHOLOGIST, AN OFFICIAL, NONE OF WHOM WERE INVOLVED IN THE PLAINTIFFS DIAGNOSIS OR TREATMENT CALLED TO CONDUCT A JUDICIAL HEARING AND INFORMING THE PLAINTIFF OF THE FOLLOWING: (A) A WRITTEN NOTICE OF SAID JUDICIAL HEARING, (B) WRITTEN NOTICE OF HIS RIGHT TO ATTEND, (C) WRITTEN NOTICE OF HIS RIGHT TO PRESENT EVIDENCE, (D) WRITTEN NOTICE OF HIS RIGHT TO CROSS EXAMINE AND OR CONFRONT WITNESSES, (E) WRITTEN NOTICE OF HIS RIGHT TO BE REPRESENTED BY AN DISINTRESTED LAY ADVISER, (F) WRITTEN NOTICE OF HIS RIGHT TO APPEAL (G) WRITTEN NOTICE OF HIS RIGHT TO PERIODIC REVIEW OF ANY INVOLUNTARY PSYCHOTROPIC DRUGS ORDERED, BEFORE AND OR AFTER THE PLAINTIFF WAS INVOLUNTARILY ADMINISTERED PSYCHOTROPIC DRUGS ON 6/6/04, 6/13/04, 6/14/04 AT OR ABOUT 8:00 PM, 6/14-15/04 AT OR ABOUT 11:00 PM, 6/21/04, 6/22/04 AND 6/24/04, IF YES PROVIDE NAMES OF SAID PERSONS DISCRIBED HEARIN, AS WELL AS THE WRITTEN NOTICES AND THE DECISION WHY INVOLUNTARY ADMINISTRATION OF DRUGS NECESSARY.

33) DR. WHAT ARE THE BASIC FUNDEMENTAL REASONS FOR THE USE OF PSYCHOTROPIC DRUGS.

34) CAN PSYCHOTROPIC DRUGS CAUSE PARKINSONISM, IF YES, WHAT ARE THE SYMPTOMS OF PARKINSONISM.

35) BECAUSE THE PLAINTIFF REFUSED TO TAKE PSYCHOTROPIC DRUGS INTROVENIOUSLY, DID THE D.P.C MEDICAL TEAM (A) GIVE THE PLAINTIFF A WRITTEN NOTICE OF THE HEARING, (B) A NOTICE OF HIS RIGHT TO ATTEND (C) A NOTICE OF HIS RIGHT TO PRESENT EVIDENCE, (D) A NOTICE OF HIS RIGHT TO COUNSEL, (E) A NOTICE OF HIS RIGHT TO CROSS EXAMINE OR CONFRONT WITNESSES, (F) A NOTICE OF HIS RIGHT TO PERIODIC REVIEW OR ANY INVOLUNTARY PSYCHOTROPIC DRUGS ORDERED, (G) A NOTICE OF HIS RIGHT TO APPEAL, BEFORE OR AFTER THE PLAINTIFF WAS INVOLUNTARY ADMINISTER PSYCHOTROPIC DRUGS ON 6/6/04, 6/13/04, 6/14/04 ON OR ABOUT 8:00 PM, 6/14-15/06 AT OR ABOUT 11:00 PM, 6/21/04, 6/22/04, AND 6/24/04, IF YES, PROVIDE NAMES OF SAID STAFF MEMBERS, WRITTEN NOTICES AND THE WRITTEN DECISIONS OF WHY INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC DRUGS WAS NECESSARY.

36.) WHAT IS THE DURATION EFFECT OF HALDOL 5 MG, ATIVAN 2 MG, GEODON 20 MG, BENADRYL 50 MG, EFFEXOR 25 MG FOR 235 lbs.

37.) DEFENDANTS, WAS THE PLAINTIFF REPORTED AND OR NOTED AS BEING MORE REGULARLY AGGITATED BEFORE, 6/6/04 WHEN THE INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC'S BEING BEGAN INTROVEINEOUSLY, OR AFTER 6/6/04.

38.) WHAT IS THE MALE NURSE NAME, WHO INJECTED THE PLAINTIFF WITH PSYCHOTROPIC'S ON 6/14-15/04 AT OR ABOUT 11:00 PM.

39.) IS THE PSYCHOTROPIC DRUG SIDE EFFECT, " NEUROLEPTIC MALIGNANT SYNDROME 30% FATAL.

## CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS
DUE HEREBY CERTIFY ON THIS <u>20TH</u>, DAY OF OCT
2006, THAT I DID MAIL BY U.S POSTAL ONE
TRUE AND CORRECT COPY OF THE PLAINTIFFS MOTION
FOR DISCOVERY # VI, TO THE FOLLOWING:

CLERK OF THE COURT (GMS)        CYNTHIA G BEAN ESQ
UNITED STATES DISTRICT COURT    1001 JEFFERSON PLAZA, SUITE 202
J. CALEB BOGGS FEDERAL BUILDING  WILMINGTON, DE 19801
844 N. KING ST, LOCKBOX 18
WILMINGTON, DE 19801


GREGORY E. SMITH
DEPUTY ATTORNEY GENERAL
820 N. FRENCH ST, 7TH PL
WILMINGTON, DE 19801


DATE: 10/20/06               Jimmie Lewis
                             SBI # 506622
                             DEL. CORR. CENTER
                             1181 PADDOCK RD
                             SMYRNA, DE 19977

**EXHIBIT "E"**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,

– VS –                                        CA. NO. 04 - 1350 (GMS)

DR. SYLVIA FOSTER, ET AL.


