IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS

    V.              CA. NO. 04-1350 (GMS)

DR. SYLVIA FOSTER, ET AL.

MOTION FOR INTERROGATORY
ANSWERS #1

FILED 2007 JAN 10 PM 4:50
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
RG Scan

DATE: 1/8/07

Jimmie Lewis
SBI #506622
Del. Corr. Center
1181 Paddock Rd
Smyrna, DE 19977

1.) Dr. Foster's June 10, 04 forensic report states, quote, Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior to his incarceration. (Denied by the Plaintiff) Dr. Foster's statement erroneously draws an inference that the plaintiff was drinking alcohol only moments before the offenses are said to have happened, but the plaintiff had not drank alcohol (beer) for at least a week prior to his incarceration. What date and time was Dr Foster referring to when she stated, "with his last use of alcohol just prior to his incarceration."

2.) In regards to Dr. Foster diagnosing the plaintiff as malingering, for which Dr. Foster defines in her June 10, 04 forensic report as, quote, the essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as getting out of prison into a psychiatric unit, unquote. Was the plaintiff's alleged false or grossly exaggerated psychological symptoms presented as evidence at his trial, if no discribe why not.

3.) Dr. Foster's June 10, 04 forensic report states, quote. Any threats made by Mr. Lewis to harm himself or others should be taken seriously as he is highly manipulative and will stop at little to obtain his goal. Unquote.

What does Dr. Foster specifically mean he is highly manipulative, and specificly what are the "goals" that the plaintiff will stop at little to obtain?

4.) Dr. Foster's June 10, 04 forensic report states on page 5 of 6, however Seroquel was began after it became evident that Mr. Lewis had difficulty managing his anger, and controlling his impulses. And in conjunction with page 6 of 6, Mr. Lewis may need to remain on his medication to help with anger management and impuls control.

Question: Why did Dr. Foster choose to prescribe the plaintiff Seroquel while he was at D.P.C, and advise on her June 10, 04 report that the plaintiff continue to receive Seroquel a psychotropic medication to a person whom she diagnosed as malingering, instead of advising the sedative Benadryl a non psychotropic medicine.

5.) DR. FOSTER WHY DIDNT YOU DISCONTINUE ALL PSYCHOTROPIC MEDICATIONS PRESCRIBED FOR THE PLAINTIFF AFTER YOU AUTHORED YOUR JUNE 10, 04 FORENSIC REPORT THAT NOTES THAT THE PLAINTIFF IS DIAGNOSED AS MALINGERING?

6.) WHILE THE PLAINTIFF WAS UNDER THE INFLUENCE OF THE COCKTAIL(S) OF PSYCHOTROPIC MEDICATION, WAS IT TAKEN INTO CONSIDERATION THAT INVOLUNARY MEDICATING THE PLAINTIFF MAY CAUSE NEGATIVE REACTIONS, IF YES, PLEASE DISCRIBE THE POSSIBLE NAGATIVE REACTIONS.

7.) WERE BOTH THE MCGARRY FUNCTIONS AND THE QUATNEY PRESENTED TO THE PLAINTIFF BEFORE AND OR AFTER HIS TRIAL.

8.) DID ANY INMATE PATIENT SIGN A NOTORIZED STATEMENT, THAT THE PLAINTIFF HARMED OR HURT THEM PSYCHOLOGICALLY OR PHYSICALLY, IF YES, PROVIDE SAID STATEMENT.

9.) DID ANY STAFF OF THE D.P.C SIGN A NOTORIZED STATEMENT THAT THE PLAINTIFF HARMED OR HURT THEM PSYCHOLOGICALLY OR PHYSICALLY, IF YES, PROVIDE SAID STATEMENT

10.) Dr. Foster, if the plaintiff would have been given a competency hearing in the mock court room at the D.P.C, would he have had the opportunity to contest the forensic report you authored on June 10, 04.

11.) Is it indeed a fact that Mr. Lewis displayed no evidence of a mood disorder, and no evidence of psychosis during the course of his stay at the D.P.C, as it is noted in Dr. Foster's June 10, 04 forensic report.

