IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 04-1350 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| SYLVIA FOSTER, LANCE SAGERS, | ) | |
| DAVE MOFFITT, R. GRAY, | ) | |
| MR. JOHNSON, JOHN JOE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT, SYLVIA FOSTER'S, MOTION FOR SUMMARY JUDGMENT**

Defendant, Dr. Sylvia Foster (hereafter "Dr. Foster"), by and through her undersigned counsel, hereby submits this Memorandum in Support of her Motion for Summary Judgment.

**FACTS**

Plaintiff, Jimmie Lewis (hereafter "Lewis") filed suit for alleged constitutional violations during his confinement at the Delaware Psychiatric Center (hereafter "DPC"). Included in his second amended complaint were allegations which amount to 42 U.S.C. §1983 violations of Lewis' due process rights. *See* Judge Gregory Sleet's Amended Memorandum, D.I. 52, July 5, 2006. The allegations were presented against not only Dr. Foster, but also several employees of the DPC.

Lewis was initially brought to the Mitchell Building of the DPC on May 21, 2004 pursuant to a Court Order signed by Superior Court Judge Charles H. Toliver, IV on December 1, 2003. *See*

copy of Order attached hereto as Exhibit "A". The purpose for the transfer from the correctional facility to DPC was for "psychiatric evaluation for the purpose of determining competency, and to obtain treatment for his own well-being." *See* Exhibit "A". Due to the fact Lewis' confinement to the DPC was pursuant to Judge Toliver's Order in regards to a criminal matter, Lewis was confined to a secured building, the Mitchell Building, of the DPC. As such, Lewis would be considered a prisoner under the definition provided within 28 U.S.C. §1915(h).

Upon arrival at the Mitchell Building of the DPC, Lewis was to undergo an admission interview to establish the goals and procedures for upholding the instructions in Judge Toliver's Order. Lewis refused to communicate with the staff upon arrival and would not answer any questions. *See* Exhibit "B", a copy of the Psychiatric Assessment Form, attached hereto. On May 24, 2004, Lewis agreed to discuss his mental state and other important factors in his well-being, so that the initial interview process could be completed. A copy of the TP-3 Psychological Assessment report is attached hereto as Exhibit "C".

During Lewis' stay at the DPC, he had several encounters which required affirmative actions by the staff of the facility. Lewis was noted for wearing "horns" on his head in an attempt to frighten the other patients. *See* Daily Reports for May 23, 2004; June 3, 2004; June 4, 2004; attached hereto as Exhibits "D1", "D2", "D3", and "D4", respectively. Lewis also had several occasions of becoming aggressive and "inappropriate" toward the staff at DPC. *See* Daily Reports for June 13, 2004 and June 14, 2004; attached hereto as Exhibits "E1" and "E2", respectively. Most disturbing of Lewis' behavior is his somewhat relentless nature to attack other patients at DPC. Lewis has punched or hit other patients on several occasions (*See* June 6, 2004 and June 21, 2004; attached hereto as Exhibit "F1", "F2", and "F3", respectively) and has also thrown lunch trays against the wall; not only his, but another patient's tray (*See* June 24, 2004 as attached hereto as Exhibit "G").

As a result of these incidents, the plaintiff was provided various forms of "redirection" to alleviate the concerns. Once it became clear that verbal redirection would not be of great benefit due to the ever increasing aggression of Lewis, the instruction was given to provide PRN medication. These medications included Haldol, Benadryl and Ativan. *See* Treatment note May 21, 2004 attached hereto as Exhibit "H". The staff of the Mitchell Building of DPC were also permitted to place Lewis into the seclusion room for the protection of the safety of others and himself. If the seclusion room was not sufficient to calm Lewis down, he would be placed into four (4) point restraints. This was undertaken several times, typically in response to the incidents mentioned above. *See* Daily Reports, June 14, 2004; June 15, 2004; June 21, 2004; June 22, 2004; and June 24, 2004; attached hereto as Exhibits "I1", "I2", "I3", "I4", "I5", "I6", and "I7", respectively.

