## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS,      ) | |
|           ) | |
|     Plaintiff,    ) | |
|           ) | |
|     v.       ) | Civil Action No. 04-1350-GMS |

```
                                          )
JIMMIE LEWIS,                             )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )          Civil Action No. 04-1350-GMS
                                          )
DR. SYLVIA FOSTER, NURSE                  )
ASSISTANT ROBERT N. GRAY, MR.             )
JOHNSON 1, MR. JOHNSON 2, LANCE           )
SAGERS, and DAVE MOFFETT,                 )
                                          )
              Defendants.                 )
                                          )
```

## OPENING BRIEF OF DEFENDANTS ROBERT N. GRAY,
## LANCE SAGERS, AND DAVID MOFFETT
## IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

WOLFBLOCK LLP
Thomas P. McGonigle (I.D. No. 3162)
Joseph C. Schoell (I.D. No.3133)
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 777-5860

Attorneys for Defendants Robert N. Gray,
Lance Sagers and David Moffett

OF COUNSEL:

Cara E. Leheny
WOLFBLOCK LLP
1940 Route 70 East, Suite 200
Cherry Hill, New Jersey 08004
(856) 874-4275

Dated: March 26, 2008

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................................. 1

SUMMARY OF ARGUMENT ........................................................................................ 3

STATEMENT OF FACTS ............................................................................................. 5

ARGUMENT ........................................................................................................... 12

I.    STANDARD OF REVIEW ........................................................................... 12

II.   PLAINTIFF'S FAILURE TO COMPLY WITH THE PRISON LITIGATION
      REFORM ACT REQUIRES THIS COURT TO GRANT THE ATTENDANTS'
      MOTION FOR SUMMARY JUDGMENT ON COUNTS 1, 2, 4, 6, 7, AND 8. ............. 13

III.  THE ATTENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      COUNTS 1, 2, 3, 4, 6, 7, AND 8 BECAUSE THERE IS NO EVIDENCE THAT
      THE ATTENDANTS WERE IN ANY WAY INVOLVED IN THE INCIDENTS
      THAT FORM THE BASIS OF THE CLAIMS. .................................................... 15

IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON COUNT 5
      BECAUSE PLAINTIFF CANNOT ESTABLISH THAT ANY OF THE
      ATTENDANTS USED EXCESSIVE FORCE OR ARE NOT OTHERWISE
      ENTITLED TO QUALIFIED IMMUNITY ......................................................... 18

      A.    The Attendants Did Not Wantonly Inflict Pain. .................................... 18

      B.    The Attendants Are Entitled to Qualified Immunity. ............................. 22

CONCLUSION ......................................................................................................... 24

# TABLE OF CITATIONS

## Cases

*Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002) ...................................................... 13

*Ambrose v. Wheatley*, 321 F. Supp. 1220 (D. Del. 1971) .............................................................. 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) .......................................................... 12

*Blakeney v. Dauphin County Prison*,
    156 Fed Appx. 520, 522 (3rd Cir. 2005)............................................................................21-22

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) ...................................................................... 19

*Brown v. Terry*, 469 F. Supp. 2d 256, 261 (D. Del. 2007) .......................................................... 21

*Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988)............................................................ 12

*Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005) .................................................... 16

*Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) ........................................................... 18, 19

*Jones v. Taylor*,
    No. 04-1523-JJF, 2008 U.S. Dist. LEXIS 13060 at *12 (D. Del. Feb. 21, 2008) ................... 20

*Lawyer v. Council Bluffs*, 240 F. Supp. 2d 941 (S.D. Iowa 2002)................................................ 23

*Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 672 (D. Del. 1999) ........................................................ 23

*Porter v. Nussle*,
    534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002)................................................ 13, 15

*Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002) .............................................................. 22

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)........................................................ 16

*Ruggiero v. County of Orange*, 386 F. Supp. 2d 434 (S.D.N.Y. 2005) ....................................... 14

*Saucier v. Katz*,
    533 U.S. 194, 204, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)................................................. 22

*Smith v. Messinger*, 293 F.3d 641, 648 (3d Cir. 2002) ................................................................ 19

*Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004) ...................................................................... 15

*Thomas v. Ferguson*, 361 F. Supp. 2d 435, 437 (D. Del. 2004) ........................... 12, 13, 18, 19, 21

*Turner v. Marion County*, 94 F. Supp. 2d 966, 994 (S.D. Ind. 2000).......................................... 23

*Vile v. Klem*, 131 Fed. Appx. 386, 288 (3rd Cir. 2005) .................................................................... 22

*Williams v. Consovoy*, 43 F.3d 173, 178 (3d Cir. 2006) .................................................................... 18

*Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004) .................................................................... 14

*Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006) ................................................ 13, 14

**Statutes**

42 U.S.C. § 1997e ..................................................................................................................... 3, 13

11 Del C. § 513 .............................................................................................................................. 16
11 Del C. § 615 .............................................................................................................................. 16
11 Del C. § 783 .............................................................................................................................. 16
11 Del C. § 831 ........................................................................................................................ 17, 18
11 Del. C.§ 1252 ............................................................................................................................ 14
11 Del. C. § 1258 ........................................................................................................................... 14
11 Del. C. § 6523 ..................................................................................................................... 15, 16
11 Del. C. § 6531 ..................................................................................................................... 15, 16
11 Del. C. § 6535 ..................................................................................................................... 15, 16
16 Del. C. § 5162 ........................................................................................................................... 17

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 12

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This matter arises from a complaint filed by plaintiff Jimmie Lewis ("plaintiff") on October 13, 2004, against defendants Robert N. Gray, Mr. Johnson 1, Mr. Johnson 2, Lance Sagers, and David Moffett, the Delaware Psychiatric Center ("DPC"), and Dr. Sylvia Foster. (D.I. 2).  Briefly, plaintiff alleged that the defendants violated his civil rights—including his right to be free from cruel and unusual punishment—during plaintiff's stay at the DPC's secure forensic unit, the Mitchell Building.  On March 8, 2005, plaintiff filed an Amended Complaint against Dr. Foster.  (D.I. 10).