MOTION FOR ORDER OF DISCLOSURE

COMES NOW, THE PLAINTIFF JIMMIE LEWIS PRO-SE AN MOTIONS
FOR ORDER OF DISCLOSURE PURSUANT TO FED R. CIV P. 37(a)(3),
AN ASSERTS THE FOLLOWING IN SUPPORT THEREOF :

1.) DR. FOSTER'S JUNE 15, 06 ANSWER TO THE PLAINTIFF'S SECOND
AMENDED COMPLAINT SIMPLY STATE'S "DENIED," TO NUMBERS 1 - 8 OF SAID
COMPLAINT . THE PLAINTIFF VIEWS THE DEFENDANTS ANSWER'S INSUFFICIENT
AND EVASIVE .

2.) THE PLAINTIFF REQUESTS SPECIFIC DETAILS OF DR. FOSTER'S ACCOUNT
OF EXACTLY WHAT SHE SAYS HAPPENED. DURING EACH INCIDENT #'s 1 - 8 OF
THE PLAINTIFF'S ~~AMENDED~~ SECOND AMENDED COMPLAINT.


Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

DATE : 10/14/06

CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF TIMMIE LEWIS, PRO-SE DUE HEREBY CERTIFY THAT ON THE _____14TH_____, DAY OF SEPT 2006, HE DID MAIL BY U.S POSTAL ONE TRUE AND CORRECT COPY OF THE MOTION FOR ORDER OF DISCLOSURE, TO THE FOLLOWING:

CLERK OP THE COURT (GMS)
U.S DISTRICT COURT
844. N. KING ST, LOCKBOX 18
WILMINGTON, DE  19801

CYNTHIA 6. BEAM ESQ
1001 TEFFERSON PLAZA, SUITE 202
WILMINGTON, DE 19801

DATE: 10/14/06

Timmie Lewis
SBI# 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

## Motions

1:04-cv-01350-GMS Lewis v. Foster

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Beam, Cynthia G. entered on 10/27/2006 at 12:00 PM EDT and filed on 10/27/2006

| | |
|---|---|
| **Case Name:** | Lewis v. Foster |
| **Case Number:** | 1:04-cv-1350 |
| **Filer:** | Sylvia Foster |
| **Document Number:** | 94 |

**Docket Text:**
MOTION for Protective Order *Defendant Dr. Sylvia Foster's Motion for Protective Order* - filed by Sylvia Foster. (Attachments: # (1) Exhibit Exhibit A to Motion for Protective Order# (2) Exhibit Exhibit B to Motion for Protective Order# (3) Exhibit Exhibit C to Motion for Protective Order# (4) Exhibit Exhibit D to Motion for Protective Order# (5) Exhibit Exhibit E to Motion for Protective Order)(Beam, Cynthia)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/27/2006] [FileNumber=294020-0
] [97519c3a2e27ada9ed500a440f7de243ddf73a1d2236fefa561dd6c17bed9e3d19b
7c339f13640a7f9bfb3efbbd10c427ee735f8b191d3b45aa27ec850accf92]]
**Document description:** Exhibit Exhibit A to Motion for Protective Order
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/27/2006] [FileNumber=294020-1
] [1c2dffadb6b0c044f0dca9e7ee57907951e2912e87a221c94b59ab703b4a6176e79
f7af7eb5810a0c43f6eb43a797e44da69e042e7edbd0e00467800d21c4d6f]]
**Document description:** Exhibit Exhibit B to Motion for Protective Order
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/27/2006] [FileNumber=294020-2
] [9917dc4092aff5038a0fa1afee48a8c28a315f9573b502ddb4e6d067a94499ea346
b7f91ae87ee856e0fffb4e0598f1a090abc3e00e093d39b08303aee803768]]
**Document description:** Exhibit Exhibit C to Motion for Protective Order
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/27/2006] [FileNumber=294020-3
] [4184ee309c68fad15b69253b760f4405f9c05732e65748687973d992f0e51703bb8
0c2096a6b917f7cead0d7b5945b44cf49a719d78f0f735fcd0400db5dfdd4]]

**Document description:**Exhibit Exhibit D to Motion for Protective Order
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/27/2006] [FileNumber=294020-4
] [b55e36372851e7d3329d4c4fa4d8eea926c4463b1694c902aee07780f37143b096a
8e7c9dd8d5e7e238d4b825a94733c2dad86695d4f905f47c5635f40bc9304]]
**Document description:**Exhibit Exhibit E to Motion for Protective Order
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/27/2006] [FileNumber=294020-5
] [8e41ac737121dafb5f1cf14eed93679ac1c1b4273f6db1f2c4c63aed647e3e42d2e
027564340769b55145d329f69e88c653f7479bcca9ceee397a2d2742852de]]

### 1:04-cv-1350 Notice will be electronically mailed to:

Cynthia G. Beam     cbeam@regrizlaw.com

Gregory E. Smith     greg.smith@state.de.us,

Aleph Ann Woolfolk     ann.woolfolk@state.de.us, stephany.murray@state.de.us

### 1:04-cv-1350 Notice will be delivered by other means to:

Jimmie Lewis
SBI#506622
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977