12.) Could the hospital staff at the D.P.C give the plaintiff any P.R.N psychotropic medication, if the psychiatrist who ordered the standing P.R.N psychotropic medication, had not ordered the psychotropic medications.

13.) Is there a substantial risk factor of serious harm when someone injects psychotropic medicines into a patient, if yes, state the reason why.

14.) Does Dr. Foster still work an an forensic psychiatrist at the Mitchell building, if no since when.

15.) Is Dr. Foster still the chief forensic psychiatrist for the state of Delaware, if no since when.

16.) Provide names, addresses and phone #s of each witness and or expert witness that the defendant may call to present evidence during pre-trial or trial, along with all documents or reports intended to be utilized during pre-trial procedures or at trial.

17.) Can the side effects of psychotropic drug be permanent, if no state the reasons why not.

18.) If a judicial hearing would have been conducted in order to involuntarily administer psychotropic drugs to the plaintiff, would he have had to be ~~deemed~~ deemed incompetent first, if no state the reasons why.

19.) IF A JUDICIAL HEARING WOULD HAVE BEEN CONDUCTED IN ORDER TO INVOLUNTARILY ADMINISTER PSYCHOTROPIC DRUGS TO THE PLAINTIFF, WOULD THE PLAINTIFF HAD TO BE GIVEN A COMPETENCY HEARING PRIOR TO HIS BEING SUBJECTED TO SUPERIOR COURT PROCEDURES, YES OR NO, IF NOT STATE THE REASONS WHY NOT.

20.) PROVIDE THE WRITTEN NOTICE(S) THE PLAINTIFF RECEIVED, REGARDING THE ALLEGED DISCIPLINARY CODES HE WAS SANCTIONED FOR VIOLATING ON THE FOLLOWING DATES: 5/21/04, 6/6/04, 6/13/04, 6/14/04, 6/14-15/04, 6/21/04, AND 6/24/04.

21.) FOR THE DISCIPLINARY SANCTIONS THE PLAINTIFF RECEIVED ON 5/21/04, 6/6/04, 6/13/04, 6/14/04 AT OR ABOUT 8:00PM, 6/14-15/04 AT OR ABOUT 11:00PM, 6/21/04 AND 6/24/04, WAS THE PLAINTIFF, 1.) ALLOWED TO CONFRONT HIS ACCUSER, 2.) CALL WITNESSES IN HIS BEHALF, 3.) CHOOSE A COUNSELOR TO REPRESENT HIM, 4.) BE PRESENT AT THE DISCIPLINARY HEARING, 5.) RECEIVE NOTICE OF HAVING HIS ~~MIRANDA~~ RIGHT TO HAVE HIS RIGHTS READ TO HIM, 6.) ALLOWED TO APPEAL, IF YES PROVIDE SAID WRITTEN NOTICES.

22.) BECAUSE THE PLAINTIFF REFUSED TO TAKE PSYCHOTROPIC DRUGS INTROVENIOUSLY, WAS A SPECIAL COMMITTEE CONSISTING OF A PSYCHIATRIST, A PSYCHOLOGIST AN OFFICIAL, NONE OF WHOM WERE INVOLVED IN THE PLAINTIFF'S DIAGNOSIS OR TREATMENT CALLED TO CONDUCT A JUDICIAL HEARING AND INFORMING THE PLAINTIFF OF THE FOLLOWING: (A) A WRITTEN NOTICE OF HIS RIGHT TO ATTEND, (B) A WRITTEN OF SAID JUDICIAL HEARING, (C) WRITTEN NOTICE OF HIS RIGHT TO PRESENT EVIDENCE (D), WRITTEN NOTICE OF HIS RIGHT TO CROSS EXAMINE AND OR CONFRONT WITNESSES, (E) WRITTEN NOTICE OF HIS RIGHT TO BE REPRESENTED BY AN DISINTRESTED LAY ADVISER (F) WRITTEN NOTICE OF HIS RIGHT TO APPEAL (G) WRITTEN NOTICE OF HIS RIGHT TO PERIODIC REVIEW OF ANY INVOLUNTARY PSYCHOTROPIC DRUGS INJECTED INTO THE PLAINTIFF ON 6/6/04, 6/13/04, 6/14/04 AT OR ABOUT 8:00 PM, 6/14-15/04 AT OR ABOUT 11:00 PM, 6/21/04, 6/22/04 AND 6/24/04, IF YES PROVIDE NAMES OF SAID PERSONS DISCRIBED HEREIN, AS WELL AS THE WRITTEN NOTICES AND THE DECISION WHY INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC DRUGS WAS DEEMED NECESSARY.