On June 25, 2004, Lewis was returned to the care of the Department of Corrections. The Release Summary exhibits the reasons for the return to the general prison population. *See* copy of Release Summary by Dr. Foster, attached hereto as Exhibit "J". Included within this report were the findings of Dr. Foster regarding Lewis' condition. These included the following: Malingering; Alcohol Abuse; History of Conduct Disorder; Antisocial Personality Disorder; and Hypertension. *See* Exhibit "J", page 5. Additionally, Dr. Foster authored a report, of June 10, 2004, which was submitted to the Court which forms part of the basis of Lewis' complaint. *See* Forensic Psychiatric Evaluation, attached hereto as Exhibit "K".

On or about March 8, 2005, Lewis filed an amended complaint[1] which alleged various violations of his constitutional rights by not only Dr. Foster, but also the named staff of DPC. As such, the Court, as well as Dr. Foster, have construed Lewis' claims as being violations of his civil

---

[1] Original complaint (D.I. 2), filed October 13, 2004, by Lewis has been superseded by the amended complaint (D.I. 10). Therefore, reference will be made to the amended complaint filed on March 8, 2005 when speaking about the allegations and claims by Lewis against Dr. Foster.

rights pursuant to 42 U.S.C. §1983. Numerous allegations were included within the amended complaint, however some of those allegations were dismissed previously. *See* Judge Sleet's Amended Memorandum, D.I. 52, July 5, 2006. Following Judge Sleet's ruling on the various Motions to Dismiss filed by Dr. Foster and the co-defendants, the allegations left against Dr. Foster, in particular, are as follows: Injection of anti-psychotic medicines against Lewis' will violated his Fourteenth Amendment rights; Restraint and injection of anti-psychotic medicines violates Lewis' Eighth Amended right to be free from cruel and unusual punishment; and, Civil assault and battery under Delaware law.

**ARGUMENT**

I.  SUMMARY JUDGMENT STANDARD

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's cause, and on which that party will bear the burden of proof at trial." Celotox Corp. v. Carter, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment, the moving party must demonstrate that he has met the standards of Rule 56(c). Carter v. Exxon Company USA, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). Thus, only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

II.  INJECTION OF MEDICATION AGAINST THE WILL OF LEWIS DID NOT VIOLATE HIS FOURTEENTH AMENDMENT RIGHTS

Lewis contends that the injection of psychotropic drugs against his will was a violation of his constitutional rights. *See* Lewis Amended Complaint, D.I. 10. The United State Supreme Court has made clear that a prisoner, "possesses a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment." Washington v. Harper, 494 U.S. 210, 221-22 (1990). In Harper, the Supreme Court explained that this liberty interest is protected by principles of both procedural and substantive due process. *Id.* at 220-23. "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with anti-psychotic drugs against his will, [only] if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. Moreover, "forcing anti-psychotic drugs on a convicted [or pretrial] prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." Riggins v. Nevada, 504 U.S. 127, 135 (1992).

The medications administered to Lewis were used to alleviate conditions of agitation and aggressiveness in a patient. *See* Affidavit of Dr. Foster, attached hereto as Exhibit "L". The medications of Haldol, Geoden, Benadryl, Seroquel and Ativan are given to patients, as explained in the Daily Reports, who "are escalating, becoming more and more aggressive and argumentative and confrontational." This is done to "help that patient calm down." *See* Daily Note of June 15, 2004, attached hereto as Exhibit "M".

The implication of violation of a patient's Fourteenth Amended right against injection of medications, even anti-psychotic medications, can be overcome in some circumstances. If the facility, in this case DPC, can demonstrate that an emergency which threatens the safety and security of other patients exists, this will permit the injection of medications against the will of the patient. *See* Anglin v. City of Aspen, Colorado, et al, 2008 U.S. Dist. LEXIS 16137 (Dist. Co. February 29, 2008) (*citing* Bee v. Greaves, 744 F.2d 1387 (10th Cir. 1984)) (attached hereto as Exhibit "N"). As the Court in Anglin noted, "Any decision to administer anti-psychotic drugs forcibly must be the product of professional judgment by appropriate medical authorities, applying accepted medical standards. It requires an evaluation in each case of all the relevant circumstances, including the nature and gravity of the safety threat, the characteristics of the individual involved, and the likely effects of particular drugs." *Id.* at 31. Additionally, the evaluation of using medications should include an assessment of available less restrictive alternatives to the sedation. *Id*.