On June 17th and 20, 2005, Dr. Foster filed motions to dismiss for lack of personal jurisdiction and failure to state a claim.  (D.I. 15 & D.I. 16).  Further, on October 5, 2005, Dr. Foster filed a motion to dismiss for lack of subject matter jurisdiction.  (D.I. 32).  On July 7, 2005, plaintiff filed a motion requesting permission to amend the complaint again.  (D.I. 19).  On August 5, 2005, the DPC filed motions to dismiss for failure to state a claim and for lack of personal jurisdiction.  (D.I. 21).  On the same date, Mr. Gray filed a motion to dismiss for failure to state a claim.  (D.I. 23).

On November 22, 2005, the Court entered an order dismissing plaintiff's claims against the DPC.  (D.I. 43).  Further, on February 7, 2006, the Court granted in part and denied in part Dr. Foster's motion to dismiss for failure to state a claim, denied Dr. Foster's motion to dismiss for lack of personal and subject matter jurisdiction, denied Mr. Gray's motion to dismiss for failure to state a claim, and granted in part and denied in part plaintiff's motion to amend/correct the complaint.  (D.I. 52).  Plaintiff filed his Second Amended Complaint on April 5, 2006.  (D.I. 56).

On May 31, 2006, Mr. Gray, Lance Sagers, David Moffett (the "Attendants"), and Brian Johnson (a/k/a "Mr. Johnson 1") filed their Answer to the Second Amended Complaint.  (D.I.

59).  No entry of appearance was made by Mr. Johnson 2 or counsel; in fact, the Waiver of

Service form sent to Mr. Johnson 2 was returned, unexecuted, to the Court.  (D.I. 71).  It appears

that no further attempts were made to effect service on Mr. Johnson 2.  By an order dated

November 27, 2007, the Court directed that all discovery was to be completed by January 26,

2008.  (D.I. 232).

Since filing the Amended Complaint, plaintiff has inundated this Court with a veritable

blizzard of filings.  Plaintiff filed 12 discovery motions (D.I.  28, D.I. 75, D.I. 76, D.I. 85, D.I.

86, D.I. 87, D.I. 91, D.I. 95, D.I. 96, D.I. 99, D.I. 105, and D.I. 115) and two requests for

admission (D.I. 143 and D.I. 149).  He filed six requests for production (D.I. 130, D.I. 170, D.I.

171, D.I. 172, D.I. 173, and D.I. 179), and 17 motions or requests for interrogatories (D.I. 122,

D.I. 125, D.I. 132, D.I. 133, D.I. 134, D.I. 135, D.I. 136, D.I. 157, D.I. 158, D.I. 159, D.I. 165,

D.I. 166, D.I. 167, D.I. 168, D.I. 169, D.I. 174, and D.I. 202).[1]  It was not at all unusual for

plaintiff to bombard the Court with several almost-identical filings on a single day; for example,

on January 17, 2007, plaintiff filed five requests for interrogatories, as well as a reply brief and a

"motion for handwritten information to be translated into usable form."  (D.I. 132 through D.I.

138).

Despite the abusive number of these various demands, the Attendants complied with their

discovery obligations.  Over 225 pages of medical records have been produced to plaintiff, and

the Attendants have answered the multitudinous motions for discovery, interrogatories, and

written deposition questions.  And, at the end of it all, there is no evidence to support plaintiff's

claims.

---

[1] Amazingly, these filings are in addition to the numerous other documents submitted by plaintiff including, for example, the four Motions for Disclosure (D.I. 89, D.I. 90, D.I. 120, and D.I. 124).

## SUMMARY OF ARGUMENT

Because a reasonable jury could not enter a verdict for plaintiff against the Attendants on any of the counts in the Amended Complaint, the Attendants are entitled to summary judgment. The Amended Complaint covers a wide array of alleged offenses, from use of excessive force to restrictions on plaintiff's right to exercise his religion, to violations of plaintiff's Sixth Amendment rights. The problem for plaintiff is that there is no evidence to support his claims.

First, certain of plaintiff's claims—recounted in Counts 1, 2, 4, 6, 7, and 8—are barred because plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e, *et seq.* The PLRA mandates that prisoners exhaust available administrative remedies before filing suit in the federal courts; if the prisoner fails to do so, he is barred from pursuing his claims in the civil courts. *Id.* at § 1997e(a). Plaintiff did not even attempt to exhaust administrative remedies with respect to these six counts of his Amended Complaint; therefore, he is barred from pursuing his claims in this Court.

Second, the Attendants are entitled to summary judgment on Counts 1, 2, 3, 4, 6, 7, and 8 because there is no evidence that they were involved in any of the events that comprise these claims. The counts themselves are directed against Dr. Foster, and the Attendants are not named in any of them. At his deposition, plaintiff either exonerated the Attendants or refused to provide any details as to their alleged involvement even though plaintiff is required to show, with some particularity, how each Attendant was involved in the incidents. Further, the DPC's attendance logs demonstrate that the Attendants were not even at work at the time five of these incidents allegedly occurred. For all of these reasons, the Attendants are entitled to summary judgment on these Counts.

Third, only Messrs. Gray and Moffett, both nursing assistants, were involved in the events that form the basis of Count 5.  They were forced to physically restrain plaintiff when he refused to comply with DPC rules and became both verbally and physically aggressive.  Their actions were at all times reasonable in light of the circumstances, and they did not act with the malice or sadism required to establish a claim of excessive force.  Furthermore, even if this Court were to find that excessive force was used, Messrs. Gray and Moffett reasonably believed that they were not violating any constitutional rights and, therefore, are entitled to qualified immunity.  Thus, they are entitled to summary judgment on this count.