23.) BECAUSE THE PLAINTIFF REFUSED TO TAKE PSYCHOTROPIC DRUGS INTRAVENOUSLY, DID THE D.P.C MEDICAL TEAM. (A) GIVE THE PLAINTIFF A WRITTEN NOTICE OF THE HEARING, (B) A NOTICE OF HIS RIGHT TO ATTEND, (C) A NOTICE OF HIS RIGHT TO PRESENT EVIDENCE, (D) A WRITTEN NOTICE OF HIS RIGHT TO COUNSEL, (E) A WRITTEN NOTICE OF HIS RIGHT TO CROSS EXAMINE OR CONFRONT WITNESSES, (F) A WRITTEN NOTICE OF HIS RIGHT TO PERIODIC REVIEW OF ANY INVOLUNTARY PSYCHOTROPIC DRUGS ORDERED, (G) A WRITTEN NOTICE OF HIS RIGHT TO APPEAL, BEFORE AND OR AFTER ANY PSYCHOTROPIC DRUGS WERE INJECTED INTO THE PLAINTIFF ON 6/6/04, 6/13/04, 6/14/04 AT OR ABOUT 8:00 PM, 6/14-15/04 AT OR ABOUT 11:00 PM, 6/21/04, 6/22/04 AND 6/24/04, IF YES PROVIDE THE NAMES OF STAFF MEMBERS, WRITTEN NOTICES AND THE DECISSION WHY INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC DRUGS WAS DEEMED NECESSARY.

24.) IS THE PSYCHOTROPIC DRUG SIDE EFFECT, NEUROCEPTIC MALIGNANT SYNDROME 30% FATAL.

25.) THE PLAINTIFF SEEKS TO PRESENT THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH TO THE HONORABLE COURT, IN ORDER TO ENSURE THAT JUSTICE IS MUTUALLY SERVED IN ACCORDANCE TO THE PLAINTIFF'S U.S.C.A RIGHTS, AS WELL AS IN ACCORDANCE TO THE DEFENDANTS U.S.CA RIGHTS. THEREFORE, DR. FOSTER, BECAUSE YOUR JUNE 15, 06 ANSWERS TO THE PLAINTIFF'S SECOND AMENDED COMPLAINT, NUMBERS 1-8 OF SAID COMPLAINT, I.E., DENIED, ARE VIEWED AS INSUFFICIENT AND EVASIVE, AND GIVES REASON FOR THE PLAINTIFF HEREBY REQUESTING SPECIFIC DETAILS OF YOUR DISCRIPTION OF EXACTLY WHAT HAPPENED AS STATED IN NUMBERS 1-8 OF THE PLAINTIFF'S SECOND AMENDED COMPLAINT.

## CERTIFICATE OF SERVICE

I, THE UNDERSIGNED PLAINTIFF JIMMIE LEWIS DUE HEREBY CERTIFY ON THIS __8TH__, DAY OF, __JAN__, 2007, THAT I DID MAIL ONE TRUE AND CORRECT COPY OF THE MOTION FOR INTERROGATORY ANSWERS # 1, BY U.S. POSTAL TO THE FOLLOWING:

CLERK OF THE COURT GMS
UNITED STATES DISTRICT COURT
844 N. KING ST, LOCKBOX 18
WILMINGTON, DELAWARE 19801

LOUIS J. RIZZO JR
1001 JEFFERSON PLAZA
SUITE 202
WILMINGTON, DELAWARE 19801

DATE: 1/8/07

Jimmie Lewis
SBI# 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977