In the case of Anglin, the District Court found that the in an emergency situation, such as found in the case at bar, the use of medication for sedation was valid, even taking into consideration the patient's constitutional rights against such intrusions. In the case at bar, the medical records reflect several emergency situations which demonstrated the need for sedation of Lewis. The medications administered in the case at bar are used for the calming effects they have on a patient

who has become increasingly agitated and aggressive.  *See* Exhibit "L".

The 11th Circuit has also addressed a similar situation and found the same result of granting summary judgment.  Leeks v. Cunningham, 997 F.2d 1330 (11th Dist. 1993), discusses several other cases in which the various Circuit and District Courts have demonstrated that the injection of medication is warranted in emergency situations.  *See* Leeks at 1335 (*citing* United States v. Charters, 829 F.2d 479, 484 (4th Cir. 1987) ("[T]he present situation does not present an emergency situation in which violence or the imminent deterioration of a patient will occur in the absence of forcible medication . . . "); Davis v. Hubbard, 506 F.Supp. 915, 935 (N.D. Ohio 1980) ("[T]he State must have at least probable cause to believe that the patient is *presently* violent or self-destructive, and in such condition presents a danger to himself, other patients or the institution's staff . . .")).  In the case of Leeks, the Court found that the inmate's extremely disruptive and self-destructive behavior was sufficient for the injection of medication against the patient's will.  *See* Leeks at 1335.

Lewis demonstrated several instances of aggression and agitation during his stay at the DPC.  In response to these instances, the staff at DPC instituted the procedure of seclusion and restraints.  Unfortunately, Lewis continued to exhibit the attributes of aggression and agitation.  Therefore, Dr. Foster implemented an order which permitted the injection of medication to assist in the calming of Lewis during these instances of increased aggression.  *See* Exhibit "L".  These injections were utilized to not only calm Lewis, but also to protect the other patients and staff at DPC.  *Id.*  Lewis had demonstrated his inability to control his own aggression and therefore the need arose for the injection of these medications.  It was only due to these instances of aggression and agitation that the injection of medications became necessary.  *See* Exhibit "L".

Dr. Foster made a determination, in order to protect the safety and security of all parties

involved, that injection of medications for Lewis was warranted. *See* Exhibit "L". The use of these medications has been considered acceptable by other psychiatrists in dealing with patients who have a difficult time controlling their agitation and/or aggression. *Id*. Without the injection of medications, the records reflect Lewis would have continued to remain in his elevated state of aggression and agitation. There remained the possibility of further injury to not only Lewis, but other patients and/or staff. Lewis has failed to present evidence to suggest, even taking all fair and reasonable assumptions in favor of Lewis, that would demonstrate a violation of Lewis' Fourteenth Amendment rights. To the contrary, Dr. Foster has presented reasons for the injection of medication for Lewis and the medical reasonableness for this practice.

III.  THE RESTRAINT AND INJECTION OF MEDICINES TO LEWIS DID NOT VIOLATE HIS EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

The Eighth Amendment of the United States Constitution governs penal measures and prison conditions, and prohibits the use of penal measures and existence of conditions which violate civilized standards and concepts of humanity and decency. *See* Estelle v. Gamble, 429 U.S. 97, 102 (1976). In the prison context, however, "[n]ot every governmental action affecting the interest or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319-20 (1986). Only those actions that impose an unnecessary and wanton infliction of pain rise to the level of cruel and unusual punishment. *Id.*