## STATEMENT OF FACTS

On or about May 21, 2004, plaintiff was transferred to the DPC's Mitchell Building from the Howard R. Young Correctional Institution ("HRYCI") following his conviction on charges of Carjacking in the Second Degree, Theft, and Resisting Arrest. (Exhibit A at A-1; Exhibit B at A-2; Exhibit C at A-5:12). At the time of his transfer to the DPC, plaintiff had not yet been sentenced for these crimes. (Ex. C at A-5:13-15). On or about May 5, 2004, HRYCI medical staff requested that the Delaware Superior Court order plaintiff's transfer to the DPC because plaintiff refused to take medication, was a danger to himself and others, and needed to be evaluated to determine if he should be involuntarily medicated. (Ex. B at A-3). In its request, the HRYCI medical staff noted that plaintiff had recently attacked a corrections officer. (*Id.*) The court granted the request, ordering plaintiff to be "transferred to the Delaware State Hospital for psychiatric evaluation for the purpose of determining competency, and to obtain treatment for his own well-being." (Exhibit D at A-34).

Plaintiff remained at the DPC for just over a month; he was discharged back to HRYCI on June 25, 2004. (Ex. A at A-1). At his discharge, plaintiff's diagnoses included malingering, alcohol abuse, and antisocial personality disorder. (*Id.*) DPC's psychiatric staff determined that there were no credible signs of either psychotic or mood disorders. (Exhibit E at A-39). During his stay at the DPC, plaintiff was frequently disruptive: he was sexually inappropriate with certain female staff, verbally aggressive and provocative towards peers, and he assaulted peers and staff members. (*Id.* at A-37 – A-38; Exhibit F at A-40 – A-42). The psychiatric staff concluded that plaintiff "had difficulty managing his anger and controlling his impulses," "was considered highly manipulative," and "would stop at nothing to obtain his demands." (Ex. E at A-38 – A-39). As a result, when discharged to HRYCI, plaintiff remained "threatening and dangerous to others." (*Id.* at A-39).

During his month-long stay at the DPC, plaintiff filed six separate grievances:  one on June 3, 2004; two on June 9, 2004; one on June 20, 2004; and two on June 23, 2004.  (*See, generally*, Exhibit G).  The grievances covered various matters which concerned plaintiff.  He complained about allegedly receiving insufficient antibiotics to clear up an infection (*id.* at A-43 – A-44), dietary selections (*id.* at A-45 – A-46), not being allowed to shave his head with a razor (*id.* at A-47 – A-48), an alleged assault by staff members on June 14, 2004 (*id.* at A-49 – A-50), finding in his room clothing labeled with another patient's name tag (*id.* at A-51 – A-52), and a staff member's alleged derogatory comments (*id.* at A-53 – A-54).

## The Attendants

As nursing assistants, the Attendants are not medical treatment providers but frontline staff.  They assist patients with activities of daily living (such as personal hygiene and dressing), observe patients' behaviors and provide written and oral reports of hazardous or unusual behavior, observe and supervise patients within the facility, escort patients to social and recreational activities or medical appointments off-campus, implement prescribed treatment plans, and participate in treatment team meetings.  (*See, e.g.,* Exhibit H at A-56).  Although they participate in treatment team discussions, they have no authority to order or overrule a medical staff's directive that a patient should be restrained or medicated.  (*See, e.g. id.*).

## Plaintiff's Allegations

Plaintiff's Amended Complaint includes eight allegations, only one of which implicates any of the Attendants.  Count 1 of the Amended Complaint alleges that Dr. Sylvia Foster improperly placed plaintiff on disciplinary restriction for three days after plaintiff's arrival at the DPC; plaintiff does not make any specific allegations against the Attendants.  (D.I. 56).  During his deposition, plaintiff refused to provide any information that would support a claim against the Attendants in connection with this restriction.  (Ex. C at A-6:8 – A-10:18).

In Counts 2, 4, 6, 7, and 8, plaintiff alleges that he was restrained and involuntarily medicated against his will on the following dates: June 6th, June 14th, June 21st, June 22nd, and June 24th.[2] (D.I. 56). The June 6th restraint resulted from plaintiff's assault on a peer. (Exhibit I at A-66 – A-67). The June 14th morning involuntary medication was the consequence of plaintiff's threats towards staff members. (*Id.* at A-65). Similarly, the June 21st restraint (which carried over into the morning of June 22nd; the two incidents comprise Counts 6 and 7) also was the result of plaintiff's hitting yet another peer. (*Id.* at A-60 & A-62). On June 24th, plaintiff threw his and another peer's lunch trays against the wall, screaming and cursing that he wanted his mail. (*Id.* at A-58 – A-59).

The Amended Complaint names only Dr. Foster in connection with these events, and, at his deposition, plaintiff refused to provide any information tying the Attendants to these incidents. (Ex. C at A-28:24 – A-30:11; A-31:6 – A-32:3; A-32:14 – A-33:13). In fact, a review of their employee time records demonstrates that they were not working at the times that these incidents occurred:

| Date/Time | Mr. Gray | Mr. Moffett | Mr. Sagers |
|---|---|---|---|
| **June 6, 2004:** Plaintiff assaulted peer; medication given; restraint from 6:15 p.m. to 7 p.m. (Ex. I at A-66 – A-67 & A-80) | Did not work (Exhibit K at A-83) | Out sick (Ex. K at A-89) | Did not work (Ex. K at A-86) |

---

[2] In fact, contemporaneous records show that plaintiff was <u>not</u> separately restrained or secluded on June 22, 2004; a restraint and seclusion that began on June 21st carried over into the early hours of June 22nd. During that incident, plaintiff was secluded and restrained late in the evening on June 21st. He was released from the restraints but remained secluded, a fact which apparently began to agitate him because he started to kick and hit the quiet room door and refused to contract for safety (i.e., agree not to harm himself or others). Therefore, a decision was made to again restrain plaintiff until he became calm. The restraints were again removed at 3:00 a.m., and plaintiff contracted for safety and returned to his bedroom. (Exhibit I at A-60 & A-62; Exhibit J at A-68 – A-74).