Because Lewis' claims reflect a challenge to his conditions of confinement at the DPC, the Court must analyze such claims under a deliberate indifference standard of the Eighth Amendment. Prison officials violate an inmate's rights under the Eighth Amendment when they

act with deliberate indifference or reckless disregard toward an inmate's rights, health or safety, and their conduct is objectively serious, or have caused an objectively serious injury to the inmate. *See* Farmer v. Brennan, 511 U.S. 825, 846-47 (1994). Under this partly objective, partly subjective test, a prison official's conduct is "objectively serious" if it is "incompatible with 'contemporary standards of decency.'" Carrigan v. Davis, 70 F.Supp.2d 448, 452 (D.Del. 1999) (*citing* Helling v. McKinney, 509 U.S. 25, 32 (1993)). The deliberate indifference prong of the test is met only if the prison official "knows and disregards an excessive risk to inmate rights, health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. Wilson v. Seiter, 501 U.S. 294 (1991). Mere allegations of negligence do not meet the pleading standards for deliberate indifference. *See* Estelle, 429 U.S. at 105-06.

      The United States District Court for the District of Delaware has previously granted a motion for summary judgment on an allegation of Eighth Amendment violation. In the case of Johnson v. Berezansky, 2005 U.S. Dist. LEXIS 7552 (April 28, 2005) (attached hereto as Exhibit "O"), Judge Jordan dismissed the plaintiff's claims of excessive force pursuant to the Eighth Amendment. In this case, the defendant, a correctional guard at the Smyrna Correctional Institution, utilized a capstun due to an increased level of agitation and aggression by the plaintiff. The Court found persuasive the fact the correctional officer took into account the potential threat to safety of staff and fellow inmates. The use of all facts known to the responsible party should be included in an evaluation of the amount of force to be used. *Id*. at *13. The Court goes on to say that "prison officials are allowed great deference in setting and executing policies that are, in their

opinion, necessary to maintain order, discipline, and security." *Id*. (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

In the present case at bar, a correlation can be drawn between the use of capstun by the correctional officer in Johnson and the injection of medication by staff. In both situations, the inmate was demonstrating actions of aggression and agitation and failed to adequately adhere to the instructions and procedures implemented by the responsible parties. In the case at bar, despite efforts to alleviate Lewis' condition through the use of seclusion and restraints, Lewis remain agitated and aggressive toward staff and other patients. It was at that point, through the direction of Dr. Foster as established upon Lewis' arrival at the facility, that the injection of the calming medication was administered. Dr. Foster prescribed the use of this medication for this purpose singularly, to combat the aggressive, agitated and inappropriate behavior of Lewis during his stay at the DPC. *See* Exhibit "L". Keeping in mind the safety of staff and other patients in the facility, Dr. Foster provided the avenue for the injection of these medications. As Judge Jordan stated in the Johnson case, officials are given greater deference in executing policies, in this case the injection of medication, which are intended for maintain the safety, order and security of the facility. *See* Johnson at *13.

Lewis has failed to present any evidence or information that demonstrates that Dr. Foster disregarded an "excessive risk" to his rights, health or safety; quite to the contrary, the injection of the medications was to protect Lewis' health and safety. *See* Exhibit "L". The records presented reflect several occasions of Lewis assaulting staff and fellow patients in the facility. In an effort to bring the facility back under control, just as the correctional officer did in Johnson, the injection of medication was authorized. If there was a substantial risk of serious harm that existed, it would be for the other patients, and staff, if no action was taken to bring Lewis under control. Rather

than run the risk of having further harm and injury done to members of the facility who had previously been injured by Lewis, Dr. Foster had previously authorized the injection of medications which are widely accepted for the counteraction of aggressive and agitated patients. *See* Exhibit "L". At no time has Lewis presented any evidence to demonstrate any injuries, symptoms or conditions which were caused by the injection of these medications; with the exception of his allegations found within the amended complaint.

Without additional information, and in light of the desire to protect the interests of all patients in the facility, it is well within the purview of Dr. Foster to prescribe the restraint of Lewis and administration of medications. Just as the correctional officer was found to be within his ability to use a capstun in the Johnson case, the use of these medications are permissible. The medication was intended to calm Lewis during incidents of increased agitation, aggression and confrontation. At no point was the health or welfare of Lewis in danger through the administration of these measures to maintain the safety of all other members of this community and the security of the facility. *See* Exhibit "L". Therefore, the allegations of violation to Lewis' Eighth Amendment rights are unfounded and should be dismissed.