| **June 14, 2004:** Plaintiff threatening staff and aggressive; medication given by 1:20 a.m. (Ex. I at A-65) | Did not report to work until 6:41 a.m. (Ex. K at A-84) | Did not report to work until 2:45 p.m. (Ex. K at A-89) | Did not report to work until 2:31 p.m. (Ex. K at A-87) |
|---|---|---|---|
| **June 21, 2004 – June 22, 2004:** Plaintiff assaulted peer; medication given; restraint began at 8:30 p.m., then discontinued but patient remained secluded; restraint reinstated at 11:05 p.m. after plaintiff became verbally and physically aggressive; medication given; plaintiff broke restraint for right hand and struck staff member in mouth; restraint reapplied; restraint discontinued at 3:00 a.m. (Ex. I at A-60 & A-62; Exhibit J at A-68 – A-74) | Left work sick at 8:06 a.m. on June 21st; did not work on June 22nd (Ex. K at A-84) | Left work at 2:24 p.m. on June 21st; did not report to work until 8:36 p.m. on June 22nd (Ex. K at A-90) | Did not work on June 21st; did not report to work until 2:30 p.m. on June 22nd (Ex. K at A-87) |
| **June 24, 2004:** Plaintiff threw lunch trays, swore, and threatened staff; seclusion started at 1:00 p.m. and ended at 5:00 p.m.; patient given medication by 1:40 p.m. (Ex. I at A-58 – A-59; Ex. J at A-69 & A-73) | Out sick (Ex. K at A-84) | Did not report to work until 11:02 p.m. (Ex. K at A-90) | Did not report to work until 2:36 p.m. (Ex. K at A-87) |

Count 3 of the Amended Complaint focuses on two separate issues. First, plaintiff claims that Dr. Foster did not allow him to shave his head in compliance with his religious practices;

second, he claims that Dr. Foster's forensic report was inaccurate or untruthful.  (D.I. 56).  The Amended Complaint does not name any of the Attendants in connection with this count. Further, at his deposition, plaintiff refused to provide any information that any of the Attendants played any role in either incident, other than the fact that they worked at the DPC, and plaintiff might have spoken with them about shaving his head.  (Ex. C at A-13:15 – A-14:16 & A-14:21 – A-18:17).

Only Count 5 specifically names any of the Attendants.

## Count 5:  Plaintiff's Aggressive Behavior on the Night of June 14, 2004

At approximately 8 p.m. on June 14, 2004, plaintiff once again became verbally and physically aggressive towards DPC staff.  Plaintiff had been placed on vending machine restrictions because of his disruptive behaviors; as a result, he was not allowed to buy or eat anything from the vending machine.  (Ex. I at A-64).  Despite being aware of this restriction, plaintiff gave a fellow patient money to purchase M&Ms from the vending machine for him. (D.I. 56; Ex. C at A-22:12-17).  A nurse, Helen Hanlon, saw that plaintiff was eating candy from the vending machines; she told him to throw them out, and plaintiff refused to do so.  (D.I. 56; Ex. C at A-23:23 – A-24:5).

Although plaintiff self-servingly states that his refusal to obey restrictions was calm and reasonable (Ex. C at A-24:8-16), contemporaneous records tell a different story.  Plaintiff became belligerent; he threatened staff members both verbally and physically, including throwing an elbow at the staff.  (Ex. I at A-64).  Further, he threatened to "get the staff."  (*Id.*) As a result of this assaultive behavior, staff members were forced to physically restrain plaintiff and, pursuant to a physician's orders, inject him with certain medications to calm him down. (*Id.*)

The medications did not take immediate effect, however, and plaintiff remained in seclusion because of his aggression. A psychiatrist ordered seclusion at 9 p.m. because plaintiff was hitting and kicking at the walls and DPC staff. (*Id.*)[3] Although he was approached several times, it took plaintiff over two hours to calm down and agree to remain calm. (Ex. I at A-63). In an interview after plaintiff was removed from seclusion, plaintiff explained that he was secluded for "fighting staff & other pts.," and that he could have avoided such seclusion if he had not engaged in those behaviors. (Ex. J at A-78).[4]

Further, the contemporaneous Seclusion Restraint Record—which records staff observations made every 15 minutes—indicates that plaintiff continued to yell, curse, and hit objects for approximately an hour after he was secluded. (*Id.* at A-79). There is no evidence that plaintiff suffered any injuries from the restraint or subsequent seclusion, and there is no record that plaintiff ever sought medical attention for any alleged injuries. Finally, plaintiff did not file a grievance regarding this incident until six days after it occurred, and his only complaint was that his throat was sore. (Ex. G at A-49 – A-50).

Additionally, only two of the Attendants were even involved in the June 14, 2004 evening incident. Mr. Gray deflected the thrown elbow and pulled plaintiff to him, causing both of them to fall to the ground, with Mr. Gray cushioning plaintiff with his body. (Ex. C at A-

---

[3] Plaintiff's claim that he was placed in four-point restraints during this incident is unsupported by any documentary evidence. (*Compare* Ex. C at A-27:2-23 (plaintiff claims he was placed in four-point restraints), *with* Ex. J at A-77 (6/14/2004 Seclusion or Restraint Nursing Assessment showing that plaintiff was only secluded)). Certainly, there were times during plaintiff's admission that he was placed in restraints, but those incidents are clearly documented. (*See, e.g.,* Ex. J at A-75 (6/21/2004 Seclusion or Restraint Nursing Assessment indicating that plaintiff placed in four-point restraints)).

[4] Plaintiff's description of this event has changed over time. For example, on June 21, 2004, plaintiff complained to DPC medical staff that, in a previous restraint a couple of weeks before, a guard "accidentally pressed" on his neck and, since then, plaintiff had difficulty swallowing. (Ex. I at A-61). Although the June 14th incident occurred only a week, it appears to be the subject of the complaint.