IV.   LEWIS CANNOT SUSTAIN CLAIMS AGAINST DR. FOSTER PURSUANT TO THE QUALIFIED IMMUNITY DOCTRINE

The doctrine of qualified immunity shields government officials from individual liability when they are performing discretionary functions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See* Anglin at *25 (*citing* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Currier v. Doran, 242 F.3rd 905, 923 (10th Cir. 2001)). The question of whether a defendant is entitled to qualified immunity is a

question of law.  *See* Derda v. City of Brighton, 53 F.3d 1162, 1164 (10th Cir. 1995).  Once a defendant claims qualified immunity, the plaintiff then bears the burden to demonstrate that the defendant's alleged actions violated a constitutional or statutory right, AND the constitutional or statutory right was clearly established at the time of the alleged violation.  *See* Trigalet v. Young, 54 F.3d 645, 647 (10th Cir. 1995) (*quoting* Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995)) (emphasis added).

In the case at bar, the above arguments regarding the Eighth and Fourteenth Amendments, demonstrate that the actions of Dr. Foster did not violate a constitutional or statutory right.  Additionally, there is no contention that the constitutional or statutory right alleged by Lewis was clearly established at the time of the alleged violation.  The case law demonstrates the availability of injecting an inmate with medications in an emergency situation in an effort to restore order and protect the inmate, staff and other inmates.  Dr. Foster has demonstrated this as being the sole purpose for injecting Lewis following the incidents described in the medical reports.  *See* Exhibit "L".  In light of the fact Dr. Foster has claimed qualified immunity, the burden is now upon Lewis to demonstrate that his constitutional rights were violated and those violations were known at the time of the alleged violation.  The evidence presented to date demonstrates that no violation of constitutional or statutory rights has occurred.

As such, in light of all arguments presented in response to the individual allegations by Lewis and the over-arching contention of qualified immunity, the complaint by Lewis must be dismissed and summary judgment entered in favor of Dr. Foster.

V.     LEWIS CANNOT SUSTAIN A CLAIM FOR CIVIL ASSAULT AND BATTERY

UNDER DELAWARE LAW

Lewis contends that Dr. Foster ordered the administration of medications against his will which would constitute a claim for battery. Under Delaware law, the definition of battery is found within Restatement (Second) of Torts, which states, "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person . . . and (b) a harmful contact with the person of the other directly or indirectly results." Brzoska v. Olson, 668 A.2d 1355, 1360 (Del. 1995) (quoting Restatement (Second) of Torts §18 (1965)); see W. Page Keeton, et al., Prosser and Keeton on Torts §9, at 39 (5th ed. 1984) ("A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or third person to suffer such a contact, or apprehension that such contact is imminent, is a battery."). Lack of consent is an essential element of battery. Brzoska, 668 A.2d at 1360. The definition of battery under Delaware law does not require physical contact between the plaintiff and the defendant. The definition requires only an act intending to cause harmful or offensive contact with a plaintiff, and harmful or offensive contact as a direct or indirect result.

The requirement of a "harmful" or "offensive" contact is paramount to a claim of civil assault and/or battery. Even if the contact lacks any harm to the plaintiff, which is evident in this case, the claim is still available if is can be proven that "the technical invasion of the integrity of [his] person by even an entirely harmless, yet offensive, contact." See Brzoska, 668 A.2d at 1360 (*quoting* Prosser and Keeton on Torts §9). An "offensive" contact is "one which would offend the ordinary person" and "is unwarranted by the social usages prevalent at the time and place at which it is inflicted." See Brzoska, 668 A.2d at 1361 (*citing* Restatement (Second) of Torts §19 cmt. "a" (1965)).