26:19-21; Ex. H at A-55; Exhibit L at A-94 – A-95]).  In fact, Mr. Gray injured his back in his attempt to keep plaintiff from hurting himself or others.  (Ex. L at A-94 – A-95).  Mr. Moffett was also involved in the staff's attempt to restrain plaintiff.  (Exhibit M at A-98 & A-100).  Mr. Sagers was not involved in the incident because he was on break at the time; he signed out of the Mitchell Building at 8:02 p.m. and returned at 8:54 p.m., after plaintiff was restrained and escorted to the quiet room.  (Exhibit N at A-101; Exhibit O at A-104 – A-105.  *See also* Ex. L at A-93 & A-95; Ex. M at A-99 & A-100).

**ARGUMENT**

The Attendants are entitled to summary judgment on all counts of plaintiff's Amended Complaint. First, Counts 1, 2, 4, 6, 7, and 8 should be dismissed because plaintiff failed to avail himself of administrative remedies before filing suit, barring him from proceeding in this Court. Second, there is no evidence of any kind tying any of the Attendants to the events that form the basis of Counts 1, 2, 3, 4, 6, 7, and 8. Third, only Messrs. Gray and Moffett were involved in the events that form the basis of Count 5, and there is no genuine issue of material fact that they wantonly inflicted pain on the plaintiff for malicious and sadistic purposes. Therefore, the Amended Complaint should be dismissed as to all of the Attendants.

## I.    STANDARD OF REVIEW

Motions for summary judgment should be granted when the non-moving party is unable to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). Although the Court must review the evidence and construe all inferences in the light most favorable to the non-moving party, a "mere scintilla" of evidence in support of the non-moving party is an insufficient ground to deny the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Court may not merely take the non-moving party's word at face value. An issue of fact is genuine "only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988); *Thomas v. Ferguson*, 361 F. Supp. 2d 435, 437 (D. Del. 2004) ("'[T]he court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict.'" (quotation omitted)). A disputed issue of fact is material only if it "will affect the outcome of the trial under governing law." *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead

a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

*Thomas*, 361 F. Supp. 2d at 437.

## II. PLAINTIFF'S FAILURE TO COMPLY WITH THE PRISON LITIGATION REFORM ACT REQUIRES THIS COURT TO GRANT THE ATTENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS 1, 2, 4, 6, 7, AND 8.

As a preliminary matter, before filing the instant complaint, plaintiff was required to

exhaust all administrative remedies.[5]  The PLRA was enacted in order to control the volume and

quality of prisoner litigation in the federal courts.  *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct.

2378, 2382 (2006).  Its exhaustion requirement is a "centerpiece" of this effort.  *Id.*  Exhaustion

of all available remedies is mandatory for any suits challenging prison conditions.  *Id.* at 2382-

83.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2000).  The exhaustion requirement applies to any complaints regarding

prison conditions, or, to put it another way, "all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002).

In order to exhaust all available administrative remedies, plaintiff was required to comply with

---

[5] Under the PLRA, a prisoner is "any person incarcerated or detained in any facility who is . . . convicted of . . violations of criminal law."  42 U.S.C. § 1997e(h).  In the Third Circuit, whether a plaintiff is a prisoner depends on his status at the time he files suit.  *Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002).  At the time plaintiff filed the instant Amended Complaint, he was incarcerated in the HRYCI following conviction on certain criminal charges.

the DPC's deadlines and other procedural rules. *Woodford*, 548 U.S. at __, 126 S. Ct. at 2386-87.[6]

When plaintiff arrived at the DPC, he was provided with a copy of its grievance procedure. The grievance procedure is set forth clearly in a short one-page document, and provides several options to make patients' complaints known, including filing a grievance form or complaining to individuals such as the Director of Consumer Affairs or the Patient Advocate. *See* Exhibit P at A-106. Clearly, plaintiff knew how to utilize the procedures; during his one-month stay at the DPC, he filed six separate grievances. *See, generally,* Ex. G. As late as June 23, 2004, two days before his transfer back to the DOC, the plaintiff was complaining about finding clothing in his room labeled with another patient's name tag and also about allegedly derogative comments from a DPC staff member. Notably absent, however, are <u>any</u> grievances relating to the alleged three-day restriction following his arrival at the DPC (Count 1), the restraint on June 6, 2004 (Count 2), the medication episode on the morning of June 14, 2004 (Count 4), and the restraints on June 21, 2004 (Count 6), June 22, 2004 (Count 7), and June 24, 2004 (Count 8).

---

[6] The PLRA governs plaintiff's claims about the conditions of his confinement because the DPC falls within the meaning of the phrase "other correctional facility." *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004). In *Witzke*, the plaintiff was placed, as an alternative to revocation of probation, in a drug treatment program at a halfway house. He was confined to the program because he was required to live in the house, attend its program, and abide by its restrictive rules. Further, the Seventh Circuit understood that the phrase "other correctional facility" was to be read to include within it the type of reformatory or correctional programs offered to individuals such as Witzke who would otherwise be confined in a traditional prison. *See also Ruggiero v. County of Orange*, 386 F. Supp. 2d 434 (S.D.N.Y. 2005) (holding that plaintiff held at drug treatment campus was prisoner under PLRA because he was not free to leave campus and leaving without permission could lead to violation of parole or remand to correctional facility). Here, the plaintiff had been convicted, but not yet sentenced, and was transferred to the DPC from the HRYCI by order of the court. At all times, during his temporary stay at the DPC, plaintiff remained a prisoner of the Department of Corrections ("DOC"). He was not free to leave, and he was required to comply with the DPC's rules. Had the plaintiff left the DPC without permission, he would probably be subject to further criminal charges for escape. *See* 11 *Del. C.* § § 1252 & 1258.

There is no excuse for these failures, and the Attendants are entitled to summary judgment on each of these claims. Exhaustion is a "prerequisite" to filing suit. *Nussle*, 534 U.S. at 524, 122 S. Ct. 983, 152 L.Ed.2d 12. Even where plaintiffs seek relief that cannot be provided by the administrative process, they "must nonetheless pursue the grievance process to its end before coming to federal court." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). By failing to do so, but then seeking relief from this Court, plaintiff has frustrated Congress' objectives: to return control of the grievance process to correctional facilities, to encourage development of a record and, possibly, settlements, and to reduce frivolous litigation. *Id.* at 230. The Court is required by the PLRA, the U.S. Supreme Court, and this Circuit's precedent to grant the Attendants' motion for summary judgment with respect to Counts 1, 2, 4, 6, 7, and 8.