In the case at bar, Lewis contends that an unwanted contact was made through the

injection of medication. However, the purpose for those injections was the protection of the safety of staff, fellow patients and Lewis himself. *See* Exhibit "L". None of the medical records, nor any documentation submitted by Lewis, can demonstrate any injuries and/or harm which was done by the injection of the medication. Therefore, we must turn to whether the contact, as described by Lewis, was "offensive". Using the standard presented by the Brzoska case, the contact would not "offend" the ordinary person, nor would it be unwarranted by the social usages prevalent at the time and place for which the contact was inflicted. We are dealing with a secure, psychiatric facility which houses inmates with alleged mental and psychological issues. In order to maintain control of the facility, and the safety of all other personnel and patients therein, the need to administer calming medications exists. *See* Exhibit "L". An objective analysis of the situation in which the medications were administered would deem the use as appropriate and warranted for the situation. Therefore, even accepting the fact that a "contact" was made with Lewis, there is not sufficient evidence or information to demonstrate that the "contact" was either "harmful" or "offensive". Without this determination, Lewis cannot establish a claim for civil assault or battery.

In light of these arguments, and even drawing conclusions in favor of Lewis, Dr. Foster respectfully requests the claim of civil assault and battery be dismissed, with prejudice, as submitted by Lewis.

**CONCLUSION**

Defendant, Dr. Sylvia Foster, respectfully requests that Summary Judgment be entered in her favor and against Plaintiff, Jimmie Lewis, because the elements of his Fourteenth Amendment, Eighth Amendment and Civil Assault and Battery claims have not been met. Further, taking all fair

assumptions in favor of Lewis, as required in such a situation, the evidence and information presented thus far demonstrates a lack of necessary findings to support the claims made by Lewis. Additionally, in light of a contention of qualified immunity, Lewis' burden to demonstrate constitutional or statutory violations is without support. Therefore, Dr. Foster respectfully requests that all claims made by Lewis against Dr. Foster be dismissed, with prejudice.

                              REGER RIZZO & DARNALL LLP

                              /s/ Louis J. Rizzo, Jr.
                              Louis J. Rizzo, Jr., Esquire
                              Delaware State Bar I.D. No. 3374
                              Ronald W. Hartnett, Jr., Esquire
                              Delaware State Bar I.D. No. 4497
                              1001 Jefferson Plaza, Suite 202
                              Wilmington, DE 19801
                              (302) 652-3611
                              Attorney for Defendant Dr. Sylvia Foster

Dated: March 26, 2008

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| | ) |
| Plaintiff, | )   C.A. No.:  04-1350 (GMS) |
| | ) |
| v. | ) |
| | ) |
| SYLVIA FOSTER, LANCE SAGERS, DAVE MOFFITT, R. GRAY, MR. JOHNSON, JOHN JOE, | ) ) ) ) |
| Defendants. | ) |

## **PROPOSED ORDER**

Upon consideration of Dr. Sylvia Foster's (hereafter "Dr. Foster") Motion for Summary Judgment, and any responses thereto, it is hereby ORDERED that Dr. Foster's Motion for Summary Judgment is GRANTED and the Complaint filed by Jimmie Lewis is DISMISSED with prejudice on this _____ day of _____, 2008.

_____
The Honorable Gregory M. Sleet

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| | ) |
| Plaintiff, | ) C.A. No.: 04-1350 (GMS) |
| | ) |
| v. | ) |
| | ) |
| SYLVIA FOSTER, LANCE SAGERS, | ) |
| DAVE MOFFITT, R. GRAY, | ) |
| MR. JOHNSON, JOHN JOE, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on this 26th day of March, 2008 that a true and correct copy of Defendant Dr. Sylvia Foster's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment have been served electronically and/or by first class mail, postage prepaid, to the following:

Jimmie Lewis
SBI #00506622
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Joseph C. Schoell, Esquire
Wolf Block Schorr and Solis-Cohen, LLP
Wilmington Trust Center, Suite 1001
1100 North Market Street
Wilmington, DE 19801

REGER RIZZO & DARNALL LLP

 /s/ Louis J. Rizzo, Jr.
Louis J. Rizzo, Jr., Esquire
Delaware State Bar I.D. No. 3374
Ronald W. Hartnett, Jr., Esquire
Delaware State Bar I.D. No. 4497
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant Dr. Sylvia Foster

Dated: March 26, 2008