III.    **THE ATTENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS 1, 2, 3, 4, 6, 7, AND 8 BECAUSE THERE IS NO EVIDENCE THAT THE ATTENDANTS WERE IN ANY WAY INVOLVED IN THE INCIDENTS THAT FORM THE BASIS OF THE CLAIMS.**

The Court should also grant summary judgment on Counts 1, 2, 3, 4, 6, 7, and 8 of the Amended Complaint because there is no evidence that the Attendants were in any way involved in the incidents underlying these claims. Plaintiff alleges that:

- Dr. Foster violated his Fourteenth Amendment right to procedural due process when she placed him on disciplinary restriction for the first three days of his stay at DPC without allegedly permitting him to present evidence or witnesses on his behalf (Count 1);[7]

---

[7] Plaintiff further alleges that Dr. Foster violated his "rights established under 11 Del. C. § 6523, 6531, and 6535." (D.I. 56). Plaintiff appears to be referencing Title 11 of the Delaware Code—"Crimes and Criminal Procedure." Section 6523 creates the DOC's diagnostic services department; section 6531 establishes certain treatment and rehabilitation programs—particularly drug and alcohol treatment programs—to be created by the DOC; and section 6535 directs the DOC to promulgate rules and regulations for disciplinary violations and how they will be treated. *See* 11 *Del. C.* §§ 6523, 6531, and 6535. Plaintiff fails to explain how statutes governing certain DOC programs and procedures apply to staff at the DPC. Further, plaintiff does not show that any of these statutes afford a private right of action against any of the defendants.

- Dr. Foster violated his Eighth and Fourteenth Amendment rights, and committed assault and battery, by ordering DPC staff members to restrain and involuntarily medicate the plaintiff after an altercation with another patient (Count 2);[8]

- Dr. Foster violated plaintiff's First Amendment rights by refusing to let him shave his head with a razor (Count 3);

- Dr. Foster violated plaintiff's Sixth and Fourteenth Amendment rights, and also libeled and slandered plaintiff, through her forensic psychiatric report (Count 3);[9]

- Dr. Foster and Mr. Johnson violated plaintiff's Eighth and Fourteenth Amendment rights, and committed assault and battery;[10] and

- Dr. Foster violated plaintiff's Fourteenth Amendment rights, and committed assault and battery, by ordering plaintiff to be restrained and medications administered (Count 6 through 8).[11]

(D.I. 56).

Plaintiff's claims—brought under section 1983—cannot survive summary judgment unless he can show, with some particularity, that each Attendant was personally involved in the violation of his constitutional rights. *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005) (in order to prevail on § 1983 claim against multiple defendants, plaintiff must show that each defendant violated his constitutional rights and point to some evidence against those particular defendants); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (defendants in civil rights action must have personal involvement in alleged wrongs and allegations of

---

[8] Additionally, plaintiff alleged that Dr. Foster violated his "rights established under 11 Del. C. § 6531, 783, 6523, 6535, [and] 615." (D.I. 56). The applicability of sections 6523, 6531, and 6535 is discussed in note 7, *supra*. Section 615 describes the felony crime of assault, and section 783 sets forth the elements of a kidnapping claim. *See* 11 *Del. C.* § § 615 & 783. Plaintiff cites to no authority permitting him to bring a civil suit for alleged violations of the Criminal Code.

[9] Plaintiff alleges that Dr. Foster violated his "rights established under 11 Del. C. § 6531 [and] 513." (D.I. 56). The applicability of section 6531 is discussed in note 7, *supra*. Section 513 sets forth the elements of a conspiracy charge. *See* 11 *Del. C.* § 513. Again, plaintiff cites to no authority permitting him to bring a civil suit for alleged violations of the Criminal Code.

[10] *See supra* notes 7 and 8.

[11] *See, supra*, note 7.

participation must be made with appropriate particularity). As set forth in the Amended

Complaint, these allegations are directed only towards Dr. Foster (and, in the case of Count 4,

Mr. Johnson). In connection with Count 4, plaintiff admitted that the Attendants were not

involved in the incident. (Ex. C at A-20:15-23). Plaintiff's coy statement that he "reserved his

right" to detail the involvement of the Attendants in connection with the other counts does not

satisfy his evidentiary burden.

It is clear that plaintiff cannot demonstrate with any degree of particularity that Messrs.

Gray, Moffett, and Sagers were involved in any of the incidents that form the basis of Counts 2,

6, 7, and 8 of the Amended Complaint. During his deposition, plaintiff acknowledged that Count

2 appeared to be directed towards Dr. Foster, though he attempted to evade the consequences of

that statement by saying, "I can't specify specifically that your clients weren't involved with the

situation that took place on 6/6, 2004, regarding, you know, constitutional violations that I

alleged on that date." (*Id.* at A-11:6-7 & A-12:6-9). In connection with Counts 6, 7, and 8,

plaintiff repeatedly "reserved the right" to explain how the Attendants were involved in the

incident. (*Id.* at A-29:4 – A-30:11; A-31:6-23; A-32:14 – A-33:13). Plaintiff's deposition

testimony alone is enough to sink his claims with respect to these incidents, and, coupled with

the record evidence that the Attendants were not at work at the time the incidents allegedly

occurred, it is evident that Counts 2, 6, 7, and 8 must be dismissed.

As to the remaining two claims (Counts 1 and 3), plaintiff does not explain what each

Attendant specifically did to violate his rights. Mere generalizations that maybe an attendant or

two was aware of plaintiff's desire to cut his hair or that they wrote notes in his medical reports

that Dr. Foster might have relied upon are simply insufficient to subject any of the Attendants to

liability. The Attendants are required by state law to make such notes. 16 *Del. C.* § 5162(b)(13)

("The hospital or residential center shall maintain a clinical record for each patient admitted. The clinical record shall contain complete information on all matters relating to the . . . care and treatment of the patient, . . . ."). Even if the Attendants wrote notes that were read by Dr. Foster as she prepared the evaluation, they did nothing more than what the law and their jobs required them to do and the mere fact that they wrote such notes does not create a violation of plaintiff's constitutional rights.[12]

## IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON COUNT 5 BECAUSE PLAINTIFF CANNOT ESTABLISH THAT ANY OF THE ATTENDANTS USED EXCESSIVE FORCE OR ARE NOT OTHERWISE ENTITLED TO QUALIFIED IMMUNITY.

Finally, the Attendants are entitled to summary judgment on Count 5 of the Amended Complaint. In connection with this Count, plaintiff alleged that his Eighth and Fourteenth Amendment rights were violated and he was assaulted and battered.[13] As a convicted-but-not-yet-sentenced inmate at the time of the June 14, 2004 incident, plaintiff has no Eighth Amendment claim, but the Fourteenth Amendment extends to him identical protection. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). Summary judgment is appropriate "where the evidence, viewed in the light most favorable to the plaintiff, does not support 'a reliable inference of wantonness in the infliction of pain.'" *Thomas*, 361 F. Supp. 2d at 438 (*quoting Whitley v. Albers*, 475 U.S. 312, 322, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986)).

### A.    The Attendants Did Not Wantonly Inflict Pain.

---

[12] Further, Dr. Foster is entitled to absolute immunity for her part in writing the evaluation. *See, e.g., Williams v. Consovoy*, 43 F.3d 173, 178 (3d Cir. 2006) (psychologist who performed evaluation of inmate that resulted in Parole Board's decision to deny parole acted as arm of court and entitled to absolute judicial immunity).

[13] Plaintiff also claims that his "rights [as] established under 11 Del. C. § 6531, 783, 6523, 6535, and 831" were violated. The applicability of sections 783, 6523, 6531, and 6535 are discussed in notes 7 and 8, *supra*. Section 831 describes the crime of robbery in the second degree. 11 *Del. C.* § 831. Again, plaintiff cites to no authority permitting him to bring a civil suit for alleged violations of the Criminal Code.

In order to defeat this motion for summary judgment, plaintiff must demonstrate that the force taken by Messrs. Gray and Moffett was <u>not</u> applied in a good-faith effort to maintain or restore discipline; plaintiff <u>must</u> demonstrate that there is a genuine issue as to whether the force was applied maliciously and sadistically to cause harm. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). The Court should review the following factors:

> (1) "the need for the application of force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of the injury inflicted;" (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;" and (5) "any efforts made to temper the severity of a forceful response."

*Id.* (*quoting Whitley*, 475 U.S. at 321, 106 S. Ct. 1078, 89 L.Ed.2d 251).

The touchstone of the inquiry is whether the Attendants were motivated by a desire to inflict unnecessary and wanton pain. *Fuentes*, 206 F.3d at 344. For example, punching and kicking a handcuffed prisoner, and throwing that prisoner against cabinets and walls, raises a genuine issue of material fact as to whether the guards were motivated solely by a desire to inflict unnecessary and wanton pain. *Smith v. Messinger*, 293 F.3d 641, 648 (3d Cir. 2002). In *Fuentes*, on the other hand, using a chair to restrain the plaintiff following a violent episode was not motivated by such illicit purposes even though plaintiff was no longer physically resisting at the time he was placed in the chair. 206 F.3d at 340 & 345-46. Similarly, a physical altercation between two guards and a prisoner following the prisoner's assault on those guards did not constitute excessive force, even though the prisoner alleged that he was pushed and kicked in the back. *Thomas*, 361 F. Supp. at 439-40. Although not dispositive, the *de minimis* nature of plaintiff's injuries was "highly relevant" to the analysis. *Id.* at 439.

Here, the use of force was occasioned by plaintiff's confrontational and aggressive behavior. Even after additional staff arrived, plaintiff still—in the presence of other patients—continued to defiantly ignore the staff's reasonable attempt to maintain discipline. (D.I. 56).

Staff attempted to verbally redirect him and restore discipline, but plaintiff refused to comply. (Ex. H at A-55).

Plaintiff denies that he acted belligerently towards Ms. Hanlon and the staff, but this self-serving assertion is belied by the contemporaneous records.  Plaintiff cursed, threatened the staff, and threw an elbow at Mr. Gray.  (Ex. I at A-64).  Indeed, that very night plaintiff admitted that he was restrained because he was "fighting staff . . . ."  (Ex. J at A-78).  *See Jones v. Taylor*, No. 04-1523-JJF, 2008 U.S. Dist. LEXIS 13060 at *12 (D. Del. Feb. 21, 2008) (granting summary judgment in favor of correctional officer notwithstanding plaintiff's uncorroborated testimony that he "did nothing and said nothing" to require application of force).

It must be borne in mind at all times that plaintiff engaged in these behaviors while in the dining room with other patients present, posing a substantial risk of physical injury not only to the staff but also his peers.  Further, his blatant defiance, threats, and physical aggression increased the risk that other patients would begin acting out.  In those moments, the staff quite reasonably perceived that there was a risk of harm not only to themselves but to other patients; they also quite reasonably perceived that, if left unchecked, plaintiff's behavior could have provoked further disruption and aggression by his peers.

Therefore, Messrs. Gray and Moffett, with other staff members, were forced to physically restrain plaintiff after attempts to verbally calm him failed.[14]  With his left hand, Mr. Gray grabbed plaintiff's left wrist and placed his right hand on plaintiff's right shoulder.  (Ex. H at A-55).  He pulled plaintiff towards him, and they fell to the floor, with Mr. Gray's body cushioning plaintiff.  (*Id.*).  Another staff member secured plaintiff's legs.  Once plaintiff was on the floor,

---

[14] Although plaintiff insists that Mr. Sagers was present, the record demonstrates that he was on break at the time of the incident.  (Ex. N at A-101; Ex. O at A-104 – A-105.  *See also*  Ex. L at A-93 & A-95; Ex. M at A-99 & A-100).

Mr. Gray asked him if he was alright; eventually, plaintiff spit out the candy in his mouth and agreed not to hurt himself or others. (*Id.*). Plaintiff was then escorted by other staff to the quiet room. (*Id.*). Mr. Gray did not observe anyone hitting or kicking plaintiff. (*Id.*).

Other than plaintiff's complaint, several days later, that his throat was sore, there is no evidence in the record that plaintiff was injured in any way. If plaintiff had been injured, those injuries would have been observed during the resulting seclusion. And there is no evidence that plaintiff sought any treatment for his alleged injuries. Although the absence of significant injury is not dispositive of plaintiff's claim, it is certainly relevant. *Brown v. Terry*, 469 F. Supp. 2d 256, 261 (D. Del. 2007) (granting summary judgment for officers where, among other factors, plaintiff's injuries were "minor"); *Thomas*, 361 F. Supp. at 439 (describing de minimis nature of injuries as "highly relevant").

When Messrs. Gray and Moffett's actions are viewed in light of the relevant factors to determine the existence of excessive force, it is clear that there is no genuine issue for trial. The need for the application of force was created by plaintiff, the minimal amount of force necessary was applied in order to get control of plaintiff, there is no independent evidence of any injury to plaintiff (indeed, the only documented injury is to Mr. Gray), Messrs. Gray and Moffett reasonably perceived that plaintiff's disruptive and assaultive behavior posed a threat to their safety and potentially the safety of the other patients in the room, and, before employing any force, staff members repeatedly tried to verbally redirect plaintiff and get him to comply with DPC rules. *See Brown*, 469 F. Supp. 2d at 261 (granting summary judgment for officers where facts supported finding that plaintiff's actions created confrontation, force applied was reasonably necessary, plaintiff's injuries were minor, and no evidence presented that officers acted maliciously or sadistically). *See also, e.g, Blakeney v. Dauphin County Prison*, 156 Fed.

Appx. 520, 522 (3rd Cir. 2005) (affirming grant of summary judgment in favor of correctional staff where plaintiff provided no evidence of injury from alleged beating); *Vile v. Klem*, 131 Fed. Appx. 386, 388 (3rd Cir. 2005) (affirming grant of summary judgment on excessive force claim where plaintiff presented no evidence that force was applied "maliciously and sadistically for the very purpose of causing harm"); *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002) (affirming grant of summary judgment for correctional officer where the force applied was minor).

> **B.** **The Attendants Are Entitled to Qualified Immunity.**

Even if the Court were to determine that the force used by the Attendants now seems excessive, they are still entitled to qualified immunity. As the U.S. Supreme Court explained, the tests for whether a right was violated and whether an officer is entitled to qualified immunity are distinct. *Saucier v. Katz*, 533 U.S. 194, 204, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001). "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 208, 121 S. Ct. 2151, 150 L.Ed.2d 272.

It is clearly established that force may be used to protect oneself and to restore discipline. Here, the Attendants reasonably believed that they were not violating any constitutional rights when they, at the direction of a superior—Nurse Helen Hanlon—approached plaintiff and verbally coaxed him to put down the M&Ms, which plaintiff knew he was prohibited from having. They reasonably believed that they were not violating any constitutional rights when, after patient began "fighting staff," they physically restrained him by securing his flailing limbs and bringing him to the ground, cushioning him with their bodies as they did so. They reasonably believed that they were not violating any constitutional rights when they repeatedly asked plaintiff if he could contract for his and others' safety. And they reasonably believed that they were not violating any constitutional rights when they helped him off the floor and Mr.

Moffett escorted him from the room.  The Attendants acted reasonably and justifiably, and they are entitled to qualified immunity.[15]

For all of these reasons, the Attendants are entitled to summary judgment on Count 5 of the Amended Complaint.

---

[15] Similarly, plaintiff's state law claims cannot survive summary judgment.  An assault is an attempt by a person, "'in a rude and revengeful manner, to do an injury to another person, coupled with the present ability to do it.  A battery consists in the doing, in an angry, rude, and revengeful manner, of an injury to another person.'"  *Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 672 (D. Del. 1999) (*quoting St. Anthony's Club v. Scottsdale Ins. Co.*, No. Civ. A 97C-07-112JOH, 1998 WESTLAW 732947, at *3 (Del. Super. Ct. July 15, 1998)).  When contact is authorized by law, however, there can be no assault or battery.  *See Lawyer v. Council Bluffs*, 240 F. Supp. 2d 941 (S.D. Iowa 2002) (noting that law enforcement officers not liable for assault and battery in connection with use of force if authorized to employ such force); *Turner v. Marion County*, 94 F. Supp. 2d 966, 994 (S.D. Ind. 2000) ("Law enforcement officers are privileged to use force against another person in the performance of their duties under a standard of objective reasonableness.").  *Cf. Ambrose v. Wheatley*, 321 F. Supp. 1220 (D. Del. 1971) (recognizing that state law provided affirmative defense for killing of suspected felon when officer's use of force justified to effect arrest or prevent escape).  Because the Attendants were privileged to use force, and the force used was objectively reasonable, there is no actionable claim for assault or battery.

## CONCLUSION

For all of the reasons set forth above, Robert Gray, David Moffett, and Lance Sagers are entitled to summary judgment on all counts of plaintiff's Amended Complaint.

WOLFBLOCK LLP

*/s/ Thomas P. McGonigle*
Thomas P. McGonigle (I.D. No. 3162)
Joseph C. Schoell (I.D. No.3133)
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-5860

Attorneys for Robert N. Gray,
Lance Sagers and David Moffett

OF COUNSEL:

Cara E. Leheny
WOLFBLOCK LLP
1940 Route 70 East, Suite 200
Cherry Hill, New Jersey  08004
(856) 874-4275

Dated:  March 26, 2008